M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JASON SCOTT COLETTE and<br>KAREN KRISTINA KOCH,<br><br>                Defendant. | Case No. 4:05-cr-0042-RRB<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION TO SUPPRESS EVIDENCE** |

I.      **Introduction**

In the early hours of November 28, 2005, a drug dealer named Eugene Johnson was arrested by law enforcement in Fairbanks, Alaska.  Before his arrest, Mr. Johnson was unknown to the law enforcement officers.  Following his arrest, Johnson allegedly provided information concerning Mr. Colette.  Mr. Johnson immediately was taken before a magistrate and provided testimony in an effort to obtain a warrant for Mr. Colette's residence.  Mr. Johnson provided the following information to the state magistrate:

•      He knew Jason Colette.

•      He knew where he lives, but did not know the address.

- He believed that Colette had cocaine in his residence.
- He had been buying cocaine from Colette for about a year.
- Colette had 30 to 40 ounces at a time.
- He believed that Colette kept the cocaine in a safe in his bedroom.
- He had purchased cocaine from Colette a week prior.
- He had seen a fully automatic Uzi and a couple of handguns in Colette's home.
- He was raided by the police earlier that day.
- He would receive a sentence of "zero probation time."

Exhibit A, Transcript of Search Warrant Hearing, 4FA-SW05-335.

Based on the above information, a warrant was issued for Mr. Colette's residence. The search revealed the following relevant items:

- Approximately $39,000 cash
- Twenty-three 1 oz. packages of cocaine
- 14 firearms
- One automatic machine gun with silencer
- Various checks made out to Arctic Audio & Alarm
- One scale
- One currency counter

As a result of the items found during the search of the residence, law enforcement applied for and received a search warrant for Mr. Colette's business. Mr. Colette submits that all of the evidence obtained as the result of the search warrant for his residence must be suppressed because the warrant initially was not based on probable

cause and because the warrant, once misstatements are excised, cannot support probable cause. The court should order a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to ascertain what the misstatements are.

**II.   All Evidence Seized from Mr. Colette's Residence must Be Suppressed Because There Was No Probable Cause to Support the Search Warrant**

When Eugene Johnson, an unknown informant without any record of reliability, spoke to law enforcement on November 28, 2005, accusing Mr. Colette of drug dealing, he set in motion a series of unconstitutional police actions. Based solely on Johnson's statement's, AST Sgt. Wall requested a search warrant for Mr. Colette's home.

The Fourth Amendment protects an individual from "unreasonable searches and seizures" and requires that "no warrant shall issue, but upon probable cause." When a search warrant is based solely on an informant's tip, the magistrate must determine whether probable cause exists from the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). Prior to Gates, the courts relying on Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), had applied a two-prong test to determine whether an informant's tip provided probable cause: the tip had to reveal the basis of the informant's knowledge, and it had to provide facts sufficient to establish the veracity of the tip or the reliability of the informant's report. While Gates substituted a "totality of the circumstances" test, it hardly disposed of the standards set out in Aguilar-Spinelli, treating the two parts of the former test as "relevant considerations in the totality of the circumstances analysis." Gates, 462 U.S. at 233. Moreover, in applying this more flexible standard, the Court reaffirmed the "value of corroboration of details of an informant's tip by independent police work." Id. at 214.

In <u>Florida v. J.L.</u>, 120 S. Ct. 1375 (2000), the Supreme Court has had occasion to revisit this issue. In <u>J.L.</u>, the police received an anonymous tip that a young black male wearing a plaid shirt would be standing at a bus stop carrying a gun. Although the informant's details proved to be accurate, the court held that it was insufficient to support a <u>Terry</u> stop. As the Court explained, a tip form an informant whose reliability is unknown must be "suitably corroborated." <u>Id.</u> at 1378. An informant's description of an individual's very particular movements might lend some reliability. "Knowledge about a person's future movement indicates come familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband." <u>Id.</u> at 1379.

Here, Johnson did not predict any of Mr. Colette's movements. In fact, he was dead wrong or made statements that were inconsistent with his prior statements to law enforcement about many of the facts he swore to before the judge. For example:

- Johnson told Barnett that Mr. Colette lived alone, yet he testified that Colette's girlfriend was often there.

- Two children, ages four and ten, lived at Mr. Colette's residence, yet, Johnson made no mention of any children.

- Johnson testified that he observed a few handguns present at the residence; however, the search revealed numerous long guns present that were never mentioned by Johnson.

- Johnson testified that there were no out buildings on the property, while Wall informed the court that there were several.

- Johnson never described the interior of the residence.

- Johnson was also unsure about his testimony, stating that he "believed" that the cocaine was in the safe.

4

- Johnson testified that he had seen the "Uzi" every time he had been to the residence. He testified that he had been going to the residence for approximately one year. However, the ATF documents found in the safe indicate that Mr. Colette had only recently, with in the past month, acquired the machine gun.

- Johnson testified before the state magistrate that he had last had contact with Colette one week ago; however, he told Inv. Barnett that the contact was four days ago. He also told the ATF agent that it was ten days ago.

Even before J.L., the Ninth Circuit recognized that an informant's accurate description of innocent, easily discernable details to not make him reliable. In United States v. Mendonsa, 989 F.2d 366 (9th Cir. 1993), the police received a tip from an anonymous informant claiming that he had witnessed the sale of marijuana at a defendant's home. The tipster accurately identified the house, its occupants and the sales prices for the marijuana. Nonetheless, the Court held that the search warrant was not based on probable cause because the "mere confirmation of innocent details is insufficient to support an anonymous tip. The fact that a suspect lives at a particular location or drives a particular car does not provide any indication of criminal activity." Id. at 368-69. See also United States v. Clark, 32 F.3d 831, 835 (9th Cir. 1994), cert. denied, 513 U.S. 1119 (1995).

To uphold a search warrant based on a tip from an informant, it had always been required that more than just the word of the informant be submitted to met the burden of probable cause. In most cases, the police have a history of working with the informant and can gauge his reliability. When "the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions." United States v. Angulo-Lopez 701 F.2d 1394, 1397 (9th Cir. 1986). See also United States v. Ayers, 924 F.2d 1468, 1478 (9th Cir. 1991). In other cases, unlike here, the police make an effort to independently verify the informant's information. For example, in Augulo-

5

Lopez, the police set up extensive surveillance and reviewed electricity and telephone records before acting on the tip of known informants. In United States v. Gil, 58 F.3d 1414 (9th Cir.), cert. denied, 516 U.S. 969 (1995), the police conducted surveillance and observed conduct consistent with drug activity.

Here, Johnson was an unknown and untested informant. The police took no steps to corroborate any of his information. They took no investigatory steps to ensure that Johnson was not lying. There certainly were numerous ways for the police to verify Johnson's story. They could have set up surveillance on Colette's home to check for unusual activity. They could have set up "controlled buys." But they did nothing.

While it is true that Johnson claims to have personally witnessed criminal activity, a claim of personal knowledge might satisfy the so called "basis of knowledge" prong of the Aguilar-Spinelli test. But, it has nothing to do with the reliability of the informant or with the accuracy of his information. If, as in this case, there is no other basis for assessing whether the informant is telling the truth, his claim of personal knowledge, like anything else the informant says, is suspect. In fact, here the police were not able to corroborate Johnson's claim of personal knowledge. Consequently, there is no indicia of reliability in Johnson's statement of personal knowledge.

Here the bare-bones allegations of Johnson, without more, fail to meet the totality of the circumstances test as required by Gates. As a result, the warrant is unsupported by probable cause and the evidence seized must be suppressed.

### III. Testimony Provided in Support of the Search Warrant Contained Deliberate and Recklessly False Statements and Omissions Requiring a Franks Hearing

In Franks v. Delaware, 438 U.S. 154 (1978), the United States Supreme Court held that a defendant may challenge the truthfulness of the factual statements made in a search warrant affidavit:

> Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain deliberately or recklessly false statements, were to stand beyond impeachment . . . .

Franks, 438 U.S. at 165.

Under Franks, a defendant is required to make a preliminary showing that the affiant intentionally or recklessly misstated or omitted facts that were required to prevent technically true statements in the affidavit from being misleading. Secondly, the Franks test requires that the defendant show the reviewing court that the challenged statements are necessary to a finding of probable cause.

Once the defendant makes this preliminary showing, an evidentiary hearing is required. Id. at 171-72. If, after an evidentiary hearing, the court concludes that the magistrate was misled in issuing the warrant, then the proper remedy is suppression. United States v. Leon, 468 U.S. 897 (1984).

While Franks only dealt with false material in the affidavit, the Ninth Circuit has held that the Forth Amendment permits defendants to challenge a warrant valid on its face, when it "contains" deliberate or reckless omission of fact which tend to mislead. United States v. Ippolito, 774 F.2d 1482 (9th Cir. 1985).

Here, the affidavit contained significant misstatements and failed to contain significant matters that would go to the heart of the issuing magistrates decision.

First of all, Wall neglect to inform the court of Johnson's prior record. Johnson has the following arrests and/or convictions:

| | |
|---|---|
| 4FA-S03-3884 CR | DWI |
| 4FA-02-00658 CR | DWOL |
| 4FA-99-02300 CR | DWLS |
| 4FA-99-02072 CR | Domestic assault |
| 4FA-99-01591 CI | Domestic violence Restraining Order |
| 4FA-99-01536 CR | Assault 4 and criminal Trespass 1° |
| 4FA-99-00809 CI | Domestic violence Restraining Order |
| 4FA-99-00410 CR | Domestic assault |
| 4FA-98-02991 CR | Assault 4° and MICS 6° |
| 4FA-98 01427 CR | Domestic assault |
| 4FA-97-02399 CR | DWLS |
| 4FA-97-02227 CR | Assault 4 and MIW 5 |
| 4FA-97- 01615 CR | Disorderly conduct |
| 4FA-97-F419892 | Minor consuming |

Second, there appears to be some discrepancy between what Johnson believes he will receive as a result of his cooperation as opposed to what Wall testified is the state's position on what he will receive. Johnson stated that he expects to receive no jail time; however, Wall testifies that the state agreed only to charge him with MIC 4° rather than MIC 3°. Wall is silent regarding any agreement as to no jail time.[1] Either Johnson or Wall is misleading the court regarding the agreement.

In addition, Wall fails to reveal to the court that Johnson is a drug user and alcohol abuser. Johnson admitted to law enforcement that he was a marijuana user. A

---

[1] It should be noted that at the current time, a review of the Fourth Judicial District records reveals that no charges have been filed against Johnson.

8

review of the court files suggests that he has an alcohol problem dating back to the time he was a minor.

In <u>United States v. Hall</u>, 113 F.3d 157, 159 (9th Cir. 1997), the court affirmed Judge Holland's suppression order where a police officer failed to reveal convictions of the informant. In <u>United States v. Reeves</u>, 210 F.3d 1041 (9th Cir. 2000), the court excused the police from revealing a known informant's past criminal record because the informant had been used in the past extensively and was reliable; he gave truthful information in three other successful investigation. Here the police did not disclose the criminal record and did not disclose information related to substance abuse going to reliability. More significantly, the police did not make any allegations that the informant had been used in the past or was reliable.

These facts in connection to the prior inconsistences discussed in the prior section of this memorandum, suggest that Johnson was less than credible and his testimony is suspect.

Next is the information concerning the unnamed informant from over a year ago.[2] This informant was not identified to the court, nor was any information provided to the court as to why Wall deemed her information credible. Wall simply tells the court that "I believed them at the time. They've –they've provided other information about other individuals that associated with Mr. Colette that I knew to be true from other informants as

---

[2] As this informant was identified as an individual that used to reside with Mr. Colette and the fact that he has only resided with one other individual during this time period, Mr. Colette presumes this person to be his former girlfriend Sharon Powers. Mr. Colette requests that the government reveal the identify of this individual for the purpose of the <u>Franks</u> hearing and assessing the informant's credibility.

9

well as my own investigation." Exhibit A at 15. He provides no further justification or explanation.[3]

In addition, this older informant, Powers, had an ax to grind against Colette. A quick review of the public court records shows a long history of animosity between Powers and Colette. Exhibit B, Domestic Violence Restraining Order. As far back as 2003, Mr. Colette reported to the court that Powers was "saying ANYTHING that she thinks will damage my reputation" and "bad mouthing me to my customers and the police." He reported that she was threatening to "have the police 'watch' me." Exhibit B. The other conduct reported to the court, such as the stalking activity and calling Mr. Colette over 100 times a day, suggests that this individual may have had a mental health problem as well.

Whether or not Wall knew or should have known about Johnson's drug and alcohol use, whether or not he knew or should have know about Power's hostile relationship with Colette, whether he purposely omitted Johnson's criminal contacts, and whether he or Johnson misrepresented the nature of the agreement to secure Johnson's testimony should all be the subject of a hearing pursuant to Frank v. Delaware, 438 U.S. 154 (1978). This court must subtract material misstatements from the probable case determination and factor in the omissions. See United States v. Kyllo, 37 F.3d 526, 531 (9th Cir. 1994), reversed on other grounds, 238 S. Ct. 1004 (2001).

At this stage, the defense need not prove a Franks violation occurred. Kyllo required a remand where the defendant had made allegations that data about his wife,

---

[3] It should also be noted that Wall leads the court to believe that this individual is a male as he never refers to the individual's gender and does not correct the court when the court unknowingly refers to the informant as "he." Exhibit A at 16.

which would have made him less culpable, was omitted from the search warrant affidavit. An alleged omission by a government agent may serve as the basis for a Franks hearing. See United States v. DeLeon, 979 F.2d 761 (9th Cir. 1992). In this case, Mr. Colette has put forth material omissions warranting a Franks hearing.

### IV. Evidence Seized as the Result of the Warrant Served on Mr. Colette's Business must Be Suppressed as the Warrant Was Based on Illegally Obtained Evidence

The search warrant obtained to search Mr. Colette's business was obtained as a direct result of the search of his residence. Exhibit C, Transcript of Search Warrant 4FA-SW-05-336. As the aforementioned warrant was not based on probable caused, the items seized from that warrant are fruits of illegal conduct and cannot be used to support the warrant for Mr. Colette's business. "[E]vidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." United States v. Barajas-Avalos, 359 F.3d 1204, 1212 (9th Cir. 2004), (rev'd on other grounds), quoting United States v. Wanless, 882 F.2d 1459, 1465 (9th Cir. 1989) (citations omitted). When an affidavit contains evidence illegally obtained, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate probable cause to issue a warrant." United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987) (citation omitted). Thus, all evidence obtained as a result of the search warrant executed on Mr. Colette's business must be suppressed.

DATED this 17th day of March, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org

Certification:

I certify that on March 17, 2006, a copy of the
foregoing document was served electronically on:

Bryan Schroder, Esq.

/s/ M. J. Haden