IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,  )
                           )
            Plaintiff,     )
v.                         )
                           )
**JASON SCOTT COLETTE**, and   )
KAREN KRISTINA KOCH,       )
                           )
            Defendants.    )
_____ )   Case No. 4:05-cr-042-RRB

**DEFENDANT COLETTE'S COMBINED REPLY TO
GOVERNMENT'S COMBINED OPPOSITION TO
COLETTE'S MOTIONS TO SUPPRESS AND FOR A
FRANKS HEARING**

Comes Now, Jason Scott Colette, by and through his attorney, Rex Lamont Butler & Associates, and tenders his combined reply to the Government's combined opposition to his motions to suppress evidence, to suppress statements, and for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), as follows:

**I
Regarding Suppression Of Statements**

Colette was approached by officers at his place of business. He informed the officers that he wanted to consult with his attorney. The officers permitted him to telephone his attorney. During the course of the call, Colette informed the officers that he was advised by his attorney that he was free to leave unless he was arrested. The officers then told him that he was being detained, and

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,
Colette's Combined Reply
To Combined Oppositions.**
                                                          Page 1

Colette again repeated the advice he had been given by his attorney. In response, the officers effected an arrest. Colette was subsequently interrogated while in custody.

Colette moved to suppress statements made by him following his request to consult with counsel.

On page 2 of its combined opposition, the Government represents that Colette did not identify the statements he desires this Court to suppress; that the Government does not possess any documented statements made by the Defendant during the time frame addressed by Colette; and that it does not intend to use any such statement in its case in chief.

Colette submits that he has more than adequately identified the statements that should be suppressed as all statements following his request to speak to his attorney.

Colette opposes all efforts by the Government to use his statements during the Government's case in chief, its rebuttal case, or during cross-examination. With respect to the use of illegal evidence during rebuttal or during cross-examination, the Supreme Court, in James v. Illinois, 493 U.S. 307, 314 (1990), clearly indicates that the impeachment exception to the exclusionary rule is narrowly circumscribed. The exception applies only to impeaching statements made by defendants who take the stand and testify in such a manner as to directly contradict the illegally obtained evidence.

**II**
**Regarding Suppression Of Evidence Obtained By Executing Search Warrants**

There was no probable cause supporting the warrant to search Colette's home. Under the totality of the circumstances, as required by Illinois v. Gates, 462 U.S. 213 (1983), there was insufficient evidence to conclude that seizable evidence was then located at the place to be searched.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**
                                        Page 2

The Government's case turns on the testimony of Eugene Johnson, who testified that he has purchased cocaine from Colette for the last 1-2 years; that he has observed large quantities of cocaine at Colette's residence in the past; that the last time he observed a large quantity at the residence was a week ago; and, that he "believes" that Colette keeps the cocaine in a safe located in his bedroom.

Obviously, Johnson can not be deemed the most credible of witnesses. He had been busted that very day, and he was attempting to extricate himself from what assuredly would have been a lengthy prison term. Officer Wall admitted that he had offered Johnson a reduced charge if he could direct the police to approximately a kilo of cocaine. Johnson had every incentive to give the officers what they wanted, even if the information he related was composed solely of conjecture, or hearsay in the drug community.

Indeed, based on the evidence given by Johnson, only one reasonable conclusion was permitted—Johnson was making it up as he went along to extricate himself from his own legal difficulties. First, Johnson, who supposedly had been going to the residence for up to two years was not aware that there were outbuildings. Second, Johnson, who supposedly had observed large quantities of cocaine at the residence, stated that he "believed" that the drugs were kept in a safe in Colette's bedroom. If he had actually observed the drugs, he would have *known* where the drugs were kept. The tentativeness of his testimony bespeaks contrivance.

Furthermore, there is a strong indication that Johnson was under the influence of a substance when he testified. He was confused as to the details of his "deal"; and he repeatedly stated that he had been promised "zero to probation", which makes absolutely no sense[1]. Furthermore, he exhibited bizarre behavior that one normally associates with substance-caused confusion and substance-caused lack of inhibition. At one point, he announced to the Court that he had to "go" and that he had been "holding it" for 10 minutes. He then asked for a cup or a pitcher. The Magistrate attempted to make

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

---

[1] The actual deal was "zero to two" years imprisonment.

**United States v. Colette,
Colette's Combined Reply
To Combined Oppositions.**
                                           Page 3

arrangements for Johnson to be taken to the facilities, and Johnson, who took umbrage at something, repeatedly told the Magistrate that "its not funny, man". (See G.J. Tr., p. 13-14)[2].

The prosecutor, perhaps suspecting that Johnson was too frail a reed upon which to rest, attempted to corroborate Johnson's testimony by presenting the hearsay testimony of yet another informant. Officer Wall testified that, approximately a year ago, the informant told the police that she had lived with Colette; that she had personally observed 10-15 ounces of cocaine and cash in the bedroom safe; and that Colette was a high-level drug dealer.

Officer Wall testified that he believed the hearsay informant at the time and that she had given "other information about other individuals that associated with Mr. Colette that [he] knew to be true from other informants as well as [his] own investigations". (G.J. Tr. 15). Officer Wall did not elaborate on the nature of the "other information", other than stating that it was information about the defendant's associates and his business. (G.J. Tr. 15). Based on the evidence, the issuing magistrate could conclude no more than that the "other information" concerned wholly innocent details. It is illogical to conclude that, because an informant provides innocent information which happens to be true it follows that the informant is credible concerning inculpatory information. The corroboration of innocent, easily ascertainable details, is an inadequate foundation upon which to infer reliability. See United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1983).

Essentially, the prosecutor presented two streams of evidence, both of which was inherently suspect. Moreover, no independent police corroboration of the two streams of evidence was presented.

Citing U.S. v. Ayers, 924 F.2d 1468, 1478 (9th Cir. 1991), the Government asserts that, with respect to the two prongs of veracity and basis of knowledge, a strong showing with respect to one prong can make up for lesser evidence concerning the other prong. However, neither Ayers nor

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

---

[2]

The transcript was filed as an exhibit to Colette's motion to suppress evidence.

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

Page 4

Gates stands for the proposition that a strong basis of knowledge can always make up for a deficient showing of credibility. As noted by the Court in Gates, at 231, quoting from Jaben v. United States, 381 U.S. 214, 224-25 (1965): "Obviously, any reliance on factual allegations necessarily entails some degree of reliability upon the credibility of the source..." In the instant case, insufficient information was given to the Magistrate to lend any credibility to the two sources.

Citing U.S. v. Elliot, 893 F.2d 220, 223 (9th Cir. 1990), the Government argues that the fact that Johnson appeared before the Magistrate and testified under oath provides a high level of reliability. Assuming *arguendo* that personal appearance and oath taking, in the abstract, supports reliability, it nonetheless remains true that the validity of that proposition is dependent on the degree of seriousness with which the witness takes the proceeding and the degree of fear that the witness has of being prosecuted for perjury. In the instant case, the witness confronted, on one hand, a lengthy prison sentence if he failed to testify, and on the other hand he risked a shorter sentence if he was charged with and convicted of perjury. Under the circumstances, Johnson had every reason to disregard a fear of a perjury conviction and go ahead and roll the dice. At that point, he had very little to lose if he guessed wrong. Moreover, as discussed above, Johnson was not treating the proceeding as a solemn occasion. He repeatedly addressed the Magistrate as "man" and asked for a cup or other receptacle in which to deposit his bodily wastes. His actions were not those of a man who feared a charge of perjury or who was prepared to treat the proceedings in a solemn and respectable manner. In this case, any presumption of reliability or credibility was rebutted by Johnson himself.

The Government cites U.S. v. Estrada, 733 F.2d. 683, 686 (9th Cir. 1984), for the proposition that a detailed eyewitness account of a crime is self-corroborating. Unfortunately, though, Johnson's statements, and the hearsay informant's statements, contained very few details, and some of the details were vague (for example, Johnson stated that he "believed" that the cocaine was in a bedroom

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

Page 5

safe). Furthermore, the Court in Estrada noted that the informant's statement was tested by corroborating details that he provided to the police. No such testing was done in the instant case.

The Government argues that Johnson's testimony was against his penal interest and therefore should be considered reliable. In the abstract, this proposition may be true in some cases. However, in the instant case, Johnson's statements, while seemingly against his penal interest, actually were very much in support of his penal interest. He was trying to escape his legal difficulties, and he was very anxious to please the police. That being the case, making statements implicating himself in illegal activities carried no risk and potentially carried great benefit to Johnson. Under the circumstances, no reliability can be imputed to Johnson's statements on the theory that they were against his penal interest.

It is true that a plurality of the Supreme Court, in United States v. Harris, 403 U.S. 573, 583-84 (1971), indicated that an admission against penal interest, even when the informant is promised a "break", may have sufficient reliability to support a warrant. However, there is no indication in that opinion that such an admission *always* lends credibility to the informant. Colette submits that admissions against penal interest must be weighed in the context of all other factors in the case. Credibility, reliability, and basis of knowledge must be ascertained in light of the totality of the circumstances. U.S. v. Roberts, 747 F.2d 537, 543 (9th Cir. 1984). A person who is not treating a proceeding seriously, such as Johnson, is unlikely to weigh the potential danger to himself of making criminal admissions. That being the case, any badge of credibility dissolves.

See also United States v. Hall, 113 F.3d 157 (9th Cir. 1997). In that case, the police caught the informant red handed with cocaine. Shortly thereafter, he testified in a search warrant proceedings as to his source of the drugs. Later the warrant was suppressed. On appeal, the Government argued that the fact that the informant testified to his own crime enhanced his credibility. The Ninth Circuit cogently noted as follows:

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

Page 6

> In this case, however, the police had already caught Dang red-handed, so his admission of what he knew the police already knew did not make what he said more credible. His claim that "Ron" was his supplier was more in the nature of trying to buy his way out of trouble by giving the police someone "up the chain," than a self-inculpatory statement which also implicated "Ron." Once a person believes that the police have sufficient evidence to convict him, his statement that another person is more important to his criminal enterprise than he gains little credibility from its inculpatory aspect.

Hall, at 159.

The same consideration pertains in the instant case.

The Government attempts to distinguish Florida v. J.L., 529 U.S. 266 (2000) on the grounds that J.L, unlike the present case, involved an anonymous tip. According to the Government, J.L. turns on the proposition that the tipster was completely unknown and therefore that there was no basis for determining the source of the informant's knowledge. However, J.L. turned on the fact that there was no basis for the police to determine both the informer's knowledge *or* credibility. Such is the situation in the instant case. There was no information from which it could be determined that either of the informants was credible.

The Government argues that Officer Wall corroborated the basic information given to him by Johnson. The Government is mistaken. All that Officer Wall accomplished was to confirm the address of Colette's house and that Colette lived there. Those are innocent details and do not lend credibility to Johnson's core statement that Colette had cocaine and weapons stored in the house.

The Government argues that Johnson's testimony was corroborated by the hearsay informant. As discussed above, there is no indication that the hearsay informant was credible. Essentially, the Government has constructed a weak house on a crumbling foundation.

The Government argues, in the alternative, that even if there was no probable cause to issue the warrant, suppression is not required because Officer Wall proceeded in good faith. The Government is again mistaken.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,
Colette's Combined Reply
To Combined Oppositions.**

Officer Wall demonstrated bad faith by failing to disclose that its principal witness, Johnson, had a total of 14 criminal arrests or convictions over the preceding 8 years. Two such convictions required, as an elements of the offenses, the consumption of alcohol. The remaining convictions are of a type that, more often than not, arise out of alcohol and substance abuse. Alcohol abuse adversely affects people's ability to clearly perceive, understand, and recall events. Accordingly, the Magistrate should have been given this information so as to enable him to accurately weigh Johnson's testimony.

Certainly, Officer Wall was aware of Johnson's extensive criminal record. He had to have researched it, as Johnson had just been arrested and an arrestee's criminal history is invariably discussed at bail hearings. Certainly, Officer Wall knew that the information would have been of interest to the Magistrate, but chose to remain mum. This, in itself, is bad faith.

Furthermore, Colette believes that the hearsay informant was his former roommate, Powers, who had a vicious grudge against Colette. As discussed in Colette's opening memorandum, there is a long history of animosity between the two of them. The history of their disputes is a matter of public record, and the existence of that history bears on the issue of credibility. Officer Wall started working with the informant over a year before he approached the Magistrate for a warrant. It is safe to conclude that any competent investigator would have researched, and indeed did in fact research, the informant's background. Officer Wall knew about the long-standing animosity between the two. He chose to hide that history from the magistrate so as to not undermine the credibility of his informant. This also constitutes bad faith.

The deliberate or reckless concealment of a criminal record that bears on the issue of credibility constitutes grounds for suppression. Hall, supra.

Officer Wall deliberately or recklessly failed to apprise the Magistrate of highly relevant information. Suppression is required.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

Page 8

## III
## Franks Hearing Is Mandated

Colette has satisfied the foundational requirements for conducting a Franks hearing. First, he identified specific portions of the testimony that are false. See opening memorandum. Moreover, he identified critical omissions. See opening memorandum, and supra. Franks analysis is applicable to omissions. U.S. v. Stanert, 762 F.2d 775, 780-81 (9th Cir. 1985).

Second, Colette contends that the false statements and omissions were made either deliberately or recklessly.

Third, Colette will prove that misrepresentations were made, and that there were omissions, through an examination of the grand jury testimony; police reports showing that Johnson used drugs; public records demonstrating Johnson has an extensive criminal record; public records demonstrating that Powers has been very hostile towards Colette for a period of years; and, testimony by Colette demonstrating the same. Colette will call Officer Hall to demonstrate that he was aware of Johnson's drug use; that he was aware of Johnson's extensive criminal record; and, that he was aware that Powers bore great animosity towards Colette.

See also the exhibits to Colette's opening memorandum.

Fourth, Colette will demonstrate the alleged falsities and the truth of the omitted information.

Fifth, Colette will demonstrate that had the misstatements not been made, and had the omitted information been given to the Magistrate, there would have been no probable cause for issuing the warrant. All such information bears on the credibility of Powers and Johnson. Absent credibility, there is no probable cause for the warrant.

See U.S. v. DeCesare, 765 F.2d 890, 894-95 (9th Cir. 1985) for a discussion of the requisite requirements.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,
Colette's Combined Reply
To Combined Oppositions.**

Page 9

The Government states that Colette made no allegations about false statements to the Magistrate. This is not correct. Colette, on pages 9-10 of his opening memorandum alleges that either Johnson or Officer Wall misrepresented the terms of their agreement.

The Government argues that Colette failed to support his allegations regarding misrepresentations and omissions. The Government is incorrect in this assessment. The discrepancy regarding the terms of the agreement with Johnson is demonstrated by the transcript of the warrant hearing concerning the search of Colette's house, which was attached as Exhibit A. The allegation about Johnson's history of drug and alcohol abuse was supported by his criminal history, which is discussed in the memorandum. It also was supported by the Johnson's admission to the police that he used marijuana. Johnson's criminal record (which the Government does not deny) will be supported at the hearing. Finally, the hostility Powers had towards Colette was supported by court records that were appended to Colette's memorandum.

The Government argues that Colette did not support his request for a Franks hearing with evidence that Officer Wall acted deliberately or recklessly. Colette freely admits that he has no signed affidavits from Wall confessing to deliberate or reckless deception. Colette has no evidence that Wall made such a confession to anyone, and Colette is not a mind reader. Evidence of a person's intent often is inferential in nature. One can not peer directly into another's mind. All we can do is examine what happened and make reasonable inferences therefrom concerning mental processes. In this case, the omissions and misrepresentations were so glaring that the only reasonable inference is that Officer Wall acted recklessly or deliberately.

The Government is wrong in stating that Colette failed to allege intentional or reckless deception. See the major heading on page 7 of Colette's memorandum.

The Government seeks to minimize the decision in U.S. v. Hall, supra., by arguing that Hall is limited to cases involving a failure to inform the court about a witness' prior criminal history of making false statements. The Government argues that, in the instant case, Johnson does not have a

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

criminal history involving crimes of dishonesty.  In response, Colette submits that although Hall involved a crime of dishonesty, the underlying principle that informed the decision is that a failure to inform courts about criminal records may invalidate a warrant when the omission bears on the credibility of the witness.  In the instant case, Johnson's criminal record was highly material to the issue of credibility, and this is especially the case in light of his bizarre behavior at the warrant hearing.  A history of drug and alcohol abuse, when coupled with a lack of control at the warrant hearing, is highly relevant to a witness' ability to understand and recall what was observed, as well as to the witness' willingness to take the proceedings seriously.

The Government argues that the failure to provide information concerning Johnson's drug and alcohol abuse is of no significance because Johnson was presented to the Magistrate as a cocaine dealer and because the Magistrate had an opportunity to directly observe him.  The Government is incorrect.  Knowledge of Johnson's history of substance abuse would have affected the Magistrate's assessment of credibility, particularly in light of Johnson's behavior in Court.

Citing U.S. v. Elliot, 893 F.2d 220, 223 (9th Cir. 1990), the Government attempts to minimize the failure to inform the Magistrate about Powers' animus towards Colette by arguing that animus does not undermine credibility and, in fact, may even enhance credibility.  See also Massachusetts v. Upton, 466 U.S. 727 (1984)(Tipster's animus provided motive for making tip), which is cited by Elliot.  Elliot did not involve a failure to disclose animus.  The witness came into court and testified, and the witness' hostility was revealed.  Similarly, Upton did not involve a failure to disclose.

Colette respectfully submits that while the existence of a hostile relationship does not *necessarily* undercut credibility in all cases it may undercut credibility in some cases.  That being the case, the fact that an informant is hostile must be disclosed so that the Magistrate can evaluate that fact *vis a vis* credibility.

Finally, the Government argues that the search of the business was good because it was based on evidence obtained by searching the residence.  Colette respectfully disagrees.  The search of the

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

residence was illegal because the warrant was not based on probable cause and because the officer acted in bad faith.

## IV
## Conclusion

For the reasons previously asserted, and for the reasons discussed herein, Colette's statements must be suppressed; evidence obtained as a result of the searches of his residence and his business premises must be suppressed; and, a Franks hearing is required.

Respectfully dated this 10th day of , 2006 in Anchorage, Alaska.

S/ Rex Lamont Butler
745 W. 4th Ave., Ste. 300
Anchorage, Alaska, 99501
(907) 272-1497
(907) 276-3306
lawoffices@gci.net
ABN: 8310105

```
I Hereby Certify on the 10, day
of April, 2006, the forgoing
instrument     was     served
electronically    to    Bryan
Schroder,   Assistant    U.S.
Attorney, 101 12th Avenue, Room
310, Fairbanks, Alaska, 99701.
S/ Rex Lamont Butler
```

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Colette's Combined Reply**
**To Combined Oppositions.**

Page 12