IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              PLAINTIFF,<br>vs.<br><br>JASON SCOTT COLETTE,<br><br>                              DEFENDANT. | CASE NO. 4:05-CR-00042-01-RRB<br>REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (DOCKET NO. 47), REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOCKET NO. 50), MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR FRANKS HEARING (DOCKET NO. 52) |

Defendant, Jason Scott Colette, moves to suppress statements made to the police after he was arrested on November 28th, 2005. Defendant asserts that after being advised of his Miranda rights, he requested a lawyer during questioning, questioning continued without his lawyer, and he allegedly made statements concerning cash found at his residence. Docket No. 47. The Government opposes defendant's motion in a combined opposition and asserts: "[We] do not intend to introduce any statements like the ones described by the defendant." Docket No. 70.

Defendant also moves to suppress all evidence taken from his residence and business on November 28th, 2005. Defendant claims search warrants issued by a state magistrate to search each location were not supported by sufficient factual information to establish a finding of probable cause. Docket No. 50. The Government opposes the motion in a combined opposition and argues the state magistrate had a substantial basis for finding probable cause to issue both search warrants. Docket No. 70. The parties agreed during oral arguments on April 20, 2006, that if probable cause existed to issue a warrant to search defendant's residence

1

(4FA-SW05-335), then probable cause existed to issue the warrant to search defendant's business (4FA-SW05-336) because the latter warrant was based upon evidence taken from defendant's residence, and probable cause to issue the warrant to search defendant's business was established by the evidence taken from defendant's residence. Docket No. 83, Tr. 9.

Finally, defendant moves this Court for an evidentiary hearing pursuant to Federal Rules of Criminal Procedure 12 (b) and Franks v. Delaware. The government opposes defendant's motion in a combined opposition and states defendant's allegations of police misconduct do not meet the requirements needed to set on a Franks hearing. Docket No. 70.

On Thursday April 20th, 2006, oral arguments were heard. Docket No. 83. The Court informed the parties it had not scheduled a Franks hearing for April 20th, 2006, and the Court would decide at a later date whether to grant a Franks hearing. This Court, having reviewed defendant's motions, the Government's combined opposition thereto, and the exhibits appended to the parties respected briefs, now submits its Report and Recommendations regarding defendant's motions at Docket No. 47 and 50, and Memorandum and Order regarding defendant's motion at Docket No. 52.

## FACTS

On November 28th, 2005 an individual identified by the Government as confidential informant JLC-05-09, but identified by name in defendant's pleadings, was arrested for crimes involving illegal drugs. The confidential informant was subsequently taken before a state magistrate to testify in support of a search warrant application to search the defendant's residence located at 1038 Lakeview Terrace in Fairbanks, Alaska. The transcript of the proceeding before the state magistrate was appended to the defendant's motion to suppress evidence. (Docket 51-2).

The confidential informant was questioned by Assistant District Attorney Elizabeth Crail. The confidential informant testified he knew a person named Jason Colette who lived at Lakeview Terrace. Docket 51-2, Tr. 4. The confidential informant testified he had taken Alaska State Trooper Sergeant Wall to defendant's residence earlier that day. Docket 51-2, Tr. 4. The confidential informant testified he had been purchasing cocaine from Mr. Colette for, "(T)he last year or two I've been doing it." When asked how much cocaine he had seen at defendant's residence, the confidential informant recounted he had seen "40--30, 40 zips at a time-". (Docket 51-2, Tr. 6). The confidential informant testified a zip is approximately an ounce of cocaine, and that sometimes he had seen even more cocaine at Mr. Colette's residence. When asked where the cocaine was kept, the confidential informant testified: "I believe in his bedroom in a safe". (Docket 51-2, Tr. 6). The confidential informant testified the last time he had seen Mr. Colette selling cocaine from his residence was, "(M)aybe a week ago", at which time the confidential informant purchased cocaine from Mr. Colette. Docket 51-2, Tr. 6.

The confidential informant testified he believed Mr. Colette kept weapons in the same safe where the cocaine was stored. When asked what kind of weapons he had seen, the confidential informant stated: "Maybe a fully automatic Uzi, couple hand guns." (Docket 51-2, Tr. 7). The confidential informant testified that every time he had seen the weapons, they were in the same safe where the cocaine was stored. Docket 51-2, Tr. 7.

When asked whether he had brokered a deal with the police in exchange for assisting them in their case against Mr. Colette, the confidential informant testified:

> Q: Do they - do you have a deal with them as
> far as assisting and being an informant here?

3

> A: Yes
>
> Q: Okay. And is that deal that you would potentially look at a lesser charge a charge of MICS-4 -
>
> A: Zero to probation time, that was the initial plan.
>
> Q: And that's right, that's dropping you back from a potential MICS-3 to an MICS-4 is that correct?
>
> A: I don't know all that lingo.
>
> Q: Okay. But simple --
>
> A: The --
>
> Q: Simple possession instead of delivery?
>
> A: Yeah.
>
> Docket 51-2, Tr. 8.

The confidential informant was then questioned about his prior criminal record. The confidential informant responded:

> Q: Okay. And that - and you don't have any prior felonies, is that correct?
>
> A: No, ma'am.
>
> Docket 51-2, Tr. 8.

The confidential informant provided additional testimony regarding the agreement he had with the police in exchange for his cooperation:

> Q: Okay. And that's why you say that he deal - the MICS-4 would e a zero-to-two range, is that

> right, and that you are expecting them to
> testify and say that you - how helpful you've
> been and try to get you on the low end?
>
> A: Zero to probation time.
>
> Q: Right, which is what you want, yeah, which is
> what you want.
>
> A: If you want my full help, I'm getting no
> time, basically. That's what I'm hoping for.
>
> Q: Okay.
>
> A: Be straight across, I've ben helpful so far,
> and I plan to be helpful as long as I'm going
> home, going to lunch pretty soon.
>
> Docket 51-2, Tr. 8-9.

Alaska State Trooper Sergeant Ronald Wall was called to testify next. Sergeant Wall confirmed the police "raided" the confidential informant earlier that morning and an agreement had been struck with the confidential informant for his cooperation. Sgt. Wall was asked the following questions:

> Q: Now, Sergeant Wall, let me ask you first
> with respect to JLC-05-09, you did a raid on
> him this morning?
>
> A: Yes ma'am.
>
> Q: Okay. And you made some kind of an offer
> here this morning if he would assist you with
> this other matter that we're doing the search
> warrant on?
>
> A: That is correct.
>
> Q: Okay. And what was your offer?

>A: The offer was that in lieu of 09 directing us to a - approximately a kilo of cocaine, his charge would be reduced from a MICS-3 to a MICS-4.
>
>Q: Okay. And you agreed that you would testify as far as how helpful he'd been?
>
>A: That is correct.
>
>Docket 51-2, Tr. 10.

Sgt. Wall testified the police confirmed Mr. Colette's personal residence was located at 1038 Lakeview Terrace through an ASPIN search. They also relied upon the visual identification of the residence by the confidential informant earlier that day. Docket No. 51-2, Tr. 10.

Sgt. Wall testified: "Approximately one year ago, another informant came forward, advised that several weeks prior they had observed 10 to 15 ounces of cocaine and a large quantity of cash in the safe in [Mr. Colette's] bedroom." Docket No. 51-2, Tr. 11. Sgt. Wall further testified that the information provided by the earlier informant was consistent and similar to the information provided by the confidential informant who had just testified before the state magistrate. Docket No. 51-2, Tr. 11.

Sgt. Wall testified he was asking for a "no knock" search warrant because police records indicated there was an officer safety advisement in the computer warning them that Mr. Colette might be hostile towards law enforcement personnel. Sgt. Wall testified he believed Mr. Colette had a fully automatic weapon in his residence and was concerned Mr. Colette would attempt to use that weapon. Docket No. 51-2, Tr. 11-12.

Before Sgt. Wall's testimony ended, the confidential informant asked to go to the bathroom and stated: "You got a

cup, pitcher? I really got to go. I'm not trying to be funny. It's not funny, man. I just got to use the bathroom." Docket No. 51-2, Tr. 14. The confidential informant was escorted to the restroom.

On further direct examination by Ms. Crail, Sgt. Wall testified:

> Q: The main thing is, for purposes for *Aquilar-Spinelli* purposes, we need to have you clarify why you believe that person to have been credible as well.
>
> A: The individual resided with that - with the suspect and indicated that the - Mr. Colette was a very high level drug dealer.
>
> Q: Okay, and did you have any other reasons to believe that person was credible?
>
> A: I believed them at the time. They've - they've provided other information about other individuals that associated with Mr. Colette that I knew to be true from other informants as well as my own investigations.
>
> Q: Okay. So you had other - this person gave other information that was corroborated, specifically corroborated?
>
> A: Yes.
>
> Docket No. 51-2, Tr. 15.

The state magistrate then announced:

> THE COURT: All right. And that's exactly what I was looking at, Ms. Crail.
>
> MS. CRAIL: That was my (indiscernible)--

7

THE COURT: --was the *Aguilar-Spinelli* test. The first thing the court has to determine is whether or not the confidential informant had firsthand knowledge, and I'm finding that that firsthand knowledge by the confidential informant was shown here today. I think he does have personal knowledge of Mr. Colette's involvement in the sale of cocaine.

The next question is the veracity prong of the *Aquilar-Spinelli* test. And basically I'm called upon to determine whether or not the statements by the confidential informant were sufficiently corroborated by the independent police investigation. The mere fact that this is his address is a public fact, and that's not good enough. We have to look for something else, and in this case, Sergeant Wall testified that there was an informant that came forward about a year ago that basically indicated that he resided with Mr. Colette. Is that correct, Officer Wall?

A: That's correct sir.

Q: And that this person also witnessed, I guess, cocaine –

A: Cocaine –

Q: – in a safe –

A: – as well as money, sir.

THE COURT: Right, so I am going to find also the veracity prong of the *Aquilar-Spinelli*

        test has been met for the purposes of this search warrant, and as such, I am going to issue the search warrant at this time for 1038 Lakeview Terrace.

        Docket No. 51-2, Tr. 15-17.

The state magistrate also stated: "In view of the testimony concerning weapons, one being an Uzi, I'm going to grant the no-knock." Docket No. 51-2, Tr. 19.

    As part of his Motion to Suppress Evidence, defendant provided the Court several documents indicating that on a number of previous occasions domestic conflicts had allegedly taken place between the defendant and a Ms. Sharon C. Powers, whom the defendant identified as the confidential informant who had contacted the police approximately one year before the state magistrate issued the search warrants. Docket No. 51-3. The documents provided by defendant are Petitions for Protective Orders naming Mr. Colette as petitioner and Sharon C. Powers as respondent. On each Petition for a Protective Order, defendant identified Ms. Powers as, "a person with whom I presently have or previously had a dating or sexual relationship." Defendant's documents also show that after each of the 20-day Ex Parte Restraining Orders were issued, the Petitions for Protective Orders were dismissed because defendant did not request a long-term protective order.

### DISCUSSION RE: SUPPRESSION OF STATEMENTS

    The defendant has moved to suppress all statements he made to the police after he was arrested at his business on November 28, 2005. Defendant asserts that because he asked for an attorney to be present during custodial questioning, and

9

questioning nevertheless took place without his attorney, all statements made are inadmissible under <u>Miranda</u>. In their combined opposition, and during oral arguments on April 20th, 2006, the Government stated any statements made by the defendant after he was placed under arrest on November 28th, 2005, would not be used by the Government in their case-in-chief. The Government also promised that should it elect to introduce defendant's statements during trial, application would be made before defendant's statements were introduced. Docket No. 83, Tr. 8. The Government's promise is a workable solution as to whether defendant's statements made at his business on November 28th, 2005, should be suppressed at this time. The Government shall be held to its promise to give defendant prior notice of its intent to use defendant's statement at trial.

<u>RECOMMENDATION RE: SUPPRESSION OF STATEMENTS</u>

Based upon the forgoing, it appears defendant's Motion to Suppress Statements is premature. Pending a decision by the Government as to whether they are going to introduce defendant's November 28th, 2006, statements at trial, IT IS HEREBY RECOMMENDED that defendant's Motion to Suppress Statements at Docket No. 47 be DENIED WITHOUT PREJUDICE.

<u>DISCUSSION RE: SUPPRESSION OF EVIDENCE
TAKEN FROM DEFENDANT'S RESIDENCE AND BUSINESS</u>

In determining whether there was probable cause to issue a valid search warrant, the Court must consider all of the circumstances and information known to the issuing magistrate on November 28, 2005. <u>See</u> <u>Massachusetts v. Upton,</u> 466 U.S. 727, 104 S.Ct. 2085 (1984) ("requirement of probable cause for the issuance of a warrant is to be applied. . .in the light of the 'totality of the circumstances' made known to the

magistrate"). The decision of the issuing judge or magistrate is treated with great deference and is not reviewed de novo. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2331, 76 L.Ed. 2d 527 (1983), United States v. Alexander, 761 F. 2d 1294, 1300 (9th Cir. 1985). In Gates, the Court replaced the earlier "two-pronged test" of Aguilar v. Texas and Spinelli v. United States for establishing probable cause for issuance of a warrant. The Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

This is now known as the "totality-of-circumstances" analysis.

The courts apply a "clearly erroneous" standard in deciding whether to reverse a probable cause determination in connection with the issuance of a search warrant. United States v. Stanert, 762 F. 2d 775, 779, amended and reh'g denied, 769 F.2d 1410 (9th Cir. 1985). If the magistrate had a substantial basis upon which to conclude that probable cause existed, the warrant must be upheld. New York v. P.J. Video, Inc., U.S. v. Weber, 106 S.Ct. 1610, 1615-16, 89 L.Ed.2d 871 (1986), United States v. Dicesare, 765 F.2d 890, 896, amended, 777 F.2d 543 (9th Cir. 1985).

Here, the state magistrate had the advantage of personally observing the informant while the confidential informant testified in support of the police's application for a "no

11

notice" warrant to search the defendant's residence. A review of that testimony shows the confidential informant provided timely information relating to drug trafficking out of the defendant's residence. The confidential informant testified believably, and in detail, about how and when he observed large quantities of drugs, money, and weapons in a safe in the defendant's bedroom. In fact, the police found such evidence when they searched defendant's residence on the day the search warrant was issued.

The confidential informant admitted he was a cocaine abuser before the state magistrate. The confidential informant testified, against his own penal interest, that he was involved in drug trafficking. Drug abusers are often involved in drug trafficking and this fact was surely known by the state magistrate.

The state magistrate also heard Sgt. Wall's testimony regarding the reliability of the informant he had spoken to a year before. The state magistrate was satisfied Sgt. Wall had corroborated the testimony of the confidential informant who testified in person. The state magistrate determined that the information from the earlier informant matched the testimony of the later informant brought before him. Sgt. Wall testified that the informant's information concerning drugs and money in a safe located in the defendant's residence the year before was believable. Sgt. Wall said the informant, "provided other information about other individuals that associated with Mr. Colette that I knew to be true from other informants as well as my own investigation".

The state magistrate had sufficient opportunity to judge the credibility of the confidential informant who testified before him, as well as the hearsay testimony of Sgt. Wall, which corroborated the confidential informant's information.

The state magistrate found a "fair probability" existed that evidence of a drug trafficking operation would be discovered in the defendant's residence. Based upon the totality-of-circumstances analysis set forth in <u>Gates</u>, the state magistrate had sufficient probable cause to issue a "no notice" search warrant for the defendant's residence.

<u>RECOMMENDATION RE: SUPPRESSION OF EVIDENCE
TAKEN FROM DEFENDANT'S RESIDENCE AND BUSINESS</u>

As stated above, the state magistrate had sufficient probable cause to issue warrant 4FA-SW05-335 to search the defendant's residence. Evidence gathered from defendant's residence was used to establish probable cause to issue warrant 4FA-SW05-336 to search the defendant's business. The parties, and this Court, agree that if the warrant to search defendant's residence is valid, then the warrant to search defendant's business is also valid. Accordingly, IT IS HEREBY RECOMMENDED that defendant's Motion to Suppress Evidence at Docket No. 50 be DENIED.

<u>DISCUSSION RE: FRANKS HEARING</u>

At the heart of defendant's Motion For a <u>Franks</u> Hearing is his contention that although Sgt. Wall did not make false statements to the state magistrate in support of his efforts to obtain a "no notice" warrant to search the defendant's residence, Sgt. Wall failed to inform the state magistrate:

> (1) of the Informant's arrest and misdemeanor conviction record, (2) that the Informant has a history of drug and alcohol abuse, (3) that there was a "discrepancy" about cooperation arrangement between the

13

>Informant and the police, and (4) that the past informant who provided information had a "hostile" relationship with the Defendant.

Docket No. 70, at 12-13.

When a police officer knowingly makes a false statement, or recklessly disregards the truth in support of a warrant, and the false material is necessary to establish probable cause, the subject's Fourth and Fourteenth Amendment Rights are violated. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). When a defendant is able to prove by substantial evidence that a knowing and intentional false statement, or, one made with reckless disregard for the truth, was employed in support of the issuance of a warrant, and the allegedly false statement is necessary to the finding of probable cause, the U.S. Supreme Court in Franks requires an evidentiary hearing at the defendant's request to examine defendant's allegation:

>To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their

14

> absence satisfactorily explained.
> Allegations of negligence or innocent
> mistake are insufficient...
>
> ...Finally, if these requirements are met,
> and if, when material that is the subject
> of the alleged falsity or reckless
> disregard is set to one side, there remains
> sufficient content in the warrant affidavit
> to support a finding of probable cause, no
> hearing is required.

Id. at 2684. See also United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 312 (1988).

The Franks rationale has been applied to material omissions made intentionally or with reckless disregard for the truth. See U.S. v. Kyllo, 37 F.3d 526, 529 (9th Cir. 1994; Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir. 1991), cert. denied.

Bruning v. Pixler sets out what must be proven to establish a "reckless disregard for the truth" in the context of an alleged Fourth Amendment under Franks v. Delaware:

> A reckless disregard for the truth in the
> context of an alleged Fourth Amendment
> violation under Franks v. Delaware, is the
> same as that in the context of an alleged
> First Amendment violation. A plaintiff
> must prove that "the affiant" in fact
> entertained serious doubts as to the truth
> of his allegations.

Bruning v. Pixler, 949 F.2d 352, at 357 (citations omitted).

In United States V. Kyllo, 37 F.3d 526 (9th Cir. 1994),

15

the Ninth Circuit Court of Appeals discussed the requirements for a <u>Franks</u> hearing where there is an allegation of an omission in an affidavit in support of a warrant:

> [2] To be entitled to a <u>Franks</u> hearing on this issue, Kyllo must first make a substantial preliminary showing that the affidavit contained a misleading omission and that the omission resulted from a deliberate or reckless disregard of the truth. Second, he must demonstrate that had there been no omission, the affidavit would have been insufficient to establish probable cause.

<u>Kyllo</u>, at 529, <u>citing</u> <u>United States v. Chesher</u>, 678 F.2d 1353, 1360 (9th Cir. 1982). <u>See also</u> <u>United States v. Valencia</u>, 24 F.3d 1106, 1109 (9th Cir. 1994).

"The effect of the misrepresentations and omissions on the existence of probable cause is considered cumulatively." <u>United States v. Stanert</u>, 762 F.2d 775, 782 (9th Cir. 1985) <u>citing</u> <u>United States v. Esparza</u>, 546 F.2d 841, 844 (9th Cir. 1976). The test is whether an affidavit corrected and supplemented with the missing information still would provide a magistrate with probable cause. <u>Stanert</u>, at 782; <u>United States v. Johns</u>, 948 F.2d 599, 606, 607 (9th Cir. 1991) <u>cert. denied</u> 112 S.Ct. 3046 (1992).

Here, the confidential informant appeared before the state magistrate on November 28th, 2005, and truthfully testified that he had no felony convictions. While it is clear the police did not inform the state magistrate of the informant's misdemeanor arrest and conviction record, none of the confidential informant's misdemeanor convictions were for crimes of moral turpitude or dishonesty.

Defendant's reliance on U.S.A. v. Hall, 113 F.3d 157 (9th Cir.) in this case is misplaced. In Hall, the police purposely failed to inform the issuing magistrate that the informant they produced in support of their search warrant application had a felony conviction for falsely reporting a crime. Crimes of dishonesty clearly impact an informant's credibility and the ability to be truthful. The Hall court was justifiably concerned that the intentional omission of an informant's felony conviction for falsely reporting a crime would have altered the issuing magistrate's finding of probable cause had the issuing magistrate known of the felony conviction for dishonesty. Here, the confidential informant's misdemeanor arrest and conviction record involved driving under the influence, domestic violence, and assault offenses. There was nothing to suggest the confidential informant's misdemeanor arrest and conviction record compromised his ability to tell the truth when asked direct questions regarding what the confidential informant had personally observed in the defendant's residence.

None of the confidential informant's prior misdemeanor convictions involved crimes of dishonesty. Therefore, the confidential informant's misdemeanor record (had it been revealed to the state magistrate) would not have reasonably dissuaded the state magistrate from issuing a warrant to search the defendant's residence. The confidential informant provided a detailed, eye witness account of an on-going drug trafficking operation in the same location the police wanted to search. The state magistrate found the confidential informant to be credible and stated so on the record.

It is clear that the confidential informant had substance abuse problems, and the state magistrate certainly was aware of that fact. While testifying before the state

magistrate, the confidential informant admitted purchasing cocaine from the defendant the week before, and also admitted doing so for at least a year.

The state magistrate was able to personally observe the confidential informant's candor, attitude, and awareness during questioning by the Assistant District Attorney. The state magistrate also had the opportunity to judge the confidential informant's motive for cooperating with the police, as well as the agreement struck between the confidential informant and the police. This agreement was clearly placed on the record. The state magistrate heard the confidential informant testify about what he thought the agreement was, and what he hoped for. Sgt. Wall testified that in exchange for truthful testimony, the confidential informant would receive a reduction of charges against him to a single count of possession (MICS-4). Within the transcript of the search warrant hearing on November 28th, 2005, there is no sign of a misunderstanding regarding the terms of the agreement the confidential informant made with the police.

The Petitions For Protective Orders provided by the defendant identify his former girlfriend as a person with whom the defendant said he had previously had a close relationship. Defendant claims his former girlfriend was the informant who contacted the police one year prior to the issuing of the warrants to search the defendant's residence and business. Defendant thus establishes the fact that the "corroborating" confidential informant the police spoke to the year before had intimate knowledge regarding the defendant. Sgt. Wall's testimony regarding the earlier confidential informant's personal knowledge, reliability, and basis for corroborating defendant's drug trafficking operation from his residence is on solid grounds and believable. Defendant claims his former girlfriend is an

18

unreliable informant because she had "an axe to grind" against him. The Petitions For Protective Orders provided by defendant never resulted in long-term restraining orders. All of the Petitions For Protective Orders were dismissed because the defendant failed to go forward and request a long term order. The defendant's unanswered ex parte Petitions For Protective Orders are only one side of an alleged domestic disturbance and do not establish the corroborating informant had "an axe to grind" against the defendant. The state magistrate, had he known ex parte Petitions For Protective Orders had been filed by the defendant, would not have found that the confidential informant Sgt. Wall spoke to one year earlier was unreliable.

<u>ORDER RE: FRANKS HEARING</u>

Based upon the foregoing this Court finds that the defendant has failed to make the necessary initial showing, (1) that the omissions before the state magistrate were a result of a deliberate or reckless disregard for the truth; and, (2) that their addition would prevent a finding of probable cause mandating a <u>Franks</u> hearing in this case. <u>U.S.A. v Kyllo</u>, 37 F.3d 526, 529 (9th Cir. 1994). Accordingly, IT IS HEREBY ORDERED that defendant's Motion for a <u>Franks</u> Hearing at Docket No. 52 is DENIED.

Dated at Fairbanks, Alaska this <u>26TH day of May</u>, 2006.

<u>S/Terrance W. Hall</u>
TERRANCE W. HALL
U.S. MAGISTRATE JUDGE

Pursuant to Local Magistrate Rule 12(C), a party seeking to object to this proposed finding or recommendation shall file written objections with the Clerk of U.S. District Court no later than **June 9, 2006**. The failure to object to a magistrate judge's findings of fact may be treated as a

procedural default and waive the right to contest those findings on appeal. **McCall v. Andres**, 627 F.2d 1195, 1187-89 (9th Cir.) cert denied 450 U.S. 996 (1981). **Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objections, and the points and authorities in support.** Response(s) to the objections shall be filed no later than the close of business **June 16,2006**. No reply will otherwise be received. The parties shall otherwise comply with provisions of Local Magistrate Rule 12(C).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kencheloe, 796 F.2d 308 (9th Cir. 1986).