IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                                  )<br>              Plaintiff, )<br>v.                                 )<br>                                  )<br>**JASON SCOTT COLETTE**, and )<br>KAREN KRISTINA KOCH, )<br>                                  )<br>            Defendants. )<br>_____ ) | Case No. 4:05-cr-42-RRB |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR A NEW TRIAL**
**And, MOTION TO SUPPRESS**
**And, MOTION FOR A FRANKS HEARING**
**And MOTION TO DISMISS**

**I**
**Introduction**

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

Prior to trial, Colette moved to suppress all evidence garnered as a result of the execution of a search warrant on his residence. Colette argued that there was no probable cause supporting the warrant to search his home and that, under the totality of the circumstances, as required by Illinois v. Gates, 462 U.S. 213 (1983), there was insufficient evidence to conclude that seizable evidence was then located at the place to be searched. In his motion to suppress, Colette asserted that probable cause for issuing the search warrant turned on the testimony of Eugene Johnson, who testified that he had purchased cocaine from Colette for the last 1-2 years; that he had observed large quantities of cocaine at Colette's residence in the past; that the last time he observed a large quantity at the residence was a week prior to his testimony; and, that he believed that Colette stored the cocaine in a safe located in his bedroom.

Colette argued in his motion to suppress that the police improperly failed to inform the Magistrate that Johnson had a significant criminal history and that he was a drug and alcohol abuser.

The Government responded by asserting to this court as follows: "*None of the alleged violations of the informant involve crimes of dishonesty*". (Emphasis Added); (Government's Combined Opposition, p. 14).

This Court denied Colette's motion to suppress, as well as Colette's motion for a hearing under Franks v. Delaware, 438 U.S. 154 (1978). Later, at trial, Colette was convicted based on evidence obtained from the search of his residence.

Mere days before trial, after this Court denied Colette's motions to suppress and for a Franks hearing, the Government tendered discovery which contained information clearly bearing on the suppression issue. This information, which heretofore was unknown to Colette, demonstrates that the officers made material omissions in securing the search warrant. Had the information in question been given to the Magistrate there would have been no probable cause for issuing the warrant.

**II
New Facts**

1. At the time of the search warrant hearing in this case, Johnson was under investigation for Armed Robbery. (Ex. A);

2. Johnson previously was adjudicated a delinquent based on a charge of Robbery and sent to juvenile hall. (Ex. B);

3. On November 25, 2005, a search warrant was served on Johnson's residence. No drugs were located. Johnson admitted that he has been tipped off about the warrant and that he had moved his drugs. He refused to tell the police who told him that a warrant was going to be served. Johnson also told the officers that he had been buying cocaine several ounces at a time. (Ex. C). Johnson told

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,
Motion For A New Trial.**
                                        Page 2

the officers that he had multiple sources of cocaine, but refused to disclose his sources. (Testimony at trial, and reasonable inferences therefrom);

4. Prior to the issuance of the November 25, 2005 warrant concerning Johnson's house, Johnson sold cocaine to an undercover agent. Immediately prior to the sale, Johnson traveled to his parent's house and went into the backyard. He then immediately traveled back to his own house and consummated the sale. ( Ex. D);

5. From the discovery, it appears Johnson owned automatic weapons and had stated, in the past, that he was willing to shoot officers. (Ex. D).

(6) From the discovery, it appears Johnson was charged with felony vehicle theft, but not prosecuted. (Ex. E);

(7) From the discovery, it appears Johnson was charged with Larceny, but not prosecuted. (Ex. F). In addition, Johnson was investigated concerning Larceny From a Building, Residential Burglary, No Force Burglary, and Vehicle Theft. (Ex. G).

After consideration of his criminal history as a whole; his testimony at the search warrant proceeding and at trial; the testimony of Trooper Wall at the trial and the exhibits, there was insufficient probable cause to issue the search warrant.

All the aforementioned information was known by the police during the warrant hearing in this case. None of the aforementioned information was given to the Magistrate. Furthermore, none of the aforementioned information was given to the defense or to this Court by the Government until long after this Court denied Colette's motions to suppress and for a Franks hearing.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

### III
### A New Trial Is Required

**United States v. Colette,**
**Motion For A New Trial.**

Criminal Rule 33 provides that the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Colette submits that the interest of justice so requires.

Had the aforementioned information been given to the Magistrate no warrant would have been issued. Had the information been given to this Court, the warrant would have been suppressed and a Franks hearing would have been granted. Since none of the information was released until after the warrant was issued and until after this Court decided Colette's motions, Colette stands convicted of an offense based on evidence that was obtained in violation of his right of privacy and his right to be free of unlawful searches and seizures.

The new information was material to probable cause. Under the totality of the circumstances, as required by Illinois v. Gates, 462 U.S. 213 (1983), there was insufficient evidence to conclude that seizable evidence was then located at the place to be searched. This conclusion is mandated by the fact that there was strong evidence that at the very time the warrant was obtained *the police were investigating Johnson for armed robbery, a crime involving dishonesty.* There was evidence that on at least one previous occasion Johnson was charged with vehicle theft, which again is a crime involving dishonesty. Moreover, Johnson was sent to juvenile hall for robbery, a crime involving dishonesty. In addition, he was investigated concerning many additional crimes involving dishonesty.

In addition, there was information that Johnson *at the very moment that he testified* was continuing his criminal enterprise. He acknowledged to the police that he had possessed cocaine, but he refused to tell the police where he had secreted it. He acknowledged that he bought cocaine in sizable amounts from a variety of sources, but he refused to divulge the names of his sources. A reasonable inference is that Johnson intended to continue his drug trade without interrupting his supply. An additional inference is that Johnson, since he refused to identify his sources, did not regard Colette as a source, which casts doubt on his assertion that he recently obtained cocaine from Colette. Indeed, it casts doubt on whether he obtained cocaine from Colette at any time.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

Moreover, evidence indicating that Johnson left his house shortly before a buy, traveled to a location other than Colette's residence, and then immediately returned to Johnson's house to consummate a sale of cocaine suggested that Johnson obtained his drugs from persons other than Colette. This casts doubt on his claim that he recently obtained cocaine from Colette.

Had the aforementioned information been given to the Magistrate there would have been no basis for determining probable cause.

Obviously, Johnson can not be deemed the most credible of witnesses. There was good reason to suspect that he had committed several robberies and thefts. He had been arrested that very day, and he was attempting to extricate himself from a lengthy prison term. Officer Wall admitted that he had offered Johnson a reduced charge if he could direct the police to approximately a kilo of cocaine. Johnson had every incentive to give the officers what they wanted, even if the information he related was composed solely of conjecture, or hearsay in the drug community.

Indeed, based on the evidence given by Johnson, only one reasonable conclusion was permitted—Johnson was making it up as he went along to extricate himself from his own legal difficulties and to preserve his own ongoing criminal enterprise. First, Johnson, who supposedly had been going to the residence for up to two years was not aware that there were outbuildings. Second, Johnson, who supposedly had observed large quantities of cocaine at the residence, stated that he "believed" that the drugs were kept in a safe in Colette's bedroom. If he had actually observed the drugs, he would have *known* where the drugs were kept. The tentativeness of his testimony bespeaks contrivance. Third, there was strong evidence that Colette was not Johnson's source of drugs. He had multiple suppliers (whose names he refused to divulge), and the police watched him travel to a location other than Colette's residende for a few minutes just prior to a controlled buy.

Furthermore, there is a strong indication that Johnson was under the influence of a substance when he testified. As indicated by his extensive criminal record, which was not disclosed to the Magistrate, Johnson obviously suffered from alcohol/substance abuse. He was confused as to the

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

details of his "deal"; and he repeatedly stated that he had been promised "zero to probation", which makes absolutely no sense. Furthermore, he exhibited bizarre behavior that one normally associates with substance-caused confusion and substance-caused lack of inhibition. At one point, he announced to the Court that he had to "go" and that he had been "holding it" for 10 minutes. He then asked for a cup or a pitcher. The Magistrate attempted to make arrangements for Johnson to be taken to the facilities, and Johnson, who took umbrage at something, repeatedly told the *Magistrate* that "its not funny, man".

The prosecutor, knowing that Johnson was too frail a reed upon which to rest, attempted to corroborate Johnson's testimony by presenting the hearsay testimony of yet another informant. Officer Wall testified that, approximately a year ago, the informant told the police that she had lived with Colette; that she had personally observed 10-15 ounces of cocaine and cash in the bedroom safe; and that Colette was a high-level drug dealer.

Officer Wall testified that he believed the hearsay informant at the time and that she had given "other information about other individuals that associated with Mr. Colette that [he] knew to be true from other informants as well as [his] own investigations". Officer Wall did not elaborate on the nature of the "other information", other than stating that it was information about the defendant's associates and his business. Based on the evidence, the issuing magistrate could conclude no more than that the "other information" concerned wholly innocent details. It is illogical to conclude that, because an informant provides innocent information which happens to be true it follows that the informant is credible concerning inculpatory information. The corroboration of innocent, easily ascertainable details, is an inadequate foundation upon which to infer reliability. See United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1983).

The Confidential Informant was Powers, with whom Colette used to reside. Colette previously proffered evidence indicating that Powers was extremely hostile towards him. See previous discussions. Furthermore, Colette stands ready to prove the following:

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

(1) Officer Wall and Powers previously worked together as employees of the same state agency;

(2) Officer Wall and Powers were co-workers for a period of approximately five years;

(3) Officer Wall and Powers were personally acquainted with each other during that period of time;

(4) As a result of their relationship, Officer Wall knew that Powers was unreliable because she suffered from severe alcoholism and because she engaged in unstable behavior such as stalking Colette.

None of this information was related to the Magistrate. The above-articulated new information, which the Government recently disclosed, when coupled with previously-discussed matters, demonstrates that the State, at the very least, was reckless in its omissions. It also demonstrates that had the relevant information been given to the Magistrate, there would have been no finding of probable cause.

Essentially, the prosecutor presented two streams of evidence, both of which was inherently suspect. Moreover, no independent police corroboration of the two streams of evidence was presented.

The aforementioned information was in the possession of the police at the time the search warrant was obtained. In light of its obvious materiality, the officer's failure to disclose it had to have been deliberate, or at the very least reckless.

Furthermore, the State's failure to disclose the aforementioned information to the Magistrate, and its failure to disclose that information to Colette and this Court until after the suppression issue was resolved, violated due process. Due process includes fundamental concepts of justice that lie at the heart of our civil and political institutions. Mooney v.Holohan, 294 U.S. 103, 112 (1935). Due process implicates a community's sense of fair play and justice. Rochin v. California, 342 U.S. 165, 173 (1952). Due process is violated when a law runs afoul of a principle of justice that is "so rooted

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

Page 7

in the traditions and conscience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 201-02 (1977). The primary guide for determining whether a rule is fundamental, and therefore protected by the due process clause, is historical practice. Montana v. Egelhoff, 518 U.S. 37 (1996)(Plurality opinion).

Colette submits that due process is violated when a warrant is secured through deliberate or reckless omissions by the police to the court. This rule is so firmly embedded into the history and customs of our people as to render it fundamental. To abandon the rule would run afoul our long-held notions of justice, privacy, and fair play. The rule indubitably lies at the heart of our civil and political institutions.

This rule, however, is but an empty shell absent some means of enforcing it. All the pretty platitudes in the world mean nothing absent some means of enforcement.

The enforcement of the constitutional rights of privacy and to be free from unreasonable searches and seizures is accomplished through suppression hearings. One recognized method of enforcing that right is to question the veracity of statements made in warrant affidavits. Franks, infra. Another method of enforcing that right is to demonstrate that, in securing a warrant, the police deliberately or recklessly failed to inform the Court about material information.

In the instant case, a warrant was issued after the police deliberately or recklessly failed to inform the magistrate about material information. The officer's failure prevented the Magistrate from making an informed decision about probable cause. Had the Magistrate been given the information in question, there would have been no probable cause.

The deliberate concealment of the information from the Magistrate, and the later deliberate concealment of the information from Colette and this Court until after this Court ruled on the suppression and Franks issues, constitute a violation of due process every bit as egregious as the destruction of exculpatory evidence. Indeed, the concealment of information in this case is tantamount to, and closely parallels, a failure to disclose exculpatory evidence.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

Generally, Brady cases do not arise in the context of warrant suppression hearings. Accordingly, there is generally no need to reach the issue of whether due process requires the disclosure of evidence that is relevant for purposes of challenging search warrants. The Ninth Circuit, however, with respect to an alleged failure to preserve evidence claim, has resolved the issue in the affirmative.

In United States v. Barton, 995 F.2d 931 (9th Cir. 1993), officers went to the defendant's home and knocked on his door. When the defendant answered the door, the officers smelled marijuana. The defendant invited them into his home, and the officers, upon entry, noted that the odor of marijuana became stronger. The defendant denied the officers' request to search the residence, and accordingly a search warrant was obtained based on the officers' observations about the odor of marijuana. The subsequent search revealed a number of cultivating plants, which were seized. After the plants were seized, they were placed into unventilated garbage bags. As a result, the plants decomposed.

The Barton defendant moved to suppress the evidence on the ground that there was no probable cause to search. His theory was that only marijuana plants with glandular trichomes emit an odor, and that the plants seized from his home did not have glandular trichomes. The defendant further argued that the failure to preserve the plants "denied him access to evidence that would have supported his contention that the plants did not emit an odor, [thus demonstrating] that the allegations in the affidavit were false". Barton, at 933. The trial court held that suppression was not warranted because the officers did not act in bad faith.

On appeal, the Barton defendant argued that the "Government's failure to preserve the marijuana plants violated due process under Brady..., because it denied him access to evidence that could have been used to impeach allegations in the affidavit for a search warrant." Barton, at 933. The defendant's theory was that the evidence was exculpatory because it would have permitted him to suppress the evidence against him. The Ninth Circuit rejected this theory, noting that Brady and Youngblood pertain to exculpatory or potentially exculpatory evidence, which is defined as evidence

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

Page 9

that is material to guilt or punishment. As further noted by the Ninth Circuit, although the resolution of a suppression motion often determines the case's outcome, the successful suppression of evidence is unrelated to the culpability of the accused. Accordingly, the defendant's assertion that the evidence was at least potentially exculpatory was rejected by the Ninth Circuit.

However, the Court then addressed the next logical issue. As stated by the Court: "We must decide the novel question whether the destruction of evidence which had the potential at a suppression hearing to impeach allegations in an affidavit for a search warrant violates due process." The Court resolved that issue in the affirmative. It noted that the Supreme Court, in Franks v. Delaware, 438 U.S. 154, 156 (1978), held that defendants have a right under the Fourth Amendment to challenge the truthfulness of statements made in search warrant affidavits and that the Franks Court reasoned that, unless that right was recognized, Fourth Amendment protections would be illusory. As stated by the Franks Court "…[P]robable cause would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." Barton, at 934-35, quoting from Franks, at 168.

Accordingly, the Barton Court concluded as follows:

> This rationale applies with equal force to the destruction of evidence which is necessary to impeach material allegations in an affidavit for a search warrant. By deliberately destroying impeaching evidence, an officer could feel secure that false allegations in his or her affidavit for a search warrant could not be challenged. Such a result would effectively deprive a criminal defendant of his Fourth Amendment right to challenge the validity of a search warrant. To protect the right of privacy, we hold that the due process principles announced in Brady and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant.

Barton, at 935.

This Court is squarely confronted with almost the identical issue: Does Due process require the timely disclosure of evidence that arguably does not bear on culpability but which is necessary to

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

impeach statements made in search warrant affidavits? For purposes of the Fourth Amendment, this Court must follow the Ninth Circuit's lead.

In addition, Colette submits that this Court erred when it permitted Johnson, on Fifth Amendment grounds, to refuse to answer questions regarding his other drug sources. Colette was charged with a drug offense. Johnson testified that he purchased drugs from Colette. Yet, he was permitted to refuse to answer questions regarding his *other* sources, based on his Fifth Amendment privilege.

Colette submits that when Johnson voluntarily assumed the stand and testified against Colette concerning matters that went to the very heart of the Government's case against Colette, and when he testified concerning other sources, Johnson waived his right to assert the privilege concerning the details of his testimony. The disclosure of a fact waives the privilege with respect to the details of the disclosed fact. Rogers v. U.S., 340 U.S. 367, 373 (1951).

Colette had a due process right to contravene the Government's case. He had a Sixth Amendment right to confront the witnesses against him. He therefore was entitled to cross-exam Johnson concerning the testimony against him. Had Colette been able to firmly establish the identities of Johnson's other suppliers, Colette's position that Johnson did not obtain drugs from him would have been strengthened.

## IV
## A Post-Trial Franks Hearing Is Mandated

Colette has satisfied the foundational requirements for conducting a Franks hearing. First, he has identified specific portions of the testimony that are false. (See Colette's Opening Memorandum concerning suppression and Franks.). Moreover, he identified critical omissions. See Colette's opening memorandum, Colette's Combined Reply, and supra. Franks analysis is applicable to omissions. U.S. v. Stanert, 762 F.2d 775, 780-81 (9th Cir. 1985).

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

Second, Colette contends that the false statements and omissions were made either deliberately or recklessly. It could not be otherwise.

Third, Colette will prove that misrepresentations were made, and that there were omissions, through an examination of the police reports showing that Johnson used drugs; police criminal records; police reports demonstrating that Johnson refused to divulge the location of his stash or the identity of his suppliers; warrant applications indicating that Johnson traveled to a source other than Colette's residence or business to secure his drugs; public records demonstrating Johnson has an extensive criminal record; police criminal records showing that he was currently under investigation for armed robbery; police criminal records showing that he was previously charged with robbery and vehicle theft, and that he was investigated concerning numerous other crimes involving dishonesty; police criminal records showing that he served time in a juvenile facility for armed robbery; public records demonstrating that Powers has been very hostile towards Colette for a period of years; testimony by Colette demonstrating Powers' hostility; and testimony from Wendy Collet showing that, due to Powers' prior relationship with the police, Officer Wall knew that she was unstable and subject to substance abuse.  Colette will call Officer Hall to demonstrate that he was aware of Johnson's drug use; that he was aware of Johnson's extensive criminal record; and, that he was aware of facts indicating that Johnson was continuing to operate a drug enterprise; that he was aware that Powers bore great animosity towards Colette and that he was aware of her instability and substance abuse. Colette  will call Powers to demonstrate the same.

See also the exhibits to Colette's opening memorandum.

Fourth, Colette will demonstrate the alleged falsities and the truth of the omitted information.

Fifth, Colette will demonstrate that had the misstatements not been made, and had the omitted information been given to the Magistrate, there would have been no probable cause for issuing the warrant.  All such information bears on the credibility of Powers and Johnson.  Absent credibility, there is no probable cause for the warrant.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

See U.S. v. DeCesare, 765 F.2d 890, 894-95 (9th Cir. 1985) for a discussion of the requisite requirements. The sheer volume of his criminal history alone destroys his credibility along with his deception of law enforcement regarding his drug contacts, where he's hidden his ill gotten gains and drugs along with who tipped him off.

## V
## Dismissal Of Drug Counts Is Required

The search warrant was obtained only as a result of an egregious, intentional concealment of material evidence indicating that Johnson was not credible.

Subsequently, the Government failed to disclose said evidence when this Court was evaluating Colette's motion to suppress and his motion for a Franks hearing. Even worse, not only did the Government fail to disclose the information in question, it blithely assured this Court, when addressing Colette's itemization of Johnson's criminal record, that none of the alleged violations involved crimes of dishonesty. The Government was being only too cute. *The only reason that Colette referenced only crimes not involving dishonesty is because the Government concealed evidence of Johnson's crimes involving dishonesty until after this Court, based on incomplete information, denied Colette's motions to suppress and for a Franks hearing.*

Although the Government's statement to this Court was technically correct, that statement nevertheless was too narrow. The issue at bar was whether Johnson's criminality gave reason to believe that he suffered from credibility problems. Yet, notwithstanding the obvious materiality of the concealed information, the Government simply assured the Court that none of the alleged offenses involved dishonesty. The Government's statement implied that Johnson did not involve himself in crimes involving dishonesty. As the Government well knew, this suggestion is manifestly incorrect. The evidence now is such that Johnson's credibility should not be trusted even as far as an honest man can expectorate. *Certainly*, probable cause can not be predicated on the word of such a person.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

Colette submits that failure to put the entire criminal record before the court deprived him of any meaningful opportunity to challenge the search warrant. He further submits that, for the reasons discussed by the Court in Barton, supra., the Government's deceptive tactics deprived him of due process.

This Court, even post-trial, retains jurisdiction to dismiss the indictment concerning the drug count. U.S. v. Ross, 372 F.3d 1097, 1107 (9th Cir. 2004). Dismissal is appropriate when outrageous law enforcement results in a deprivation of due process. Ross, supra., citing United States v. Simpson, 813 F.2d 1462, 1464-65 (9th Cir. 1987)(Simpson I). Furthermore, even absent a due process violation, this Court post-trial may dismiss an indictment pursuant to its supervisory power to ensure the establishment of civilized standards of procedure and evidence. Ross, supra., citing McNabb v. United States, 318 U.S. 322, 340 (1943).

In the instant case, as discussed above, due process was violated by both the police and the Government. The active concealment of material information both from the Magistrate and from this Court violated due process and ran afoul even the most minimal standards of civilized procedure. Accordingly, dismissal of the drug count is required. Indeed, this remedy is especially required in light of the fact that the Government not only concealed material information but also implied that such information did not exist. This Court should not permit itself or Colette to be toyed with in such a fashion.

# VI
# Conclusion

Mr. Johnson has an impressive and substantial criminal history that is perpetual. He is dishonest and as Trooper Wall testified, Mr. Johnson lied to him the morning of the raid on Mr. Johnson's home. Mr. Johnson's criminal history demonstrates he is not worthy of the courts trust. His deception of law enforcement, even in the courtroom during trial strips him of his credibility for probable cause purposes. Had the magistrate been given this evidence he would not have issued the search warrant. Trooper Wall and the state prosecutor knew this and decided to

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**

suppress valid and reliable information to secure the search warrant.  In this case the prisoner must go free because the constable has blundered.

For the reasons previously asserted, and for the reasons discussed herein, a new trial must be granted, evidence obtained as a result of the searches of his residence and his business premises must be suppressed;  a post-trial <u>Franks</u> hearing is required, and the drug count must be dismissed.

Respectfully dated  this 10th day of August, 2006 in Anchorage, Alaska.

<u>/S/ Rex Lamont Butler</u>
745 W. 4th Avenue, Ste., 300
Anchorage, AK., 99501
(907) 272-1497
(907) 276-3306
lawoffices@gci.net
ABN: 8310105

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette,**
**Motion For A New Trial.**