IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                             )<br>                           Plaintiff,   )<br>v.                                                        )<br>                                                             )<br>JASON SCOTT COLETTE,             )<br>                                                             )<br>                           Defendant. )<br>_____ ) | Case No. 4:05 CR-42-RRB |

### COLETTE'S SENTENCING MEMORANDUM
### And LATE-FILED OBJECTIONS TO
### PRESENTENCE REPORT

**I**
**Local Rule 32.1(d) Statements**

A.   As discussed below, Colette disagrees with the presentence report;

B.   A sentence within the advisory range, as calculated by the Probation Department, is unreasonably excessive. Colette should be sentenced to the statutory minimum;

C.   Citations to controlling authority is provided, infra.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**II**
**Introduction**

In Count I, Colette was charged with possessing cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(B). In Count II, Colette was charged with distribution of

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 1

cocaine in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. (B)(1)( C).  In Counts III and IV, Colette was charged with possession of firearms in the furtherance of a drug trafficking crime in violation of 18 U.S.C. 924( c)(I)(A)(1) and 18 U.S.C. ( c)(1)(B)(ii).

Colette went to trial, and the jury acquitted him of possessing firearms in the furtherance of a drug trafficking crime. The jury entered convictions in Count I and Count II.

As indicated by the Presentence Report, the execution of a search warrant of Colette's home resulted in the seizure of a plastic bag containing 31 gross grams of cocaine from a bedroom dresser. (Paragraph 18).  In addition, a search of a safe located in the bedroom resulted in the seizure of a bag containing 23 one-ounce packages of cocaine and a separate bag containing 63 gross grams of cocaine. (Paragraph 20).

The 23 separate packages of cocaine were forwarded to the DEA laboratory.  They were determined to weigh 634.6 grams net weight, with 368 grams of cocaine. The remaining cocaine that was seized was determined to weigh 27.2 grams.  (Paragraph 32).

The search of the safe revealed the presence of 14 firearms.  A search of Colette's toolbox at his place of business revealed the presence of a .357 firearm.  (Paragraphs 19 and 25).

The Probation office determined that cocaine in excess of 500 grams was involved and that therefore the base offense level is 26.  (Paragraph 38).  The Probation Office added 2 points for possession of a dangerous weapon pursuant to U.S.S.G. 2D1.1(b)(1).  (Paragraph 39).  As calculated by the Probation Office, the total offense level is therefore 28. (Paragraph 43). The probation office determined that Colette falls into criminal history category of  2.  (Paragraph 56).  Accordingly, the Probation Office determined that Colette's advisory Guideline range is 87-108 months. (Paragraph 109).

The Probation Office's calculations are incorrect for two reasons: First, the quantify of cocaine was less than 500 grams. Second, there should be no dangerous weapon adjustment.

Count I has a statutory minimum of five years in prison.

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave., Suite 300
Anchorage, Alaska 99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 2

The purpose of this sentencing memorandum is to assist this Court in determining "...a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [this] subsection [3553(a)]". United States v. Booker, 125 S.Ct. 738, 769-70 (January 12, 2005); 18 U.S.C. Sec 3553(a).  After so doing, this Court should sentence Colette to a term of five years,  for the reasons discussed infra.

### III
### Discussion

#### A
#### No Firearms Enhancement

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court found that facts, other than recidivism,  which increase the permissible range of punishment for an offense must be submitted to a jury and proven beyond a reasonable doubt. As noted by the Court: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi, supra., at 490).

In Blakely v. Washington, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court applied Apprendi's principle that facts which increase the penalty for a crime beyond the "statutory maximum", other than prior convictions, must be submitted to the jury and proven beyond a reasonable doubt.  The Court defined the term "statutory maximum" as follows:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

Blakely, supra., at 2537.

The Court continued:

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 3

> When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment...and the judge exceeds his proper authority. (Citations omitted).

Blakely, supra., at 2537.

In United States v. Booker, 125 S.Ct. 738 (January 12, 2005), the Court applied Apprendi and Blakely to the Federal Guidelines, and in so doing the Court held that the Guidelines, being mandatory, ran afoul the right to trial by jury. The Court did not couch its holding in terms of "statutory maximum"; instead, it used the phrase "maximum authorized by the facts". The Court commented that "more important than the language used in our holding in Apprendi are the principles we sought to vindicate". Booker, 125 S.Ct. At 752-53 (substantive majority). In the second part of its opinion, the Court determined that the Guidelines could be saved by making them advisory, rather than mandatory.

Although advisory guidelines are not unconstitutional, it does not necessarily follow that they're no longer any constitutional limits on sentencing post-Booker. The sentencing judge's discretion is constrained by the notion of "reasonableness". Booker, 125 S.Ct., 765-66. A sentence that exceeds this standard is reversible. What is reasonable, in essence, defines the outer limits of the Court's sentencing powers in light of the facts of the case. Thus, what is reasonable under the facts defines "the maximum authorized under the facts", which in turn replaced the "statutory maximum" standard. What is reasonable under the facts, of necessity, depends on the facts. That is to say, a sentence which is reasonable when the facts include a finding that the defendant used or possessed a firearm, is not reasonable under the facts when there is no such finding. Thus, a finding that a defendant used or possessed a firearm acts to expand the outer limits of a constitutionally permissible sentence. Accordingly, facts of this nature must be alleged in the indictment and proved beyond a reasonable doubt to the jury.

That did not occur in this case. Although Colette was charged with the possession of a firearm in the furtherance of a drug trafficking crime, he was acquitted of that charge. At this

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 4

juncture, it would violate the Sixth Amendment, which guarantees the right to a jury trial, and Due Process, which requires proof beyond a reasonable doubt , for this Court to make a firearms finding, by any standard, let alone by the preponderance standard.

But, see United States v. Staten, 450 F.3d 384, 392-93 (9th Cir. 2006)(District Court not required to find facts underlying sentence enhancement beyond a reasonable doubt).

Moreover, even prior to Apprendi, the Ninth circuit recognized that when a sentencing factor has an extremely disproportionate effect relative to the offense of conviction, due process requires proof by clear and convincing evidence. United States v. Meza De Jesus, 217 F. 3d 638, 642-43 (9th Cir. 1999). Such is the case here.

**B
Even Disregarding Apprendi-Blakely-Booker
No Firearms Enhancement Should Be Made**

USSG, 2D1.1(b)(1) requires a two-point enhancement for possession of a firearm. Application Note 3 provides that the enhancement should be applied if a firearm is present, unless it is clearly improbable that the weapon was connected with the offense. The Ninth Circuit has taken the position that once the government demonstrates that a firearm was possessed by a defendant during an offense, the burden passes to the defendant to demonstrate that it was clearly improbable that the weapon was connected with the offense. U.S. v. Nelson, 222 F.3d 545 , 549 (C.A.9 (Nev.)2000).

In this case, there was evidence that Colette possessed firearms. However, the evidence is such that it is clearly improbable that the weapons were possessed in connection with the offense.

Colette grew up as a hunter and accordingly he has always possessed firearms for sporting purposes. (Paragraph 72). Colette is also a gun collector, and he obtained his collection from his father. (Paragraph 72). Colette maintains his collection because he is interested in firearms, and because his collection was obtained from his father. It therefore has sentimental value to him.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 5

Moreover, Colette was always taught to observe rigorous standards of gun safety. (Paragraph 72). He knew that guns must be kept away from minor children so as to prevent a tragedy. (Paragraph 72). Colette lived with a minor child, and therefore he was vitally interested in making his collection as inaccessible as possible. He had a safe available to him, and he elected to secure his guns in that safe so as to protect the child.

Colette is also aware that burglars commonly steal firearms and that stolen firearms often are involved in crimes. Colette chose to store his collection in the safe so as to preserve them from burglars and to make them inaccessible to downline criminals.

Colette had only one secure place to store his gun collection. He placed his firearms in the safe for one purpose only— to protect others. The fact that cocaine was also stored in the safe is totally unrelated to the fact that Colette chose to store his firearms in the safe. The weapons were not possessed in connection with the crime. They were acquired before the crime for non-criminal purposes, and the nature of their possession did not change during the course of time.

The .357 was located in Colette's toolbox, but no cocaine was seized from the toolbox or the business. (Paragraphs 22-25). The only cocaine that was located on the premises was found in an employee's private tool box. (22-25). The .357 was a gift from Colette's mother, and it was not possessed in connection with the crime. (Paragraph 72). It was possessed out of sentimental value.

A .40 cal. weapon was located in a truck located on the premises. No cocaine was located in the truck. (Paragraph 25).

## C
## Less Than 500 Grams Involved

The 23 separate packages of cocaine were forwarded to the DEA laboratory. They were determined to weigh 634.6 grams net weight, with 368 grams of cocaine. The remaining cocaine that was seized was determined to weigh 27.2 grams. (Paragraph 32).

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 6

It appears that the Presentence Report is incorrect in asserting that the total amount of cocaine was in excess of 500 grams. The only way for that assertion to make sense is to use the 634.6 measure. But, since the report indicates that there was only 368 grams of cocaine, it appears that the 634.6 weight includes packaging material. Colette puts the Government to the proof that there was in excess of 500 grams. He submits that less than 400 grams were involved.

While there is authority that cutting agents may be included in the applicable weight, U.S. v. Berroa-Medrano, 303 F.3d 277, 282-285 (3rd Cir. 2002), there is no authority that the weight of packaging material may be included. Indeed, USSG 2D1.1 refers to the entire weight of the substance and any mixture. This strongly suggests that packaging materials must be excluded. Accordingly, the base offense level is 22 and not 26.

### D
### Applicable Sentencing Factors

Colette argues above that (1) The Guidelines are advisory; (2) No weight should be given to the guideline requiring an upward adjustment for firearms; and (3) The quantity of cocaine was less than 400 grams. At this time, Colette turns to an examination of the statutory factors that should be applied in formulating an appropriate sentence in his case.

The Court in Booker states as follows:

> So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* 28 U.S.C. § 991 *et seq.,* makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004).

U.S. v. Booker, 125 S.Ct. 738, 757 (U.S.,2005).Thus, this Court should consider guideline ranges, but is free to tailor Colette's sentence in light of all statutory goals. 18 U.S.C.A 3553(a) articulates the applicable goals and considerations as follows:

Rex Lamont Butler and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 7

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--
>
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> ...
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

### 1
### Nature Of Offense/Colette's History

There is evidence that Colette possessed and sold cocaine. On the other side of the ledger, there is evidence that Colette has enormous potential for leading a productive life. He is young, and he has a legitimate profession. He is highly gifted in installation work. He has no other serious convictions. In light of his record, Colette can not be viewed as a hardened, career criminal. His life's course is not yet fixed; he has learned from his mistake; and, given a chance he will realize his enormous potential and make valuable contributions to society.

Colette came from difficult circumstances. For a lengthy period of time his father was a practicing alcoholic and abused family member, including Colette. (Paragraphs 66, 68, 69). Ultimately, Colette's parents divorced, which caused the family to experience difficult financial circumstances. (Paragraphs 66-71). Yet, notwithstanding all the factors arrayed against him, Colette obtained a GED, learned a trade, and ultimately founded a business.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 8

**2**
**Seriousness Of Offense/Respect For Law/Just Punishment**

Colette agrees that the conduct was not only criminal but also morally wrong. Colette submits, though, that a lengthy prison sentence is not required, or appropriate. Five years in prison will adequately reflect the seriousness of his offense, promote respect for the law, and achieve justice.

Colette is only 33 years of age. If he receives less than 5 years in prison, Colette will have sufficient time remaining to him to marry and become a contributing member of his community. The likelihood of a person successfully settling into a productive life diminishes the older the person becomes.

**3**
**Deterrence**

Colette's conduct was a product of stupidity. Deterring future misconduct on his part will be accomplished by less than five years in prison. Less than five years in prison will more than amply deter others from committing similar criminal acts.

**4**
**Protection Of The Public**

Colette submits that less than five years in prison will protect the public.

**5**
**Education/Rehabilitation/Other Correctional Treatment**

There is an indication that Colette smokes marijuana. Whatever challenges Colette has concerning substance abuse can be addressed during the course of a short term in prison. He should also be assigned to the Bureau of Prison's Drug Treatment Program.

**6**

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**Restitution**

The fruits of this offense will be forfeited to the Government. There is no indication that restitution is owed to any person.

**IV**
**Advisory Guideline Calculations**

Base Offense Level (2D1.1( c)(4)..............................22

Total.......................................................................22

Criminal History....................................................II

Advisory Range.......................................................46-57 months

**V**
**Objections To Presentence Report**

Colette objects to the following portions of the presentence report:

**A. Paragraph 26, 27, 30, and 31:** Colette objects to the hearsay statements of Russ Christie, Kenji Badger, David Sauer, and Damon Wamsley. Said individuals made statements made statements concerning alleged drug usage, drug storage, and drug transactions.   Colette vehemently denies all such statements to the extent that they pertain to him.

Use of this information violates USSG 6A1.3, the hearsay rule, Due Process, and Colette's right to confront the witnesses against him.

USSG 6A1.3 permits hearsay to be utilized at sentencing hearings, provided that the hearsay has sufficient indicia of reliability. Similarly, the Supreme Court, in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), held that sentencing judges may consider hearsay. The Ninth Circuit, in U.S. v. Petty, 982 F.2d 1365, 1367-1369 (9th Cir. 1993), held that the confrontation clause does not apply at sentencing.  See also, U.S. v. Mann, 9F3d 1554 (9th Cir. 1993).

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 10

However, these cases were decided prior to <u>Apprendi</u>-<u>Blakely</u>-<u>Booker</u>, and therefore prior to our current understanding that facts which increase penalties beyond the "maximum authorized by the facts" of offenses should be treated as part of the offenses. That being the case, Colette submits that facts that were previously considered sentencing facts, and therefore not within the scope of the confrontation clause, must now be treated as parts of offenses, and therefore within the purview of the confrontation clause.

<u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) is instructive. In <u>Crawford</u>, the Supreme Court held that the Confrontation Clause precludes the Government from introducing testimonial hearsay evidence against defendants unless the declarant is unavailable at trial and the defendant previously had an opportunity to cross-examine the declarant.

Testimonial evidence, at a minimum, includes prior testimony at a preliminary hearing, prior testimony before a grand jury, prior testimony at a former trial, and statements given at police interrogations. <u>Crawford</u>, 124 S.Ct. At 1374. In so holding, the Court rejected the previous test articulated in <u>Ohio v. Roberts</u>, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which permitted the introduction of hearsay upon a finding of reliability. As noted by the Court: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." <u>Crawford</u>, 124 S.Ct. At 1374.

The hearsay declarants in the instant case are not unavailable, and Colette has had no opportunity to cross-examine them.

But, see <u>U.S. v. Littlesun</u>, 444 F.3d 1196, 1199-1201 (9th Cir. 2006), where the Court acknowledged that the Defendant's argument that <u>Crawford</u> applied to sentencing hearings has some force, but stated "...it is not for us to overrule the Supreme Court's decision in Williams".

Even if this Court disagrees with the applicability of <u>Crawford</u> to sentencing hearings, the proffered hearsay evidence nonetheless should be deemed inadmissible. The declarants were substance abusers and engaged in other criminal activities. As a result of substance abuse, their ability to perceive accurately, and to remember accurately what they perceived, is extremely suspect.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 11

Moreover, in light of the declarants' own criminal drug usage, their motive for telling the truth is also suspect. Under the totality of the circumstances, there is not sufficient indicia of reliability to support the probable accuracy of the hearsay. Accordingly, the hearsay in question should not be considered.

In addition, the admission of the hearsay also would violate Colette's right to due process. See U.S. v. Petty, 982 F.2d 1365, 1369 (9th Cir.1993)("[D]efendant clearly has a due process right not to be sentenced on the basis of materially incorrect information.")

The only appropriate method of evaluating the truthfulness of the hearsay in this case is to demand that it be tested in the crucible of cross-examination. See Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 374 (1974)(The primary interest secured by the Confrontation Clause is the right of cross-examination".)

Assuming *arguendo* that Crawford was not strictly applicable in Colette's sentencing hearing, he nevertheless submits that the Court, in the exercise of its discretion, should require all contested evidence to be subject to cross-examination. This is the approach taken by the District Court in United States v. Gray, 362 F.Supp.2nd 714 (S.D. W.Va. 2005). In Gray, the Court concluded that Booker had undermined the position that Crawford was applicable at sentencing. However, the Court noted that the Crawford Court concluded that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation". Gray, at 9, quoting Crawford, at 1374.

The Gray Court concluded that, while confrontation at sentencing hearings was not mandated by Crawford, the use of witness testimony should be strongly encouraged. As stated by the Court:

> For hotly contested issues, however, the truth-seeking function of the Confrontation Clause deserves attention at sentencing. In cases involving genuine disputes, my calculation of the advisory Guideline range requires that I must first consider the available evidence to resolve factual disputes and objections to the presentence report. The adversarial system provides the best method of establishing the reliability of testimonial evidence and the appropriate weight to assign to such evidence. Accordingly, I strongly encourage the use of witness testimony and cross-examination to resolve factual disputes at sentencing, notwithstanding my finding that *Crawford* does not apply at sentencing under the post-*Booker* sentencing regime.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 12

Gray, supra., at 10.

**B. Paragraph 39, 43:**  Colette objects to the two-point dangerous weapon adjustment. See discussion, supra.

**C. Paragraph 38:**  Colette objects to the conclusion the quantity of the drugs was in excess of 499 grams. See discussion, supra.

**D. Paragraphs 57, 58, 59, and 60**: Colette objects to the inclusion of charges that have been dismissed. The charges described in paragraphs 57 and 59 were dismissed. The charges described in paragraphs 58 and 59 show no disposition. Colette believes that they were dismissed.

E. Paragraph 102: Colette owns but one vehicle, a 1990 pickup with approximately 200,000 miles on it;

F. Paragraph 106: Colette has no ability to pay a fine. His assets were seized; his business is defunct; and he is massively in debt;

Finally, Colette objects to reliance on the Autotrack XP and Motznik databases, as they are inaccurate.

## V
## Conclusion

The Guidelines are advisory, rather than mandatory. In sentencing Colette, this Court should consider the Guidelines along with other sentencing factors. In so doing, this Court should not apply the firearms enhancement. In addition, this Court should find that the quantity of the cocaine was less than 500 grams.

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)

**United States v. Colette, Defendant's Sentencing Memorandum.**
Page 13

Colette is a relatively youthful offender with great potential for leading a productive life, if given a chance. All appropriate sentencing goals are more than vindicated by the imposition of the statutory minimum of five years in prison.

Respectfully submitted this 13th day of October, 2006 in Anchorage, Alaska.

/s/ Rex Lamont Butler
Rex Lamont Butler
745 W. 4th Avenue Ste. 300
Anchorage, Alaska, 99501
(907) 272-1497
(907) 276-3306
lawoffices@gci.net
ABN: 8310105

I hereby certify that a true and accurate copy of the foregoing document was served via electronic filing on Assistant U.S. Attorney, Bryan Schroder, on this 13th day of October, 2006.

/s/ Rex Lamont Butler
Rex Lamont Butler
745 W. 4th Avenue, Ste. 300
Anchorage, Alaska, 99501
(907) 272-1497
(907) 276-3306
lawoffices@gci.net
ABN: 8310105

Rex Lamont Butler
and Associates, Inc.
745 W. 4th Ave.,
Suite 300
Anchorage, Alaska
99501

907-272-1497
907-276-3306 (f)