NELSON P. COHEN
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 4:05-cr-00042-RRB |
| ) | |
| Plaintiff, ) | **GOVERNMENT'S SENTENCING** |
| ) | **MEMORANDUM** |
| vs. ) | |
| ) | |
| JASON SCOTT COLETTE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW, the United States of America, by and through undersigned counsel, and submits its sentencing memorandum concerning defendant, Jason Scott Colette. The defendant was found guilty of Counts 1 & 2 of the indictment

after a 3 day jury trial. The Defendant was acquitted on Counts 3 & 4. The offense in Count 1 was possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). The offense in Count 2 was distribution of cocaine, a violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). The court has also issued a preliminary order of forfeiture under Counts 6 & 7 for $38,848 and 4 firearms.

## I.  Summary of Estimated Guideline Calculations

The government has no objections to the presentence report (PSR) calculations. Therefore, defendant is facing a guideline sentencing range of 87-108 months on Counts 1 and 2.

## II.  Response to Anticipated Objections

### A.  Firearms Enhancement

The firearms enhancement recommended by the PSR is fully supported in this case. The defendant had a number of weapons in his possession that were not sporting weapons. These included weapons that were loaded or nearly so, and instantly available to protect the Defendant's stash of cocaine. Particularly, the pistol grip Mossberg 12 gauge shotgun loaded with 4 rounds (including one in the chamber), and the Colt Sporter, with a loaded magazine immediately available. Neither of these firearms are hunting weapons, but are well suited to protect illegal

drugs. Additionally, the defendant's had an intimidating fully automatic machine gun and silencer, which was made conspicuously visible during his drug sale to Eugene Johnson. The intent of the weapon was to intimidate, and it worked. Eugene Johnson testified that the Defendant had such a large stash of cocaine that Johnson considered coming back to steal the cocaine for himself. A key factor in his decision to scrap that plan was the defendant's access to the machine gon.

But Colette argues that the principles underlying <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), require that all facts relied upon by the sentencing judge to impose sentence must be alleged in the indictment and proved beyond a reasonable doubt to the jury. Defendant's Sentencing Memorandum at 4. Specifically, he argues that this Court may not rely on the fact that he possessed firearms in connection with his drug trafficking offense to enhance his sentence.

Colette's argument turns <u>Booker</u> on its head. <u>Booker</u> expressly rejected the notion that sentencing facts must be alleged in an indictment and found by a jury, the remedy urged in dissent by Justice Stevens. That remedy, the Court concluded, would so transform the sentencing scheme that Congress had enacted that Congress would not have intended it to stand. <u>Id.</u> at 249-250. Rather, once it severed the provisions of the Sentencing Reform Act that made application of the

Sentencing Guidelines mandatory, the Court held that the remainder of the Act was valid and would continue to function as before, with judges making the necessary factual determinations to decide what an appropriate sentence would be. Without the mandatory application of the Guidelines, the "maximum sentence" for the offense is the statutory maximum, and sentencing judges have discretion to sentence within the statutory range, looking to the Guidelines for guidance and taking into account the sentencing factors set out in 18 U.S.C. § 3553(a). Contrary to Colette's argument, Booker did not invent a new "statutory maximum" of reasonableness.

As Colette concedes, the Ninth Circuit has expressly rejected the argument that after Booker, sentencing facts must be found by a jury beyond a reasonable doubt. See, United States v. Staten, F.3d, 2006 WL 2506386 (9th Cir., Aug. 31, 2006). "Under the advisory Guidelines, district courts are free to make factual determinations not made by the jury and may base their ultimate decisions regarding the length of a convicted criminal's sentence on these determinations." Id. at *10. Indeed, even acquitted conduct may be considered by a sentencing court so long as it is supported by a preponderance of the evidence. United States v. Watts, 519 U.S. 148 (1997); United States v. Lynch, 437 F.3d 902 (2006) (en banc). Thus, the fact that the jury here found Colette not guilty of the Section

924(c) counts does not require this Court to wear blinders and ignore the substantial evidence that he possessed firearms in connection with his drug trafficking.

Finally, Colette suggests that this sentencing factor must be proved by clear and convincing evidence because it had an extremely disproportionate effect on his sentence. See, <u>Staten</u>. Because the firearms enhancement adds only two levels to his base level calculation, and adds only 17 months to the lower end of the recommended Guidelines sentence, and 21 months to the upper end, this enhancement does not meet this Circuit's test for an "extremely disproportionate" effect. See <u>United States v. Peyton</u>, 353 F.3d 1080, 1088 (9th Cir. 2003) (no disproportional effect when fact added less than four levels and did not more than double potential sentence). Even if it did, however, this Court, having heard the evidence at trial, has ample support in the record to conclude that there was clear and convincing evidence that these firearms were possessed in connection with Colette's drug offense.

   B.  <u>Less Than 500 Grams</u>

The Defendant misreads the stipulation that was submitted at trial as Exhibit 30. The net weight of the cocaine was 634.6 grams plus 24.3 grams plus 2.9 grams, for a total of 661.8 grams. The stipulation was for the weight of the drugs,

not packaging material. The number of 368 grams is the amount of pure cocaine contained in the 661 grams. Because the indictment charged the defendant with possessing over 500 grams of a mixture or substance containing cocaine, the amount of pure cocaine is a red hearing. Finally, per the language of Count 1, the jury found the Defendant guilty of possessing <u>over 500 grams</u> of a mixture or substance of cocaine with intent to deliver.

    C.  <u>Forfeitures</u>

The court has issued a preliminary order of forfeiture under Counts 6 & 7 for $38,848 and 4 firearms. Docket 171. The criminal forfeiture of the $38,848 & firearms is still pending, awaiting completion of publication of the notice of forfeiture by U.S. Marshal's Service. The Government will file its Motion for Final Decree of Forfeiture 30 days following completion of publication.

**III.  Government's Recommendation**

    The Government recommends that the defendant be confined for a period of 108 months for Counts 1 and 2, be placed under supervised release for a period of 5 years, and pay a fine of $12,500 as recommended by the Probation Officer. The Defendant's involvement with drugs is significant and pervasive, enclosing not just the people who buy drugs from him, but his co-workers and even the children that live in his home.

The factors identified for the court to consider for sentencing under 18 U.S.C. § 3553 include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. The nature and circumstances of the offense show that the Defendant was a major drug dealer in the Fairbanks area. At the time the search warrant was served on his residence, the Defendant had 23 ounces of cocaine individually wrapped and ready for sale. He also had $38,848 in cash, wrapped in $1000 increments as is the common use by drug dealers. At approximately $1000-$1200 an ounce, a common price as testified to by SA Foran, the cash indicates that the Defendant had recently sold another 32-38 ounces of cocaine, approximately another kilogram. While the equivalent of another kilogram of cocaine is not quite enough to raise the Defendant's base offense level under the Sentencing Guidelines §2D1.1, the fact that the amount of cocaine attributable to the Defendant is near the top of his base offense level section indicates that his corresponding sentence should be at the top of the applicable guideline range.

The history and characteristics of the Defendant are also important for the court to consider. The PSR shows a history of disregard for normal societal conduct. While the Defendant has remained below the felony level, his history of

assaults, thefts, and high-speed drunk driving defines a man with little regard for the law. The sentence imposed by the court must be significant enough to convince the Defendant to change his behavior.

Finally, the court needs to provide a sentence that will protect the public. The Defendant threatens the public in general with his high volume of drug dealing. A lengthy sentence has the direct effect of preventing the Defendant from dealing drugs during his imprisonment, and as discussed above, the sentence should be significant enough to drive a long-term change in behavior. A sentence at the upper end of the guideline range will do both.

A lengthy sentence will also serve to protect those directly associated with the Defendant. The PSR documents a work environment at the Defendant's business where use and sale of illegal drugs was common. More concerning was the fact that he conducted his drug business in close proximity to children. The PSR documents that children were living with the Defendant, and the mother of the children asks the court to believe that he was a positive influence. The Government asks the court to consider that in addition to what was found in the Defendant's safe, a number of items related to the cocaine distribution business, including cocaine, was found in the master bedroom, in the open. This was not a safe environment for children. This is especially true when considering the

weapons that the Defendant had at his disposal. Even if the Defendant kept the weapons in the safe, and kept the safe locked most of the time, having ready access to loaded weapons during drug deals is a highly dangerous situation. Moreover, if the Defendant had so little regard for the safety of the children he supposedly cared for, other children in the neighborhood would be at risk as well.

The Government's recommended sentence of 108 months confinement for Counts 1 & 2, is within the calculated range of the Federal Sentencing Guidelines, and meets the required statutory mandatory minimum. A sentence of 108 months, with 5 years of supervised release, will appropriately provide a just punishment, deter the defendant's behavior, and protect the citizens of the State. The Government respectfully recommends that the court impose sentence

//
//
//
//
//
//
//

recommended above.

RESPECTFULLY SUBMITTED this 2nd day of November, 2006, in Fairbanks, Alaska.

>NELSON P. COHEN
>United States Attorney
>
>s/Bryan Schroder
>BRYAN SCHRODER
>Assistant U.S. Attorney
>Federal Building & U.S. Courthouse
>101 12th Avenue, Room 310
>Fairbanks, Alaska  99701
>Phone: (907) 456-0245
>Fax: (907) 456-0577
>Email: bryan.schroder@usdoj.gov
>Bar # 21146

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2006,
a copy of the foregoing **GOVERNMENT'S
SENTENCING MEMO**, was served,
via Electronic Filing, on:

**M. J. Haden,**
Federal Public Defender

s/Bryan Schroder