```
 1              IN THE DISTRICT COURT FOR THE STATE OF ALASKA

 2                 FOURTH JUDICIAL DISTRICT AT FAIRBANKS

 3   STATE OF ALASKA,            )
                                 )
 4           Plaintiff,          )
                                 )
 5      vs.                      )
                                 )
 6   ARCTIC ALARM & AUDIO,       )
     1915 South Cushman,         )
 7                               )
             Defendant.          )
 8   _____)
     Case No. 4FA-SW05-336
 9

10      TRANSCRIPT OF APPLICATION FOR SEARCH WARRANT 4FA-SW05-336

11            BEFORE A MAGISTRATE OF THE STATE OF ALASKA

12
                                        Fairbanks, Alaska
13                                      November 28, 2005
                                        4:21 o'clock p.m.
14
     APPEARANCES:
15                                      ELIZABETH F. CRAIL
                                        Assistant District Attorney
16                                      455 Third Avenue, Suite 150
                                        Fairbanks, Alaska   99701
17

18

19

20

21

22

23

24

25
```

```
 1                    TABLE OF CONTENTS
 2   WITNESSES                                        DIRECT
 3   Jesse Levi Carson . . . . . . . . . . . . . . . . .  2
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 4:05-cr-000 RRB-TWH    Document 51    Filed 0 7/2006    Page 3 of 13

```
 1                        P R O C E E D I N G S
 2   4FA2285-129
 3   [4:21:57]
 4        THE COURT:  We're in the matter State of Alaska,
 5   Plaintiff, versus Arctic Alarm & Audio, 1915 South Cushman,
 6   Defendant, in the matter of a search warrant, search warrant
 7   number 4FA-05-336.  Mr. Carson's here.  Do we need to have him
 8   sworn in?  Would you please stand and raise your right hand?
 9        (Oath administered)
10        TROOPER CARSON:  Yes, I do.
11                          JESSE LEVI CARSON
12   called as a witness, testified as follows:
13        THE CLERK:  Thank you.  You may be seated.  And for the
14   record, would you state your full name and spell your last
15   name?
16        THE WITNESS:  Jessie Levi Carson, last name, C-a-r-s-o-n.
17        THE CLERK:  And your occupation?
18        THE WITNESS:  Alaska State Trooper.
19        THE CLERK:  And your city of residence?
20        THE WITNESS:  Fairbanks, Alaska.
21        THE CLERK:  Thank you.
22        THE COURT:  Very well.  Ms. Crail?
23        MS. CRAIL:  Thank you, Judge.
24                          DIRECT EXAMINATION
25   BY MS. CRAIL:
```

```
 1  Q    Investigator Carson, did you and your unit get a search
 2       warrant 05-335 earlier today?
 3  A    Yes, we did.
 4  Q    Okay.  And that was for a residence belonging to Jason
 5       Colette?
 6  A    Yes, that was.
 7  Q    Okay.  And as a result of that warrant, what did you --
 8       did you find items in the residence -- well, first of
 9       all, what was the basic things you found in the
10       residence?  Did you find drugs?
11  A    Yes, we did.
12  Q    About how much?
13  A    We found approximately 23 ounces, or 644 grams, of
14       cocaine.  It was in the powder form.  It's roughly
15       six-tenths of a kilo.
16  Q    Okay.  And did you find cash?
17  A    Yes, we did.
18  Q    How much?
19  A    Approximately $40,000.
20  Q    Okay.  And did you also find some weapons?
21  A    Yes, we did.  We found several items.  First and most
22       alarming is a fully automatic Mack-10 with a silencer on
23       it.  He did have a federal stamp for this and he was
24       legal to have it, although he wasn't legal to have it
25       within a foot of cocaine and drug proceeds.
```

1  Q    Is that where it was?
2  A    That's where it was.
3  Q    Okay. Now, the cash, the cocaine, and the guns, then,
4       were they all in the same spot?
5  A    Yes, they were all located inside of a -- a safe. There
6       was also a total of 14 handguns -- sorry -- 14 guns in
7       the safe, along with and including an -- an assault
8       rifle, AR-15, and some others, short shotguns and other
9       weapons, handguns.
10 Q    Now, the -- among the cash, were there any other monetary
11      instruments like checks?
12 A    Yes, there was checks in the safe.
13 Q    And was the -- what was the -- what was on those checks?
14 A    On the checks? We brought them in for the court to see
15      as well. There's several checks here, and some of them
16      are written to Arctic Alarm & --
17 Q    Audio?
18 A    -- Audio, which is a business that Jason Colette owns.
19 Q    Okay. And you confirmed that he's the owner of that
20      business?
21 A    Jason informed us that he was the owner of the business.
22 Q    Okay. And when did he tell you that?
23 A    He told Investigator Barnett when he was contacted at his
24      workplace by Investigator Barnett.
25 Q    Okay. And these checks, were they intermingled with the

```
 1        $40,000 in cash you referred to earlier?
 2  A     Yes, they were.
 3  Q     And was that -- and that's the same -- and so it was also
 4        then within a foot of the cocaine.
 5  A     Yes, it was.
 6  Q     Okay.  Now, these --
 7  A     Within two feet of the cocaine.  It's a tall safe.
 8  Q     Okay.
 9  A     So...
10  Q     Based on your training and experience, is it frequent
11        that a person owning a business that has apparently
12        commingled funds between the business and the cocaine
13        sales would potentially have other paperwork, other
14        drugs, monetary proceeds, et cetera, also located at
15        their business?
16  A     Yeah, for this size of a dealer, yes, I do.
17  Q     Okay.  And when you -- you contacted him at the business?
18  A     Yes, we did.
19  Q     And when you contacted him, did he have any drugs on his
20        person?
21  A     He had a small amount of marijuana on his person.
22  Q     Okay.  And so you're -- what you're asking for is to be
23        able to search for both cocaine and marijuana at this
24        point?
25  A     Cocaine, marijuana, and any documents related to the sale
```

```
 1         of illegal narcotics.
 2    Q    Okay.  And because of the commingling of the items
 3         together with his ownership of the business, you believe
 4         that that can -- that that reasonably could be located at
 5         the business?
 6    A    Yes, we do.
 7    Q    Okay.
 8    A    Through -- or if I -- through my training and experience,
 9         people who deal this size--and he's got over a half kilo
10         of -- approximately over a half-kilo of cocaine here--
11         with the amount of money that's brought in through those,
12         they funnel their money through small businesses such as
13         in this example here.  We believe he's funneling his
14         money through Arctic Alarm & Audio, so there would be, if
15         not drug proceeds, at least records of the -- that going
16         through his business or extra cocaine, marijuana, other
17         items related to the sale of the narcotics.
18    Q    And certainly the company's books would potentially be
19         able to be reviewed and shown whether the money could
20         reasonably come through the business versus coming from
21         cocaine sales and be able to help show whether he's using
22         the business to launder the money, is that fair to say?
23    A    Yes, most definitely, yeah.
24    Q    Okay.  And you've brought some of the checks, and we can
25         go ahead and show the court that.  They'll ultimately be
```

```
 1        an exhibit for a case, I assume.  And did you also take a
 2        picture of the drugs, money, and guns --
 3   A    Yes, we did.
 4   Q    -- in the proximity -- rough proximity that they were
 5        originally found in?
 6   A    Yes.  Well, we placed them together to show them.  They
 7        were all -- the three items here, we've got a picture of
 8        the -- the Mack-10, the 23 ounces of cocaine, and
 9        approximately the $40,000, and we've put them together
10        for one photograph just to show --
11   Q    Okay.  And --
12   A    -- what was found there.
13   Q    But they were all located in the same safe?
14   A    Yes, they were.
15        MS. CRAIL:  Your Honor, I guess I'd like, if the court's
16   interested, to -- for Investigator Carson to be able to show
17   you that picture.
18        THE COURT:  Sure.
19        MS. CRAIL:  And the checks.  And we'll have the -- the
20   photograph we'll have printed off and attached later.
21        THE COURT:  You've got a potential list here of potential
22   users now, huh?
23        THE WITNESS:  Those people might've actually bought it,
24   but...
25        The little white baggies you see there are one-ounce
```

```
 1  baggies.  We weighed them out, and the one bag we weighed was
 2  27.6 grams of cocaine, which is just a half-gram under one
 3  ounce.
 4          THE COURT:  Wow.
 5          THE WITNESS:  (Indiscernible) --
 6          THE COURT:  And he was there for this?
 7          THE WITNESS:  No, his girlfriend was there.
 8          THE COURT:  Oh.
 9          THE WITNESS:  But he was at work.  He was then contacted
10  at work just because of the size of the -- the finding.
11  BY MS. CRAIL:
12  Q     Investigator Carson, what I'll do is I'll ask that you
13        mark that particular numbered photograph whatever number
14        it comes out to for your police report and indicate that
15        that was the one that you showed the issuing judge.
16  A     Yes, ma'am.
17  Q     For record purposes.  Any other information at this
18        point?
19  A     Just that it was -- the information was given in the
20        first search warrant on Jason Colette but that he's
21        been -- we've got a previous tip from an informant
22        approximately a year ago that he had six to ten ounces of
23        cocaine and about $10,000 cash, I believe, was what the
24        tip was.
25  Q     And this (indiscernible - simultaneous speech) is more --
```

```
 1   A      So it's showing -- yeah, it's showing an ongoing -- it
 2          was used in this morning -- the information was used in
 3          this morning's warrant, but it just shows an ongoing
 4          trafficking of illegal drugs.
 5          MS. CRAIL:   I believe that's all the evidence we have,
 6   then, sir.
 7          THE COURT:   Okay.  Based upon the testimony of Trooper
 8   Carson, the court finds probable cause to believe that Jason
 9   Colette is the owner of Arctic Alarm & Audio based upon his
10   statement to Investigator Barnett, that based upon the search
11   warrant of 05-335, which was a search of the residence
12   belonging to Colette and the finding of 23 -- approximately 23
13   ounces of cocaine, $4,000 [sic] in cash, various assorted
14   weapons including a Mack-10.
15          MS. CRAIL:   Judge, I'm sure that was 40,000.
16          THE COURT:   Forty -- that's what I thought I said.
17          MS. CRAIL:   I thought you said four, I'm sorry.
18          THE COURT:   $40,000 cash, weapons, various and sundry
19   weapons, including a Mack-10 fully automatic weapon with a
20   silencer on it, and also the information from the informant
21   about a year ago indicating that he was in possession of
22   controlled substances, which has now been confirmed based upon
23   the search of the residence.  The court feels also that based
24   upon the fact that Mr. Colette had the marijuana on his
25   possession while at his place of work located at 1915 South
```

```
 1  Cushman, that there's probable cause to believe that there
 2  would be other evidence relating to his sales of cocaine and
 3  marijuana from that business, and the court feels that the
 4  search warrant is justified for the --
 5       MS. CRAIL:  Could -- I take it also the fact that the
 6  checks were intermingled with the money but written out to the
 7  business.
 8       THE COURT:  Correct, and -- thank you.  The court also
 9  reviewed checks that were found in the residence, checks which
10  were written to the business of Arctic Alarm & Audio, which
11  would further tie in a nexus between the drugs sales and his
12  business and thereby heighten the likelihood that additional
13  evidence would be found on the premises of the business
14  located at 1915.  Therefore, there's adequate probable cause
15  to issue a search warrant.  The court will issue it and --
16  when were you planning to do this?  It's --
17       THE WITNESS:  The residence --
18       THE COURT:  That part of it is not checked.
19       THE WITNESS:  Oh, sorry.
20       MS. CRAIL:  Officer -- Judge, I believe --
21  BY MS. CRAIL:
22  Q    Investigator Carson, the -- you actually have an
23       investigator basically sitting on the resi -- or the
24       business --
25  A    Yes.
```

```
 1  Q     -- as it were, to ensure that nothing gets moved or --
 2  A     Yes, we have --
 3  Q     -- destroyed at this point?
 4  A     We have an investigator on-scene right now.
 5  Q     So you expect as soon as the warrant is issued that
 6        you'll be able to go and serve it?
 7  A     Yes, that's correct.
 8        THE COURT:  So I'll just check the top one within two
 9  days, then, put that?
10        MS. CRAIL:  I would say that would be safe, Judge.
11  BY MS. CRAIL:
12  Q     Unless you want your investigator to sit there for two
13        days.
14  A     No.
15        THE COURT:  And I'll check between the hours of 7:00 a.m.
16  and 10:00 p.m.  Do you think you'll -- you'd be able to
17  conduct a search within --
18        THE WITNESS:  Yes, Your Honor.  We believe we'd be able
19  to finish by then.
20        THE COURT:  Okay.
21        (Whispered conversation)
22        THE COURT:  And the court has reviewed attachment A,
23  which is related to cocaine in regards to controlled
24  substances and paraphernalia, controlled substances, packaging
25  material, items relating to illegal transactions, items
```

```
 1  showing ownership, possession, and control, items showing
 2  identity, persons on premises to be searched, forfeitable
 3  firearms and money.  And the court is attaching attachment A
 4  to the search warrant as well as attachment -- it's also
 5  labeled attachment A, marijuana.  I'm going to make that
 6  attachment B --
 7         MS. CRAIL:  Yes, sir, that should be a B.
 8         THE COURT:  -- for marijuana, and I'm interlineating
 9  that, and I have reviewed -- that is a two-page attachment.  I
10  have reviewed all the items listed on that, and I am making
11  that part of the search warrant as well.  Anything else?
12         MS. CRAIL:  No, sir.  I think that's fine.
13         THE COURT:  All right.  Thank you.  And you will give him
14  co --
15         (Off record)
16  [4:35:00]
17                      - END OF PROCEEDING -
18                           CERTIFICATE
19  I certify that the foregoing is a correct transcript from the
    electronic sound recording of the proceedings in the above-
20  entitled matter.
21         COPY
    _____         _____
22  M. Gaylene Larrecou, Transcriber          Date
    United States Court Approved
23  AAERT Certified #00285
24
25
```