**COPY**

FILED

FEB 9 2007

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF ALASKA

3   UNITED STATES OF AMERICA,      )   Case 4:05-cr-00042-01-RRB
                                   )
4            Plaintiff,            )   Fairbanks, Alaska
                                   )   Tuesday, August 1, 2006
5        vs.                       )   9:01 o'clock a.m.
                                   )
6   JASON SCOTT COLETTE,           )
                                   )
7            Defendant.            )
    _____)   **TRIAL BY JURY - 1ST DAY**

8
                    **VOLUME 1**
9
              **TRANSCRIPT OF PROCEEDINGS**
10
        BEFORE THE HONORABLE RALPH R. BEISTLINE
11              UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiff:        BRYAN SCHRODER, ESQ.
                              Assistant U.S. Attorney
14                            U.S. Attorney's Office
                              222 West 7th Avenue, #9, Room 253
15                            Anchorage, Alaska  99513-7567
                              (907) 271-5071
16
    For the Defendant:        REX LAMONT BUTLER, ESQ.
17                            Rex Lamont Butler and Associates, Inc.
                              Signature Building
18                            745 West 4th Avenue, Suite 300
                              Anchorage, Alaska  99501
19                            (907) 272-1497

20  For Eugene Johnson:       MICHAEL BIDERMAN, ESQ.
                              Assistant Public Defender
21                            Alaska Public Defender Agency
                              529 5th Avenue, Suite 1
22                            Fairbanks, Alaska  99701
                              (907) 458-6800
23

24

25



1    APPEARANCES (Continued):

2    Court Recorder:              ROBIN M. CARTER
                                  U.S. District Court
3                                 222 West 7th Avenue, #4, Room 229
                                  Anchorage, Alaska  99513-7564
4                                 (907) 677-6127

5    Transcription Service:      A & T Transcripts
                                  2517 Shady Ridge Drive
6                                 Bedford, Texas  76021
                                  (817) 685-7556
7

8    Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1         **FAIRBANKS, ALASKA - TUESDAY, AUGUST 1, 2006**

2

3     (Call to Order of the Court at 9:01 a.m.)

4     (Defendant present; panel not present)

5        THE CLERK:  -- R. Beistline presiding.  Please be

6 seated.

7        THE COURT:  Good morning.  Are we all ready to go?  Mr.

8 Butler, are you ready?

9        MR. BUTLER:  Judge, yes, sir.  Let me first apologize

10 to the Court.  For some reason, we had this down for 9 o'clock,

11 and I think --

12        THE COURT:  Okay.

13        MR. BUTLER:  -- what probably happened is, as you know,

14 most of the trials in Anchorage start at 9.  So when they had

15 federal trial on my --

16        THE COURT:  They just put 9 o'clock.

17        MR. BUTLER:  Yeah, they put 9 o'clock by mistake.

18        THE COURT:  Well, that --

19        MR. BUTLER:  -- but I'll be here by 8:30 tomorrow

20 morning --

21        THE COURT:  Okay.

22        MR. BUTLER:  -- I'm sorry, if that's --

23        THE COURT:  Well --

24        MR. BUTLER:  -- when you start.

25        THE COURT:  Well, what we do is we -- on the first day

1  of trial, we meet at 8:30 to do preliminary things, and then we

2  bring --

3          MR. BUTLER:  Okay.

4          THE COURT:  -- jury selection at 9.  And then -- we may

5  start at 9 tomorrow.

6          MR. BUTLER:  Oh, okay.

7          THE COURT:  Yeah, just --

8          MR. BUTLER:  Thank you, Judge.  I -- again, I apologize

9  to --

10          THE COURT:  Okay.

11          MR. BUTLER:  -- everyone who had to wait.

12          THE COURT:  Okay.  So how are things going from the

13  government's perspective?

14          MR. SCHRODER:  Fine, Your Honor.  We're ready to go.  I

15  mean, we've got a few preliminary matters I think --

16          THE COURT:  That's what I meant.  What are they?

17          MR. SCHRODER:  -- we need to take up.  Number 1 -- and

18  Mr. Butler and I haven't had a chance to finalize yet, but we

19  had talked about a stipulation on the expert witnesses.  Two of

20  the --

21          THE COURT:  What does that mean?

22          MR. SCHRODER:  -- the two experts from the ATF lab.

23          THE COURT:  Meaning as to what they would say?

24          MR. SCHRODER:  Well, I've got them written, the

25  stipulations of fact at this point.  We haven't --

1          THE COURT:  Okay.

2          MR. SCHRODER:  -- had a chance to confer on exactly

3     what --

4          THE COURT:  Okay.

5          MR. SCHRODER:  -- the final version will be.  I just

6     wanted to let you know that we don't intend to call the drug

7     expert from DEA or the firearms expert from ATF.

8          THE COURT:  So you're going to have something you're

9     going to read into evidence, then?

10          MR. SCHRODER:  Right.

11          THE COURT:  Okay.

12          MR. SCHRODER:  Right.  And then I had -- what I'll -- I

13     planned on doing was preparing a jury instruction to go along

14     with that.

15          THE COURT:  That I read at the time of the stipulation

16     or that goes into the --

17          MR. SCHRODER:  No, at the time --

18          THE COURT:  -- packet?

19          MR. SCHRODER:  -- during -- just --

20          THE COURT:  Okay.

21          MR. SCHRODER:  -- as a reminder during jury

22     instructions.

23          THE COURT:  Okay, very well.

24          MR. SCHRODER:  So that's my intent.  But Mr. Butler and

25     I, like I say, haven't had a chance to finalize --

1          THE COURT:  Okay.

2          MR. SCHRODER:  -- exactly what it'll say yet, but --

3          THE COURT:  All right.  Well, you've got all -- you've

4     got till midnight tonight, okay.  All right.

5          MR. SCHRODER:  Well, we want to get it before that --

6          THE COURT:  Before -- you can --

7          MR. SCHRODER:  -- but --

8          THE COURT:  -- get wait -- I don't care.  You can do it

9     sooner.

10         MR. SCHRODER:  Yes, sir.  I just wanted to -- the Court

11    probably saw this, and I'm -- it's my turn to apologize to the

12    Court.  I filed forfeiture jury instructions yesterday.

13         THE COURT:  Okay.

14         MR. SCHRODER:  I was unaware until over the weekend

15    that I even needed forfeiture -- I've never done a case that

16    had criminal forfeiture counts.  I wasn't aware that we needed

17    those, but --

18         THE COURT:  Okay.

19         MR. SCHRODER:  -- the -- our forfeiture folks down in

20    our office in Anchorage sent me instructions.  I tailored them.

21    I filed them yesterday.

22         THE COURT:  Okay, well, what does the issue -- I mean,

23    why would -- tell me about that, about forfeiture.  I don't

24    know why we would -- the jury has to find forfeitures?

25         MR. SCHRODER:  That's what I understand, Your Honor.

```
 1              THE COURT:  Okay.

 2              MR. SCHRODER:  This is new to me too.

 3              THE COURT:  All right, I'll look at that.

 4              MR. SCHRODER:  So I just want to let you be aware.  I

 5    apologize --

 6              THE COURT:  Okay.

 7              MR. SCHRODER:  -- that they didn't get done last week

 8    at the normal time, but I just wasn't aware.

 9              THE COURT:  Okay, all right.  What else?

10              MR. SCHRODER:  And then I think the last two things --

11    we did ask in our trial brief for our motion in limine for the

12    defense not to discuss penalties --

13              THE COURT:  That's --

14              MR. SCHRODER:  -- you know, the --

15              THE COURT:  That's granted.  That's --

16              MR. SCHRODER:  Okay.

17              THE COURT:  Mr. Butler wouldn't do that.

18              MR. SCHRODER:  And I -- I'm not -- I don't think Mr.

19    Butler would do that --

20              THE COURT:  He's a very --

21              MR. SCHRODER:  -- anyway, but --

22              THE COURT:  -- professional attorney.  He wouldn't do

23    any of those things --

24              MR. SCHRODER:  Yes, so --

25              THE COURT:  -- inappropriately.
```

```
 1           MR. BUTLER:  And I wouldn't.  But may I comment on that
 2   one point, Judge?
 3           THE COURT:  Yes.
 4           MR. BUTLER:  Would I be allowed to discuss the
 5   penalties that the -- if someone who testifies is faced -- was
 6   facing certain penalties that would have an impact on what they
 7   would say, their bias, their motivate to fabricate?
 8           THE COURT:  He's talking about penalty your client
 9   faces.
10           MR. BUTLER:  Right.  Well, I wouldn't discuss that,
11   but --
12           THE COURT:  But in terms of other context, if -- for
13   impeachment purposes --
14           MR. BUTLER:  Yes, sir.
15           THE COURT:  -- it's probably appropriate.
16           MR. BUTLER:  Okay.
17           THE COURT:  But I don't think that was what Mr.
18   Schroder was talking about.
19           MR. BUTLER:  Right.  And I --
20           MR. SCHRODER:  No, no.  My motion had to do with the
21   penalties facing the defendant --
22           THE COURT:  Obviously that motion --
23           MR. SCHRODER:  -- because of these charges.
24           THE COURT:  -- is granted.
25           MR. BUTLER:  Right.
```

1          MR. SCHRODER:  Yes, sir.

2          THE COURT:  Okay.  Yes.

3          MR. SCHRODER:  And I think last was the defense's

4    motions on expert testimony by the two law enforcement agents.

5          THE COURT:  Right.  What about that?

6          MR. SCHRODER:  So I just --

7          THE COURT:  Okay.

8          MR. SCHRODER:  -- raise that and wonder what -- where

9    the Court wants to go, what --

10         THE COURT:  Okay.  All right.  Mr. Butler, your turn.

11         MR. BUTLER:  Thank you, Judge.  I'd like to make one

12   more -- one comment on the expert witness thing.  Last night --

13   I was kind of in a hurry to catch that plane, obviously -- but

14   it's my understanding there's a case out there that maybe we

15   should be familiar with.

16         THE COURT:  Okay.

17         MR. BUTLER:  I'm at the Best Value Inn.  That's the

18   only place I could find for four nights.  So --

19         THE COURT:  What's the case?

20         MR. BUTLER:  It's *Rios*, Judge.  I would have tried to

21   find it last time I got here, but they don't have Internet.

22         THE COURT:  We can chase it down.  Give me the cite.

23         MR. BUTLER:  Judge, I have what is called Case of the

24   Week.

25         THE COURT:  Oh.

1          MR. BUTLER:  It's -- and it says:  Last week in *Rios*,

2    R-i-o-s, the Ninth, Berzon, rejected government expert

3    testimony as sufficient (indiscernible) 924(c) conviction, see

4    blog.  So I had -- I've got to get to the Ninth Circuit blog to

5    pull this *Rios* case.  And it appears to me that that case would

6    have come out probably the first week of June or the last week

7    of May --

8          THE COURT:  Okay.

9          MR. BUTLER:  -- of this year.

10          THE COURT:  And what's it say?

11          MR. BUTLER:  Well, it's a -- the -- it -- what I have

12    here --

13          THE COURT:  Yeah.

14          MR. BUTLER:  -- is just a small --

15          THE COURT:  Okay.

16          MR. BUTLER:  -- summary.  And that basically it goes to

17    guns and drugs.  It's on the Ninth Circuit blog, was all I

18    have.

19          THE COURT:  Okay, let me see.  Can you give me any more

20    hints?  I'll try and have someone chase it down.

21          MR. BUTLER:  Judge, it just says --

22          THE COURT:  Ninth Circuit blog, this came out in --

23          MR. BUTLER:  It would have been the last week of May or

24    the --

25          THE COURT:  And --

1          MR. BUTLER:  -- first week of June of this year.

2          THE COURT:  And the defendant was someone named R-i-o-

3  s?

4          MR. BUTLER:  Yes, sir.  And it's Ninth Circuit case --

5          THE COURT:  Okay.

6          MR. BUTLER:  -- authored by --

7          MR. SCHRODER:  Your Honor --

8          MR. BUTLER:  -- Justice Berzon.

9          MR. SCHRODER:  -- give me just a second.  I think I

10  have that, if I have that folder with me.

11          THE COURT:  Okay.

12          MR. BUTLER:  I would have probably attempted to cite

13  that, but --

14          THE COURT:  Well, we --

15          MR. BUTLER:  -- it just came to my attention yesterday.

16          THE COURT:  That's fine.  Okay, next subject while

17  we're looking for that.  You're having someone chase down that

18  case, is that what you're doing?

19          MR. SCHRODER:  We are, Your Honor.  I --

20          THE COURT:  Okay.

21          MR. SCHRODER:  I believe I have it in my file in the

22  office, so --

23          THE COURT:  Okay.  All right.  Mr. Butler, next

24  subject.

25          MR. BUTLER:  Judge, we objected -- we object to the

*A & T TRANSCRIPTS*
*(817) 685-7556*

1   government calling an agent to specifically testify that drug

2   dealers have guns around to protect the corpus, because we

3   believe that at least for Alaska, that that violates my

4   client's confrontation rights.  Because if he's going to make

5   this kind of a, quote, unquote, expert assertion, then we'd

6   like to see some statistics or some reports that discuss what

7   happens in Alaska versus the Lower 48.  Because in Alaska, lots

8   of people, as the Court knows, have guns in their houses, and

9   doesn't mean that the guns are associated in any way with any

10  wrongdoing.  People who commit certain offenses may have guns

11  in their houses, just like people who don't commit offenses.

12  And so we submit that it sort of applies a Lower 48 standard to

13  a community that has a different standard and different view of

14  guns.  There certainly are states and communities in the Lower

15  48 where, you know, it's -- it takes an act of Congress to own

16  a firearm, but that's not the case here.

17          And so if that's not taken into consideration in

18  whatever statistics that the alleged expert intends to testify

19  about, then we submit that it doesn't even comport with

20  scientific testimony wherein you have to try to educate a jury

21  so they understand a complex issue.  And so we would object to

22  the use of an expert for that purpose, Judge.

23          THE COURT:  Okay.  Mr. Schroder.

24          MR. SCHRODER:  Your Honor, as the government stated in

25  our opposition, the witnesses in this case will be testifying

1  based upon their, you know, technical or other specialized

2  knowledge, not based on scientific evidence.  They're

3  testifying from their law enforcement experience --

4      THE COURT:  So they're going to testify based on

5  knowledge and experience.

6      MR. SCHRODER:  Correct.

7      THE COURT:  And they're not going to give an ultimate

8  opinion, are they?

9      MR. SCHRODER:  They will not --

10     THE COURT:  And they're not --

11     MR. SCHRODER:  They will not give an ultimate opinion

12 on anything related to weapons.

13     THE COURT:  They certainly cannot say, I believe that

14 that machine gun was kept in furtherance of the --

15     MR. SCHRODER:  Yeah.

16     THE COURT:  -- drug (indiscernible) --

17     MR. SCHRODER:  And they will not say -- although I want

18 to make clear, my intention with the law -- or with the DEA

19 agent is to ask him about --

20     THE COURT:  Was this a machine gun.

21     MR. SCHRODER:  No, but with drugs, is whether what we

22 saw in the residence consistent with a drug distribution

23 operation.

24     THE COURT:  That's probably okay as -- if it doesn't go

25 any further than that, but I think --

1-14

1          MR. SCHRODER:  Won't go any farther than that, and --

2          THE COURT:  I think that if Mr. Butler wants, though,

3   he can have voir dire outside the presence of the jury so we

4   can make sure we got it --

5          MR. SCHRODER:  Right.

6          THE COURT:  -- refined.  And maybe this case

7   everybody's chasing down will give us some insights --

8          MR. SCHRODER:  Right.

9          THE COURT:  -- on that.

10         MR. SCHRODER:  But no, they -- neither agent will

11  testify as to any ultimate conclusion about what --

12         THE COURT:  Okay.

13         MR. SCHRODER:  -- the defendant intended his guns for.

14         THE COURT:  All right.  So the record is clear, there's

15  a motion to strike government's notice of experts, and that's

16  denied.  That seems to me that it was something that wasn't

17  shocking or unexpected.  And I don't see any prejudice as a

18  result of that.  Then you've got the defendant's motion to

19  exclude expert opinion concerning the gun and I want to hear

20  exactly what the questions are going to be before I finally

21  rule on that.  But it's clear that there can't be testimony as

22  to the ultimate question.  On the other hand, I do agree with

23  the government.  I'm not sure that this falls within the

24  category of expert testimony as much as professionals

25  testifying based on knowledge and experience.  What else do we

1  have to do?

2        MR. SCHRODER:  And if I could -- Your Honor, I do have

3  that case.  I believe it's the same case, *Rios*.

4        THE COURT:  Okay.

5        MR. SCHRODER:  The cite for that is 449 F.3d --

6        THE COURT:  Okay.

7        MR. SCHRODER:  -- 1009.  I had trouble pulling it up

8  under that, though, so if I could give you the Lexis.

9        THE COURT:  Okay.

10        MR. SCHRODER:  I have a -- I got it off Lexis.  2006

11  U.S. App., Lexis --

12        THE COURT:  Okay.

13        MR. SCHRODER:  -- 13765.

14        THE COURT:  What does it say?

15        MR. SCHRODER:  Let me take just a moment here, Your

16  Honor, and I'll take a look.

17        THE COURT:  How's the jury doing, by the way?  Are they

18  checked in?

19        THE CLERK:  They're still working on it.

20        THE COURT:  Still working on it, okay.

21        MR. SCHRODER:  It goes to the issue, and I think it's

22  consistent with Ninth Circuit law, Your Honor, that --

23        THE COURT:  Okay.

24        MR. SCHRODER:  -- evidence of owning a gun -- being a

25  drug dealer and just owning a gun is not sufficient to make a

1   924(c) charge.  So you have to have --

2           THE COURT:  True.

3           MR. SCHRODER:  You have to connect it somehow better

4   than that.

5           THE COURT:  And we can maybe even get a jury

6   instruction, if Mr. Butler wants to draft it, in -- saying that

7   very thing.

8           MR. SCHRODER:  It's actually -- that very thing is in

9   my jury instruction --

10          THE COURT:  Okay.  Okay.

11          MR. SCHRODER:  -- for this charge.

12          THE COURT:  Well, then good.  All right.

13          MR. SCHRODER:  So I -- and I -- obviously Mr. Butler

14   can read it, and if --

15          THE COURT:  Sure.

16          MR. SCHRODER:  -- he has another interpretation.  I'm

17   just looking at my highlights --

18          THE COURT:  If you can give --

19          MR. SCHRODER:  -- here.

20          THE COURT:  If you can give him a copy of that before

21   the end of the day, that would --

22          MR. SCHRODER:  We'll have it made right now, so --

23          THE COURT:  Okay.  All right.  Anything else, Mr.

24   Butler?

25          MR. BUTLER:  Well, I'm just hoping we won't need that

1  jury instruction after that Rule 29 motion's got to be made.

2        THE COURT:  Well, you know, but you always got to

3  consider all options.

4        MR. BUTLER:  I understand, Judge.

5        THE COURT:  Okay.  All right.  So, Mr. Butler, we

6  typically pick the alternates randomly.  At -- is that all

7  right with you?

8        MR. BUTLER:  Yes, sir, Judge.

9        THE COURT:  Is that all right with the government?

10        MR. SCHRODER:  That's fine, Your Honor.

11        THE COURT:  So basically -- and I go with two

12  alternates.  So what we'll do is we'll pick 14 jurors.  We will

13  not identify who the alternate is until the trial's over, and

14  then we'll put all 14 names in our spindle, pull two names, and

15  those two will be the alternates.  And I hear no objection to

16  that procedure.  That means that the government will get seven

17  peremptory challenges and the defense will get 11 peremptory

18  challenges.  Any questions about that so far?

19        MR. BUTLER:  No, sir.

20        THE COURT:  Okay.  I have a fairly thorough voir dire

21  that I do that generally satisfies everybody.  If I overlook

22  anything, I give counsel, say, 10 minutes or so to pick up

23  anything that I missed, so that you -- the last several trials

24  no one has asked any questions at that point.  But I'll give

25  each side up to 10 minutes if there's something you want to

1  pick up on after I've questioned the jury before you exercise

2  your finally -- final preempts.

3      So, Mr. Colette, do you have any questions about

4  anything in terms of the procedure?  Basically, you're going to

5  sit there.  The jurors are going to to come in, the room's

6  going to be full of people.  We're going to pick the jurors.

7  If you have any questions, you've got a notepad.  Any things,

8  you just keep your attorney notified as to anything you have in

9  mind.

10      There'll be times that we will approach the bench for

11  discussions.  Typically, you can just stay there unless your

12  attorney feels that you should be there, and then he'll notify

13  us.  The only negative about you coming up is typically the

14  Marshal comes up, and sometimes people would rather not have

15  that.  But if for some reason your attorney feels you need to

16  be involved in whatever the discussion is at the bench, he'll

17  tell us and we'll permit that.  All right?

18      THE DEFENDANT:  Thank you for explaining, Your Honor.

19      MR. BUTLER:  And what I would generally do in that

20  case, Judge, just to -- I don't want the jury to get a inkling

21  that my client's in custody -- is I'll explain to him once I

22  come back --

23      THE COURT:  Sure.

24      MR. BUTLER:  -- what the discussion's about.

25      THE COURT:  Right.  And we'll give you as much time to

1  do whatever you want in that regard.

2          MR. BUTLER:  Thank you, Judge, so --

3          THE COURT:  There's no -- we're not under a time bind.

4  So if a party needs a few minutes to talk, we certainly can

5  provide that.  Trying to think if there's any -- oh, Mr.

6  Colette, you have a right to testify during trial.  Do you

7  understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You need to talk to your attorney about

10 whether or not you're going to testify.  Obviously you want to

11 consider counsel's advice, but ultimately the final decision as

12 to whether or not you testify is your decision.  And you have

13 to make that decision before your -- you -- your attorney is

14 through with his case.  You can't --

15         THE DEFENDANT:  Okay.

16         THE COURT:  -- decide later on after the case has gone

17 to the jury that you wanted to testify or anything like that.

18 Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And if you decide to testify, you're

21 treated like any other witness.  If you decide not to testify,

22 we tell the jury they can't hold that against you.  Okay?

23         THE DEFENDANT:  Thank you, sir.

24         THE COURT:  It's a constitutional right that we have.

25 All right.  Jurors are still checking in, so we have a little

1  time.  Are the -- we got them all now?

2          THE CLERK:  Uh-huh (affirmative).

3          THE COURT:  Okay, we have all the jurors.  Mr.

4  Schroder, I'm just going to have you introduce the people with

5  you at your table at the -- at that time.  There will be a

6  time, Mr. Colette, when I introduce you and then I'll introduce

7  your attorney it -- just to the panel, and you can stand up

8  and -- you don't say anything but -- if you want.  You can do

9  whatever you want in that regard.  Okay, anything about -- Mr.

10  Butler, you have a question?

11          MR. BUTLER:  Judge, yes.  I just -- is it all right if,

12  when you introduce us, we say, "Good morning"?

13          THE COURT:  You can say, "Good morning."

14          MR. BUTLER:  Okay.

15          THE COURT:  Okay.

16          MR. BUTLER:  And how about Mr. Colette?

17          THE COURT:  I've never had a defendant say, "Good

18  morning" before.

19          THE DEFENDANT:  I'm an awfully nice guy.

20          THE COURT:  Yeah, I -- I'm sure.

21          MR. BUTLER:  Does that mean --

22          THE COURT:  He can smile.

23          MR. BUTLER:  All right.

24          THE COURT:  Counsel can each say, "Good morning."

25          MR. BUTLER:  Okay.

1          THE COURT:  No one else at the table can say anything,

2    but people can smile whenever they want, how about that?

3          MR. BUTLER:  Thank you.

4          THE COURT:  Is that fair?

5          MR. BUTLER:  Thank you.  Yes, sir.

6          THE COURT:  Okay.  Well, I'm about ready to bring the

7    whole jury in.  I might let the -- our friends here in the

8    center here with the pink and the -- this room is going to be

9    full of people, so it would be better if you got at one edge or

10   something.

11         UNIDENTIFIED SPEAKER:  We're going to move them out,

12   Your Honor, until they get the jury in (indiscernible)

13         THE COURT:  Okay.  And then you can take an empty seat

14   afterwards.  Because this room is going to fill up with people,

15   okay?  All right, what -- we've got this case.  Once we start,

16   we go pretty quick.  Are -- the jurors are ready?

17         THE CLERK:  Yes, sir.

18         THE COURT:  Okay, counsel, are you paying -- I'm going

19   to bring the jury in now.

20         MR. SCHRODER:  Yes, sir.

21         MR. BUTLER:  Okay.

22         THE COURT:  Okay, here we go.

23     (Side conversation)

24         THE COURT:  And let me just advise counsel that if you

25   want to speak with your client or with your -- whatever, if you

1  just push this thing on the -- you see how I'm talking and I

2  push this, and you can't hear me?  See how it works?

3          MR. BUTLER:  Right.

4          THE DEFENDANT:  That's a mute button?

5          THE COURT:  It's a mute button.

6          THE DEFENDANT:  Okay.

7          THE COURT:  And you can see the green light's on, and

8  then you push the button, this goes off.

9      (Side conversation)

10      (Panel present at 9:19 a.m.)

11          MR. BUTLER:  Judge, may we approach?

12          THE COURT:  Yes.

13  09:19:24

14      (At sidebar with the Court and counsel - proceedings

15  indiscernible)

16  09:20:09

17          THE COURT:  We all here?

18          UNIDENTIFIED SPEAKER:  I hope so.

19          THE COURT:  It looks like a good group of people.  We

20  got -- there we go, one more.

21          UNIDENTIFIED SPEAKER:  There's a seat here, sir, if you

22  like.

23          THE COURT:  Okay.  Looks like we've got the whole

24  group.  Good morning, ladies and gentlemen.  How are you?

25  Well, good, you look good.  Well, my name's Judge Beistline.

1   And as you know, you've each been summoned here to serve as

2   prospective jurors in a criminal case that's *United States of*

3   *America v. Jason Colette*.  Roll call has previously been taken.

4   We're -- we don't have to do that now.

5          Before we get into this, you'll see things move fairly

6   quickly, but I just want to, just on a personal basis, thank

7   you for being here.  I know summertime in Alaska, you've got

8   lots of things you can do or would -- with your time, and I

9   appreciate that.  But, you know, our system of justice depends

10  so much on citizen jurors.  I mean, it just is critical to our

11  system from both the government's side and from the defendant's

12  side.  And so we just want to really express our appreciation

13  for you taking the time to be here and to do your civic duty.

14  We expect to have it all done by the end of the week.  It's not

15  one of those trials that's going to go on for months.  But I do

16  want to express my appreciation.

17         Typically, our trial day goes from 8:30 or 9 until

18  about 4:30 in the afternoon.  We take about an hour lunch,

19  sometimes an hour and a half, depending on the circumstances.

20  The trial, like I said, will be done Thursday or Friday of this

21  week.  And that's just a -- basically an educated guess.

22         It's -- as I said, it's a criminal case, and so the

23  government is here with counsel.  And Mr. Schroder is going to

24  be representing the government.  And, Mr. Schroder, if you'll

25  introduce the gentleman at your table, please.

1          MR. SCHRODER:  I will.  Your Honor, at counsel table

2    with me is Special Agent Mike Foran from the Drug Enforcement

3    Administration, Special Agent Eric Cohoon, from the Bureau of

4    Alcohol, Tobacco, Firearms, and Explosives, and Ann Graham (ph)

5    is a student intern working with us this morning.

6          THE COURT:  All right, very good.  And -- thank you.

7    And the defendant in this case is the gentleman to my right.

8    Mr. Colette, you can stand if you would like.  And he's

9    represented by Mr. Rex Butler.

10          MR. BUTLER:  Thank you.  And good morning, ladies and

11   gentlemen.

12          THE COURT:  And those are the parties involved in the

13   case.  Let me tell just a little bit about the case.  I pick

14   jurors pretty quick -- the jury pretty quickly.  In the old

15   days, we used to take two or three days just to pick the jury.

16   Now we do it in, like, three hours.  And we'll be into the

17   trial today.

18          But let me tell you a little bit about how we proceed.

19   We try cases throughout the state and we do it the same way.

20   We pick the jurors the same way.  And so we follow a script.

21   And you'll notice from time to time I'm referring to a script,

22   and the reason I do that is to make sure that I remember to

23   do -- follow the rules here as we do everywhere else.  And so

24   I'll refer to the script now for a moment.

25          So the trial in this case will be conducted in

1  accordance with established rules.  The judge is like a referee

2  and enforces the rules and determines what law is to be applied

3  to the case and what evidence may be admitted.  The respective

4  attorneys present the evidence according to these rules.  It is

5  the function of the jury to decide the facts, the credibility

6  of the witnesses, and the weight to give to witnesses'

7  testimony and to render a just verdict if you are able.  It

8  will be the jury's sworn duty to accept the law as given to you

9  by the judge and apply the facts as you find them to that law.

10 As the trial proceeds, I will explain this in more detail as

11 well as explain more fully the procedure that is followed and

12 the order of the trial.

13         Now, in this particular case, the defendant has been

14 charged by way of an indictment.  And the charge is basically

15 possession with intent to distribute cocaine, and that's Count

16 1.  Count 2 is distribution of cocaine.  And Counts 3 and 4 are

17 possession of a firearm in furtherance of a drug trafficking

18 crime.  Count 1 reads as follows.  These are -- this is the

19 allegation.

20         On or about November 28, 2005, within the District of

21 Alaska, the defendant, Jason Colette, did knowingly and

22 intentionally possess with intent to distribute a controlled

23 substance, to wit, 500 grams or more of a mixture or substance

24 containing a detectable amount of cocaine, all of which is in

25 violation of Title 21 United States Code.

1          Then Count 2 reads:  On or about November 18, 2005,

2    within the District of Alaska, the defendant, Jason Colette,

3    did knowingly and intentionally distribute a controlled

4    substance, to wit, a mixture or substance containing a

5    detectable amount of cocaine, all of which is in violation of

6    Title 21 United States Code.

7          Count 3 charges that on or about November 28, 2005,

8    within the District of Alaska, the defendant, Jason Colette,

9    did knowingly and intentionally possess a firearm in

10   furtherance of a drug trafficking crime, as described in Counts

11   1 and 2 of this indictment, to wit -- and then it has the name

12   of the alleged weapons -- an Ingram Model 10A1 .45-caliber, .9-

13   millimeter machine gun -- it has the serial number here -- with

14   a silencer.  And then it alleges a Bowers .9-millimeter

15   suppressor, Model CAC9, it has a serial number written -- all

16   of which is in violation of Title 18 United States Code.

17         And then Count 4 alleges that on or about November 28,

18   2005, within the District of Alaska, the defendant, Jason

19   Colette, did knowingly and intentionally possess a firearm in

20   furtherance of a drug trafficking crime, as charged in Counts 1

21   and 2 of this indictment, and then it lists a series of 12

22   different alleged firearms.  And you'll have all this evidence

23   before you at one time or another, possibly.  But these are

24   just the allegations.  And those are the charges that you're

25   here to decide.

1          Now, an indictment is only a formal method of accusing

2     the defendant of a crime.  It is not evidence of any kind

3     against the accused and does not create any presumption or

4     permit any inference of guilt.  It is merely an allegation of

5     the charge or charges against the defendant and informs the

6     defendant of the specific crime or crimes with which he is

7     charged.  The fact that an indictment has been filed against

8     the defendant may not be considered by you for any purpose and

9     is not evidence in the case and should not be considered as

10    such by you.

11         To the charge contained in the indictment, the

12    defendant has pled not guilty.  This plea of not guilty places

13    upon the government the burden of proving beyond a reasonable

14    doubt all of the material allegations and essential elements of

15    the crime charged.

16         Okay.  Now I'm going to move on to the next stage of

17    this process.  We will now proceed to the selection of the

18    trial jury in this case.  This is a crucial stage in a trial,

19    since it is important to both sides that they have an impair --

20    a fair and impartial jury.  Both the government and the

21    defendant are entitled to jurors who approach this case with

22    open minds and agree to keep their minds open until a verdict

23    is reached.  Jurors must be as free as humanly possible from

24    bias, prejudice, or sympathy, and must not be influenced by

25    preconceived ideas as to the facts or as to the law.

1          In this case, the jurors will be composed of 12

2   person -- 12 persons and an alternate.  In other words,

3   there'll be 14 people in the box, two of whom will be

4   alternates.  However, we don't pick the alternates until the

5   trial is over, so no one knows who the alternates is.  In fact,

6   we don't know who the alternate -- the way we pick the

7   alternates is we put the 14 names in our spindle, give it a

8   crank of a yank, pick out two names, and those are the

9   alternates.  And it seems like a good, fair way of doing it.

10         So any questions so far?  Have you all been able to

11  hear me?

12         PANEL MEMBERS:  Yes.

13         THE COURT:  Have I been talking too fast?

14         PANEL MEMBERS:  No.

15         THE COURT:  Okay.  All of these instructions eventually

16  will be typed up and will be in -- available in the hands of

17  the jurors. You don't have to remember -- you try to remember,

18  but you don't have to remember everything we say.  This is just

19  your first exposure to what's going on.

20         Okay, so what we're going to do is we're going to have

21  some general questions for you to determine if there's any

22  reason why any one of you should not serve on this jury.  And

23  this is an important stage, and so we'll do this -- the

24  questions have to be under oath, and so if you'll stand, I'll

25  have my clerk administer the oath.

 1         THE CLERK:  If everyone could raise your right hands,

 2  please.

 3              **JUROR QUALIFICATION OATH ADMINISTERED**

 4         THE CLERK:  Please be seated.

 5         THE COURT:  Okay.  Just a technical question for my

 6  clerk.  Is the microphone outside here?

 7         THE CLERK:  There's two --

 8         THE COURT:  I mean, for that mic, but if we need a

 9  bench conference?

10         THE CLERK:  Sidebar, it'll be on that one.

11         THE CLERK:  Okay.  Okay.  These questions that I'm

12  going to ask -- that -- we ask in every case, okay, and

13  sometimes they're pretty simple and straightforward and you can

14  just deal with them there, sometimes we want -- you might want

15  to come forward and we go step outside and we do it in

16  confidence, and that's just the way we do it.  And by the

17  time -- and within a few minutes, you'll all feel so

18  comfortable with the procedure, you won't even worry about it.

19  The first person, though, to say, "I want to step back here,"

20  is the one with all the nerve.  After that everyone does it and

21  there's no problem.  Okay?

22         Okay, the questions start off pretty easy and then get

23  a little more complicated.  Question number 1.  Are you ready?

24  Is there any one of you who is not a citizen of the United

25  States?

1          Question number 2.   Is there any one of you who is not

2   18 years of age or older?

3          Question number 3.   Is there any one of you who is not

4   in possession of a sound mind?   Now, remember, you're under

5   oath, okay?

6          Question number 4.   Is there any one of you who is not

7   in possession of all your natural faculties?   That is the

8   ability to hear or to see or those kind of things, that we

9   should know about, because we have systems that will help

10  hearing and those kind of things.   Everyone okay in that

11  regard?

12         Question number 5.   Is there any one of you who is

13  unable to either read or speak the English language?

14         Question number 6.   Is there any one of you who is

15  currently on probation in either state or federal court?

16         Question number 7.   Is there any one of you who

17  currently has criminal charges pending against you or is in a

18  dispute with the federal government?   Must be somebody.   Aha.

19  So just -- why don't we just come here and you just tell us

20  what it is real quick and we'll go on.   Okay?   Counsel.   Just

21  come right on through and right on down and --

22       (At sidebar with the Court and counsel)

23         JUROR NO. 1:   Hi.

24         THE COURT:   I got to find it (indiscernible).   Oh,

25  okay.   All right, ma'am.   If you will just give your name,

1    please.

2            JUROR NO. 1:  (Juror states name).

3            THE COURT:  (States name)?

4            JUROR NO. 1:  Uh-huh (affirmative).

5            THE COURT:  And what's the concern?

6            JUROR NO. 1:  I think it's the question before.  I --

7    I'm on probation for another month --

8            THE COURT:  Okay, and --

9            JUROR NO. 1:  -- for -- I had a DUI in March of last

10   year.

11           THE COURT:  Okay.

12           JUROR NO. 1:  So I'm just on probation for one other

13   month.

14           THE COURT:  You got one more month, and then you're a

15   free lady.

16           JUROR NO. 1:  Yeah.  So that's --

17           THE COURT:  Okay.  That precludes you.

18           JUROR NO. 1:  -- (indiscernible) the first question.

19           THE COURT:  Yeah.  That's good.

20           JUROR NO. 1:  And I -- I don't have anything pending.

21           THE COURT:  Okay.  But I think the -- I think you're

22   precluded just because of that.  You're on probation.  And --

23   unless there's any objection.  Okay.  Mr. Butler, any -- I'll

24   take your word for it you're on probation.

25           JUROR NO. 1:  Yeah.  (Indiscernible) --

1          THE COURT:  Okay.  No one's going to know it, that's
2   what we -- it's good you --
3          JUROR NO. 1:  Well, it was -- it was an SIS, so --
4          THE COURT:  So you want to stay on the best behavior.
5          JUROR NO. 1:  Yes.
6          THE COURT:  Okay.  So you just go back to the clerk
7   where you are and say that you've been excused.  Okay, and
8   they'll call you back next month and you'll be free to go.
9          JUROR NO. 1:  Okay.
10         THE COURT:  Okay, thank you.
11         JUROR NO. 1:  Great.  Thank you.
12      (End of sidebar)
13         THE COURT:  Okay.  Next.  Now, this one -- of course,
14  now, this question, everyone's -- some people are going to have
15  to respond.  You can either go to the microphones there or we
16  can step in the back here, okay?  Don't be embarrassed if you
17  have to step in back.  It's easy.  There's no -- nothing
18  painful about that back room, okay?
19         Have you or anyone close to you ever been a party in a
20  lawsuit or court proceeding other than divorce, child custody,
21  or traffic-related matters?  When I use the phrase "someone
22  close to you," I'm referring to a friend or relative who is so
23  close that their relationship might affect the way you view
24  things and the decisions you make.  So have you or anyone close
25  to you ever been a party in a lawsuit or a court proceeding,

1  not counting divorce, child custody, or traffic-related

2  matters.  We just need to know who is.  Just step to the

3  microphone, give us your name, and tell us what it is, and if

4  you want to come back here, we'll just do it back here.  Yes,

5  ma'am.

6          JUROR NO. 13:  (Juror states name).

7          THE COURT:  Okay.  (States name)?

8          JUROR NO. 13:  Yes.

9          THE COURT:  Okay.

10          JUROR NO. 13:  (Juror spells name).

11          THE COURT:  All right.

12          JUROR NO. 13:  My husband's in the middle of a lawsuit.

13          THE COURT:  Okay.  Is it like a civil --

14          JUROR NO. 13:  It's not criminal, it's civil.

15          THE COURT:  Okay, it's a civil lawsuit?

16          JUROR NO. 13:  Uh-huh (affirmative).

17          THE COURT:  Is there anything about that experience one

18  way or the other that would affect your ability to be a fair

19  juror in this case?

20          JUROR NO. 13:  I don't think so.

21          THE COURT:  Well, you have to know one way or the

22  other.

23          JUROR NO. 13:  No.

24          THE COURT:  No, okay.  All right, thank you.  See, that

25  was easy.  Next.

1           JUROR NO. 16:  I'd prefer to go in the back, if

2   that's --

3           THE COURT:  Okay, let's go back here.  Counsel.

4       (At sidebar with the Court and counsel)

5           THE COURT:  Just give us your name.

6           JUROR NO. 16:  My name's (juror states name).

7           THE COURT:  Okay.

8           JUROR NO. 16:  And my son, who --

9           THE COURT:  Did you get the name, (states name)?

10          MR. BUTLER:  Okay.

11          THE COURT:  Okay, and her husband of course --

12          MR. BUTLER:  Can I get an autograph?

13          THE COURT:  And -- she hears this every

14  (indiscernible).

15          JUROR NO. 16:  No, I've never heard this.  My son's

16  involved in a court proceeding.  I don't know if it's going to

17  go to court --

18          THE COURT:  Uh-huh (affirmative).

19          JUROR NO. 16:  -- but he was charged with reckless

20  driving a couple months ago, and he's contesting that.

21          THE COURT:  Is there anything about that that would

22  affect your ability to be a fair juror in this case?

23          JUROR NO. 16:  No.

24          THE COURT:  Would you hold it against the government?

25          JUROR NO. 16:  No.

1          THE COURT:  He's -- it's a state charge, right?

2          JUROR NO. 16:  Yes.

3          THE COURT:  Okay.  Is he defended by a public defender

4  or --

5          JUROR NO. 16:  No.

6          THE COURT:  -- by a --

7          JUROR NO. 16:  He has an attorney.

8          THE COURT:  He hired an attorney?

9          JUROR NO. 16:  He did.

10         THE COURT:  Okay.  And the fact that that's going on,

11  would that anyhow come to play as you're trying to figure out

12  what's going on here?

13         JUROR NO. 16:  No, sir.

14         THE COURT:  Okay.  Any questions?

15         MR. SCHRODER:  Just, do you have any concern about how

16  the police acted in that case?

17         JUROR NO. 16:  You know, I wasn't there, but he -- he

18  felt -- felt he wasn't treated fairly.  And, you know, my

19  personal opinion is there are some great police out there and

20  some that don't do as good a job, so --

21         MR. SCHRODER:  So you wouldn't hold that against the

22  police and law enforcement officers in general?

23         JUROR NO. 16:  No.

24         MR. SCHRODER:  Okay.

25         MR. BUTLER:  No questions.  Thank you.

```
1            THE COURT:  All right.  Thank you.

2            JUROR NO. 16:  (Indiscernible).

3            THE COURT:  See, this wasn't hard, was it?

4            JUROR NO. 16:  No.

5       (End of sidebar)

6            THE COURT:  All right.  Counsel, you can stay here now.

7  The rumor that we have donuts back here is not true.

8            THE CLERK:  I'm going to have to ask everybody to be

9  quiet, because we're still recording in here too.

10      (At sidebar with the Court and counsel)

11           THE COURT:  Okay, you can just give us your name here.

12           JUROR NO. 11:  My name is (juror states name).

13           THE COURT:  Okay.

14           JUROR NO. 11:  And the reason -- my son, about seven

15  years ago, got in trouble with sexual assault.

16           THE COURT:  Okay.

17           JUROR NO. 11:  So we went through the court system.

18  And I have a niece that just got out of jail --

19           THE COURT:  Okay.

20           JUROR NO. 11:  -- on drugs.

21           THE COURT:  Okay.  Anything about that fact affect your

22  ability to be a fair juror in this case?

23           JUROR NO. 11:  No.

24           THE COURT:  You wouldn't hold it against the

25  government --
```

1          JUROR NO. 11:  No.

2          THE COURT:  -- at all?  And you understand this is not

3   that kind of --

4          JUROR NO. 11:  Yeah.

5          THE COURT:  -- this case --

6          JUROR NO. 11:  I understand.

7          THE COURT:  -- now, I don't know about the drug case,

8   but --

9          JUROR NO. 11:  But I -- I don't hold it against the

10  government either.

11         THE COURT:  You don't know much about that?

12         JUROR NO. 11:  No.

13         THE COURT:  Okay.  Now, this case does involve

14  allegations of drugs.

15         JUROR NO. 11:  Uh-huh (affirmative).

16         THE COURT:  Can you be fair to both sides?

17         JUROR NO. 11:  Yes.

18         THE COURT:  You won't hold it against the government?

19         JUROR NO. 11:  No.

20         THE COURT:  And you won't hold it against the

21  defendant?

22         JUROR NO. 11:  No.

23         THE COURT:  Here's the deal.  I tell this to all the

24  jurors.  The government has made some charges against the

25  defendant.

1          JUROR NO. 11:  Uh-huh (affirmative).

2          THE COURT:  It's the government's job to prove those

3    charges beyond a reasonable doubt.

4          JUROR NO. 11:  Yes.

5          THE COURT:  It's the jurors' job to see if they do or

6    not.

7          JUROR NO. 11:  Yes.

8          THE COURT:  Can you do that?

9          JUROR NO. 11:  Yes.

10         THE COURT:  Mr. Butler?

11         MR. BUTLER:  No questions.  Thank you.

12         THE COURT:  No questions.  Did I forget you?

13         MR. SCHRODER:  That's all right, Your Honor.  Any

14    concerns from either one of those case that you have about how

15    the law enforcement officers acted?

16         JUROR NO. 11:  No.

17         MR. SCHRODER:  Okay.  You think they acted

18    appropriately in --

19         JUROR NO. 11:  Yeah.

20         MR. SCHRODER:  -- both cases, as far as you know?

21         JUROR NO. 11:  Yeah.

22         MR. SCHRODER:  Okay.

23         THE COURT:  Okay.  Thank you.

24         JUROR NO. 11:  But I don't have any (indiscernible).

25         THE COURT:  Okay.

1      (End of sidebar)

2           JUROR NO. 24:  Yes, I was part of --

3           THE COURT:  Give us your name first.

4           JUROR NO. 24:  Oh, (juror states name).

5           THE COURT:  Okay.

6           JUROR NO. 24:  I was part of two civil lawsuits, one 35

7    years ago against a plumber and one about 30 years ago against

8    a property owner.

9           THE COURT:  Okay.  Anything about those experiences

10   that would affect your ability to be a fair juror in this case?

11          JUROR NO. 24:  No.

12          THE COURT:  Okay.  All right, thank you, sir.  Back

13   here.  All right, counsel.

14      (At sidebar with the Court and counsel)

15          THE COURT:  We just need to get everyone in here.  All

16   right, just give us your name.

17          JUROR NO. 21:  My name is (juror states name).

18          THE COURT:  Spell your last name.

19          JUROR NO. 21:  (Juror spells name).

20          THE COURT:  Okay.

21          JUROR NO. 21:  And my dad was involved in drug

22   trafficking --

23          THE COURT:  Okay.

24          JUROR NO. 21:  I came in last month and -- or two

25   months ago (indiscernible), so --

1           THE COURT:  So let -- you came in two months and let --

2           MR. SCHRODER:  (States name) was on the jury pool for

3      the Adams bank robbery trial --

4           THE COURT:  Oh, okay.

5           MR. SCHRODER:  -- so --

6           THE COURT:  That's what you meant by that.

7           JUROR NO. 21:  Yeah, that's (indiscernible).

8           THE COURT:  Okay.  So anything -- it's -- is he

9      currently charged?

10          JUROR NO. 21:  Yes, he's actually doing 12 years.

11          THE COURT:  Oh, he's already convicted and in jail.

12          JUROR NO. 21:  He's (indiscernible) convicted.

13          THE COURT:  Okay.  All right.  Anything about that

14     affect your ability to be a fair juror in this case?

15          JUROR NO. 21:  Yes.

16          THE COURT:  Okay.

17          MR. BUTLER:  Especially a drug --

18          THE COURT:  Yeah.

19          MR. BUTLER:  Yeah.

20          THE COURT:  Any questions?

21          MR. BUTLER:  No, sir.

22          THE COURT:  Okay, so here's what happens.  You get to

23     go back to where you started, the Clerk's office.  Tell her --

24     just tell her you've been excused.

25          JUROR NO. 21:  Okay.