1          THE COURT:  Okay?  All right, thank you.

2          JUROR NO. 21:  (Indiscernible).

3          THE COURT:  Okay.

4      (End of sidebar)

5          THE COURT:  Okay, counsel, stay.

6      (At sidebar with the Court and counsel)

7          THE COURT:  Good morning, sir.

8          JUROR NO. 20:  Good morning.

9          THE COURT:  Just give us your name.

10         JUROR NO. 20:  Okay, my name is (juror states name).

11         THE COURT:  (Spells name) --

12         JUROR NO. 20:  (Juror spells name).

13         THE COURT:  Okay, counsel got you.  Okay, go ahead,

14 sir.

15         JUROR NO. 20:  My mom was heavily involved in Alaskans

16 for Drug-Free Youth.  Both my parents were.

17         THE COURT:  Okay.

18         JUROR NO. 20:  And my sister has worked for the legal

19 system --

20         THE COURT:  Okay.

21         JUROR NO. 20:  -- as far -- she was a paralegal in the

22 city.

23         THE COURT:  Okay.

24         JUROR NO. 20:  And so -- and I've worked for Michael

25 Stepovich -- this was 16, 18 years ago, something like that.

1   Wendy --

2           MR. BUTLER:  So --

3           JUROR NO. 20:  Okay, Wendy Colette I believe is in the

4   courtroom right now, and she and I worked together at one point

5   at Fred Meyers.

6           THE COURT:  Just the question is -- you know, you gave

7   us all kinds of things.  Would that affect your ability to be a

8   fair juror in this case?

9           JUROR NO. 20:  I don't think it will.  I just wanted it

10  to be known that --

11          THE COURT:  Yeah.

12          JUROR NO. 20:  -- what's happened, and also --

13          THE COURT:  So you've got family members who have

14  basically been crusaders against drugs on the one hand.

15          JUROR NO. 20:  (Indiscernible), and also my brother-in-

16  law was -- my sister's husband, my brother-in-law, was murdered

17  in 1989.  And although I'm not sure what the circumstances are,

18  there is a possibility that the person who did it was under the

19  influence --

20          THE COURT:  Okay.

21          JUROR NO. 20:  -- of a narcotic substance at the time

22  that he did it.

23          THE COURT:  So you've got that on the one side.  On the

24  other side, you might be friends with the (indiscernible) --

25          JUROR NO. 20:  I'm not friends with Heidi, I'm

1  acquaint --

2          THE COURT:  Acquaintances.

3          JUROR NO. 20:  Yeah.  With --

4          THE COURT:  That's a whole, big, lot of things on your

5  plate.

6          JUROR NO. 20:  Yeah.

7          THE COURT:  And you really think, despite all that, you

8  can --

9          JUROR NO. 20:  I've been gone --

10         THE COURT:  -- be fair?

11         JUROR NO. 20:  -- for eight years.  I've only been back

12  in the state for two years.  I don't know the defendant at all.

13  I mean --

14         THE COURT:  Okay.  If --

15         JUROR NO. 20:  It may be better for me not to be on

16  this trial at all.

17         THE COURT:  I don't know that, but we want -- that's

18  why we're having a chance --

19         JUROR NO. 20:  I think I will be okay.

20         THE COURT:  "I think I will be okay."

21         JUROR NO. 20:  I will be all right --

22         THE COURT:  That scares (indiscernible).

23         JUROR NO. 20:  -- to be able to serve on this jury.

24         THE COURT:  Can you be fair to both sides?

25         JUROR NO. 20:  Yes.

1           THE COURT:  The government's job is to prove the

2   charges beyond a reasonable doubt.

3           JUROR NO. 20:  Yes.

4           THE COURT:  Can you do -- can you serve and make the

5   decision as to whether or not they've done that?

6           JUROR NO. 20:  Yes.

7           THE COURT:  No -- with not holding anything against the

8   government and not holding anything against the defendant?

9           JUROR NO. 20:  I can do that, yes.

10          THE COURT:  Okay.  Counsel for the government,

11  questions?

12          MR. SCHRODER:  How long did you know Ms. Colette?

13          JUROR NO. 20:  We worked together for -- I left the

14  company in 1996 and she was at the store for about two or three

15  years prior to that.

16          MR. SCHRODER:  Did you have any contact --

17          JUROR NO. 20:  We weren't --

18          MR. SCHRODER:  With her outside of the store?

19          JUROR NO. 20:  No, not really, no.  Not at all.  I

20  worked with her ex-husband also.  But we -- he also worked at

21  Fred Meyer and he worked together for only two or three years.

22          MR. SCHRODER:  And you can --

23          JUROR NO. 20:  And we were not -- we went out on

24  occasion, but it wasn't like we were best friends or anything,

25  no.

1    MR. SCHRODER:  Okay, were they married at the time?

2    JUROR NO. 20:  I believe they were separated at the

3    time.  I don't think they were ever actually legally married.

4    MR. SCHRODER:  Okay.

5    JUROR NO. 20:  But they did have two children together.

6    THE COURT:  Boy, you know quite a bit.

7    JUROR NO. 20:  I remember a lot.  I'm sorry.

8    MR. SCHRODER:  And just going back to the issue of your

9    brother-in-law being murdered, was that somehow connected for

10   your parents going to work for the --

11   JUROR NO. 20:  No, my --

12   MR. SCHRODER:  -- Alaskans for Drug-Free Youth

13   (indiscernible) --

14   JUROR NO. 20:  No, I don't think so.  I think my

15   brother-in-law was just -- he was married -- he was a Cuban

16   immigrant from -- that had come over and married

17   (indiscernible).  He wasn't too sure of himself sexually or

18   otherwise, and he had -- he led a double life.  And I think he

19   was in the wrong place at the wrong time or maybe messed around

20   with the wrong person's spouse, at which point they got caught,

21   and somebody blew him away.

22   THE COURT:  Okay.

23   JUROR NO. 20:  That was 18 years ago, so --

24   THE COURT:  Okay.

25   JUROR NO. 20:  -- I think I can be -- I'm sure I can be

1   all right.  I just wanted to be (indiscernible).

2         THE COURT:  No, I -- it's good.  It's better we find

3   out (indiscernible) now.  All right, Mr. Butler.

4         MR. BUTLER:  Sir, I'm more interested in the crusades

5   for drug-free youth and (indiscernible).

6         JUROR NO. 20:  Uh-huh (affirmative).

7         MR. BUTLER:  Did you assist in that?

8         JUROR NO. 20:  No, I was not really involved in it

9   because I was always working.  I didn't really do anything as

10  far as like campaign or anything -- that -- no, not at all.

11        MR. BUTLER:  Obviously, you know more about the

12  Colettes as a family than --

13        JUROR NO. 20:  Some, but not very much.

14        MR. BUTLER:  -- any -- probably anybody else in the

15  courtroom --

16        JUROR NO. 20:  Uh-huh (affirmative).

17        MR. BUTLER:  -- of the family members themselves.

18  Knowing what you know, do you really feel that you would be an

19  impartial juror in this case?

20        JUROR NO. 20:  Yes.

21        MR. BUTLER:  All right, that's all the questions.

22        THE COURT:  Okay.  All right, thank you.

23     (End of sidebar)

24        THE COURT:  Okay, counsel.

25     (At sidebar with the Court and counsel)

1          THE COURT:  Oh, yeah, that's a good point.  You

2    might -- if you're slow on keeping up with the notes, we'll

3    take a slow-down.  We'll --

4          MR. BUTLER:  I just need to (indiscernible) --

5          THE COURT:  Right.

6          MR. BUTLER:  -- explain it.

7          THE COURT:  All right.  Your name?

8          JUROR NO. 8:  Is (juror states name).

9          THE COURT:  (Spells name) --

10         JUROR NO. 8:  (Juror spells name).

11         THE COURT:  Okay.  All right.

12         JUROR NO. 8:  And in '78, misdemeanor charge --

13         THE COURT:  Okay.

14         JUROR NO. 8:  -- possession of marijuana.

15         THE COURT:  Okay.

16         JUROR NO. 8:  And in '79, a fraudulent credit card use.

17         THE COURT:  Okay.  In the State of Alaska?

18         JUROR NO. 8:  No.

19         THE COURT:  In what state?

20         JUROR NO. 8:  North Carolina.

21         THE COURT:  Okay.  How long have you lived in Alaska?

22         JUROR NO. 8:  Twenty -- let's see, 26 years.

23         THE COURT:  What do you do now?

24         JUROR NO. 8:  I'm in oilfield materials.

25         THE COURT:  Okay.  So you were charged.  Did you serve

1  any time?

2            JUROR NO. 8:  No time.

3            THE COURT:  Okay.  For all of the --

4            JUROR NO. 8:  It was (indiscernible) -- all

5  misdemeanor.

6            THE COURT:  Okay.  As a result of those relatively

7  ancient issues, do you hold any grudges against the government?

8            JUROR NO. 8:  No.

9            THE COURT:  And I think you said one of the charges had

10  something to do with drugs.  Would that affect your ability to

11  be a fair juror in a case like this where drugs is at issue?

12            JUROR NO. 8:  No.

13            THE COURT:  So you can be fair to the government and

14  you can be fair to the defendant?

15            JUROR NO. 8:  Yes.

16            THE COURT:  Now, the job as a juror is to listen to the

17  evidence and see if the government has proven the charges.  If

18  the government proves the charges beyond a reasonable doubt,

19  you have to say guilty.  Can you do that?

20            JUROR NO. 8:  Yeah.

21            THE COURT:  On the other hand, if the government is

22  unable to prove any one of the elements of any of the charges

23  beyond a reasonable doubt, you have to say not guilty.

24            JUROR NO. 8:  Right.

25            THE COURT:  Do you understand that?

1      JUROR NO. 8:  Yes.

2      THE COURT:  And you can do it completely uninfluenced

3  by this ancient history?

4      JUROR NO. 8:  I believe so.

5      THE COURT:  Okay.

6      MR. SCHRODER:  Any concern you have about how law

7  enforcement officers treated you during those events?

8      JUROR NO. 8:  No, they were really good.

9      MR. SCHRODER:  Okay.  I think it's kind of similar, but

10  I mean, any attitude you have about drugs that would conflict

11  with the charges in this case?  I mean, what --

12      JUROR NO. 8:  Yeah, I don't understand that --

13      MR. SCHRODER:  I guess that's not a very good question.

14  Do you think you have a more lax attitude that might cause you

15  a problem in trying to find somebody guilty if they were

16  involved with drugs?

17      JUROR NO. 8:  No.  I think mindsets change over the

18  years.

19      MR. SCHRODER:  Okay.  Understand.  Understand.  Okay.

20      THE COURT:  Okay.

21      MR. BUTLER:  Could you share with us what that mindset

22  is?

23      JUROR NO. 8:  As far as a -- a citizen, you know, there

24  is laws and -- and things that we live by.  And you don't

25  deviate from those.  And if you do, then -- then there's a

1  reasonable expectation of being charged with a crime.

2          MR. BUTLER:  All right.  Thank you.

3          THE COURT:  I -- I'd just like to -- the issue isn't

4  whether drugs are good or bad.  That's not even the issue here.

5  It's whether or not the government has proven --

6          JUROR NO. 8:  Okay.

7          THE COURT:  -- the charges.  And if they have, you --

8  I've already gone through this before.

9          JUROR NO. 8:  Right.

10         THE COURT:  You understand?  So that's the juror's

11 issue, to decide --

12         JUROR NO. 8:  Okay.

13         THE COURT:  -- whether the government's proven its

14 case.

15         JUROR NO. 8:  Right.

16         THE COURT:  And you don't feel any reason why you can't

17 do that?

18         JUROR NO. 8:  No, I don't.

19         THE COURT:  Okay.  Thank you.

20    (End of sidebar)

21         THE COURT:  Okay, counsel, we'll just take a minute,

22 just a few seconds or whatever you need to get your notes

23 squared away and to bring everyone up to date, what's going on.

24    (Side conversation)

25         THE COURT:  Okay?

1-51

1           MR. BUTLER:  Yes, sir, thank you, Judge.

2           MR. SCHRODER:  We're good, Your Honor.

3           THE COURT:  All right, sir, go ahead.  Your turn.

4           JUROR NO. 12:  My name's -- excuse me.  My name's

5    (juror states name).  And I have a civil case pending against

6    an insurance company on the construction of my house with --

7    that's about it.

8           THE COURT:  In state court?  That's in state court, is

9    that right?

10          JUROR NO. 12:  I believe so.

11          THE COURT:  Okay.  Anything about that experience

12   affect your ability to be a fair juror in this case?

13          JUROR NO. 12:  I don't believe so.

14          THE COURT:  Does --

15          JUROR NO. 12:  But I have a confession.  I would like

16   to see the back room of your --

17          THE COURT:  Well, you'd be very disappointed.

18          JUROR NO. 12:  Okay.  All right.

19          THE COURT:  That's a civil case, this is a criminal

20   case.

21          JUROR NO. 12:  Correct.

22          THE COURT:  Completely different.  You don't --

23          JUROR NO. 12:  Yes.

24          THE COURT:  So I presume that that wouldn't affect your

25   ability to listen to the evidence and be fair to both sides?

1          JUROR NO. 12:  No.  I don't think so.

2          THE COURT:  Okay.  All right.  All right, counsel, back

3  room.

4      (At sidebar with the Court and counsel)

5          THE COURT:  Not much here.

6          JUROR NO. 29:  (Indiscernible) you get your exercise.

7          THE COURT:  Yeah.  So all you need to do is give us

8  your name.

9          JUROR NO. 29:  (Juror states name).

10          THE COURT:  And what is the concern?

11          JUROR NO. 29:  Be -- I -- I don't know enough about it,

12  but --

13          THE COURT:  Okay.

14          JUROR NO. 29:  -- my husband was convicted of a

15  felony --

16          THE COURT:  Okay.

17          JUROR NO. 29:  -- more than 20 years ago, because we've

18  been married --

19          THE COURT:  Okay.  And what's his name?

20          JUROR NO. 29:  (States name).

21          THE COURT:  And where was -- where did this occur?

22          JUROR NO. 29:  Nevada.

23          THE COURT:  And what was the felony?

24          JUROR NO. 29:  Stole $100.

25          THE COURT:  Okay, theft, it was a theft case.  Is that

1  before you knew him?

2          JUROR NO. 29:  Uh-huh (affirmative).

3          THE COURT:  So you don't -- do you know, did he go to

4  jail?

5          JUROR NO. 29:  No.

6          THE COURT:  Is there anything about that experience

7  with your husband, before you knew him, that would affect your

8  ability to be a fair juror in this case?

9          JUROR NO. 29:  No, sir.

10          THE COURT:  Okay.  Counsel.

11          MR. SCHRODER:  And you said he was the victim of this?

12          THE COURT:  (Indiscernible).

13          JUROR NO. 29:  No, he was the -- he was the --

14          MR. SCHRODER:  Oh, he was --

15          JUROR NO. 29:  He was the criminal.

16          MR. SCHRODER:  Okay.  Okay.  Okay.  I thought you said

17  (indiscernible) going into this like that.  Any concern you

18  have or that he's expressed to you about how the law

19  enforcement officers treated him during that process?

20          JUROR NO. 29:  No, we -- no, sir.

21          MR. SCHRODER:  Okay.  Okay.  That's all

22  (indiscernible).

23          MR. BUTLER:  No questions, Judge.

24          THE COURT:  Okay.  Thank you.

25      (End of sidebar)

```
 1          THE COURT:  Do you want to go --
 2          UNIDENTIFIED SPEAKER:  No.
 3          THE COURT:  Okay.
 4          JUROR NO. 39:  Judge Beistline --
 5          THE COURT:  Yes.
 6          JUROR NO. 39:  -- I haven't reached a point of
 7  forgiveness yet for --
 8          THE COURT:  Okay.
 9          JUROR NO. 39:  -- for those who protect and serve, and
10  the feds, especially, at the IRS.
11          THE COURT:  Well, give us your name.
12          JUROR NO. 39:  Oh, (juror states name).
13          THE COURT:  Okay.  And it's your impression that you
14  just can't be a fair juror in this case?
15          JUROR NO. 39:  Because they caused the early demise of
16  my husband, (indiscernible).
17          THE COURT:  Okay.  All right, very well.  Well, you
18  just go back and explain to the clerk you've been excused.  And
19  thank you very much.
20          JUROR NO. 39:  Okay.
21          THE COURT:  Anyone else?  Okay, next question.  Have
22  you or anyone close to you ever worked as a law enforcement
23  officer?  I know there's got to be a lot of people.  And so you
24  just got to come forward, give us your name, and then I ask the
25  question.  Back here.  Okay.  Counsel.
```

1          (At sidebar with the Court and counsel)

2               THE COURT:  Give us your name.

3               JUROR NO. 10:  (Juror states name).

4               THE COURT:  Okay.

5               JUROR NO. 10:  And my brother-in-law --

6               THE COURT:  Uh-huh (affirmative).

7               JUROR NO. 10:  -- Mike (indiscernible), was captain of

8    the troopers here for a number of years.

9               THE COURT:  Okay.

10              JUROR NO. 10:  When I was in the military, I worked

11   GKF6 (ph) missions in Arizona --

12              THE COURT:  Okay.

13              JUROR NO. 10:  -- counterdrug and counteralien

14   missions.

15              THE COURT:  Okay.

16              JUROR NO. 10:  And I also worked with the DEA and the

17   BATF in Kuwait when I was over there after Desert Storm.

18              THE COURT:  So you've been in the business for a while.

19              JUROR NO. 10:  Yes.

20              THE COURT:  Would that cause you to have a difficult

21   time being fair to both sides?

22              JUROR NO. 10:  I think so.

23              THE COURT:  Okay.

24              JUROR NO. 10:  I have issues with the --

25              THE COURT:  Okay.

1-56

1          JUROR NO. 10:  -- the drug industry.

2          THE COURT:  Okay.  I think that's good enough.

3          JUROR NO. 10:  Okay.

4          THE COURT:  So you get to go explain to the clerk that

5   you've been excused from this one, and we will have better luck

6   next month.

7          JUROR NO. 10:  Okay.  All right.

8          THE COURT:  Did you get the name and everything?

9          MR. BUTLER:  (States name).

10         THE COURT:  Yeah.

11         MR. BUTLER:  Yes.

12         THE COURT:  Thank you.

13     (End of sidebar)

14         THE COURT:  Okay, ma'am, give us your name.

15         JUROR NO. 6:  (Juror states name).

16         THE COURT:  Okay.

17         JUROR NO. 6:  I've been a jailer and a dispatcher

18   for --

19         THE COURT:  Okay, I'm not sure everyone got that name.

20   Did everyone get --

21         UNIDENTIFIED JUROR:  (Juror states name).

22         THE COURT:  Okay, all right.  Go ahead.

23         UNIDENTIFIED JUROR:  I've been a jailer and a

24   dispatcher for Las Cruces, New Mexico Police Department --

25         THE COURT:  Uh-huh (affirmative).

1         UNIDENTIFIED JUROR:  -- and Esmeralda County Sheriff's

2    Department in Goldfield, Nevada.

3         THE COURT:  Okay.  Have you worked in that capacity

4    since you've been in Alaska?

5         UNIDENTIFIED JUROR:  No, sir.

6         THE COURT:  Okay.  Anything about that past experience

7    that would affect your ability to be a fair juror in this case?

8         UNIDENTIFIED JUROR:  No, sir.

9         THE COURT:  So you would give -- if there were police

10   officers that testified, you would give their testimony the

11   same weight as any other witness.  Is that true?

12        UNIDENTIFIED JUROR:  Yes, sir.

13        THE COURT:  Okay.  All right.  Thank you.

14        JUROR NO. 6:  (Juror states name).

15        THE COURT:  Okay.

16        JUROR NO. 6:  I have a sister that was a sheriff,

17   Josephine County in Oregon, Grants Pass, Oregon.

18        THE COURT:  Okay.

19        JUROR NO. 6:  And she's now a dispatcher in Eugene.

20        THE COURT:  Okay.

21        JUROR NO. 6:  And then her husband is a city police

22   officer there and is -- Eugene, Oregon.

23        THE COURT:  In Eugene?

24        JUROR NO. 6:  Yeah.

25        THE COURT:  Okay.

1          JUROR NO. 6:  Correct.

2          THE COURT:  Anything about that fact that would affect

3     your ability to be a fair juror?

4          JUROR NO. 6:  No, sir.

5          THE COURT:  Okay.  All right, thank you.  Yes, sir.

6          JUROR NO. 25:  (Juror states name).  My father-in-law

7     was a cop and a U.S. Marshal.

8          THE COURT:  Anything about that fact affect your

9     ability to be a fair juror in this case?

10         JUROR NO. 25:  I don't think so, but I'd have to say,

11    he was shot.

12         THE COURT:  Okay.

13         JUROR NO. 25:  And -- and he did die as a result of

14    those wounds.

15         THE COURT:  Okay, well, think about that, if that would

16    be -- because the allegation here is -- it's just an

17    allegation, but it's -- weapons are associated here.  So you

18    have to decide if you can be fair, given all that.

19         JUROR NO. 25:  If I was picking the jury, I wouldn't

20    pick me.

21         THE COURT:  Okay.  All right.  Well, I think that that

22    might be a good enough reason to excuse you.  So would you just

23    go back to the clerk and tell her that you've been excused, and

24    we'll see you next month, maybe.

25         JUROR NO. 25:  Okay.

1          THE COURT:  All right.  Thank you.  All right, ma'am.

2          JUROR NO. 56:  (Juror states name).  My brother's

3   currently a U.S. Marshal in Alabama and my father-in-law is a

4   U.S. District judge in Orlando, dealing with social security

5   issues.

6          THE COURT:  Okay.  Anything about that affect your

7   ability to be a fair juror in this case?

8          JUROR NO. 56:  No, sir.

9          THE COURT:  Can I just say to the whole panel what I

10  sometimes say when I talk to people individually?  The juror's

11  job is to listen to the evidence and decide whether or not the

12  government has proven the charges against the defendant beyond

13  a reasonable doubt.  That's the job.  If the juror believes the

14  government has done that, then the juror's obligation is to say

15  guilty.  If the juror concludes that the government has failed

16  to do that with regard to any of the elements of any of the

17  charges, then the juror's obligation is to say not guilty.

18  That's a -- that's the job of the juror.  And so when I say,

19  can you do your job, that's what I'm really asking you.  And

20  you say you can.  Is that right, ma'am?

21         JUROR NO. 56:  Yes, sir.

22         THE COURT:  All right, thank you.

23         UNIDENTIFIED JUROR:  (Juror states name).  And my

24  daughter-in-law is a police officer in Portland, Oregon.

25         THE COURT:  Oregon is well-represented here today.

1          UNIDENTIFIED JUROR:  And she's with drug cases, so I
2   don't think I could be very fair.

3          THE COURT:  Do you think that would affect your ability
4   to be fair?

5          UNIDENTIFIED JUROR:  Yes.

6          THE COURT:  Okay.

7          UNIDENTIFIED JUROR:  Uh-huh (affirmative).

8          THE COURT:  Well, that's -- that may be -- maybe we'll
9   have a case next month that doesn't involve.  So you just go
10  back to the clerk and tell her that you've been excused, okay?

11         UNIDENTIFIED JUROR:  Okay, thank you.

12         THE CLERK:  What was her last name?

13         THE COURT:  And could you give us your last name just
14  to --

15         UNIDENTIFIED JUROR:  (Juror states name).

16         THE COURT:  (States name), okay.  Thank you.  Yes, sir.

17         UNIDENTIFIED JUROR:  (Juror states name).  I was a
18  military policeman in the Army.

19         THE COURT:  Okay, anything about that experience that
20  would affect your ability to be a fair juror in this case?

21         UNIDENTIFIED JUROR:  No.

22         THE COURT:  All right, thank you.  Yes, ma'am.

23         JUROR NO. 30:  Hi.  (Juror states name).  And may I
24  come back and talk to you?

25         THE COURT:  Yeah.  Counsel.

1          (At sidebar with the Court and counsel)

2               THE COURT:  This is all there is back here, is the --

3               JUROR NO. 30:  Sir, when you say close, how close of an

4      acquaintance?

5               THE COURT:  Any --

6               JUROR NO. 30:  Family member --

7               THE COURT:  Close enough that would affect your

8      decision-making process.

9               JUROR NO. 30:  I need to tell you that --

10              THE COURT:  Okay.

11              JUROR NO. 30:  -- I have a neighbor who's in law

12     enforcement.

13              THE COURT:  Okay.  In --

14              JUROR NO. 30:  (Indiscernible) Wall.

15              THE COURT:  In Fairbanks?

16              JUROR NO. 30:  Uh-huh (affirmative).

17              THE COURT:  Okay.

18              JUROR NO. 30:  And I just --

19              MR. SCHRODER:  He's a witness.

20              JUROR NO. 30:  I just (indiscernible) --

21              THE COURT:  Oh, he's a witness?  See, I'm glad you told

22     us that.

23              JUROR NO. 30:  Okay.

24              THE COURT:  Now, if he were a witness --

25              JUROR NO. 30:  Uh-huh (affirmative).