COPY
FILED

FEB 2  2007
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

1           UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ALASKA

3   UNITED STATES OF AMERICA,    )   Case 4:05-cr-00042-RRB
                                 )
4           Plaintiff,           )   Fairbanks, Alaska
                                 )   Monday, November 27, 2006
5       vs.                      )   9:34 o'clock a.m.
                                 )
6   JASON SCOTT COLETTE,         )
                                 )
7           Defendant.           )
    _____)   **IMPOSITION OF SENTENCE**

8

                 **TRANSCRIPT OF PROCEEDINGS**

9

         BEFORE THE HONORABLE RALPH R. BEISTLINE
10             UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Plaintiff:        BRYAN SCHRODER, ESQ.
                              Assistant U.S. Attorney
13                            U.S. Attorney's Office
                              222 West 7th Avenue, #9, Room 253
14                            Anchorage, Alaska  99513-7567
                              (907) 271-5071
15
    For the Defendant:        REX LAMONT BUTLER, ESQ.
16                            Rex Lamont Butler and Associates, Inc.
                              Signature Building
17                            745 West 4th Avenue, Suite 300
                              Anchorage, Alaska  99501
18                            (907) 272-1497

19                            DONALD F. LOGAN, ESQ.
                              Box 73162
20                            Fairbanks, Alaska  99707-3162
                              (907) 451-7045
21
    (Telephonically)          DAVID J. COHEN, ESQ.
22                            Cohen & Paik, LLP
                              177 Post Street, Suite 600
23                            San Francisco, California  94108
                              (415) 398-3900
24

25

                    *A & T TRANSCRIPTS*
                      *(817) 685-7556*

1   APPEARANCES (Continued):

2   Probation Officer:          MARCI LUNDGREN
                                U.S. Probation/Pretrial Services
3                               101 12th Avenue, Room 332
                                Fairbanks, Alaska  99701
4                               (907) 456-0266

5   Court Recorder:             TINA GROTHAUSE
                                U.S. District Court
6                               101 12th Avenue, Room 310
                                Fairbanks, Alaska  99701
7                               (907) 451-5791

8   Transcription Service:      A & T Transcripts
                                2517 Shady Ridge Drive
9                               Bedford, Texas  76021
                                (817) 685-7556

10

11  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **FAIRBANKS, ALASKA - MONDAY, NOVEMBER 27, 2006**

2

3        (Call to Order of the Court at 9:34 a.m.)

4        (Defendant present)

5            THE CLERK:  -- presiding.  Please be seated.

6            THE COURT:  *United States of America v. Colette*, 4:05-

7   42.  This is the time set for sentencing in this matter.  Looks

8   like we've got Mr. Schroder.  You're here in person.  You were

9   not -- you I thought couldn't make it today.

10           MR. SCHRODER:  No, I thought -- I think there was

11  confusion, Judge.  I was talking about some other things I was

12  going to have --

13           THE COURT:  Okay.

14           MR. SCHRODER:  -- to have covered in Anchorage.

15           THE COURT:  Okay.  So you're here today and --

16           MR. SCHRODER:  I'm ready to go.

17           THE COURT:  -- we've got Mr. Butler, you're here.

18           MR. BUTLER:  Yes, Judge.

19           THE COURT:  And then I've got Mr. Logan.  Good morning,

20  sir.

21           MR. LOGAN:  Yeah.  Okay, I'm standing in for Ken

22  Covell, who's acting as local counsel for Mr. David Cohen in

23  San Francisco, who is on the telephone.

24           THE COURT:  All right.  In that event, could you remain

25  seated so he can hear you?

1          MR. BUTLER:  Yes, sir.

2          THE COURT:  All right, go ahead.  Well, you -- well, I

3    think you had something to say.

4          MR. LOGAN:  Yeah.  No.

5          THE COURT:  Just let us know, you're --

6          MR. LOGAN:  Don't I always?

7          THE COURT:  Okay.  All right.

8          MR. LOGAN:  Okay.  Mr. Cohen has been retained by Mr.

9    Colette to take over it -- his representation at this time.  We

10   found out -- he hasn't had time to get the pro hac papers in.

11         THE COURT:  Well, it doesn't matter, because Mr.

12   Butler's the attorney and he can handle the sentencing.

13         MR. LOGAN:  Well, he can't really if he's been fired.

14         THE COURT:  Well --

15         MR. LOGAN:  And my understanding is that -- well, Mr.

16   Cohen's on the phone and although he hasn't been pro hac to the

17   court, I would suggest that he could present his position

18   better than I if you would allow him to speak.

19         THE COURT:  Oh, yeah, that would be fine.

20         MR. LOGAN:  They're asking for --

21         THE COURT:  I haven't seen a motion to continue

22   sentencing.  Is that what I'm going to hear in a second?

23         MR. LOGAN:  Yes, Your Honor.

24         THE COURT:  All right.  I'll listen to it.  Mr. Cohen.

25         MR. COHEN:  Yes, Your Honor.  Thank you, I appreciate

1    it.  Your Honor, I was contacted late last week by Mr.

2    Colette's family.  And basically they're looking for an

3    attorney to represent him at the sentencing and also on the

4    appeal of this matter and they've approached me about both of

5    those issues.  I told them that it would be helpful if I can

6    participate in the sentencing.  Of course the sentencing, when

7    they contacted me, was just a few days away.

8         But I learned some information in connection with the

9    sentencing that I believe is important in Your Honor

10   considering whether to continue the sentencing hearing.  First

11   of all, my client and I have spoken, and he's indicated to me

12   that he's lost confidence in Mr. Butler and he doesn't want him

13   to represent him at the sentencing hearing and he wants me to

14   represent him at the sentencing hearing.

15        He also told me that he has not had the opportunity to

16   review the probation report with Mr. Butler nor has he had the

17   opportunity to review with Mr. Butler the objections that were

18   filed or the sentencing memorandum that was filed.  It's my

19   understanding that -- and I haven't seen the probation report

20   in this case nor have I seen Mr. Butler's file.  I've looked at

21   the documents that are available off PACER.  But it's my

22   understanding that the probation report, which is not available

23   off of PACER, is recommending a sentence of 20 years and that

24   the government is representing a sentence of approximately nine

25   years in this case.  Obviously Mr. Colette is in custody and --

1  so he's looking at a lull period of time in custody.

2          It's my understanding that the Federal Rules of

3  Criminal Procedure and the Ninth Circuit case law require that

4  the probation report is reviewed with the client as well as the

5  objections and the sentencing memorandum.  That hasn't been

6  done here, and I think Mr. Colette is entitled to a continuance

7  to be represented at sentencing on that basis by some attorney.

8          And so the other issue is, is that Mr. Colette has

9  indicated to me that in fact he has not spoken to or seen Mr.

10 Butler since the time of the trial, which was in early August,

11 from what I can determine from PACER, of 2006.  So it would be

12 Mr. Colette's view, and I agree with him, that he should have

13 the opportunity to consult with counsel and be completely

14 represented by counsel, review the probation report, review the

15 objections, review the sentencing memorandum, before he

16 proceeds with sentencing in such a serious case.  I think he's

17 entitled to that.  I also think he's entitled to have an

18 attorney of his choice, and I don't think that he should be,

19 you know, required to proceed with sentencing with an attorney

20 that he no longer wants representing him and who he has asked

21 not to represent him at a very important part of the critical

22 stage of the proceedings.

23         So that would be my request.  But separate from that,

24 because the -- because I am going to be representing him,

25 hopefully -- we haven't fully reached a retainer agreement, but

1  hopefully I will be representing him on the appeal -- I've got

2  another -- matters that it's helpful if I can participate in

3  the sentencing, if sentencing is still in the future, as part

4  of participating in the record below and proceeding on with the

5  appeal.   So for those reasons, given the short time that I did

6  have -- and obviously with the Thanksgiving week, given the

7  short period of time that I did have, I contacted local

8  counsel.

9        Now, I know that there's been a history in this matter

10  of other attorneys representing Mr. Colette.  And it's my

11  understanding that one of the attorneys was retained and he

12  apparently was -- either killed himself or he died.

13        THE COURT:  Yes.

14        MR. COHEN:  And there was another attorney who

15  represented Mr. Colette who, as is my understanding, is

16  currently being on suspension from the state bar.  And he --

17  there was a public defender who also represented Mr. Colette at

18  some other point in time.  It appears, though, that Mr. Colette

19  was always attempting to have an attorney represent him, an

20  attorney that he could hire to represent him at the trial.  And

21  I don't think it should be counted against Mr. Colette, because

22  his family spent over $30,000 on two attorneys that couldn't

23  represent him, one of which had -- one of the attorneys was not

24  able to and had problems with the bar; the other attorney

25  killed himself.  And so -- you know, that and the public

1  defender which was automatically appointed to the case I don't

2  think should be counted against Mr. Colette.  In fact, he's had

3  very, very bad luck with attorneys, and he's taken -- his

4  family has spent all this money which they haven't been able to

5  get back as of yet.  He's had really one attorney that -- of

6  his choice that's represented him, Mr. Butler, and there's been

7  apparently issues of communication and differences between them

8  between the time of the trial and the time of sentencing.

9           Mr. Colette was unable bring all of these matters to

10  the attention of the Court because he didn't have another

11  attorney that was representing him.  He had Mr. Butler who was

12  representing him.  And he attempted on numerous occasions to

13  contact Mr. Butler, according to Mr. Colette, to no avail.  And

14  his family has had been -- on a number of occasions to contact

15  Mr. Butler, to no avail.  And that's why he was unable to bring

16  to the attention of the Court that he wanted another attorney

17  to represent him at sentencing, or bring that to the attention

18  of the Court in a more timely way.

19           And so finally the family became concerned, and the

20  sentencing was coming up this week, and they contacted me last

21  week.  So that's basically what the background is.  And I know

22  it's kind of a difficult situation for the Court, but that's

23  the motion that we would like to make.

24           THE COURT:  Mr. Schroder -- or Mr. Butler.

25           MR. BUTLER:  Good morning.

```
 1            THE COURT:  Good morning.
 2            MR. BUTLER:  Judge, I learned late Friday that I was
 3  unemployed.
 4            THE COURT:  So you learned that even before I did.  I
 5  learned basically just now.  There was a telephone message, I
 6  think Saturday it was called in.
 7            MR. BUTLER:  Okay.  And, you know --
 8            THE COURT:  Well, why did you -- okay.  I'm just --
 9  you're here, though.  You flew up anyhow.
10            MR. BUTLER:  Judge, I did, because I told Your Honor
11  that I would come.
12            THE COURT:  I appreciate that.
13            MR. BUTLER:  And so I thought about, you know,
14  telephonic participation, but --
15            THE COURT:  I would have been very unhappy with that,
16  because --
17            MR. BUTLER:  And --
18            THE COURT:  -- I'm still inclined to do the sentencing.
19            MR. BUTLER:  Well, and I -- but the main thing is I
20  told the Court that I would come up, and the Court set the time
21  to give the plane -- give me time to get here, get on the
22  ground.  Judge, I met with my client this morning.  And let me
23  address some of the issues first that --
24            THE COURT:  Okay.
25            MR. BUTLER:  -- have come up.
```

 1          THE COURT:  Well, I've heard Mr. Cohen make a number of

 2   statements, and some of them --

 3          MR. BUTLER:  Right.

 4          THE COURT:  -- I know are inaccurate.  Some of them may

 5   be accurate, I don't know.  I mean, for instance, I -- where

 6   did this 20 years come from?  He's facing a maximum of -- I

 7   mean, under the -- what's the --

 8          MR. BUTLER:  Hundred and eight months under the

 9   government.

10          THE COURT:  Yeah, 108 months.  That's not -- that's

11   10 -- that's less than 10 years.  So, anyhow, that's a major

12   misunderstanding.

13          MR. BUTLER:  Judge, my client and I have had

14   communications.  What I did was I -- when I sent him the draft

15   presentence report, I told him to read it, put his objections

16   in writing to me.  Based on those objections, I would of course

17   put those objections to the Court through our sentencing

18   memorandum.  And that is what I've done.

19          THE COURT:  Okay.

20          MR. BUTLER:  Now, in terms of sitting down with Mr.

21   Colette, I have not.  I've been in two felony trials --

22          THE COURT:  Okay.

23          MR. BUTLER:  -- (indiscernible) murder.  I've been in

24   trial six of the last eight weeks.  So to the extent that Mr.

25   Colette feels that he would want to go over these objections in

1   terms of the sentencing memorandum that I filed and had served

2   with it, of course, and the Court and the parties are served

3   with it, does Mr. Colette have a right to sit down with the

4   lawyer; I would suppose that he does if that's what he wants to

5   do before a sentencing.  Are there issues that may come out

6   that might have some impact on the Court?  I suppose that

7   there -- that may be the case.

8          As I told Mr. Colette, I've got no hard feelings

9   whatsoever if I'm fired from the case.  Mr. Colette -- it's his

10  life, he's got to do what he feels is appropriate for him.

11  There are no irreconcilable differences.  Certainly I would

12  have preferred to sit down with Mr. Colette face to face.  We

13  did not have a face -- a sit-down face-to-face.

14         Do I feel that I have addressed his concerns to the

15  extent that they are in writing to me?  Yes.  But are there

16  other things that come up when you conference with a client in

17  an individual basis, face-to-face?  Certainly, there may be.

18         THE COURT:  Okay.  Mr. Schroder.

19         MR. SCHRODER:  Your Honor, the government is prepared,

20  we're ready to go.  We were -- this is our --

21         THE COURT:  I'm prepared and ready to go.

22         MR. SCHRODER:  -- second trip.  But also, I mean, we do

23  have -- certainly have an interest in protecting the record.

24  And I cannot convey to the Court that the government would be

25  unduly --

1    THE COURT:  Prejudiced.

2    MR. SCHRODER:  -- prejudiced by --

3    THE COURT:  Okay.

4    MR. SCHRODER:  -- a change or a delay.

5    THE COURT:  Okay, so nobody opposes it except for me.

6  And the reason I oppose it is it -- this will be the fifth

7  attorney.  Ms. Haden was -- did an excellent job and then she

8  was replaced by Mr. Bryson.  He committed suicide; that wasn't

9  anyone's fault.  Replaced by Ms. Haden.  She jumped back on

10 board, was doing a very good job, and then was replaced by Mr.

11 Vacura, not Mr. Stepovich.  Mr. Vacura was fired and Mr. Butler

12 came in and performed a miracle, from what I could tell, at

13 trial, saved a -- with two acquittals, acquittals of two

14 counts.  I can't imagine how anybody could have performed

15 better than he did at trial.

16    We had a hearing last Wednesday.  No one said anything

17 to me about a continuance of the sentencing.  And I hear about

18 it this morning.  So -- and then I hear somebody say they're

19 talking about a sentencing in March.

20    MR. COHEN:  No, we weren't talking about that.

21    THE COURT:  Okay.  Well, how soon can you be up here?

22    MR. COHEN:  Well, I was hoping, Your Honor, to do it in

23 approximately 60 days, the week of --

24    THE COURT:  Two months from now.

25    MR. COHEN:  -- January 22nd.

1    THE COURT:  Well, that's a long time from now.  I've

2  reviewed this -- I've prepared for sentencing I think several

3  times in this case, and I'm not sure what Mr. Cohen would say

4  in it that is not in the file.  It's been very thoroughly

5  briefed.

6    MR. COHEN:  Well, Your Honor, obviously, if the Court

7  would like to do it sooner, then --

8    THE COURT:  Well, I would like to do it sooner, just in

9  the interest of justice.  I mean, this trial was done -- this

10  trial is over with.  I agree that Mr. Colette has the right to

11  meet with counsel before sentencing.  But I could set

12  sentencing off next week and Mr. Butler could spend the day

13  with him, and we could still do the sentencing.  But if it's --

14  if everybody is adamant that Mr. Cohen should be the -- not the

15  attorney that tried the case, not the attorney that knows

16  anything about the case, significantly, but he should be the

17  attorney that does the sentencing, which really surprises me

18  that people think that that's the way to do it, then I'm not

19  going to stand in the way of that.

20    But everybody's now -- so the new counsel has to

21  relearn about the case, probably wants to read the transcript

22  of the trial that Mr. Butler was in.  It just seems to me to be

23  spinning wheels and trying to manipulate the system.  But Mr.

24  Colette's in jail, so I guess he's not a threat to anyone as

25  long as he's in jail.  The government's not opposing a

1    continuance.  I can grant a brief continuance, but I'm -- but I

2    want to get this done.

3            I mean, justice requires that this gentleman, who's

4    been convicted by a jury of his peers of two felonies,

5    possession on Count 1 and Count 2, that he be sentenced.

6    That's what justice requires.  And we've put it off already.

7    So someone give me a proposal.  Mr. Schroder, what's your --

8            MR. COHEN:  Your Honor, like I tell you, I mean, I was

9    hoping to have 60 days.  If the Court would rather do it in an

10   earlier part of January, I can attempt to do it the week of 8th

11   of January.

12           THE COURT:  Well --

13           MR. BUTLER:  Excuse me, Your Honor, the --

14           THE COURT:  Yes.

15           MR. BUTLER:  Judge, Mr. Colette wanted to speak to us

16   for a second before you --

17           THE COURT:  Sure.  We'll go off the record.  You can

18   speak -- you can --

19           MR. BUTLER:  Just a few seconds, I guess.

20           THE COURT:  Oh, just a few seconds?

21   '        MR. BUTLER:  Yes, a --

22           THE COURT:  Okay, we'll go off the record in any event.

23   We'll go off the record.

24       (Court recessed at 9:50 a.m., until 9:53 a.m.)

25           MR. LOGAN:  Your Honor, Mr. Cohen's of course on the

1  telephone but following --

2          THE COURT:  Okay, just one --

3          MR. LOGAN:  -- the discussion --

4          THE COURT:  Just one second, excuse me.  We're back on

5  the record.

6          THE CLERK:  We're back on record.

7          THE COURT:  All right.  Mr. --

8          MR. LOGAN:  Thank you, Your Honor.

9          THE COURT:  Mr. Logan.

10         MR. LOGAN:  I'm sorry.  It's going to take a while to

11 get tapes from that to Mr. Cohen and in time for him to read.

12 But Mr. Covell's office can go ahead and assist in that, I'm

13 sure.  Okay, but he does need enough time to go ahead and

14 review what is there and review the tapes.  Maybe less than 60

15 days, but some continuance would make sense.  And with the

16 holidays coming, and up -- upping that 60 days makes more sense

17 rather than less.

18         THE COURT:  All right.  So that's what your discussion

19 was about?

20         MR. BUTLER:  Well, let --

21         MR. LOGAN:  No --

22         MR. BUTLER:  More substantive than that, Judge.

23         THE COURT:  Okay.  So let's take a look at the calendar

24 here.  So you're -- today is November --

25         THE CLERK:  27th.

1          THE COURT:  -- 27th.  So you're looking at the end of

2    January, is what you want.  I'm not sure that Mr. Colette will

3    stay in Fairbanks for two month -- they may ship him outside, I

4    don't know.  So if you need to meet with him, you should do

5    that ASAP.  I have -- I don't have any control over that.  I'm

6    looking -- what's -- the government have any preference here?

7          MR. SCHRODER:  Your Honor, the government would rather

8    go sooner than later.  I mean, if we could do this in 30 days,

9    I can be up here the week before or after Christmas.  I'm not

10   planning on being anywhere.

11         THE COURT:  What do you have to review the tapes of

12   the -- what, the whole trial?

13         MR. LOGAN:  I believe that's what Mr. Cohen had in

14   mind.  But Mr. Cohen's still on the phone.  Is that correct,

15   Mr. Cohen?

16         MR. COHEN:  I would prefer to do that, and I -- and get

17   ahold of Mr. Butler's file and just review the file.  I mean,

18   I --

19         THE COURT:  Okay.

20         MR. COHEN:  You know, I'm -- I had a -- I have trial

21   right now that started in state court that's supposed to last

22   several weeks, and I have trial February, and that's why I was

23   trying to reasonably estimate a time that we can get this done

24   and pick a date.  But that's why I was hoping for the week of

25   January 22nd.  Perhaps if we could do it in the week of January

1  8th, if I could set a Friday, then if this trial is continuing,

2  I can explain to the Court what's going on a couple weeks in

3  advance, and take a -- say, perhaps prior to the 12th of

4  January.

5          THE COURT:  So I knew the --

6          MR. SCHRODER:  Your Honor -- just -- I'm scheduled to

7  be out of town the 9th through the 12th, out of the district.

8          THE COURT:  Of January?

9          MR. SCHRODER:  Yes, sir.

10         THE COURT:  Are you the same Mr. Cohen that was up here

11  last -- a year or two ago in another case we had?

12         MR. COHEN:  No, Your Honor, I --

13         THE COURT:  Did --

14         MR. COHEN:  -- I'm not.

15         THE COURT:  Okay.

16         MR. COHEN:  I hope that's good.

17         THE COURT:  Are you from San Francisco?

18         MR. COHEN:  I'm from San Francisco, but I was not up

19  there a couple years ago.

20         THE COURT:  Okay.  Well, you -- you'd remember if you

21  were.  So everybody's asking me for the week of the 22nd.  Is

22  that what I'm hearing?  Is that what I'm hearing --

23         MR. SCHRODER:  Except --

24         THE COURT:  -- everybody wants the week of January

25  22nd?

1      MR. SCHRODER:  Except, I mean, the government's ready
2  to go sooner than that.
3      THE COURT:  So what I'm hearing is -- have a jury trial
4  here in Fairbanks on the 22nd, two jury trials in Fairbanks
5  cases on the 22nd of January, Sanderson and Chapman.  Are you
6  familiar with any -- either of those?
7      MR. SCHRODER:  Both mine, Your Honor.
8      THE COURT:  Okay.  Well, then you'll be here.  So why
9  don't we set it for Friday the 26th.  Okay.  Is that all right
10 with -- Mr. Cohen?
11     MR. COHEN:  Yeah, that would be great.  That would be
12 good.
13     THE COURT:  And is that okay with Mr. Logan?
14     MR. LOGAN:  I believe that Mr. Cohen will be admitted
15 pro hac vice and that Mr. Covell will simply be acting as local
16 counsel.
17     THE COURT:  Okay.
18     MR. LOGAN:  So I don't think it'll present a problem at
19 all.
20     THE COURT:  Okay.  And then -- and it's okay with --
21 Mr. Colette, is that okay with you?
22     THE DEFENDANT:  Yes.
23     THE COURT:  And the government doesn't oppose this, is
24 what I'm hearing?  Okay.
25     MR. SCHRODER:  We can live with that date, Your Honor.

1          THE COURT:  Okay.  Well, giving Mr. Colette every

2  benefit, we'll go ahead and grant the request for a

3  continuance, set sentencing to proceed at 9 a.m. on the --

4  Friday the 26th of January 2007.

5          MR. COHEN:  All right, thank you, Your Honor.

6          THE COURT:  Anything else -- well, can Mr. Butler --

7  well, I -- Mr. Butler's still responsible until I see some

8  paperwork.  Right now he's the attorney of record.  I haven't

9  seen any written paperwork suggesting that there's going to be

10  a new attorney.  If I don't see that in the next few days, then

11  I'll be back here to do the sentencing with Mr. Butler.  Okay?

12          MR. COHEN:  Yes, Your Honor.  Thank you.

13          THE COURT:  Anything else we have to cover today from

14  the government's perspective?

15          MR. SCHRODER:  No, Your Honor.

16          THE COURT:  What about the probation officer?

17          MS. LUNDGREN:  No, Your Honor.

18          THE COURT:  Okay.  How about the Marshal?

19          DEPUTY U.S. MARSHAL:  No, sir.

20          THE COURT:  Okay.  Mr. Butler?

21          MR. BUTLER:  I'll just be going about getting some new

22  employment, Judge, I --

23          THE COURT:  Okay, well, give -- get your files to

24  whoever you have to get them to.

25          MR. BUTLER:  Okay, yeah.  Well, I'm going to -- I'll --

```
1   I got to look at the bar rules under --
2           THE COURT:  I -- what -- you know how to do this, just
3   so that -- I don't want it -- I mean, I'm sure you'll do
4   whatever you have to do.
5           MR. BUTLER:  Right.
6           THE COURT:  Okay.
7           MR. COHEN:  Yes, Your Honor, we'd appreciate it --
8           THE COURT:  Thank you, all --
9           MR. COHEN:  -- if we could get the file.
10          THE COURT:  We'll see you in January.  Thank you.
11          MR. COHEN:  All right, thank you.
12          MR. LOGAN:  Thank you, Your Honor.
13          THE CLERK:  Court now stands adjourned, subject to
14  call.
15      (Proceedings concluded at 9:59 a.m.)
16
17
18
19
20
21
22
23
24
25
```

1                              CERTIFICATE

2   I certify that the foregoing is a correct transcript from the
    electronic sound recording of the proceedings in the above-
3   entitled matter.

4   _Teresa K. Combs_____        _1/31/07_____

5   Teresa K. Combs, Transcriber           Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ALASKA
 2
     UNITED STATES OF AMERICA,     )  Case No. 4:05-cr-00042-RRB
 3                                  )
              Plaintiff,            )  Fairbanks, Alaska
 4                                  )  Friday, March 23, 2007
         vs.                        )  9:09 a.m.
 5                                  )
     JASON SCOTT COLETTE,           )  IMPOSITION OF SENTENCE
 6                                  )
              Defendant.            )
 7   _____ )
```

8                   TRANSCRIPT OF PROCEEDINGS

9          BEFORE THE HONORABLE RALPH R. BEISTLINE
               UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11

12   For the Plaintiff:      BRYAN SCHRODER
                             U.S. Attorney's Office
13                           222 West 7th Avenue, #9
                             Anchorage, Alaska 99513
14                           (907) 271-5071

15   For the Defendant:      DAVID J. COHEN
                             Cohen & Paik, LLP
16                           177 Post Street, Suite 600
                             San Francisco, California 94108
17                           (415) 398-3900

18   For Probation:          MARCI LUNDGREN
                             U.S. Probation Office
19                           101 12th Avenue
                             Fairbanks, Alaska 99701

20   Court Recorder:         CAROLYN BOLLMAN
                             U.S. District Court
21                           101 12th Avenue, #332
                             Fairbanks, Alaska 99701
22                           (907) 451-5791

23   Transcription Service:  TAMSCRIPTS
                             P.O. Box 2350
24                           Land O Lakes, Florida 34639
                             (727) 378-4031
25   Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TAMSCRIPTS • (727) 378-4031

2

1                    FAIRBANKS, ALASKA - FRIDAY, MARCH 23, 2007

2

3          (Call to Order of The Court at 9:09 a.m.)

4                    THE CLERK:  Please rise.  The Court, the United States

5     District Court for the District of Alaska, is again in session.

6     The Honorable Ralph Beistline is presiding.

7                    THE COURT:  Good morning.

8                    THE CLERK:  Please be seated.

9          MR. COHEN:  Good morning.

10                   THE COURT:  Are we ready to proceed?

11         MR. COHEN:  Yes, Your Honor.

12                   THE COURT:  Okay.  We're on the record.  It's United

13    States of America vs. Jason Scott Colette.  It's case number

14    4:05-42.  Mr. Colette was convicted of possession with intent

15    to distribute cocaine and with distribution of cocaine by a

16    jury on August 3rd, 2006.  After the trial, the Court requested

17    that a presentence report be prepared.  That has been prepared

18    and reviewed, objections submitted and responded to.  Anything

19    else with regard to the presentence report from the

20    government's perspective?

21         MR. SCHRODER:  Not from the government, Your Honor.

22                   THE COURT:  Okay.  Counsel, anything else with regard

23    to the presentence report?

24         MR. COHEN:  Yes, Your Honor.  I mean, other than --

25    other than what's in the objections?

3

1          THE COURT:  Anything that hasn't been addressed at
2    this point.
3          MR. COHEN:  Yes, Your Honor.  There's -- there are a
4    number of things I'd like to address in sentencing.  I don't
5    know which ones --
6          THE COURT:  Okay.  I'm just --
7          MR. COHEN:  -- the Court believes are related --
8          THE COURT:  I'm just beginning with the presentence
9    report itself.
10         MR. COHEN:  -- to the report.  Part of -- part of the
11   presentence report is -- involves interviews --
12         THE COURT:  Right.
13         MR. COHEN:  -- with employees of -- of Mr. Colette's
14   company.
15         THE COURT:  Mm-hmm (affirmative).
16         MR. COHEN:  And those are hearsay statements.  I have
17   interviewed --
18         THE COURT:  Well, this -- this is sentencing, so
19   that's --
20         MR. COHEN:  I understand.
21         THE COURT:  -- that's appropriate.
22         MR. COHEN:  I understand that it can be -- it can be
23   appropriate depending on the due process concerns in --
24         THE COURT:  Mm-hmm (affirmative).
25         MR. COHEN:  -- §6A1.3.  There has to be a certain

4

1   indicia of reliability.  Not all hearsay statements, of course,

2   are --

3           THE COURT:  I understand.

4           MR. COHEN:  -- admissible at sentencing.  But the

5   point I wanted to make is that I have statements that are also

6   hearsay statements, interviews with the employees of the

7   company.

8           THE COURT:  Right.  And I have those here.

9           MR. COHEN:  Right.  Which I marked as Exhibits A

10  through C -- or A through D.  And I was hoping that the Court

11  would consider those together with the presentence report.

12          THE COURT:  I will consider them.  In fact, I've been

13  speed reading them here.  And if you want to make them part of

14  the record, that's fine.

15          MR. COHEN:  All right.  So I'd like to move those into

16  evidence and argue from them.

17          THE COURT:  Unless there's some objection that the

18  government has.

19          MR. SCHRODER:  Your Honor, the only objection the

20  government has is that we just saw these a few moments ago.

21          THE COURT:  I just saw them this morning as well.

22          MR. SCHRODER:  So I guess my only -- I don't know if

23  it's objection as much as, what I'm concerned about is that

24  specific lines get plucked out of this thing instead of it

25  being looked at as a whole.  All I would ask is that if we're

5

1    going to accept it, that the Court will read the entire

2    interviews and look at it as a whole, not just --

3           THE COURT:  I understand and I've done that.

4           MR. SCHRODER:  -- snippets pulled out of them.

5           THE COURT:  I've read them and -- and I have read the

6    presentence report.  We have -- I think I have the picture.  We

7    have people that have said a lot of similar things to two

8    different investigators and some different things too.  You

9    know, that's -- that's not unusual and in this case it's pretty

10   clear that they agreed on some issues and disagreed on others.

11          MR. SCHRODER:  No objection on that, Your Honor.

12          THE COURT:  Okay.

13          MR. COHEN:  All right.  So I -- I just -- I just would

14   like to make that argument later on, but other than that --

15          THE COURT:  But they're received.  Your request is

16   approved.

17          MR. COHEN:  Yeah.  I'm saying -- so as we proceed

18   forward, I'll argue from them.  But other than that, there's

19   nothing else --

20          THE COURT:  Okay.

21          MR. COHEN:  -- having to do with the presentence

22   report, other than what's been filed.

23          THE COURT:  Okay.

24          MR. COHEN:  Although we may be requesting that the

25   Court make a recommendation of drug treatment in the Bureau of

6

1    Prisons.  I'm not sure --

2         THE COURT:  I think that's entirely appropriate, from

3    what I've seen.

4         MR. COHEN:  And I'm not -- I'm not sure if that's been

5    addressed, but I will be doing that as well.

6         THE COURT:  I don't know.  Okay.  Well, I don't have a

7    problem with drug treatment for someone who's been using drugs

8    since they were in high school.  That seems appropriate.  Okay.

9    Anything else?  Mr. Colette, did you look at this --

10         THE DEFENDANT:  Yes, I did.

11         THE COURT:  -- presentence report?  Anything else that

12    we haven't addressed?

13         THE DEFENDANT:  I think you guys have addressed

14    everything that I've brought up.

15         THE COURT:  Okay.  Very well, then.  I'll accept the

16    presentence report as we've just discussed today and the

17    factual statements that have been contained therein as having

18    been established by a preponderance of the reasonably reliable

19    evidence.  And I'm also accepting these statements by the

20    investigator submitted on Mr. Colette's behalf.  So we have the

21    big picture.  We have everything, I think, before us.

22         It looks like, from what I can tell, that we're

23    looking at a guideline sentence of 28, a criminal history

24    category II, with a sentencing range of 87 to 108 months.  I

25    recognize that there's some dispute as to the offense level and

7

```
 1   will entertain argument on that as part of the sentencing
 2   argument.
 3            MR. COHEN:  Your Honor, maybe I should have addressed
 4   this earlier when the Court was asking about the presentence
 5   report, but I --
 6            THE COURT:  Yes.
 7            MR. COHEN:  -- have issues with the reliability of the
 8   statements of Mr. Johnson in the presentence report.
 9            THE COURT:  All right.
10            MR. COHEN:  And --
11            THE COURT:  He testified at trial as well.
12            MR. COHEN:  I understand that.  And that's part of the
13   reason -- that's part of the reason why I have issues as to his
14   reliability.
15            THE COURT:  Okay.  You can argue that.
16            MR. COHEN:  I just -- I don't want to -- because the
17   Court said I'm adopting it as -- I'm adopting those statements
18   as -- as --
19            THE COURT:  I'm accepting the presentence report,
20   recognizing that there's a dispute with regard to these
21   witnesses, and you submitted another version of their
22   testimony.  And I also recognize, because it's been brought up
23   previously, that you have concerns about the credibility of the
24   confidential informant.
25            MR. COHEN:  Right.
```

1      THE COURT:  And I'll entertain argument in that regard

2  as well.

3      MR. COHEN:  Thank you, Your Honor.

4      THE COURT:  Okay.  I really -- and I've prepared for

5  sentencing two or three times in this case, and I really feel

6  I -- I have a good sense of where everybody's coming from and

7  what the issues are.  Anything else?  Did you want to have any

8  witnesses today or anything of that nature?

9      MR. COHEN:  Well, Your Honor, I -- I made a motion in

10  terms of having to do with that, and the Court denied it.  They

11  were issues having to do with forfeiture, and that's another

12  part of the --

13      THE COURT:  Well, forfeiture -- the only thing, as I

14  understand, the government is seeking is four -- four weapons,

15  not all the 12 weapons.  Am I wrong?

16      MR. SCHRODER:  It's the four weapons and the --

17      THE COURT:  And the cash.

18      MR. SCHRODER:  The cash.  Right.

19      THE COURT:  Okay.  So what's the status of the other

20  weapons?  Have they been returned or where are they?

21      MR. SCHRODER:  They have not.  They are in process.

22  And I apologize to the Court.  We've been trying to get some

23  solid info back on ATF about where they stand.

24      THE COURT:  Okay.

25      MR. SCHRODER:  But those are in the process --

9

1              THE COURT:  But no one --

2              MR. SCHRODER:  -- of an administrative forfeiture.

3              THE COURT:  Oh, administrative forfeiture.  The other

4    eight?

5              MR. SCHRODER:  The other -- it's actually -- I think

6    it was four and 10.

7              THE COURT:  Okay.  Whatever it is.  Okay.  So these

8    other 10 -- that's what I wasn't clear about.  Are you seeking

9    forfeiture of all 14 weapons?

10             MR. SCHRODER:  We are not seeking judicial forfeiture

11   of all 14.  We are only seeking judicial forfeiture of --

12             THE COURT:  Four.

13             MR. SCHRODER:  -- the four, plus the cash.

14             THE COURT:  Plus the cash.

15             MR. SCHRODER:  Right.

16             THE COURT:  That's all -- that's all that's before me

17   at this time.

18             MR. SCHRODER:  Correct.

19             THE COURT:  And what's your response to that?

20             MR. COHEN:  My response to that is that -- is that we

21   would like to have a hearing on the question of forfeiture as

22   to the cash and as to the -- and as to the four guns that

23   they're -- on which they're seeking forfeiture.  I also have a

24   position as to the other guns and a jet ski, for which the

25   government says they're seeking administrative forfeiture.

10

1        THE COURT:  Okay.  Which is not before me --

2        MR. COHEN:  Well --

3        THE COURT:  -- at this point.

4        MR. COHEN:  Well, I do -- I think -- let me talk about

5   that because I think it is before Your Honor, and I'll tell you

6   why.  There's a Ninth Circuit case called United States vs.

7   Elias, which is at 921 F.2d 87 -- 870.  I'm sorry.

8        THE COURT:  Mm-hmm (affirmative).

9        MR. COHEN:  From 1990.  Which says that a Rule 41(e)

10  motion for return of property is not properly before the Court

11  if there is an administrative forfeiture proceeding.  With

12  respect to the other 10 guns, there is no current

13  administrative forfeiture proceeding.

14       THE COURT:  Well, I'm not going to order forfeiture of

15  the other 10 guns at this stage.

16       MR. COHEN:  But I'm asking -- I filed a motion to ask

17  that they be returned under Rule 41(e).

18       THE COURT:  I saw that.

19       MR. COHEN:  And the government's response to that is,

20  'Well, we don't want -- we're not returning them because we

21  mentioned back at the conclusion of the trial that there might

22  be an administrative forfeiture.'  Well, since --

23       THE COURT:  Okay.

24       MR. COHEN:  -- that time, no paperwork has been filed

25  and there has not been an --

11

1          THE COURT:  Okay.

2          MR. COHEN:  -- administrative forfeiture.

3          THE COURT:  Well, I'm just going to address that in

4   motion practice.  We're not going to resolve that issue today,

5   the 10 other weapons.

6          MR. COHEN:  Well, if I have permission to file --

7   supplement the Rule 41 motion with this.

8          THE COURT:  You're fine.  That's fine.

9          MR. COHEN:  Okay.

10         THE COURT:  I'm just not going to address those 10

11  today.

12         MR. COHEN:  All right.

13         THE COURT:  You can file your motion, the government

14  can file their opposition, you can file your reply.

15         MR. COHEN:  All right.

16         THE COURT:  And we'll do that so that we know what the

17  law is and what's appropriate.

18         MR. COHEN:  And I also have -- and that would also --

19  I also believe that the jet ski ought to be returned because

20  although there were administrative forfeiture proceedings, Mr.

21  Colette was not given adequate notice of those proceedings.

22         THE COURT:  I'm not going to rule for or against you

23  on that issue today.

24         MR. COHEN:  All right.  So if I -- if I have

25  permission to file it, that would be great.

12

1    THE COURT:  File what you want on those issues.

2    MR. COHEN:  All right.  So -- so let me talk about the

3    ones that -- what the government actually is --

4    THE COURT:  That's --

5    MR. COHEN:  -- on which they are seeking forfeiture.

6    THE COURT:  Okay.

7    MR. COHEN:  I read -- I read the transcript of the

8    trial with respect to the forfeiture issues and it appears that

9    at the beginning of the trial, I think that Mr. Schroder said,

10   'I don't think I've done a case with a forfeiture -- with

11   forfeiture in it before.'  And then at the end of the trial,

12   Mr. Schroder presented some forfeiture instructions to the

13   Court.  And there was a whole discussion between the Court and

14   Mr. Schroder and -- and Mr. Butler, having to do with that, in

15   which the question was, does either side wish a jury trial

16   under Rule 32.2 on the question of forfeiture, on the counts of

17   the indictment.

18   THE COURT:  Okay.

19   MR. COHEN:  And the government said, 'We certainly do

20   not, and we want to make clear we do not want that.'  Mr.

21   Butler said, 'I think that I would like that issue to be

22   addressed by the Court.'

23   THE COURT:  Not the jury.

24   MR. COHEN:  Not the jury.

25   THE COURT:  Okay.

13

1          MR. COHEN:  And the Court said, 'If you were to say to

2   me, "I want it addressed by the Court," then I will let you

3   have a hearing on this, probably at sentencing.'

4          THE COURT:  Okay.

5          MR. COHEN:  'If you tell me that, I'll let you do that

6   and have a hearing on that as long as the government doesn't

7   object.'  And then the government said, 'We don't object.'

8          THE COURT:  Okay.

9          MR. COHEN:  Then the government said the only thing

10  is, we need to submit a preliminary order of forfeiture.  And

11  Mr. Butler said, 'Well, I don't even think I need to do that.'

12  And the Court said, 'Well, I have these orders all the time.'

13         THE COURT:  You're right.

14         MR. COHEN:  'And, you know, that's what the government

15  feels that they have to do.'  And then everybody read the rule

16  and the conclusion was -- was this, was that -- was that the

17  government's going to submit that preliminary order of

18  forfeiture.

19         THE COURT:  Mm-hmm (affirmative).

20         MR. COHEN:  'You, Mr. Butler, you can either acquiesce

21  or object or do whatever you're going to do.'

22         THE COURT:  Okay.

23         MR. COHEN:  'Third parties are going to be able to

24  make claims or not make claims.  But then I'm going to have a

25  hearing' -- Your Honor -- 'I'm going to have a hearing at the

14

1    time of sentencing on the question of forfeiture.'  And I think

2    it was based upon that, that Mr. Butler waived the jury trial.

3            Now I don't believe, Your Honor, that the waiver of

4    jury trial was -- was --

5            THE COURT:  On the issue of the forfeiture?

6            MR. COHEN:  On the issue of the forfeiture was valid.

7    The reason why I don't believe it was valid is because the

8    record reflects that it was Mr. Butler who waived the jury

9    trial and not Mr. Colette.  Now there's only one case I've been

10   able to find on this issue, United States vs. Robinson, 8 F.3d

11   418, which is a Seventh Circuit case from 1993.  That's a case

12   that says that there needs to be a personal waiver by the

13   defendant in a forfeiture proceeding if there's a waiver of the

14   trial -- of the jury trial, with advice to the defendant.

15           THE COURT:  So what are you -- what are you asking?

16           MR. COHEN:  Well, I mean, first of all, I agree

17   with -- I agree with what Mr. Butler said earlier, that Mr.

18   Colette -- if Mr. Butler made a mistake, he made a mistake.

19   But Mr. Colette is entitled to a jury trial on the $38,000 and

20   on the four guns because he did not personally waive the jury

21   trial.  Number two, I believe that the Court should allow us to

22   proceed to a hearing on that issue.

23           THE COURT:  On the issue of forfeiture.

24           MR. COHEN:  On the issue of forfeiture.  And perhaps

25   we can have that hearing on the same day that the Rule 41

15

1    motions are heard.  I don't think that it has -- the cases make

2    clear that it doesn't have to be related necessarily.  It has

3    to be included eventually in the judgment.  I don't think it

4    has to be finalized today.

5              THE COURT:  Okay.

6              MR. COHEN:  And so if the Court would give us that

7    time, I can -- I can put all that together.  I can tell the

8    Court --

9              THE COURT:  What's the government's position?

10             MR. SCHRODER:  I don't think we're going to end up

11   with a Rule 41 motion because I think the property -- the

12   property we're not talking about, not the four and the money,

13   is going to be forfeited.  The jet ski's already been forfeited

14   by DEA.  So under statute, the fact that it's been forfeited is

15   the same as a judicial forfeiture.  So if the defendant's got a

16   problem with that, I think the only remedy he has that I

17   understand is that he can file a civil action to try to get it

18   back.

19             THE COURT:  Okay.

20             MR. SCHRODER:  So that's not before the Court.  I

21   think it's going to be a similar situation on the other 10

22   guns.  As for the four guns and the money we're seeking

23   forfeiture of, my -- my understanding of the discussion we had

24   on the last day of trial was that the issue was that the

25   guns -- that the family may want the guns back, that they are

1  guns that had been in the family and they may want them back.

2  And we made it clear that they were going to have -- they were

3  going to have the ability to file a claim and if we need to

4  have a hearing to talk about the claim, that was going to be --

5  that was going to be available, whatever that normal process

6  is, would be available to the defendant and his family and

7  anyone else who saw the notice.

8          THE COURT:  True.

9          MR. SCHRODER:  We have in fact made notice to family

10  members.  We have made notice in the Fairbanks paper.  And

11  nobody filed a claim.  So we have now put our -- our motion for

12  final decree of forfeiture in front of the Court and our

13  position is the Court should issue that final decree of

14  forfeiture.

15          THE COURT:  What about the cash?

16          MR. SCHRODER:  For the cash and the guns.

17          THE COURT:  Okay.

18          MR. SCHRODER:  It was all --

19          THE COURT:  So when you said you did a notice, did

20  that include the cash as well?

21          MR. SCHRODER:  It did.

22          THE COURT:  Okay.

23          MR. COHEN:  Your Honor, I understand what Mr.

24  Schroder's saying.  I simply disagree with him.  I don't think

25  that's what the record reflects.  I think the record reflects

17

1    clearly what I just said, and the record speaks for itself.

2         THE COURT:  Here's what we'll do.  We'll give you 10

3    days to file anything you want to file, to clear up.  We'll

4    give the government 10 days thereafter to respond.  I will not

5    issue any forfeiture orders until I've seen your motion, the

6    government's response and your reply.  If -- if, as a result of

7    that, I think there should be a hearing, I'll schedule a

8    hearing.  If I think there should -- if the materials should be

9    forfeited, I'll sign a forfeiture order.  If I think they

10   should not be forfeited, I will not sign a forfeiture order.

11   That gives you the time that you want.  It gives the government

12   time to respond, and we can lay it out clean and have a clean

13   record.

14        MR. COHEN:  All right.  That's fine.  And I understand

15   that I have permission when I do that to also file my Rule 41

16   motion.  I know the government disagrees that -- that it's

17   appropriate.

18        THE COURT:  On what theory is that are you talking

19   about?

20        MR. COHEN:  My theory on the Rule 41?

21        THE COURT:  Yes.  You said --

22        MR. COHEN:  The theory is, is that -- first of all, as

23   to the 10 weapons that have not been returned --

24        THE COURT:  Oh, okay.

25        MR. COHEN:  -- there is no administrative proceeding

18

1   and, therefore --

2        THE COURT:  Okay.  Yeah.  You can file whatever

3   motions you want with regard to whatever forfeiture issues you

4   see exist.

5        MR. COHEN:  Right.

6        THE COURT:  The government can respond, then you can

7   reply, and then I will determine whether a hearing is

8   necessary, whether the government has followed the proper

9   procedures, whether forfeiture is appropriate or whether it's

10  not.  And we'll do it clean and sweet and everything will be on

11  the record.

12       MR. COHEN:  All right.  That's the only area where we

13  would like to call witnesses, and Mr. Butler made that clear as

14  well.  The other area is having to do with --

15       THE COURT:  That would be the family member just

16  saying, 'No, that's my gun.'  That's what you're talking about?

17       MR. COHEN:  Well, that's not what -- I think the

18  witnesses are going to have to do with -- I don't know what the

19  government's going to rely on for their nexus.  They may have

20  to do with the credibility of the government's witnesses.  They

21  may also have to do with information showing that the $38,000

22  came from a legitimate source.

23       THE COURT:  Okay.

24       MR. COHEN:  That the guns were purchased from a

25  legitimate source, that kind of thing.

19

1          THE COURT:  Okay.  Well, I would think -- I would
2    think that in your motion, you would provide an offer of proof
3    so that I had some basis to know what your --
4          MR. COHEN:  I will.
5          THE COURT:  So, I mean, if you have -- if you just say
6    "I want it" without --
7          MR. COHEN:  Well --
8          THE COURT:  -- giving any basis -- but if you provide
9    an offer of proof, that gives me some, and the government some,
10   ability to analyze your position.
11         MR. COHEN:  The hearing would be for -- yes.  I'll
12   explain why I believe that we want to call witnesses and put in
13   exhibits.  But also, the hearing could be also for argument,
14   which we could do on the phone if the Court doesn't --
15         THE COURT:  Right.
16         MR. COHEN:  -- want to allow me to call witnesses.
17   But like I say, that's --
18         THE COURT:  Oh, I could --
19         MR. COHEN:  That's fine.  As far as the sentencing
20   issues themselves, for reasons that I'm going to tell the
21   Court, I don't think we need to have witnesses called today
22   because I believe it's the government's burden to prove the
23   base offense level and any enhancements as to the starting
24   guideline point for the Court's analysis by the --
25         THE COURT:  That's true.