61

1    months suspended and 18 months probation is consistent with his

2    expectation.

3              MR. COHEN:  The government doesn't have any -- any

4    information to the contrary.

5              THE COURT:  Apparently not.

6              MR. SCHRODER:  We do not.

7              MR. COHEN:  All right.

8              THE COURT:  Okay.  It doesn't surprise me.  All right.

9    Anything else?

10             MR. COHEN:  No, Your Honor.

11             THE COURT:  Mr. Colette, what do you have to say?

12   Anything?

13             THE DEFENDANT:  Well, Your Honor, just that I want to

14   apologize to my family for having to go through all this, and I

15   apologize to everybody else for us having to be here today.

16   And I ask for a lenient sentence.

17             THE COURT:  Anything else?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Okay.  Well, I have reviewed the file in

20   detail.  I've had the advantage of being the trial judge, so I

21   have observed the government's presentation and the testimony

22   presented at trial.  I thought that both counsel did a very

23   good job.  Mr. Butler represented Mr. Colette very well and was

24   able to obtain two acquittals, which means the jury was not

25   able to conclude beyond a reasonable doubt the charges

62

1   contained in Counts III and IV.  And I think that's due in

2   significant part to Mr. Butler's skills and arguments.

3           But nevertheless, defendant was convicted by a jury of

4   his peers of possession with intent to distribute cocaine, and

5   in fact of distribution of cocaine.  And the jury looked at the

6   witnesses and they looked at Mr. Johnson and they considered

7   the facts, and they came out with a reasoned and -- a

8   reasonable verdict based on the evidence they had.  So we're

9   here to do sentencing and, as a result of that, I've ordered a

10  presentence report.  That's been prepared and we've all looked

11  at that and discussed it in detail.

12          It appears to the Court, after having done that, that

13  based on the jury's finding that the amount of cocaine involved

14  exceeded 500 grams -- I think the evidence of that was

15  significant.  But in addition to the jury's finding, there was

16  a stipulation that supported that and that justifies the

17  offense level 26.  We saw the evidence, we heard the evidence.

18  The jury did.  And of course, the stipulation is an additional

19  factor that would justify that -- that conclusion.

20          So it's the Court's finding that the amount of drugs

21  involved exceeded 500 grams and thus justified an offense level

22  of 26.  And I say this is clear -- I can make this finding by

23  clear and convincing evidence based on the jury's beyond-a-

24  reasonable-doubt finding and the stipulation of the parties, in

25  addition to what was observed and the testimony presented

63

1    during the trial.

2          So the next question is whether or not the two-level

3    enhancement for weapons is appropriate, and I -- I believe that

4    it is.  In this case, there were a number of weapons found in a

5    gun safe in the immediate proximity of a significant amount of

6    drugs.  At least two of the weapons were loaded, including a

7    shotgun, and they were -- and they were -- certainly when the

8    safe was accessible -- open -- they were certainly accessible.

9    They were in a room where drug transactions occurred and they

10   certainly were the type of thing that the legislators had in

11   mind because when you have cocaine dealing, that's bad enough.

12         (Side conversing)

13         THE COURT:  When you mix that with weapons, you create

14   an explosive situation and we know that because we see it every

15   day.  So the legislature wants to avoid situations where drug

16   dealers become self enforcers and use weapons or the threat of

17   weapons to safeguard their operation.  In this particular case,

18   it's just easy to conclude that a reasonable person seeing

19   cocaine all over the place and these kind of weapons,

20   especially this shotgun and this rifle, and then you had this

21   machine gun, it certainly would appear to a reasonable person

22   that these weapons were somehow being utilized to secure the

23   drug operation.  I'm not -- I'm not saying that with regard to

24   the hunting weapons, but certainly the more dangerous-looking

25   weapons.

64

1      And they were found immediately accessible.  They

2 weren't found in a different room.  They were found in the same

3 room where the drug transaction occurred, where the cocaine

4 was, where the scales were, where the money counter was, right

5 in the area where these kind of things were.  So I don't have

6 any trouble concluding by clear and convincing evidence that

7 these -- at least some of these weapons were there in

8 furtherance of the drug -- the drug operation.

9      I think that Mr. Colette was extremely fortunate that

10 the jury did not find the government had proved beyond a

11 reasonable doubt the charge with regard to the machine gun

12 because they probably could have gone either way on that one

13 and had they convicted him of that charge, we would be looking

14 at considerable -- a considerably longer sentence than we are

15 looking at today.  So I think he should be greatly relieved

16 about that result.

17      In addition to the -- the drugs and the weapons, there

18 was this large quantity of cash located in the same proximity.

19 You have guns, you got drugs, you got cash, you got scales, you

20 got money counters.  You've got testimony by at least one

21 confidential informant that these things were there.  That was

22 verified by the search warrant.  And it certainly looks like

23 they're all part of one operation.  So I don't have any problem

24 increasing the level by two.

25      So you're dealing with an offense level 28, a criminal

65

1    history category II, which I do think is reflective of

2    defendant's criminal history, and I'll talk about that in a

3    moment.   And so you have a sentencing range of 87 to 108

4    months.

5          So let me talk just a moment about Mr. Johnson.   He,

6    too, is a drug dealer.   He, too, has utilized weapons in the

7    past in association with his drug dealers.   He was candid

8    about -- I don't know if you can be candid about the fact that

9    he lies, but he certainly -- there was no -- no question that

10   he has done that in the past to protect himself and his drug

11   dealing.   But he was comfortable with Mr. Colette.   He knew Mr.

12   Colette.   He knew the language of -- he could speak the

13   language of the drug world with Mr. Colette.

14         And I think as important as anything else, that his

15   description of what he saw at Mr. Colette's home was later

16   verified when the search warrant was issued.   It may not have

17   been exactly, but it was significantly accurate.   There was

18   drugs.   There was -- there was -- there were weapons and there

19   was everything that would make one appear to think that a drug

20   operation was ongoing.   So his -- although he's not really a

21   savory character, his testimony was backed up in part by the

22   physical evidence that the police officers discovered.

23         And I suspect, although he's -- again, he's -- he's a

24   drug dealer.   He's not the kind of people you would trust with

25   very much.   But he found himself between a rock and a hard

1  spot.  He had to come clean in order to gain some kind of
2  advantage for himself, and he did so at the expense of Mr.
3  Colette.  He did it.  He was somewhat honest.  I think in terms
4  of the details of this case, he was honest.  Not because he's
5  an honest person, but because that's the only thing he could
6  think to do to protect his own skin.  And that's the
7  impression, I think, that I drew in observing him.  And the
8  jury, I think, didn't -- would probably agree somewhat
9  similarly.
10            But there was a significant question as to whether
11  these guns in the presence of a gun lover could really be
12  determined to be, beyond a reasonable doubt, associated with a
13  drug conspiracy, and so they decided to -- they decided to give
14  Mr. Colette a break and they really, really did.  Because to
15  find something beyond a reasonable doubt under those
16  circumstances is very difficult, especially when you have a
17  confidential informant who admits that he's lied on other
18  occasions.  But primarily because it doesn't -- it requires the
19  jury to look into the mind of Mr. Colette, and that's very
20  difficult to do.
21            So I think the jury was reasonable in its conclusions
22  when faced with a beyond-a-reasonable-doubt standard, but I'm
23  also confident that when faced with a lower standard, clear and
24  convincing -- clear and convincing, that those guns were
25  associated, at least some of those guns were associated, with

1   this drug transaction.

2          So that's where we are.  I don't know if -- now I have

3   to decide where with this range Mr. Colette should be

4   sentenced.  And I read all the letters.  I've read the letters

5   of his family and friends and associates.  And I've read the

6   presentence report, and I observed Mr. Colette during trial and

7   during the pretrial matters.  And there's a disconnect because

8   these people see either -- see a different Mr. Colette than I

9   see, or trying to fool me, or fooling themselves.  Because

10  we -- we write our -- we write the history of who we are by

11  what we do in our lives, and Mr. Colette's history is

12  revealing.

13         It goes back to his youth and the trouble he had as a

14  young adult, as a 17-year-old involved in this theft of the

15  Kenworth, the semi-tractor and the dump truck, and vandalizing

16  vehicles at the University of Alaska.  Still, it was a

17  juvenile.  It doesn't enhance his sentence at all.  But it

18  tells you a little bit about his frame of mind and the kind of

19  person he is or was as a youth.  A lot of times you grow out of

20  those kind of things though.  But by the time he was 26, he had

21  another misdemeanor charge of assault, repeatedly punching D.J.

22  in the face.  You know, this could have been an anger

23  management incident that was fueled by -- by drugs or alcohol.

24  I don't know.  But it tells you a little bit about his

25  attitude.  His fight with the animal control officer with

1  regard to the dog, that's -- you know, those things happen.

2  But it tells you a little bit about who Mr. Colette is.

3        I think the comment by his high school counselor

4  really tells you who Mr. Colette was.  He's capable of average

5  to above-average grades, but his mouth and the chip on his

6  shoulder seemed to interfere.  He was a kid going to do things

7  his way or not at all.  I suspect that that evaluation by that

8  high school counselor in 1988 or 1989 tells you a lot about the

9  person that Jason Colette is.

10        Now I -- I misspoke because I don't have any evidence

11  that he was doing drugs in high school, although I suspect he

12  probably was.  He admits, though, that he's been doing -- using

13  marijuana daily since 1995, and it seems to be the drug of

14  choice, at least it was for many, many years.  And he

15  associates with people that do marijuana.  And I don't know how

16  many businesses there are in Fairbanks where all the employees

17  possess drugs and smoke drugs on a regular basis during the

18  work day, or at the close -- or at the close of work in the

19  evening, just routine.  That's not a common way that business

20  is conducted, as far as I know.

21        And even if I take these statements, the statements of

22  the employees, in the very best light as the investigator found

23  for Mr. Colette, they all had marijuana.  They routinely smoked

24  marijuana.  That was no big deal.  And they did it on the job.

25  And some of them, if not all of them, received their marijuana

1    from Mr. Colette.  I think there was -- three or four tool

2    boxes had drugs -- had drugs in them.  So that was just the way

3    business was conducted.

4            Now there's suggestions that there was cocaine.  That

5    was disputed.  Maybe these people, after talking with Mr.

6    Colette's sister, decided they don't want to quite say that and

7    so they -- they rescinded their testimony a little bit.  But

8    even one of them still says he saw a softball size of meth at

9    the job site.  You know, this is not the type of thing that you

10   see routinely at successful businesses in the community, with

11   all the employees stoned or involved with drugs on a regular

12   basis.  But that's part of the environment that Mr. Colette

13   lives in and has lived in to this time.

14           And he apparently makes a living, a significant

15   living, by selling cocaine.  The jury tells me that, after

16   having heard the evidence that on two different occasions he

17   sold cocaine to Mr. Johnson.  And the evidence, the physical

18   evidence we have suggests that he's in the business of selling

19   cocaine.  He does it well.  He has the scales and he has these

20   various -- and he has certainly a significant supply because he

21   has a lot on hand and it's packaged in a manner that it would

22   be sold.  And he has cash conveniently located in $1,000

23   bundles that one could suspect was related to the cocaine

24   business.

25           So you've got all this.  And I know we're going to

70

1    have an evidentiary hearing or may have an evidentiary hearing

2    with regard to the forfeiture issue.  But all these things,

3    little pieces, come in to draw the picture of Mr. Colette.

4    He's a drug dealer.  He's a drug dealer.  He is a drug dealer.

5    This man is a drug dealer.  He's been a drug dealer in

6    Fairbanks, Alaska for years.  You can lie to yourselves and to

7    me and to the world as much as you want.  This man is a drug

8    dealer and he has gotten away with it for a long time.  Now

9    that he's caught, he won't face up to it and he asks us to

10   stick our head in the sand and ignore reality.  Just cannot do

11   it.

12        So when I look at all these -- these factors, I

13   conclude that he has earned the sentence that the government

14   suggested and more, but -- and let me just kind of go over this

15   a little bit.  I think I've -- I've been pretty clear in my

16   reasoning, but I want to be even clearer.  When I look at the

17   nature and circumstances of the offense, here you have a

18   gentleman in his own home with children around possessing a

19   great deal of drugs and weapons and money.

20        When you look at the nature and circumstances of this

21   offense, you are looking at the exact type of thing that the

22   legislature wanted to do away with, that we don't feel is

23   appropriate in a civilized community, to make money at the

24   expense of those who are most vulnerable.  And when I look at

25   the history and characteristics of Mr. Colette, I find a man

1   who is willing to do that.

2           Now it's two-sided because he obviously has friends

3   and people who think highly of him.  All the while, though, he

4   is selling drugs and engaged in this activity which is very,

5   very dangerous to our community.  I see some people say that he

6   is a decent person, that he's got a significant business, and

7   all these various things.  The fact of the matter, he's a drug

8   dealer.

9           Now he may be other things, but he is a drug dealer

10  and that hurts our community.  When you see babies born

11  addicted to cocaine, it may be the cocaine that Mr. Colette

12  introduced into the community.  We don't know.  When you see

13  people getting in fights and arguments over cocaine, when you

14  see lives destroyed and families torn apart, it's due in part

15  to Mr. Colette and the cocaine he's introduced into the

16  community.

17          So that's just a fact of life.  And this is a serious

18  offense.  We need to promote respect for the law.  Mr. Colette

19  has no respect for the law.  He's demonstrated that by the

20  lifestyle he's followed for a number of years and by his

21  decision to be a drug dealer.  And he has no remorse.  He just

22  has no remorse.  The only thing he's upset about is that he got

23  caught.  He's thinking of every type of way to try to beat the

24  system.  The fact of the matter, he's a drug dealer who was

25  caught selling drugs and he needs to be punished and he needs

72

1    to be stopped.  And we need to stop others, too.

2         We need to deter him and we need to deter others who

3    are considering making their livelihood as a drug dealer in

4    Fairbanks, Alaska.  We need to promote respect for the law.  We

5    need to protect our community, and we need to protect our

6    community from Mr. Colette and his ilks, the kind of people

7    that think this is the way to make it in society.

8         Now he's not totally worthless.  He's not totally

9    without hope.  He needs to -- he needs to -- and I know he

10   won't say it to anybody, but he needs to reflect on my words

11   today and recognize that they're true, and think about what he

12   can do to change so that when he comes back in a relatively

13   short time into this community, he takes the talents he has --

14   and he does have talents -- and utilizes them in a legal

15   fashion in order to make a living legitimately, to not

16   associate with druggies, to not supply his help and associates

17   with marijuana and other things, to respect the law and to obey

18   the law.

19        And so I don't -- and he's young enough that he

20   does -- that we can't ignore rehabilitation.  And I think

21   rehabilitation has a component here, too.  For some reason, his

22   family respects him and loves him and hopes for him, and -- and

23   that's fine, too.

24        So I'm not going to go to the maximum I can.  I'm

25   going to give him eight years in jail as opposed to the nine

73

1   the government wants.  He deserves the nine probably, but he's

2   young enough and there's enough hope that I think when I

3   balance everything -- and I have given considerable weight, by

4   the way, to the letters of his family because I know they

5   believe what they said to some extent, although I also know

6   they're fooling themselves.  And that happens all the time.  So

7   that's -- that's what it comes down to.  And I'll just make it

8   official.

9           Mr. Schroder, do you think I adequately covered

10  everything?

11          MR. SCHRODER:  I do, Your Honor.

12          THE COURT:  Any questions, Mr. Cohen, before I impose

13  the sentence?

14          MR. COHEN:  No, Your Honor.  Like I said, I --

15          THE COURT:  You disagree.

16          MR. COHEN:  Right.  And by saying now that I don't --

17  I don't have any questions, I'm not --

18          THE COURT:  I understand.

19          MR. COHEN:  -- withdrawing or waiving anything I

20  earlier --

21          THE COURT:  Certainly.

22          MR. COHEN:  -- said about what I thought the Court

23  should do.

24          THE COURT:  No, I -- I respect that.

25                          IMPOSITION OF SENTENCE

74

1        THE COURT:  Pursuant to the Sentencing Reform Act of

2   1984 and considering the provisions found in 18 U.S.C. 3553, it

3   is the judgment of the Court that the defendant, Jason Scott

4   Colette, is hereby committed to the custody of Bureau of

5   Prisons to be imprisoned for a term of 96 months.  Upon release

6   from imprisonment, defendant shall be placed on supervised

7   release for a total term of five years, which term consists of

8   five years on Count I and three years -- let's see -- five

9   years on Count I and three years on Count II.  Does that add

10  up?  Yeah.

11       MR. COHEN:  Your Honor, it should be -- it should be

12  concurrent.

13       THE COURT:  Five years -- yeah.  Okay.  Which term --

14  five years on Count I and three years on Count II, such terms

15  to run concurrently to each other.  All right.

16       Within 72 hours of release from custody of the Bureau

17  of Prisons, the defendant shall report in person to the

18  Probation Office in the district to which the defendant is

19  released.  While on supervised release, the defendant shall not

20  commit another federal, state or local crime, shall not possess

21  a firearm or illegal controlled substance, and shall comply

22  with the standard conditions that are included in the judgment

23  issued by the Court.

24       Additionally, as the offense occurred after the

25  effective date of the Violent Crime Control and Law Enforcement

1    Act of September 13, 1994, and the Court finds there is a risk

2    of future substance abuse, the defendant shall refrain from the

3    unlawful use of controlled substances and shall submit to one

4    drug test within 15 days of release on supervision and at least

5    two periodic drug tests thereafter, not to exceed 12 tests per

6    month, as directed by the Probation Officer.

7            Defendant shall also comply with the follow special

8    conditions.  Number one.  The defendant shall cooperate in the

9    collection of a DNA sample from the defendant as directed by

10   the Probation Officer.

11           Number two.  In addition to submitting to drug testing

12   in accordance with the Violent Crime Control and Law

13   Enforcement Act of 1994, the defendant shall participate in

14   either or both inpatient or outpatient treatment programs

15   approved by the United States Probation Office for substance

16   abuse treatment, which program shall include testing to

17   determine whether the defendant has reverted to the use of

18   drugs or alcohol.  At the direction of the Probation Officer,

19   the defendant may be required to pay for all or a portion of

20   any treatment program.

21           Defendant shall submit to a warrantless search of his

22   person, his residence, his vehicle, his personal effects, his

23   place of employment, and other property, by a federal probation

24   or pretrial services officer or other law enforcement officer,

25   based upon reasonable suspicion of contraband or a violation of

76

1    a condition of supervision.  Failure to submit to a search may

2    be grounds for revocation.

3         The defendant shall provide to the probation officer

4    access to any requested financial information, including

5    authorization to conduct credit checks, and shall not incur any

6    new debts or apply for credit without the prior approval of the

7    probation officer.  The defendant shall not possess a firearm

8    or destructive device or other weapon.

9         The Court finds -- in this case, it's interesting.

10   Defendant may have the ability to pay a fine, but I'm going to

11   give him a break because I recognize he lost a lot of money

12   when he had Mr. Bryson as counsel and he's going to be out

13   of -- he's not going to be employable for a few years, so I'm

14   going to not impose a fine in this particular case for those

15   reasons.

16        It is further ordered that defendant shall pay the

17   United States a special assessment of $200 -- that's $100 on

18   each count -- which shall be paid immediately to the Clerk of

19   Court.

20        MR. COHEN:  Your Honor, there's two counts.

21        THE COURT:  Right.

22        MR. COHEN:  Oh, $100 on each count.  Okay.  Right.

23        THE COURT:  $100 on each count.

24        MR. COHEN:  Okay.  Yes.

25        THE COURT:  Anything else?

1          MR. COHEN:  Your Honor, was Your Honor going to

2     recommend the drug treatment?

3          THE COURT:  Yes, drug treatment program.  I would so

4     recommend.

5          MR. COHEN:  Okay.  And did you want -- do you want --

6     I don't know if there is -- are there federal prisons in

7     Alaska?  I don't know if there are.

8          THE COURT:  No.  Frequently people request Sheridan,

9     Oregon for some reason.  I don't know why.

10          MR. COHEN:  Can I -- can I request that?

11          THE COURT:  So ordered.  Okay.  Anything else?

12          MR. COHEN:  No, Your Honor.

13          THE COURT:  Probation officer, anything else?

14          THE PROBATION OFFICER:  No, Your Honor.

15          THE COURT:  Sir, you are advised that you may appeal

16     your sentence on any of the grounds mentioned in 18 U.S.C.

17     3742.  If you cannot afford to take an appeal, you may ask to

18     do so at public expense by applying for leave to appeal in

19     forma pauperis.  If you request it, the Clerk of Court will

20     prepare and file a notice of appeal on your behalf.  The

21     important thing is, if you wish to appeal, you must do so

22     within the 10-day time period allowed by Rule 4(b) of the

23     Federal Rules of Appellate Procedure.

24          We all recognize, however, that the forfeiture issue

25     remains open until the motion practice is concluded.  Anything

78

1    else?

2              MR. COHEN:  Your Honor, my filing is due 10 days from

3    today?

4              THE COURT:  Yes, with regard to forfeiture.

5              MR. COHEN:  Yes, on those issues we talked about.

6              THE COURT:  Okay.  Other than that, I'll sign the

7    judgment.  The sentence is otherwise final except for the issue

8    of forfeiture.

9              MR. COHEN:  All right.

10             THE COURT:  Okay.

11             MR. SCHRODER:  Thank you, Your Honor.

12             MR. COHEN:  Thank you, Your Honor.

13             THE COURT:  All right.  Thank you.

14             THE CLERK:  Court now stands in recess subject to

15   call.

16        (Proceedings concluded at 11:37 a.m.)

17

18

19

20

21

22

23

24

25

79

1                              INDEX

2     <u>EXHIBITS</u>:                              <u>Marked</u> <u>Received</u>

3        1    Stipulation                          43      44

4        2    DEA lab report                       43      44

5        E    Search warrant related documents     58      58

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25