COPY

RECEIVED

OCT 2 2 2007

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

1              UNITED STATES DISTRICT COURT

2                   DISTRICT OF ALASKA

3    UNITED STATES OF AMERICA,      )  Case No. 4:05-cr-00042-01-RRB
                                    )
4                    Plaintiff,     )  Fairbanks, Alaska
                                    )  Tuesday, September 4, 2007
5           vs.                     )  Friday, September 7, 2007
                                    )
6    JASON S. COLETTE,              )
                                    )  **TRIAL BY JURY**
7                                   )
                     Defendant.     )
8    ─────────────────────────────  )

9

10              **CONSOLIDATED INDEX**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

**CONSOLIDATED INDEX**

| | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| **WITNESSES FOR THE GOVERNMENT:** | | | | | |
| Ronald Wall (reading testimony) | 1-178 | 1-205 | | | |
| Eugene Johnson (reading testimony) | 2-32 | 2-40 | | | |
| Eric Cohoon (reading testimony) | 2-97 | 2-126 | | | |
| Eric Cohoon | 2-143 | | | | |
| **WITNESSES FOR THE DEFENDANT:** | | | | | |
| David Dahl | 2-165 | 2-171 | 2-182 | | |
| Ryan Schultz | 2-184 | 2-189 | 2-193 | | |
| Lee Sumpter | 2-195 | 2-203 | | | |
| Steven Alt | 2-210 | 2-219 | | | |
| Michael Stark | 2-237 | 2-246 | 2-250 | 2-251 | |
| Joseph Castle | 2-254 | 2-258 | 2-263 | 2-164 | 2-269 |
| Guy Christopher Mannino | 2-271 | 2-280 | 2-286 | 2-289 | 2-290 |
| Kenji Badger | 2-293 | 2-298 | 2-302 | 2-308 | |
| Eugene Johnson | 3-10 | 3-40 | 3-57 | | |

1                        CONSOLIDATED INDEX

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| William Williams | 3-67 | 3-71 | | | |
| Ronald Wall | 3-73 | 3-91 | 3-98 | 3-104 | 3-107 |
| Eric Cohoon | 3-112 | 3-133 | 3-138 | 3-141 | |
| Jason Avila | 3-183 | | | | |
| Jason Pierce | 3-185 | 3-225 | 3-248 | 3-262 | |

EXHIBITS:                                    Marked    Received

GOVERNMENT:

| | | Marked | Received |
|---|---|---|---|
| 1 | Photograph (previously admitted) | | 1-191 |
| 2 | Photograph (previously admitted) | | 1-191 |
| 3 | Photograph (previously admitted) | | 1-191 |
| 4 | Photograph (previously admitted) | | 1-191 |
| 5 | Photograph (previously admitted) | | 1-191 |
| 6 | Photograph (previously admitted) | | 1-191 |
| 7 | Photograph (previously admitted) | | 1-191 |
| 8 | Photograph (previously admitted) | | 1-191 |
| 9 | Photograph (previously admitted) | | 1-191 |
| 20 | MAC-10 (previously admitted) | | 2-107 |
| 21 | Silencer (previously admitted | | 2-107 |
| 22 | Remington .30-06 (previously admitted) | | 2-110 |
| 23 | Mossberg 500A (previously admitted) | | 2-112 |
| 24 | Colt Sporter (previously admitted) | | 2-113 |
| 28 | ATF transfer form (previously admitted) | | 2-117 |
| 29 | ATF transfer form (previously admitted) | | 2-118 |
| 30 | Photograph | | 2-145 |
| 31 | Photograph | | 2-145 |
| 32 | Stipulation | 2-140/2-146 | 2-147 |
| 33 | 2003 tax return | | 3-276 |
| 34 | 2004 tax return | | 3-276 |
| 35 | 2005 tax return | | 3-276 |

4

# CONSOLIDATED INDEX

EXHIBITS:                                              Marked    Received

DEFENDANT:

| | | Marked | Received |
|---|---|---|---|
| A | Photograph | 2-170 | 2-171 |
| B | Photograph | 2-170 | 2-171 |
| C | Photograph | 2-185 | 2-199 |
| E | Photograph | 2-200 | 2-296 |
| F | Photograph | 2-200 | 2-296 |
| H | Photograph | 2-200 | 2-296 |
| Q | Photograph | 2-200 | 2-296 |
| S | Photograph | 2-212 | 2-214 |
| T | Photograph | 2-212 | |
| U | Photograph | 2-212 | 2-214 |
| V | Photograph | 2-212 | 2-214 |
| W | Photograph | 2-212 | |
| X | Photograph | 2-212 | |
| Y | Photograph | | 2-242 |
| Z | Photograph | | 2-242 |
| AA | Photograph | | 2-242 |
| BB | Photograph | | 2-256 |
| CC | Photograph | | 2-256 |
| DD | Checks from safe | 3-288 | 3-293 |
| EE | Cohoon grand jury testimony | 3-142 | |
| FF | Box of business records | 3-189 | |

| | Page |
|---|---|
| GOVERNMENT'S OPENING STATEMENT: Mr. Barkeley | 1-153 |
| DEFENDANT'S OPENING STATEMENT: Mr. Cohen | 1-165 |
| JURY INSTRUCTIONS | 3-293 |
| GOVERNMENT'S CLOSING ARGUMENT: Mr. Barkeley | 4-6 |
| DEFENDANT'S CLOSING ARGUMENT: Mr. Cohen | 4-25 |
| GOVERNMENT'S REBUTTAL ARGUMENT: Mr. Barkeley | 4-54 |
| VERDICT | 4-120 |

# COPY

RECEIVED
OCT 2 2 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF ALASKA

3    UNITED STATES OF AMERICA,    )    Case No. 4:05-cr-00042-RRB
                                   )
4                    Plaintiff,    )    Fairbanks, Alaska
                                   )    Tuesday, September 4, 2007
5         vs.                      )    8:40 o'clock a.m.
                                   )
6    JASON S. COLETTE,             )
                                   )    **TRIAL BY JURY – DAY 1**
7                                  )
                    Defendant.     )
8    _____)

9                         VOLUME I
                  **TRANSCRIPT OF PROCEEDINGS**
10

11    BEFORE THE HONORABLE RALPH R. BEISTLINE
              UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13

14   For the Plaintiff:           JAMES BARKELEY, ESQ.
                                   Assistant U.S. Attorney
                                   U.S. Attorney's Office
15                                 222 West 7th Avenue, #9
                                   Anchorage, Alaska   99513-7567
16                                 (907) 271-5071

17   For the Defendant:           DAVID J. COHEN, ESQ.
                                   Cohen & Paik, LLP
18                                 177 Post Street, Suite 600
                                   San Francisco, California 94108
19                                 (415) 398-3900

20   Court Recorder:              LYNN GROVES-KELLEY/
                                   SUZANNETTE LUCERO
21                                 U.S. District Court
                                   101 12th Avenue, Room 229
22                                 Fairbanks, Alaska   99701
                                   (907) 451-5972/677-6111
23

24

25

34

1    Transcription Service:         NODAK ROSE TRANSCRIPTS
                                    721 North 19th Street
2                                   Bismarck, North Dakota   58501
                                    (701) 255-1054
3

4    Proceedings recorded by electronic sound recording.
     Transcript produced by transcription service.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          FAIRBANKS, ALASKA - TUESDAY, SEPTEMBER 4, 2007

2      (Call to Order of the Court at 8:40 a.m.)

3      (Government counsel not present; defense counsel present;

4  defendant present)

5      (Prospective jurors not present)

6          THE CLERK:  All rise.  His Honor the Court, the

7  United States District Court for the District of Alaska is now

8  in session, the Honorable Ralph R. Beistline presiding.  Please

9  be seated.

10          THE COURT:  Okay.  I don't see any government counsel

11  here.  Who is --

12          THE CLERK:  He was just here.

13          THE COURT:  Is Mr. Barkeley trying it or --

14          MR. COHEN:  Yeah, he was just here, Your Honor.

15          UNIDENTIFIED SPEAKER:  He stepped out.

16          THE COURT:  Okay.  We've got Mr. Barkeley for the

17  Government, and Mr. Cohen, that's you?

18          MR. COHEN:  Yes, Your Honor.

19      (Government counsel present)

20          THE COURT:  Okay.  Barkeley and Cohen, and we've got

21  Mr. Colette.  So we've got the important people here.  So what

22  I'm going to do in a few minutes, I'll check and see how the

23  jurors are doing checking in.  Just to give counsel an idea,

24  we're going to start out with the standard introduction of the

25  parties.  Mr. Barkeley, I'll have you introduce your case

1  agent --

2          MR. BARKELEY:  Yes, Your Honor.

3          THE COURT:  -- and Mr. Cohen, I'll introduce you and

4  you've done this before, I'll introduce Mr. Colette, and then I

5  will just proceed with the standard welcome to the jury.  I

6  anticipate a three-day trial.  Is that still -- from beginning

7  to end, a fair estimate?

8          MR. COHEN:  Your Honor, I -- you know, I -- it

9  depends on how long my witnesses take.  I think my witnesses

10 total should take about a day of court time.

11          THE COURT:  Okay.

12          MR. COHEN:  It could be a little bit more than that.

13 So I don't know when -- when the Government's going to finish.

14 So I would -- I would say -- to be conservative, I would say

15 four days.

16          THE COURT:  Okay.  Well, let's do the best we can.

17 Let's move it along and try to -- you know, you present your --

18 just have your witnesses ready though.

19          MR. COHEN:  Your Honor, I -- that's what I wanted to

20 address with the Court.  We have some -- we have one or two

21 witnesses who are in Anchorage and we have some witnesses here,

22 and we had the Labor Day weekend, a number of areas were closed

23 on Thursday and Friday.  So what I'm hoping to do is start my

24 evidence tomorrow afternoon after lunch, and that -- that's --

25 that'll I think save a lot of time because I can line all the

1   witnesses up.

2           THE COURT:  I think that's fair.  We're going to pick

3   the jury today, do opening statements today, the Government

4   will have it's first witness today, Government will finish up

5   in the morning or maybe go into the afternoon, and you just be

6   ready to go after lunch tomorrow.

7           MR. COHEN:  If I can do that, that'll be great.

8           THE COURT:  No, that's good.

9           MR. COHEN:  Okay.

10          THE COURT:  Okay?

11          MR. COHEN:  That's fine.

12          THE COURT:  All right.  So I'll tell them the trial

13  -- we don't know how long the trial will take, but we expect

14  we'll finish up this week.

15          MR. COHEN:  That's fair, Your Honor.

16          THE COURT:  Okay.  This is basically a forfeiture

17  trial.  Obviously, the jury's going to know he was previously

18  convicted of two charges.  During voir dire, I'll make sure

19  that the jury -- jurors promise that that will not impact their

20  analysis of the forfeiture issues.

21          MR. COHEN:  Your Honor, just on the -- that point

22  about the scheduling, there's -- there are two witnesses that I

23  subpoenaed for this -- all the witnesses I've subpoenaed have

24  been in touch with me and they're on telephone standby except

25  for two witnesses --

1          THE COURT:  'Kay.

2          MR. COHEN:  -- who I subpoenaed for this morning but

3     have not contacted me and they're not here.

4          THE COURT:  Well --

5          MR. COHEN:  And I'm attempting to obtain the proof of

6     service on those witnesses to obtain a court order.  I don't

7     know --

8          THE COURT:  Are they local?

9          MR. COHEN:  -- how long it's going to take to get --

10         THE COURT:  Are they local?

11         MR. COHEN:  One is local and one is in Florida.

12         THE COURT:  Florida?

13         MR. COHEN:  I mean, the person in Florida used to be

14    local, but --

15         THE COURT:  Well, you -- are you surprised they're

16    not here?

17         MR. COHEN:  I'm surprised they didn't call me.  They

18    were served -- they were --

19         THE COURT:  Did you provide them with a plane ticket

20    or anything like that?

21         MR. COHEN:  I will if they call me.  I can't -- I

22    can't provide them with a plane ticket if they don't call me.

23         THE COURT:  Okay.  Well, all right, whatever.

24         MR. COHEN:  They have -- I mean --

25         THE COURT:  If you apply for an order, I'll issue the

1  order, but the sooner the better because obviously you start

2  your presentation of evidence tomorrow, so I would think you'd

3  want to get --

4          MR. COHEN:  All right.  I --

5          THE COURT:  -- you need something pretty soon.

6          MR. COHEN:  Well, I'm trying to get the -- the

7  investigator who served the subpoenas, I'm trying to get these

8  -- the proofs of service today.

9          THE COURT:  Okay.

10         MR. COHEN:  She's in Anchorage, and I'm going to try

11 to get them today and present them to the Court as soon as

12 possible so I can get an order.

13         MR. BARKELEY:  Your Honor, on the issue of witnesses,

14 the Government filed a witness list two months ago.  It's never

15 received a witness list from the defense.  And my concern is

16 that especially with people coming from Anchorage, let alone

17 Florida, the Government has signaled loud and clear and has

18 requested a ruling from the Court in advance, that evidence

19 going to a defense of a proceeds theory that the Government is

20 no longer pursuing is not, in the Government's view, relevant

21 in this case.

22         If that's where all these witnesses are coming from

23 -- and again, the Government has no idea simply because no

24 witness list was filed, so I cannot guess what it is Mr. Cohen

25 intends to put on, but he can rest assured that there will be

1   continuing objections to attempts to put on trial anything

2   except for one question that the Government says is the issue

3   before this jury, which is whether there is a substantial

4   connection between each of the five items of indicted property

5   in count one.  That's all.

6          The Government isn't even pursuing the proceeds

7   theory, it's going on facilitation alone, and it has further

8   trimmed the presentation of the evidence to go only to count

9   one; that is, each item of property is going to be alleged to

10  facilitate only count one, possession with intent to distribute

11  on November 28, 2005.  There won't be any argument that those

12  items, any of them, facilitated count two.

13         THE COURT:  Count two is --

14         MR. BARKELEY:  Count two is an actual distribution

15  count ten days earlier to Mr. Johnson, the informant.

16         THE COURT:  Okay, okay.

17         MR. COHEN:  Your Honor, the Government's own cases

18  indicate that on a facilitation theory, the issue is whether

19  the property sought to be forfeited made the crime easier in

20  some way to commit.  They have to show by a preponderance -- by

21  a preponderance of the evidence that it made the crime easier

22  to commit.

23         Our evidence is, is that the property sought to be

24  forfeited did not make the crime easier to commit, more likely

25  to commit in some type of way in which it was tied to the

1   crime.  Rather, the property was not tied to the crime at all,

2   and that's what our evidence goes to.  We're not talking about

3   proceeds, and I think that the evidence --

4            THE COURT:  I think I understand.

5            MR. COHEN:   -- rebuts the Government's case.

6            THE COURT:  Okay.  Well, the jury will decide.  But,

7   you know, we've had this trial date set for a long time, so

8   you'll get a chance, when it's your turn, to call your witness

9   -- you'll be able to call your witnesses and if the Government

10  objects, I'll deal with the objection at the time.  But I

11  understand your defense, I understand the Government's

12  position.  Okay?

13           MR. BARKELEY:  Yes, Your Honor.  On the question of

14  timing --

15           THE COURT:  Yes.

16           MR. BARKELEY:   -- and the plan is for the defense to

17  begin tomorrow afternoon.  May I reiterate, Your Honor, that --

18  I think the parties even just this morning -- counsel and I

19  have made some progress in terms of eliminating some issues of

20  contention that did surface in the briefings before -- that

21  were filed.

22           Number one, the Government does not intend to elicit

23  any hearsay.  There was an argument about whether it would be

24  admissible --

25           THE COURT:  All right.

1          MR. BARKELEY:  -- it's not going to happen.

2          THE COURT:  Good.

3          MR. BARKELEY:  Okay?  So that's been --

4          MR. COHEN:  Well, actually, we're -- the Government

5    seemed to proceed in a way which we think is going to elicit

6    hearsay.  The Government disagrees with me.  The Government

7    intends to proceed by reading in the testimony, the direct and

8    the cross, of the witnesses from the first trial.

9          My view is that, that is hearsay and the reason is,

10   is that it's former testimony.  Former testimony is only

11   admissible if the witnesses are unavailable.  The Government is

12   not contending that the witnesses are unavailable and,

13   therefore, they need to proceed by way of former testimony.

14   That's not my understanding.

15          It's my understanding that the Government is

16   proceeding based upon a Seventh Circuit case which they believe

17   entitles them to read the transcript of the previous trial as

18   the Government's case.

19          MR. BARKELEY:  That's not correct, Your Honor.  The

20   Seventh Circuit case is simply a case in which the Government

21   can show in a reported appellate decision that in an instance

22   where a jury was impaneled solely for criminal forfeiture, that

23   -- what counsel did -- the procedure was to read back the trial

24   testimony.  That's all that case says, and I suggest that that

25   is a -- as a -- as a way of doing this without having the

1    original witnesses sit up there and read their testimony.

2         But the Government's position has always been as

3    follows, Your Honor, and this is -- this is I think the guiding

4    principle in this case:

5         The way this began was Rex Butler sat in the trial --

6    after the foreman came in and announced the defendant had been

7    found guilty on counts one and two and acquitted on counts

8    three and four, and Mr. Butler consulted with his client and

9    said, no, we don't want to go to -- I don't want to go to a

10   jury, or something like that.

11        THE COURT:  Mm-hmm (affirmative).

12        MR. BARKELEY:  There was a question about whether the

13   defendant waived his right to a jury.

14        THE COURT:  Right.

15        MR. BARKELEY:  Since the government has now

16   essentially acquiesced --

17        THE COURT:  Right.

18        MR. BARKELEY:  -- in its argument, the Government's

19   position is that the only thing we can do is go back to that

20   moment in time, and we're going to essentially pretend that the

21   defendant said I want a jury.  All right.  If the defendant

22   wants a jury, then that jury -- which this is all reflected in

23   the Government's proposed instructions -- that jury knows that

24   they convicted him of counts one and two --

25        THE COURT:  Right.

1          MR. BARKELEY:  -- and that jury has heard all of the

2    testimony that is relevant concerning the forfeitability of the

3    property.  The Government does not want to, or intend to,

4    elicit additional testimony today, have a separate trial, and

5    -- counsel's not going to be able to say any authority that

6    requires the Government to do that.

7          The Government can rely on what happened in the

8    criminal case and then make its arguments to the jury -- ladies

9    and gentlemen, you've already heard that the guns were in the

10   safe with the drugs and the money, they were all one big mess,

11   and that's our argument, and they facilitated the crime only on

12   count one.

13         And so the Government's position is that the prior

14   testimony isn't hearsay.  Hearsay means it's not admissible.

15   It was admitted -- the testimony is all admitted.  It may go to

16   weight, and I would not certainly object to any argument

17   counsel might make that, ladies and gentlemen, you know, Mr.

18   Johnson here, and you don't get a -- you didn't get a chance to

19   observe his demeanor, see him sweating bullets, like he did

20   under that scintillating cross-examination by Rex Butler.  He's

21   probably a liar -- the defense is free to do that, Your Honor,

22   but the defense -- there's no question the testimony is

23   admitted and is admissible.

24         And on that point, the Government also intends -- the

25   only way it can put on its case is to use the very exhibits

1   that are already in evidence in this case.  That's what

2   happened at the trial.  The Government isn't going to put

3   people through three days of saying do you remember this --

4   this exhibit, that exhibit.  These are in the record in this

5   case.  They're in there for purposes of a criminal direct

6   appeal and they're in there for purposes of going back to that

7   moment in time.

8           MR. COHEN:  Your Honor, I disagree with the

9   Government.  The testimony that the Government seeks to read

10  back is hearsay for the reasons that I just said.  The

11  Government is not arguing that it qualifies under the former

12  testimony exception to the hearsay rule.  The Government,

13  rather, is arguing that this testimony is already admitted in

14  this trial.  I disagree.

15          The previous jury has already been excused.  We're

16  not in front of that jury anymore, we're picking a new jury,

17  we're empaneling a new jury, we're swearing a new jury for the

18  purposes of forfeiture -- of the forfeiture part of this trial.

19  Therefore, this is not the same trial.  This is a new trial.

20  It's for a different purpose, but it's a new trial and,

21  therefore, all the evidence that is coming into this trial is

22  evidence at a different trial and must qualify as admissible

23  evidence anew.

24          Secondly, Mr. Colette was charged in a criminal

25  indictment with two forfeiture counts, and he has the right to

1  have the jury that considers forfeiture also see the demeanor

2  of the witnesses.  The courts have held and the Supreme Court

3  has held repeatedly that the right to confrontation and the

4  right to call witnesses includes the very important component

5  of being able to face the witnesses and have a jury look at the

6  demeanor of the witnesses while the witnesses are being

7  questioned.

8         Even if the Government is correct, that we're trying

9  to get back to square one where we would have been if Mr.

10  Butler had not -- if the record had been unclear and Mr. -- and

11  the jury -- jury was not clearly waived at that time, we're

12  trying to get back to that, we're trying to get back to a place

13  where the jury at that time had the -- had to recall -- had

14  just seen the demeanor of all these witnesses, Your Honor.

15         So I disagree with the Government, and, you know,

16  like the Court has said -- I mean, this trial has been set for

17  a long time, so the Government should be prepared if the Court

18  disagrees with the Government, and I don't think that there's

19  -- there is -- I don't think the Government is correct, I don't

20  think that the Government has cited any authority -- they were

21  citing one Seventh Circuit case which -- I saw it this morning,

22  not in their briefs, but Mr. Barkeley showed it to me this

23  morning.  I have not had a chance to read that case.  I'm not

24  sure if the Court has had a chance to read that case, so I

25  don't know to what extent that stands for the proposition of

1   what the Government is proposing.

2          So the Government has had this date for a long time

3   and they should be ready to call live witnesses.

4          It's my understanding that the Government, at this

5   point, is in agreement with my argument that under the

6   Government's proposal, which I disagree with, but the

7   Government is in agreement at this point that if the Court

8   agrees with the Government's proposal, that the jury should be

9   instructed that the original jury convicted on counts one and

10  two and acquitted on counts three and four, which was my

11  original argument.  I believe the Government is in agreement as

12  to that.

13          THE COURT:  I don't know that.

14          MR. COHEN:  I'm sorry, Your Honor?

15          THE COURT:  I don't know that.  I don't see any

16  (indiscernible) --

17          MR. COHEN:  I don't know then.  I think Mr. Barkeley

18  will (indiscernible - simultaneous speakers) --

19          MR. BARKELEY:  Your Honor, I think if the -- if the

20  Government -- the Government's position is that if we're going

21  back to the point where a waiver did not occur at the

22  defendant's request, then it's only fair that he be allowed to

23  argue to the same jury that they acquitted on counts three and

24  four.  That's only fair.  If the Government wants to argue

25  there was a conviction on count one, he can argue that

1    certainly.  I'm going to argue the elements are different and

2    the burden of proof is different, and that's -- that's

3    consistent with the Government's theory.

4         I can say, Your Honor, in response to counsel's

5    arguments, you know, again, he wants jury instructions, he

6    didn't file any proposed jury instructions on that point, and I

7    also would point out the right to jury in this case is not

8    constitutional in character.  Counsel is conflating everything

9    about a criminal trial with a part of the sentencing process,

10   which we're involved in now, and the jury partakes in making

11   one finding of fact for the Court, and then the Court will

12   impose sentence.  There is no constitutional right to a jury

13   trial in this case, and counsel is trying to make it that.

14        Your Honor, secondly, I would point out what a circus

15   this is going to become if counsel is allowed to make the

16   Government put on a new trial instead of use the evidence

17   already admitted at trial because each one of the witnesses

18   then will take the stand and counsel is then going to cross-

19   examine them on why they said "the" two years ago, and now

20   they're saying "an" today, and it will be a useless exercise,

21   Your Honor.  It's completely wasteful.  Everything is in the

22   record that the Government needs to rely on for purposes of

23   forfeiture.

24        THE COURT:  Okay.  Everybody through?

25        MR. COHEN:  No, I just -- no, Your Honor.  One other

1    point is that I think both sides are also in agreement that the

2    -- that at that point when Mr. Butler purported to waive jury,

3    at that point, both sides would have had the right to put on

4    additional evidence.  I think both sides are in agreement

5    that's the case.

6           And so we're at the point that the Government has a

7    right to put on additional evidence and we do.

8           THE COURT:  Well, you're being permitted to put on

9    additional evidence --

10           MR. COHEN:  Exactly.

11           THE COURT:  -- I think.

12           MR. COHEN:  Exactly, exactly.

13           THE COURT:  Okay.  So that's good.  You should be

14    happy about that.

15           MR. COHEN:  Now the -- as far as the jury knowing

16    about the acquittals on counts three and four, I think the jury

17    also needs to know what the instructions were on counts three

18    and four -- in other words, what the first jury knew the

19    requirements were for counts three and four when they then

20    acquitted.  So I would ask that the jury also be apprized of

21    what the first jury was instructed on counts three and four.

22           THE COURT:  Well, we can deal with that at

23    instruction time.

24           MR. COHEN:  Right.  That's it.  I don't have anything

25    further.

1       THE COURT:  'Kay.  Done?  All right.  Okay.  Well,

2  here's what we've got.  Specifically, after the first trial,

3  Mr. Colette waived his right to jury trial on the issue of

4  forfeiture.  That was done on the record after consulting with

5  counsel.  Then later with new counsel involved, he decided he

6  wanted a right to jury trial on the forfeiture issue.

7       Had I been -- ruled on that issue, I thought I would

8  have been prepared to deny that because I thought as a matter

9  of law it had been waived, and I think counsel can waive that

10 right, and counsel did, and I think there's authority to that

11 effect.  But the Government conceded the issue, and so we are

12 now going back to allow Mr. Colette the opportunity to have a

13 jury consider the issue of forfeiture, and that's fine, and

14 that's what we're doing here the next several days.

15      This is a different kind of a trial though because

16 now we're proceeding under a different standard.  It's no

17 longer proof beyond a reasonable doubt, it's a forfeiture

18 trial, so we're talking about proof by a preponderance of the

19 evidence, more likely true than not true.

20      Under these circumstances, given the fact that it is

21 a forfeiture trial, and specifically concerning the history

22 involved, I think the Government should be able to go back to

23 where it was at the point in time where defendant waived his

24 right to jury trial and to do as it intended to do, present

25 testimony that was previously heard -- remember, that's

1    testimony that was subject to cross-examination, that was

2    admitted, and was viewed at the time of being appropriate for

3    the jury to consider.  As a result, I think it's appropriate

4    now for this new jury to consider in determining whether or not

5    the Government satisfies the elements necessary to forfeit this

6    particular property.

7              I will go ahead and read the -- tell the jury that

8    defendant had been acquitted by the same jury of using or

9    carrying the guns, which is the subject of this forfeiture

10   trial.  Anything else I have to rule on before we bring the

11   jury in?

12             MR. COHEN:  Well, Your Honor, I think -- so just to

13   clarify now, it's my understanding that what we're going to do

14   is read in --

15             THE COURT:  I don't know how -- what the Government's

16   going to do.  It's up to the Government to present its case,

17   and you've told me that you think that's what they're going to

18   do and it sounds like might be what they're going to do.

19             MR. COHEN:  Well, that's why I was raising it --

20   that's why I'm raising it right now because, you know, like --

21   the Court knows I object to the procedure --

22             THE COURT:  Right.  And you're -- you've clearly --

23             MR. COHEN:  -- but if -- but if we are going to use

24   that procedure, it seems to me that if we're trying to put the

25   jury -- this jury in -- to the extent -- to that extent,

1-20

1   they're not going to see the live -- the demeanor of these

2   witnesses, but they're -- they should at least hear all the

3   testimony that that jury heard, both direct and cross, all the

4   witnesses.

5          THE COURT:  Mr. Barkeley?

6          MR. BARKELEY:  Yes, Your Honor.  The Government's

7   intentions have been clear from the moment it filed its witness

8   list two months ago.  The four witnesses listed there

9   encompassed the entire trial.  There were only four witnesses.

10  The Government intends to essentially have two of those

11  witnesses, who will be here live simply to assist the

12  Government in reading the testimony of the witnesses.

13         THE COURT:  Okay.

14         MR. BARKELEY:  The Government does not intend to put

15  Mr. Johnson, who is under subpoena, through the ordeal of going

16  through testimony again.  It's simply going to be read by

17  somebody else, and it can even be somebody of -- of --

18         THE COURT:  You're just going to read the direct and

19  allow them to read the cross, is that --

20         MR. BARKELEY:  Yes, yes, Your Honor.  It's really a

21  matter of role-playing.

22         THE COURT:  So you'll make your witness available so

23  that they can read the cross.

24         MR. BARKELEY:  Yes.

25         THE COURT:  So we're just going to have a repeat of

1  the first trial?

2      MR. BARKELEY:  But Special Agent Foran, for example,

3  is unavailable, he won't be here, so someone will read his

4  testimony --

5      THE COURT:  Okay.  I understand.  In terms of what

6  the jury hears, either through direct testimony or deposition

7  -- or re-read testimony.

8      MR. BARKELEY:  Yes.  The entire examination -- and

9  the extent of cross is up to counsel.

10      THE COURT:  Up to the defense.

11      MR. BARKELEY:  If counsel doesn't want to go that

12  deep in it, he doesn't have to go that deep.

13      THE COURT:  No argument here.  So far, we've spent a

14  lot of time arguing about things we don't -- we agree on.

15  Let's keep going.

16      MR. COHEN:  As long as that's clear, that's fine.

17      THE COURT:  Okay.  So -- and defendant understands he

18  has a right, I suppose to testify in this case just like he had

19  a right to testify in the first part of the trial, but it would

20  be limited to the issue of forfeiture.  He can choose to

21  testify or not, it's his choice.  I explained this to him in

22  the prior trial.  The same applies in this trial, I presume.

23  That true, Mr. Barkeley?  Do you agree with that?

24      MR. BARKELEY:  I do, Your Honor.  And it would appear

25  he doesn't have any incrimination concerns at this point.

1        THE COURT:  I don't know.

2        MR. BARKELEY:  That's for him to decide.

3        THE COURT:  I don't know anything about that.  That's

4   up to you gentlemen to decide.  Okay.  Well, can we make a

5   phone call -- go off the record and make a phone call and see

6   how the jury assemblage is coming?

7        MR. BARKELEY:  Your Honor, before we go off record,

8   may I ask just one point of clarification?

9        THE COURT:  Okay.

10       MR. BARKELEY:  My intent, I stated, was not to call

11  Mr. Johnson but have his testimony read and then --

12       THE COURT:  Right.

13       MR. BARKELEY:  -- counsel could cross the witness

14  sitting in for Mr. Johnson.

15       THE COURT:  Right.

16       MR. BARKELEY:  Okay.  Is that -- so that's what the

17  Government intends to do.  He will not be available, in other

18  words.

19       MR. COHEN:  Well, I'm -- when he said -- one of the

20  two witnesses that I was talking about earlier is Mr. Johnson,

21  the local witness.  If the Government is in touch with Mr.

22  Johnson, we can save a lot of time if they make him available

23  tomorrow afternoon because he's under subpoena, rather than

24  having the Court issue an order that he can be held in

25  contempt?  And --

1          THE COURT:  Well, if you can provide him notice of

2  where Mr. Johnson is, that would be helpful.

3          MR. BARKELEY:  He's out in the hall, but he's no

4  longer -- he's going to be excused from our subpoena.

5          THE COURT:  Well, you better get --

6          MR. COHEN:  Well, then maybe we can call him in and

7  order him back tomorrow afternoon, and then it'll solve the

8  problem.

9          THE COURT:  Okay, let's do that.

10          MR. COHEN:  That'll -- then I only have a Florida

11  witness --

12          THE COURT:  Then we solved a big problem.  But that's

13  -- we're just trying to help.

14          MR. COHEN:  I know, Your Honor.

15          THE COURT:  Okay.  Let's get it done.  What time do

16  you want him back?

17          MR. COHEN:  What time will the Court start tomorrow

18  afternoon?  What time does the Court start in the afternoon,

19  1:30?

20          THE COURT:  1:30.  It's all guesswork, you know that.

21  We not even be done with the case -- we're not going be done

22  with the case -- state's case by tomorrow afternoon at 1:30 if

23  we repeat the whole direct trial, are we?  Trial took two and a

24  half days.

25          MR. BARKELEY:  Well, Your Honor, I have a theory that

1  we might be just because I think in reading the testimony back

2  there are fewer --

3          THE COURT:  It's a lot quicker.

4          MR. BARKELEY:  -- pauses and --

5          THE COURT:  'Kay.  Have him back by 1:30 tomorrow.

6          MR. COHEN:  (Indiscernible - away from microphone)

7          THE CLERK:  Off record.

8       (Recess at 9:04 a.m., until 9:22 a.m.)

9       (Prospective jurors not present)

10         MR. COHEN:  Your Honor, earlier I told Your Honor

11  that there are two witnesses that are under subpoena that were

12  not here.  I said one was in Fairbanks and one was in Florida.

13         THE COURT:  I remember that.

14         MR. COHEN:  I was incorrect.  I keep confusing

15  Fairbanks -- I said one was in Anchorage and one was in

16  Florida.  I keep confusing Fairbanks and Anchorage.  The person

17  was -- I should have said was one is in Fairbanks and one is in

18  Florida.  The one in Fairbanks is Mr. Johnson.

19         THE COURT:  Okay.

20         MR. COHEN:  At that time, I did not know -- when I

21  was saying this to the Court, I did not know that Mr. Johnson

22  in fact is currently in this building, and --

23         THE COURT:  'Kay.

24         MR. COHEN:  -- he was not in the hall pursuant to my

25  subpoena.  He was in the Government's office --

1          THE COURT:  Okay.  But he was --

2          MR. COHEN:  -- U.S. Attorney's Office which went to

3  -- pursuant to their subpoena.  So --

4          THE COURT:  So he was here.

5          MR. COHEN:  -- he was here.  So, therefore, when I --

6  when we were discussing the procedure for this trial, I had in

7  my mind that he was unavailable, he wasn't here --

8          THE COURT:  Right.

9          MR. COHEN:  -- when I agreed to the procedure of the

10  role-playing, et cetera, that Agent Cohoon is going to role

11  play and -- other than, I guess, Agent Foran is not here.

12  Everybody else is going to get up and read the testimony.  So

13  given that, in thinking about that further and given my point

14  that this jury should see the demeanor of the witnesses,

15  because Mr. Johnson is here -- I understand the Government

16  doesn't want to put him through the ordeal of being up there,

17  but he is here, he's under subpoena from both sides, and it's

18  our request that even though we're going to do the role-

19  playing, which is over my objection, we think there should be

20  new live testimony, but we're doing it that way.  But in any

21  event, if we're doing it that way, our request is that Mr.

22  Johnson be up there and read his part.

23          THE COURT:  Mr. Barkeley?

24          MR. BARKELEY:  The Government objects to that, Your

25  Honor.  Consistent with the Court's ruling on the readbacks of

1   the testimony --

2        THE COURT:  Well, as far as I'm concerned, the

3   Government can present the case the way they want to present

4   it, and if you want to call him in and have him read his part

5   on cross, you can do that.  You've got him under subpoena.

6        MR. COHEN:  I'm going to -- I would ask to read the

7   -- read the cross to him --

8        THE COURT:  That's what I meant.

9        MR. COHEN:  But the -- right, right, right, I

10  understand that, but just so the Court knows, we also have him

11  under subpoena for our case as well.

12       THE COURT:  Okay.  Well, I'm not interfering with

13  your ability to try your case.

14       MR. COHEN:  All right.  So that --

15       THE COURT:  You've got him under subpoena, you can

16  use him as you wish.

17       MR. COHEN:  All right.  That was my first issue.  The

18  other issue is there is a third witness that we've been

19  attempting to subpoena that I didn't mention earlier.  His --

20  and that's Agent Foran from DEA.  Now Agent Foran apparently is

21  on a hunting trip.  We subpoenaed his office, but he's hunting.

22       THE COURT:  Okay.

23       MR. COHEN:  Your Honor, it may be that we don't need

24  to call him in our case.  One of the things that we've been

25  trying to get is the §3500 material.  It's my understanding

1    that Agent Foran testified to the grand jury in this case, and

2    Mr. Butler, at the conclusion of Agent Foran's testimony in

3    trial, he had the right to move under Section 3500 of Title 18

4    for his prior statements.  Mr. Butler didn't make that motion

5    as to any of the witnesses at the conclusion of their

6    testimony.

7              I made the motion in the trial memorandum that the

8    §3500 material be produced.  The Government responded by saying

9    we believe we produced all that material; in any event, you're

10   not entitled to it.  In looking at the record, I don't believe

11   the Government produced all the statements of Mr. Johnson, the

12   Government disagrees, but I certainly don't believe that the

13   statement of Mr. Foran was produced, the grand jury testimony,

14   because it's just nowhere -- it's nowhere in the file, there's

15   no grand jury testimony, and somebody had to have testified in

16   the grand jury in this case.  So it most likely was the case

17   agent, it was Agent Foran, and we ask that that statement be

18   produced to us.

19             It may very well be that when we review that

20   statement, we'll no further need to seek to call him in the

21   defendant's case, but in any event, we're entitled to that and

22   we'd ask the Court order the Government to turn over that

23   statement under Section 3500.

24             MR. BARKELEY:  Your Honor, this is a post-conviction

25   by the jury motion for a Jencks statement.  That's what it is.

1  This has nothing to do with the forfeiture case.  Secondly, I

2  brought with me -- and it's in the U.S. Attorney's Office -- I

3  brought with me proof in the form of a letter that Mr. Schroder

4  wrote to Rex Butler, indicating that he had turned over all the

5  Jencks material in the case.

6         So there isn't an issue, but if counsel is seriously

7  contending that he is surmising that Special Agent Foran

8  testified in grand jury and he's going to go back now and

9  second guess Rex Butler and what he did or didn't ask for, the

10 Government's position is that that's too late.  You take that

11 up on direct appeal or §2255, but we're not here to re-try the

12 criminal prosecution with pretrial motions.

13        THE COURT:  Okay.  We've got the jury here now.  You

14 made your record.  This is a forfeiture trial, we want to

15 proceed forward.  I think you solved most of your problems and,

16 you know, you can just raise it as we proceed forward, but now

17 is the time to pick the jury.  Okay?

18        MR. COHEN:  So we'll revisit that later?

19        THE COURT:  You can revisit it.  I mean, I've got the

20 jury standing in the hall.

21        MR. COHEN:  That's fine, Your Honor.  I'll --

22        MR. BARKELEY:  I will provide counsel during the

23 break with the proof of the Jencks, Your Honor.

24        THE COURT:  Okay.

25        MR. COHEN:  Your Honor, should we have Mr. Johnson

1  come in and order him back or --

2           THE COURT:  Well --

3           MR. COHEN:  We're going to --

4           THE COURT:  Oh, my goodness.  I'm been -- twenty

5  minutes they're waiting and now you decide you want to bring

6  him in?

7           MR. COHEN:  Well, it's --

8           THE COURT:  The jury is now standing at the door.  I

9  will do what I can.  I've already told you I would.

10          MR. COHEN:  Well, it sounds -- well, I understand,

11 Your Honor.  I'm not trying to aggravate the Court.  Based upon

12 the fact that he's going to be reading his cross, I'm going to

13 go advise his counsel that he should wait.

14          THE COURT:  He should wait?

15          MR. COHEN:  That he's not excused from the subpoena.

16          THE COURT:  Well, we're going to be all day picking

17 -- all morning picking the jury.  He doesn't have to wait for

18 that.

19          MR. COHEN:  All right.  So --

20          THE COURT:  I don't know when he's in the -- he

21 should be here by tomorrow morning.  Tell him by tomorrow

22 morning.

23          MR. COHEN:  All right.

24          MR. BARKELEY:  He's excused from the Government's

25 subpoena.

1      THE COURT:  Okay.  So --

2      MR. BARKELEY:  I already told him.

3      MR. COHEN:  All right.

4      THE COURT:  Okay.  So have him back by tomorrow

5  morning.  That means the Government can't put him on until

6  tomorrow -- late today or tomorrow morning.

7      MR. COHEN:  So that I'll be able to read him cross.

8      THE COURT:  Right.

9      MR. COHEN:  Okay.  Well, (indiscernible - away from

10  microphone).

11      THE COURT:  Well, I'm willing to, but I can't see

12  him.  And the Government still has the option of calling --

13  having him read his direct, too.  One minute.  Oh, you have the

14  jury out there?

15      MR. COHEN:  (Indiscernible - away from microphone)

16      THE COURT:  Close the door.  Close the door.  Okay.

17  Good morning, Mr. Johnson.

18      THE WITNESS:  Morning.

19      THE COURT:  How are you doing?

20      THE WITNESS:  Okay.

21      THE COURT:  Can you be here tomorrow morning at 8:30?

22      THE WITNESS:  If I have to.

23      THE COURT:  You have to, but you're excused for

24  today.  You have to be here at 8:30 tomorrow morning.

25      THE WITNESS:  (Indiscernible - away from microphone)

1      THE COURT:  Okay.  We'll see you then.  Thank you.

2  Okay.  Now we can -- oh, does counsel have this list?

3      THE CLERK:  (Indiscernible - away from microphone)

4           (Pause - side conversation)

5      THE COURT:  Okay.

6           (Pause - side conversation)

7     (Prospective jurors present)

8      THE COURT:  Okay.  We got the whole team here?  Looks

9  like it.  Everyone can please be seated and good morning,

10  ladies and gentlemen.  How are you doing?  What a beautiful day

11  for jury duty.

12      Well, my name is Judge Beistline and you've been

13  summoned here as prospective jurors in the case entitled United

14  States of America v. Jason Scott Colette, and the Clerk has

15  previously taken roll, and it got a little slow.  Apparently

16  there was a problem with the computer, but now we're all here

17  and we know who you are and that's good.

18      But I want to just take just a second to thank you

19  for being here today.  I know there's tons of other things to

20  be doing when the weather's this beautiful in the fall in

21  Fairbanks, and so I appreciate the sacrifice involved.  I

22  really do appreciate that, and you need to be thanked.  But,

23  you know, we -- in our system of justice, it's critical that we

24  have jurors; it's a jury system.  And so we appreciate you

25  being here and we do understand the sacrifice that's involved.

1    But my experience is, frankly, and I've been doing

2 this for fifteen years, that after it's all said and done,

3 jurors usually appreciate the opportunity to take part in the

4 system, and they realize how much we appreciate them.

5    Now this is a trial that's going to actually be done

6 -- it's already Tuesday.  We expect the trial to be done before

7 the end of the week.  We never know for certain, but that's --

8 that's what we're looking at.  It's not one of these trials

9 that goes on for weeks and weeks.

10    The trial day.  We generally start at 8:30 in the

11 morning, we break about noon, come back about 1:15 or so, and

12 then go to about 4:30, and that's roughly the trial day.

13    In this particular case, just so I get to tell you

14 exactly what we're doing here, I'll just tell you the defendant

15 has been charged by indictment, and let me just tell you that

16 the purpose of this trial is to determine whether the defendant

17 should forfeit certain guns and money.  That's what the whole

18 purpose of the trial is.  So it's basically what we call a

19 forfeiture trial.

20    Now let me introduce the parties to you so we can --

21 we'll start with the Government attorney, Mr. Barkeley.  This

22 is the attorney for the Government and he has his case agent.

23 Do you want to introduce your case agent, Mr. Barkeley?

24    MR. BARKELEY:  Yes, thank you, Your Honor.  Good

25 morning, ladies and gentlemen.  I'm James Barkeley for the

1  Government, and with me is Special Agent Eric Cohoon who is

2  with Alcohol, Tobacco and Firearms, ATF.

3      THE COURT:  And the defendant in this matter, Mr.

4  Colette, is the gentleman in the white shirt, and he's

5  represented by Mr. Cohen, and those are the other parties

6  involved.

7      MR. COHEN:  Good morning.  My name is David Cohen and

8  this is my client Jason Colette.

9      THE COURT:  Okay.  So basically, I told you what the

10  trial is about and I've introduced the parties.  As I said

11  before, the purpose of the trial is for the jury to determine

12  whether the defendant in this matter should forfeit certain

13  guns and certain money, and I said before it's a forfeiture

14  trial.  Now let me give you a little background.

15      Mr. Colette was previously convicted by a federal

16  jury of possession of cocaine with intent to distribute, one

17  count, and one count of distribution of cocaine.  That same

18  jury acquitted him of using certain guns, which are the subject

19  of this forfeiture trial, and certain monies -- I'm sorry, and

20  certain guns, so he was convicted of possession of cocaine, he

21  was convicted of distribution of cocaine, he was acquitted of

22  -- by the same jury of using or carrying guns associated with

23  these two charges.  So that's what happened before you got here

24  today.

25      And I said before you're going to -- we're going to

1-34

1    give you a lot more specifics, but you're going to be asked to

2    make some determinations with regard to the propriety of

3    forfeiture.

4              Okay.  So we've introduced the parties, we've told

5    you a little bit about the case.  I -- we try cases in

6    Anchorage and in Fairbanks and in Juneau and in Nome and all

7    over the country, and we do it the same way, we pick jurors the

8    same way, and so you'll notice I refer to a script, and that's

9    so that I can make sure I'm following the procedures so we do

10   things the same everywhere we go.

11             The trial in this case will be conducted in

12   accordance with established rules.  The judge, that's me, is

13   like a referee, and I enforce the rules and I determine what

14   law is to be applied to the case and what evidence may be

15   admitted.  Then the attorneys present the evidence according to

16   these rules, and it's the jury's function to decide the facts,

17   the credibility of the witnesses, and then the weight to be

18   given to witnesses' testimony, and then to render a just

19   verdict if you are able.

20             It will be the jury's sworn duty to accept the law as

21   given to you by the judge, and apply the facts as you find them

22   to that law.  As the trial proceeds, I will explain this in

23   more detail, and the procedure that we're going to follow.

24             Now in this particular case, the Government has

25   charged Mr. Colette by indictment, essentially, of possessing

1  four firearms and thirty-eight thousand dollars and eight

2  hundred and -- eight hundred and forty-eight dollars [$38,848]

3  in cash in connection with possession and the sale of cocaine

4  that I talked to you about just a second ago.

5         Let me just refer specifically to that indictment.

6  So as I said before, the defendant was charged by way of

7  indictment, and the Government seeks that Mr. Colette forfeit

8  to the United States any property constituting or derived from

9  any proceeds the defendant obtained directly or indirectly as

10  the result of the prior convictions I referred to, and any

11  property used or intended to be used in any manner or part to

12  commit or facilitate the commission of such violation,

13  including but not limited to, approximately thirty-eight

14  thousand eight forty-eight [$38,848] in United States currency.

15  This is just roughly what the Indictment says.  And then

16  there's another count that says:

17         "As a result of committing the controlled substance

18         offense, Jason Colette shall forfeit to the United

19         States any property constituting or derived from any

20         proceeds the defendant obtained directly or

21         indirectly as a result of such violation, and any

22         property used or intended to be used in any manner or

23         part to commit or facilitate the commission of such

24         violation pursuant to" --

25  -- and then it sets forth the statute.  And then it sets forth

1-36

1   the four firearms we're talking about.  One is an Ingram Model

2   10A1455 caliber, nine millimeter machine gun.  Second one is a

3   Remington Woodmaster, Model 740, .30-06.  The third one is a

4   Colt Sporter 762-39 rifle.  And the fourth weapon involved is a

5   Mossberg Model 580, twelve-gauge shotgun.  And it gives the

6   serial numbers for each of those.

7          So that's what's in the Indictment.  But an

8   indictment is only a formal method of accusing a defendant of a

9   crime.  It is not evidence of any kind against the accused, and

10  does not create any presumption or permit any inference of

11  guilt.  It is merely an allegation of the charge or charges

12  against the defendant and informs the defendant of the specific

13  crime or crimes with which he is charged.  The fact an

14  indictment has been filed against the defendant may no be

15  considered by you for any purpose, and is not evidence in the

16  case and should not be considered as such by you.

17          To the charge contained in the Indictment, the

18  defendant has pled not guilty.  This plea of not guilty places

19  upon the Government the burden of proving beyond a reasonable

20  doubt all of the material allegations and essential elements of

21  the crime charged.

22          So now you understand basically what the charges are,

23  and this -- we're just talking now.  This is not the

24  evidentiary portion of the trial or anything like this.  I'm

25  just trying to give you a feel of what we're talking about