1    here.

2              What we have to do now is empanel the jury, and this

3    is a very crucial stage in trials since it is important to both

4    sides to obtain a fair and impartial jury.  Both the Government

5    and the defendant are entitled to jurors who approach this case

6    with open minds and agree to keep their minds open until a

7    verdict is reached.  Jurors must be as free as humanly possible

8    from bias, prejudice, or sympathy, and must not be influenced

9    by preconceived ideas as to the facts or as to the law.

10             In this case, the jury will be composed of twelve

11   persons and an alternate.  And so I'm going to ask you some

12   questions, just general questions to see if it would be

13   appropriate to serve as jurors in this case.  First we need to

14   administer an oath to all of you because the questioning has to

15   be under oath.  So if you'll stand, I'll have my Clerk

16   administer the oath.

17             THE CLERK:  If you could all raise your right hand,

18   please.

19       (Prospective jurors sworn)

20             THE CLERK:  Thank you.  You may be seated.

21                         GENERAL VOIR DIRE

22             THE COURT:  Okay.  I'm going to ask you several

23   questions, then we're going to -- it's going to be general

24   questions for the whole panel, and then we'll have some more

25   specific questions later, but frankly, we pick jurors pretty

1    quickly.  So by noon, we hopefully will have the jury in this

2    matter and we'll get on to the trial today.  So let me just ask

3    you some general questions.  We ask it to jurors all over the

4    country.

5                Question number one.  Are you ready?  Is this

6    stressful?  Here's the first question:

7                Is there any one of you who is not a citizen of the

8    United States?  See, easy.

9                Question number two:  Is there any one of you who is

10   not eighteen years of age or older?

11               Okay.  Now we're getting serious.  Is there any one

12   of you who is not in possession of a sound mind?  Okay?

13               Question number four:  Is there any one of you who is

14   not in possession of all your natural faculties?  That is, the

15   ability to see, hear, smell, taste, and touch.

16               Question number five:  Is there any one of you who is

17   unable to either read or speak the English language?

18               Question number six:  Is there any one of you who is

19   currently on probation in either state or federal court?

20               Question number seven:  Is there any one of you who

21   currently has criminal charges pending against you or is in

22   dispute with the federal government at this time?

23               Question number ten -- well, wait.  Question number

24   eight:  Have you or anyone close to -- now here's where you

25   start raising your hand, okay?  The first seven -- now don't be

1    embarrassed to raise your hand because we need to have you come

2    forward to a microphone, just give us the answer, then you --

3    you state your name, you give us the answer, and then you go

4    and -- or see, if for some reason any of these answers need to

5    be done in private, we just step out here, we do it in private,

6    and there will be people coming back here, it happens all the

7    time, okay, because that's just the nature -- that's where we

8    are.

9          So here's the question:  Have you or anyone close to

10   you ever been a party in a lawsuit or court proceeding other

11   than child custody or traffic-related matters or divorce or

12   anything like that.  So have you ever been involved in a

13   lawsuit -- just -- now all you have to do is come up to the

14   microphone, state your name and say, yes, I was involved in a

15   civil case ten years ago, or stand up and say, Judge, can we

16   just talk about that out here?  And we step in the back.

17   That's what happens.  Okay.  And you're -- you start us off,

18   sir.  What do you want to do?

19          JUROR NO. 42:  I'll come in the back with you.

20          THE COURT:  Okay.  So if we can just have counsel

21   come back and we'll just step back here and we'll take care of

22   this real quick.  (Indiscernible - away from microphone.)

23       (Side bar not transcribed)

24          THE COURT:  Okay.  Just keep coming.  You want us to

25   come back here or do you want us to -- or can you go to the

1    microphone?

2                  JUROR NO. 20:  I'd like to come privately.

3                  THE COURT:  Okay.  Well, why don't we just come on

4    back.  Counsel?

5         (Side bar not transcribed)

6                  JUROR NO. 45:  (Indiscernible - away from microphone)

7                  THE COURT:  Counsel just stay here.  (Indiscernible -

8    away from microphone.)

9         (Side bar not transcribed)

10                 THE COURT:  Next?  Just so -- I'm going to ask later

11   also if any of you have been victims of crime or had anyone

12   close to you, so we might as well do all that while we're at

13   it, okay?

14        (Side bar not transcribed)

15                 THE COURT:  Next?

16        (Side bar not transcribed)

17                 THE COURT:  Next?

18        (Side bar not transcribed)

19                 THE COURT:  I guess the word got out we had doughnuts

20   back here.

21        (Side bar not transcribed)

22                 THE COURT:  Next.

23        (Side bar not transcribed)

24                 THE COURT:  Next?

25        (Side bar not transcribed)

1          THE COURT:  All right.  Who's next?  Don't be shy.

2   Oh, in here?

3          UNIDENTIFIED JUROR:  Landlord-tenant.

4          THE COURT:  Okay.  Anyone else who wants to come back

5   here?  Nobody wants to come back here anymore.

6          UNIDENTIFIED SPEAKER:  You ran out of doughnuts.

7          THE COURT:  We are out of doughnuts.  We've got one

8   doughnut left.  Okay.

9      (Side bar not transcribed)

10         THE COURT:  Okay.  Next.  Just go to the microphone

11  and tell us what the concern was, and my question is always if

12  that affects your ability to be a fair juror.  Ma'am?

13         JUROR NO. 32:  You want eight or nine first?

14  Question eight or question nine?  I've got one for each.

15         THE COURT:  Oh, good.  Go for it.

16         JUROR NO. 32:  Years ago before my husband and I got

17  married, right before he --

18         THE COURT:  Okay.  Your name, please?

19         JUROR NO. 32:  Oh, sorry.  (States name.)

20         THE COURT:  Okay.

21         JUROR NO. 32:  He had a civil suit dealing with

22  financial matters and just paying off old credit card debt.

23         THE COURT:  Okay.  So he got in debt and got in a

24  lawsuit over it?

25         JUROR NO. 32:  He had filed bankruptcy years prior.

1        THE COURT:  Okay.  And so he was in financial

2   problems, found you, and married you, right?

3        JUROR NO. 32:  Pretty much.

4        THE COURT:  Solved all his problems, right?

5        JUROR NO. 32:  Yeah.  He married me for money.

6        THE COURT:  Okay.  Anything about that experience

7   affect your ability to be a fair juror in this case?

8        JUROR NO. 32:  Absolutely not.

9        THE COURT:  Okay.  Second issue.

10       JUROR NO. 32:  Second issue.  Growing up, we had

11  somebody who broke into our family home and robbed it.

12       THE COURT:  In Fairbanks?

13       JUROR NO. 32:  North Pole, yes.

14       THE COURT:  North Pole.  Anything about that

15  experience affect your ability to be a fair juror in this case?

16       JUROR NO. 32:  Absolutely not.

17       THE COURT:  Okay.  You can be fair to both sides?

18       JUROR NO. 32:  Yes.

19       THE COURT:  Okay.  Thank you.  Next?  Yes, ma'am.

20       JUROR NO. 39:  (States name.)  I am friends with I

21  believe the defendant's sister, and we've had our children --

22       THE COURT:  Okay.  So in other words, you know --

23  you're friends of the family.

24       JUROR NO. 39:  Yeah.

25       THE COURT:  Would that affect your ability to be a

1  fair juror?

2          JUROR NO. 39:  It could.

3          THE COURT:  Okay.  Well, you know, that's a good

4  reason right there.  So you're going to be excused.  I

5  appreciate you mentioning that.  You see, I haven't even asked

6  that question yet.  That's about question number eleven, but --

7          JUROR NO. 39:  I didn't want to waste your time.

8          THE COURT:  -- I don't want to make you have to walk

9  up here then.  Obviously, if you're friends with people

10  involved, that's -- we can find other trials for you.  So you

11  just go back and tell the jury clerk you've been excused.

12          JUROR NO. 39:  Thank you.

13          THE COURT:  All right.  Thank you.  I've got a bunch

14  of other questions here, but we'll get this one.  Yes, sir.

15  Give us your name.

16          JUROR NO. 21:  My name (states name).

17          THE COURT:  Okay.

18          JUROR NO. 21:  I'm involved in a lawsuit over an

19  aircraft accident.

20          THE COURT:  Anything about that experience affect

21  your ability to be a fair juror in this case?

22          JUROR NO. 21:  No.

23          THE COURT:  That's just -- that was a civil matter,

24  right?  I mean, a -- it wasn't a criminal matter.  It had to do

25  with -- airplane crashed and there's litigation as a result of

1    that, right?

2         JUROR NO. 21:  Right.

3         THE COURT:  Okay.  Anything else we need to know?

4         JUROR NO. 21:  That's it.

5         THE COURT:  Okay.  Very well.  Thank you.

6         JUROR NO. 10:  My name is (states name) and I was

7    involved in a landlord-tenant matter.

8         THE COURT:  Okay.  Anything about that experience

9    affect your ability to be a fair juror in this case?

10        JUROR NO. 10:  No, I don't think so.

11        THE COURT:  Okay.  Well, let me just tell you what a

12   fair juror is.  The Government has made some charges in this

13   case, and they have to prove it, and they have to prove it to

14   the jury.  If they prove the charges, then the Government --

15   then the jurors have to say they proved it.  If they don't

16   prove it, then the jurors have to say they didn't prove it.

17   That's the whole -- that's what a fair juror is, someone who

18   can listen to the evidence, follow the instructions, and give

19   us the answer.  Any problem with that?  Can you do that?

20        JUROR NO. 10:  Do I have any problem?  No.

21        THE COURT:  Okay, good.  All right.  Thank you, sir.

22   Next?  Okay.  I'm going to go to the next question then.

23        Have you or anyone close to you ever worked as a law

24   enforcement officer, which would include probation officers or

25   correctional officers, or ever worked for -- as a defense

1   investigator with a defense law firm?  So just come and -- come

2   to the microphone, give us your name, and tell us whether or

3   not you think that would impact your ability to be fair.  Yes,

4   ma'am.

5           JUROR NO. 14:  (States name.)  My brother's a police

6   officer in Anchorage.

7           THE COURT:  Anything about that affect your ability

8   to be a fair juror in this particular case?

9           JUROR NO. 14:  No, sir.

10          THE COURT:  You say he works for Anchorage PD?

11          JUROR NO. 14:  Yes, sir.

12          THE COURT:  Do you talk to him very often?

13          JUROR NO. 14:  Probably four times a year.

14          THE COURT:  About his work?

15          JUROR NO. 14:  Rarely.

16          THE COURT:  Okay.  So you understand in this

17  particular case, the Government has made some charges, it has

18  to prove the charges.  If it does, fine, you have to say so; if

19  it fails to do you, you have to say that as well.

20          JUROR NO. 14:  Yes, sir.

21          THE COURT:  And you have the ability to do that

22  without any regard to what your brother may or may not do for a

23  living, is that true?

24          JUROR NO. 14:  Yes, sir.

25          THE COURT:  Okay.  All right.  Thank you.  Yes,

1  ma'am.

2          JUROR NO. 25:  My name's (states name), and my sister

3  is a reserve deputy for the Klickitat County in Washington

4  State.

5          THE COURT:  Okay.  Anything about that affect your

6  ability to be a fair juror?

7          JUROR NO. 25:  No.

8          THE COURT:  She -- that's in a whole different state,

9  right?

10          JUROR NO. 25:  It is.

11          THE COURT:  It's a reserve deputy.  I don't think I

12  know what that is.

13          JUROR NO. 25:  Well, she's also a 911 dispatcher

14  also.

15          THE COURT:  Okay.  So she works the -- she works --

16          JUROR NO. 25:  She works for the -- for the whole

17  county.

18          THE COURT:  Okay.  And you understand that the

19  jurors' duty is to listen to the evidence and then tell us the

20  answer without any bias or prejudice one way or the other.

21  Start neutral.  Can you do that?

22          JUROR NO. 25:  Yes.

23          THE COURT:  Okay.  All right.  Thank you.  Yes,

24  ma'am.

25          JUROR NO. 45:  My name is (states name), and my

1  husband worked at Alaska Public Defenders here in Fairbanks for
2  ten years.
3            THE COURT:  Anything about that experience --
4            JUROR NO. 45:  No.
5            THE COURT:  -- affect your ability to be a fair
6  juror?
7            JUROR NO. 45:  No.
8            THE COURT:  You could be as fair to the Government as
9  you could to the defendant?
10           JUROR NO. 45:  Yes.
11           THE COURT:  Okay.  And what's his last name, the same
12 as yours?
13           JUROR NO. 45:  No.
14           THE COURT:  What was his name?
15           JUROR NO. 45:  Bob Dunn.
16           THE COURT:  Okay.  D-U-N-N?
17           JUROR NO. 45:  Yes.
18           THE COURT:  Okay.  All right.  Thank you.  Yes,
19 ma'am.
20           JUROR NO. 6:  I'm (states name).
21           THE COURT:  I didn't catch the last name.
22           JUROR NO. 6:  (States name.)
23           THE COURT:  Okay.  With a D?
24           JUROR NO. 6:  Yes, sir.
25           THE COURT:  Okay.

1       JUROR NO. 6:  I was a juvenile detective with the

2  Huntsville, Alabama, Police Department forty-two years ago.

3       THE COURT:  Forty-two years ago.  Okay.  Anything

4  about that experience affect your ability to be a fair juror

5  here in Fairbanks, Alaska, in 2007?

6       JUROR NO. 6:  No.

7       THE COURT:  You can be just as fair to the defendant

8  as you can to the Government, is that true?

9       JUROR NO. 6:  Yes.

10      THE COURT:  Okay.  Thank you, ma'am.

11      JUROR NO. 6:  Thank you.

12      THE COURT:  Yes, sir.

13      JUROR NO. 26:  My name is (states name).  I used to

14  be a park ranger -- law enforcement ranger.

15      THE COURT:  Where was that?

16      JUROR NO. 26:  In Sequoia National Park and Yosemite

17  National Park, and I currently supervise law enforcement.

18      THE COURT:  In what capacity?

19      JUROR NO. 26:  As a park manager assistant

20  superintendent.

21      THE COURT:  Where?

22      JUROR NO. 26:  At Denali National Park.

23      THE COURT:  So is that where you live, up there?

24      JUROR NO. 26:  Yes, sir.

25      THE COURT:  So you actually live in Denali.

1          JUROR NO. 26:  Yes, sir.

2          THE COURT:  Beautiful weather up there, isn't it?

3    Incredible, isn't it?  Is there anything about that affect your

4    ability to be a fair juror in this case?

5          JUROR NO. 26:  No, sir.

6          THE COURT:  So you can be just as fair to the

7    defendant as you can to the Government?

8          JUROR NO. 26:  Yes, sir.

9          THE COURT:  And you understand the Government has the

10   burden of proof and if they prove it, fine; if they don't prove

11   it, well, then you have to say so.  Do you understand that?

12         JUROR NO. 26:  Yes, sir.

13         THE COURT:  Okay.  All right.  Thank you.  Yes,

14   ma'am.

15         JUROR NO. 30:  My name is (states name), and I was a

16   seasonal park ranger with law enforcement duties at Glacier Bay

17   and Katmai National Parks in the eighties.

18         THE COURT:  In the eighties.  So what do you do now?

19         JUROR NO. 30:  I'm a public appearance officer at

20   Denali National Park and Preserve, and (indiscernible).

21         THE COURT:  So you work with this last gentleman?  Is

22   he your boss?

23         JUROR NO. 30:  Yes.

24         THE COURT:  Now what if -- what if the two of you are

25   on the jury and he says one thing, can you exercise your

1-50

1    personal, individual judgment if you disagree?

2            JUROR NO. 30: Yes.

3            THE COURT: And you won't have to worry about losing

4    your job?

5            JUROR NO. 30: I won't have to worry about losing my

6    job, no.

7            THE COURT: Okay. So you can -- that's not going to

8    be something I should worry about.

9            JUROR NO. 30: No.

10            THE COURT: What about the fact that you worked in

11    kind of a pseudo-law enforcement capacity? Does that affect

12    your ability to be a fair juror in this particular case?

13            JUROR NO. 30: No.

14            THE COURT: So you can rule for the defendant if the

15    Government fails to prove its case?

16            JUROR NO. 30: Yes.

17            THE COURT: Without any problem?

18            JUROR NO. 30: Without any problem.

19            THE COURT: Okay. All right. Thank you. That

20    microphone looks like it's tilted forward or is it just my

21    perspective. Okay. All right, ma'am.

22            JUROR NO. 35: My name is (states name), and I was a

23    sworn police officer for Long Beach, California, in 1965.

24            THE COURT: You don't look old enough to -- you were

25    -- was it -- you were a child at the time?

1          JUROR NO. 35:  I don't think so.

2          THE COURT:  And how long did you work in that

3     capacity?

4          JUROR NO. 35:  One year.

5          THE COURT:  Okay.  And what have you done since then?

6     I mean, work-wise.

7          JUROR NO. 35:  Stayed home, been a housewife, and now

8     I work for the commissary at Eielson.

9          THE COURT:  Okay.  Well, anything about that brief

10    experience as a police officer affect your ability to be a fair

11    juror in this case?

12         JUROR NO. 35:  No.

13         THE COURT:  Okay.  You can be fair to both sides?

14         JUROR NO. 35:  Yeah.

15         THE COURT:  Okay.  Thank you, ma'am.  Next?  Okay.

16    I'm moving to the next question then.  I kind of asked this

17    before.  I'll ask it again.

18         Any -- have you or anyone close to you ever been a

19    victim of a crime?  Okay.

20         We generally don't have people serve as jurors if

21    they're related to any of the parties, for instance, or the

22    defendant, for instance, or the counsel.  Anyone have anything

23    along those lines that I should be concerned about or that

24    concern you?

25         Mr. Barkeley, can you give us the name of the

1  witnesses you think might be called to testify?

2        MR. BARKELEY:  Yes, Your Honor.

3        THE COURT:  If you'll listen, these are possible

4  witnesses.

5        MR. BARKELEY:  The Government expects to call for its

6  case four -- actually, we won't be calling the witnesses.  I

7  think the judge will explain the procedure to you, but because

8  the criminal trial has already occurred and the defendant was

9  convicted, the testimony that was given in that trial is going

10  to be transcribed.  Sometimes the original witness from the

11  trial will literally read that, and we'll be doing some role-

12  playing.  Defense counsel will cross-examine the witness, I

13  will ask the same questions that were asked during the trial,

14  so you will be come familiar with exactly what was said in the

15  trial.

16        For those purposes, you'll hear about the testimony

17  of four people.  One is Special Agent Cohoon with ATF, I've

18  already introduced.  The second one was an informant who

19  testified in the criminal trial that he was a drug -- a cocaine

20  customer of the defendant, and his name is Eugene Johnson, a

21  Fairbanks resident.  The other law enforcement officers that

22  were involved, one is a state trooper -- Alaska State Trooper

23  who was a sergeant at the time of the trial, you might have

24  known -- if you know him, he was a sergeant to you then, he's a

25  lieutenant now.  His name is Ron -- Ronald Wall.  And also here

1  with the troopers in Fairbanks and the final witness for the

2  Government was a DEA agent stationed here in Fairbanks named

3  Michael Foran.  He also testified at trial.  He's moose

4  hunting, so --

5      THE COURT:  Okay.  Anybody know any of those people

6  that were just named?  Yes.

7      UNIDENTIFIED JUROR:  I went to high school with one.

8      THE COURT:  Okay.  Just go to the microphone and give

9  us your name.  It's not that long -- not a far walk.

10     JUROR NO. 3:  (States name.)

11     THE COURT:  (States name)?

12     JUROR NO. 3:  (States name.)

13     THE COURT:  (States name.)  And you went to school

14 with --

15     JUROR NO. 3:  Ron Wall.

16     THE COURT:  Okay.  Anything about that fact affect

17 your ability to sit as a fair juror in the case?

18     JUROR NO. 3:  No.

19     THE COURT:  I mean, you're going to listen to his

20 testimony.  Would you give it any more or less credibility

21 because you happened to go to school with him?

22     JUROR NO. 3:  (No audible reply)

23     THE COURT:  That means -- in other words, you went to

24 school with him, he's a witness, he's going to testify under

25 oath, you've got to listen to his testimony and decide whether

1    you believe it or not, and it can't be impacted on the fact

2    that you went to school with him, you understand?  It has to be

3    based on what he says.

4                    JUROR NO. 3:  Yes.

5                    THE COURT:  Can you do that?  And if says something

6    you don't agree with, you won't accept it, right?

7                    JUROR NO. 3:  Correct.

8                    THE COURT:  On the other hand, if he says something

9    you agree with, you will accept it.  I don't know if he's your

10    buddy or your biggest enemy.

11                    JUROR NO. 3:  No, no, he was a good friend.

12                    THE COURT:  He was a friend.  Okay.  But will that

13    friendship or then -- how long ago was that?

14                    JUROR NO. 3:  Eighties.

15                    THE COURT:  In the eighties?

16                    JUROR NO. 3:  Yeah.

17                    THE COURT:  Okay.  This is a tough question.  Do you

18    remember the year you graduated?

19                    JUROR NO. 3:  '84.

20                    THE COURT:  '84.  Okay.  So it was over twenty years

21    ago.  Yeah, right?

22                    JUROR NO. 3:  Yeah.

23                    THE COURT:  Okay.  So you can be fair to both sides

24    in this particular case.

25                    JUROR NO. 3:  Well, you know, he's a good guy.  I

1   mean --

2           THE COURT:  Well, I don't mean -- I just want to know

3   if you can be fair and if you disagree with his testimony, you

4   can rule adverse to it.  If you can't, tell me, and we'll get

5   another --

6           JUROR NO. 3:  Yeah -- no, I don't, you know --

7           THE COURT:  Yeah, no --

8           JUROR NO. 3:  -- I don't think I -- I don't think I

9   can be a fair juror.

10          THE COURT:  Okay.  All right.  That's what I want to

11  know.

12          JUROR NO. 3:  Okay.

13          THE COURT:  So we're going to excuse you.

14          JUROR NO. 3:  All right.

15          THE COURT:  All right.

16          JUROR NO. 3:  (Indiscernible.)

17          THE COURT:  You just go back to the clerk and tell

18  her you've been excused.

19          JUROR NO. 3:  Thank you.

20          THE COURT:  Good.  Thank you.  All right.  Anyone

21  else?  Isn't this fun?  It's fun, isn't it?  Okay.  Now you

22  heard the names of those witnesses, and counsel, you know any

23  counsel that might affect your ability to be fair, ever worked

24  with them or no anything about them?  Okay.  No hands going up.

25  Okay.

1          MR. COHEN:  Your Honor, would you like me to read a

2    list of witnesses?

3          THE COURT:  Oh, yeah.  Okay.  If you'd like to, that

4    would be fine.  These are witnesses that defendant may call.

5          MR. COHEN:  All right.  David (indiscernible - away

6    from microphone) --

7          THE CLERK:  Sir, I need you to stand by the

8    microphone.

9          THE COURT:  Just by the microphone.

10          MR. COHEN:  Oh.

11          THE COURT:  Oh, go that way.

12          MR. COHEN:  Can I use that one?

13          THE COURT:  Sure.

14          THE CLERK:  Yeah, you bet.

15          MR. COHEN:  David Sauer (ph), Damon Wamsley (ph), you

16    already heard about Eugene Johnson, Chris Mannino who is also

17    hunting right now, David Dahl, Kenji Badger, Jason Avila,

18    Sharon Powers, Russell Christie (ph), Lee Sumpter, Ryan Shulte,

19    Steve Alt, Bruce Barnette, Jesse Carson, Michael Stark, Travis

20    Marsh, Andrew Biden, Woody Williams, Allen Thornton, and Jason

21    Pierce.

22          THE COURT:  Anyone know any of those people?  All

23    right.  Yes, sir.  Just give us your name and let us know who

24    you know.

25          JUROR NO. 47:  (States name.)  I know Lee Sumpter.

1    THE COURT:  Anything about that -- just don't tell me

2  one way or the other -- anything about that affect your ability

3  to be a fair juror if that person were called to testify?

4    JUROR NO. 47:  No.

5    THE COURT:  You can be fair to the Government?

6    JUROR NO. 47:  Yes.

7    THE COURT:  And -- okay.  All right.  Thank you.

8    JUROR NO. 47:  Thank you.

9    THE COURT:  Anyone else know any of those people?

10  Okay.  Have any of you ever heard about this case before, read

11  about it, or anything of that nature?  All right.  We've got

12  three hands going up -- four hands going up.  So why don't we

13  come -- we're going to just do this real quick.  Come back

14  here, tell us what you know, and we'll go from there.  Counsel?

15    THE CLERK:  I just need one at a time to step back.

16    THE COURT:  One at a time.

17    THE CLERK:  Thank you.

18  (Side bar not transcribed)

19    THE COURT:  Next?

20  (Side bar not transcribed)

21    THE COURT:  Okay.  How we doing?  We're going to move

22  through here quickly.  We're going to take a restroom break.

23    You know, this is kind of an unusual case.  We've

24  been real straight with you.  The defendant in this particular

25  case has already been convicted of two charges, one dealing

1-58

1   with possession of cocaine and one dealing with the sale of

2   cocaine.  That's not the issue.

3          MR. COHEN:  And acquitted of two charges --

4          THE COURT:  And acquitted of two charges --

5          MR. COHEN:  -- dealing with the --

6          THE COURT:  With a --

7          MR. COHEN:  -- use of a gun --

8          THE COURT:  Right.

9          MR. COHEN:  -- in connection with the conviction.

10         THE COURT:  Right -- that's right.  So that's not the

11  issue.  I think I've been real clear.  The issue is whether or

12  not certain guns and certain money should be forfeited as a

13  result of the -- and there's some law that says it has to be

14  related, et cetera, et cetera.  The Government says it should

15  be forfeited because it's related, we'll give you those

16  details; defendant says it's not related, it has nothing to do

17  with it.  So the defendant's going to present their -- the

18  Government's going to present its case, defendant disputes it.

19  That's why we need jurors to tell us who's right and who's

20  wrong.  Can you do that?

21          Now some people are going to say, oh, man, he's

22  already been convicted of these drug-related charges, I'm going

23  to -- I'm going to go with the Government no matter what.

24  That's not what we're looking for.  We want people who will

25  just listen to the evidence and decide whether the Government

1  has proved these charges, unimpacted by the fact that there may

2  have been a prior conviction.  Anyone have any problem with

3  that at all?  No one raised their hand.

4           Okay.  So it's -- we've been real straight with

5  everybody, you understand?  It's a forfeiture trial, not the

6  underlying case, and we just need some -- twelve jurors to tell

7  us whether or not the Government's proved its case or not, and

8  that's why we're here.  Okay.

9           And the issue of guns is going to come up a little

10 bit because it's four guns we're talking about, and money is

11 going to come up.  Anyone, just because those are the subject

12 of the charges, think they can't be fair just because those are

13 going to be discussed to one degree or another?  Okay.

14          So, I have to tell you what the law is, and you have

15 to follow the law whether you agree with it or not.  Some

16 people say, well, I can't do that, I -- I'm not going to follow

17 the law.  If anyone is in that category and say I just can't

18 follow the law, just let us know now.  Anyone who will be

19 unwilling to follow the law, whatever it might be?  Okay, no --

20 and I get -- I pick the law by going to the law books and

21 looking at what the courts say.  I just -- I just tell you what

22 the law is, you look at the law, listen to the evidence, apply

23 the facts to the law, and tell us the answer.  That's it in a

24 nutshell.  Okay.

25          In this particular -- one thing I'm going to tell

1  you, the Government has to prove their case by a preponderance

2  of the evidence.  That means it's more likely true than not

3  true.  That's what I'm going to tell you the law is.  Anyone

4  unwilling to apply that standard of evidence to this particular

5  case?  Preponderance of the evidence.  It means more likely

6  true than not true.  Okay.  You can apply that law?

7         You know, the law says that a defendant in a criminal

8  case does not have to testify and you absolutely cannot hold

9  that fact against the defendant if he chooses not to testify.

10  That's the law.  Anyone have any problem with that?  Okay.

11         The trial is expected to be done by the end of the

12  week.  We're making great progress.  Anyone have any reason

13  that -- you've got a surgery coming up, planning on eloping,

14  anything that is going to interfere with your ability to be

15  here all week?  You're planning on eloping?

16         JUROR NO. 43:  (Indiscernible.)

17         THE COURT:  What's the concern?

18         JUROR NO. 43:  It's work related.

19         THE COURT:  Is it --

20         JUROR NO. 43:  I have a plan.  I have to meet

21  somebody --

22         THE COURT:  You have to go to a microphone.

23         JUROR NO. 43:  Sure.  (States name.)

24         THE COURT:  Okay.

25         JUROR NO. 43:  I have to plan -- I've got to meet

1  somebody at 3:30 from Washington, D.C., and I plan on bringing

2  him on a tour of the state and -- he's my program -- he -- he

3  gives me the money for my programming, and so --

4         THE COURT:  Well, do you think he'd be impressed if

5  you told him you were on jury duty?

6         JUROR NO. 43:  Not really.

7         THE COURT:  Well, we'll talk -- we'll see what we can

8  do.  I mean, what if you can't do it?  What if you're on jury

9  duty and you have to meet at 4:30 instead?

10         JUROR NO. 43:  Well, he'd be stuck at the air -- I

11  still -- today, I could make a phone call and get him picked

12  up.

13         THE COURT:  Okay.  Then what about tomorrow?

14         JUROR NO. 43:  But tomorrow -- tomorrow I planned on

15  bringing him -- touring our facilities and then Thursday and

16  Friday bringing him to Coldfoot touring -- touring the

17  facilities there.

18         THE COURT:  It's an open court proceeding.  He can --

19  you could bring him here.

20         JUROR NO. 43:  These facilities -- these aren't the

21  facilities we have to maintain.

22         THE COURT:  All right.  And where -- you want to take

23  him up to Coldfoot, too?

24         JUROR NO. 43:  Yes.  Yes, sir.

25         THE COURT:  And he's coming in specifically for this

1  trip?

2      JUROR NO. 43:  Specifically to meet with me, yes.

3      THE COURT:  And you are the one -- you're so

4  indispensable that no one else can take him on that trip?

5      JUROR NO. 43:  Well, he's running a program that I'm

6  -- I'm working on up here and so --

7      THE COURT:  Okay.  We'll think about it, okay?

8      JUROR NO. 43:  Okay.  Thank you.

9      THE COURT:  Thank you.  Anyone else?  Yes, ma'am.

10  You're going to elope?  Do you know each other?

11      JUROR NO. 16:  (Indiscernible - away from microphone)

12      THE COURT:  Just give us your name, please.

13      JUROR NO. 16:  I'm (states name).  I have a large

14  presentation on Thursday for my department's commissioner.  I'm

15  moderating the presentation in Fairbanks; it's a statewide

16  presentation.  I'm not so indispensable that there wouldn't be

17  somebody else who could run the program, but I'm the only one

18  from my department who could do it.

19      THE COURT:  Okay.  Okay.  Counsel --

20      JUROR NO. 16:  It would be a hardship, but --

21      THE COURT:  It would be a hardship.  Okay.  Counsel,

22  could you each write down these last two people's names so that

23  I -- because I don't know if I'll remember.  Okay.  Anything

24  else that you can use to try and convince us?

25      JUROR NO. 16:  (Indiscernible) has an eye appointment

1    Thursday afternoon.

2            THE COURT:  Keep going.  I gave you two easy ones.

3    If you're going to -- I have a surgery or going to elope, but

4    no.  Okay.

5            JUROR NO. 16:  (Indiscernible.)  I'm married, that's

6    all.

7            THE COURT:  I'll have to check -- we just have to

8    check the availability of jurors and see where we go --

9            JUROR NO. 16:  Right.

10           THE COURT:  -- but we're going to keep -- we're going

11   to keep in mind both of your requests.  We can't stop --

12           JUROR NO. 16:  Thank you.

13           THE COURT:  -- the system, but we can give it some

14   consideration.  Anyone else?  Uh-oh.  Oh, come on.

15           JUROR NO. 12:  (States name.)

16           THE COURT:  Okay.

17           JUROR NO. 12:  And I volunteer with Special

18   Olympics --

19           THE COURT:  Okay.

20           JUROR NO. 12:  -- and this weekend is their bocce

21   game set in Anchorage.

22           THE COURT:  Okay.

23           JUROR NO. 12:  I have a flight that leaves at 4:30.

24           THE COURT:  What day?

25           JUROR NO. 12:  But, hey, if you guys are willing to

1-64

1   pick up -- to pay the fifty-dollar to change my ticket, I'll be

2   happy to stay longer.

3          THE COURT:  Okay.  And what -- and your ticket's on

4   Friday?

5          JUROR NO. 12:  Friday at 4:30.

6          THE COURT:  Okay.  And you'd be happy to stay here --

7          JUROR NO. 12:  If you want to change my ticket for

8   me, sure.  We're playing bocce and it's unified, it's an

9   athlete with a partner, and I am a partner.

10         THE COURT:  You're important in that process.

11         JUROR NO. 12:  Yes, I am.

12         THE COURT:  All right.  Next, please?  Thank you.

13  Counsel have all those names?

14         JUROR NO. 31:  My name's (states name).  I'm an

15  occupational therapist at the hospital.  It's work related.  I

16  have a caseload of patients every hour and there isn't anybody

17  to replace me.

18         THE COURT:  Okay.  Did we get her name?  All right.

19  I'm not making any promises, but I'm trying to assess our

20  situation.  Anyone else?

21         Anyone else think of any questions I could have asked

22  that had I asked it, you would have jumped up and said I can't

23  serve as a juror because of this reason?  It's just lingering

24  in the back of your mind and you're thinking I wonder if he's

25  going to ask that question, and I forgot.  Anyone have that --

1    anyone in that boat?  Okay.

2            I think we need a restroom break.  So here's what

3    we're going to do.  We'll take close to ten minutes or so,

4    everyone go to the restroom, and then everyone come back as

5    soon as you can, including counsel, and we'll finish this up.

6    We are going to be done by noon.  We're doing very, very well.

7    This is moving very quickly, I think.

8            But listen.  Counsel are not allowed to talk to the

9    jurors.  So if you run into them in the hall and they don't

10   look at you or speak to you, it's not because they're rude,

11   it's because they don't want to get in trouble.  So you

12   understand that?  They just can't professionally speak with

13   jurors outside the courtroom.  That's just not -- prohibited.

14   So I want to let you know that.

15           If you -- there's a -- whenever we take a break,

16   there's an instruction that we generally read, and I think I'll

17   read it to you just so we have it done.  I know you all have to

18   use the bathroom, so I'll make it quick.

19           We are about to take our first break during the

20   trial, and I want to remind you until the trial is over, you

21   are not to discuss the case with anyone, including your fellow

22   jurors -- got that?  Can't go out there and talk about this

23   case -- or your family or people involved in the trial or

24   anyone else, nor are you allowed to permit others to discuss

25   the case with you.  If anyone approaches you and tries to talk

1  to you about the case, please let me know about it immediately.

2       There aren't any news reports, but don't read any

3  news reports concerning the trial.  You're reminded to keep an

4  open mind until all the evidence has been received, and you've

5  heard the arguments of counsel, the instructions of the Court,

6  and view of the fellow jurors.

7       If you need to speak to me about anything, simply

8  give a note to my Clerk here, and we'll do that.  And that

9  basically is where we are.  Any questions before we stand in

10  recess?  Make sure you come back.  We'll see you within fifteen

11  minutes because there so much -- many of you.  Come back here

12  and we'll continue in fifteen minutes.  So we'll stand in --

13  you want them to just go -- how do you want them to do this?

14  Go back to the --

15       THE CLERK:  Back to the jury --

16       THE COURT:  Just head back to the jury room and

17  there's restrooms there and maybe there's coffee and maybe

18  other restrooms.  The main thing is be back here in fifteen

19  minutes, okay?  Stand in recess.

20       THE CLERK:  This matter is in recess for fifteen

21  minutes.  Off --

22       (Off record, at 10:46:09 a.m.)

23       (On record, at 10:46:30 a.m.)

24       THE CLERK:  Back on record.

25                    (Pause)

1    (Prospective jurors out at 10:46 a.m.)

2    THE COURT: Okay. The jurors have left the room and

3 the door is closed. Okay. Counsel, anything you want to take

4 up before we take our recess? Mr. Barkeley?

5    MR. BARKELEY: No, thank you, Your Honor.

6    THE COURT: Mr. Cohen?

7    MR. COHEN: No, Your Honor.

8    THE COURT: Okay. Here's the deal. We come back,

9 I'm going to call fourteen name -- thirteen names, they're

10 going to fill this box, they're going to fill the front row

11 here, they're going to answer these eleven or twelve questions

12 that are out there, then I'm going to -- either of you have any

13 questions for the panel that I -- something I overlooked of

14 concern? I mean, do you have any questions? I don't mind if

15 neither of you do. I think I've covered everything, but if you

16 have something I've overlooked, let me know.

17    MR. BARKELEY: Well -- go ahead.

18    MR. COHEN: No, I'll -- can I let you know right

19 after the break, Your Honor?

20    THE COURT: Sure. And I won't -- you don't get --

21 but if there's something you want me to ask, I'll ask it, or if

22 there's -- if you want to ask a few questions, I usually give

23 five minutes or a couple -- whatever you need if you want to

24 ask the whole panel. I think I've covered everything. Let me

25 know. Then they'll read the questions, then we'll break again,

1    we'll let them out, you each -- you strike your eleven, you

2    strike your seven, we do it simultaneously, we come back, we

3    introduce the jury, excuse the rest, and then probably break

4    for lunch.

5            MR. BARKELEY:  Your Honor, my only area of possible

6    concern is nullification in the area of sort of Second

7    Amendment firearms type --

8            THE COURT:  I addressed that -- they said they'd all

9    follow my instructions.

10           MR. BARKELEY:  Okay.

11           THE COURT:  That was -- that was geared toward that.

12   Are you going to follow the instructions?  And they said they

13   would.

14           MR. BARKELEY:  Okay.  I'll just emphasize that rather

15   than anything in particular.

16           THE COURT:  Okay.

17           MR. BARKELEY:  That's fine, Your Honor.  Your Honor,

18   do you want the juror numbers on your list of the four people

19   before you forget?

20           THE COURT:  No, what I'm going to ask you -- if you

21   mind if I put those four at the very back so if we don't need

22   them, we don't use them?  Do you mind, Mr. Barkeley?

23           MR. BARKELEY:  No, I don't, Your Honor.

24           THE COURT:  Mr. Cohen?

25           MR. COHEN:  No, Your Honor.

1    THE COURT:  So, we'll just take those four people

2    (indiscernible) and we'll put them at the very back end so we

3    probably won't need them, but if we need them, at least we

4    haven't excused them, okay?

5    MR. BARKELEY:  Yes.

6    THE COURT:  Everyone agrees?

7    MR. COHEN:  Yes, Your Honor.

8    MR. BARKELEY:  Yes, Your Honor.

9    THE COURT:  Mr. Colette, how are we doing?

10    THE DEFENDANT:  All right, I guess.

11    THE COURT:  Have you got any complaints so far?

12    THE DEFENDANT:  Not at this moment.

13    THE COURT:  Okay.  All right.  Well, let's take

14    twelve minutes recess -- twelve and a half minutes.

15    THE CLERK:  This matter is in recess for twelve and a

16    half minutes.

17    (Recess at 10:49 a.m., until 11:06 a.m.)

18    (Prospective jurors present)

19    THE CLERK:  His Honor the Court, the United States

20    District Court is again in session.  Please be seated.

21    THE COURT:  How you doing?  See that exercise program

22    we've instituted it -- after a couple of days, you look great.

23    It just really works.  Okay.  Let me see where we left off.  Do

24    we have everybody back?  Anybody here that didn't come back,

25    raise your hand.  It looks like the same group.  Okay.  So,

1   Madam Clerk, are you ready to read the names?

2          THE CLERK:  Yes, sir.

3          THE COURT:  Okay.  What we're going to do now is

4   we're going to read -- I think we're going to -- do we go with

5   thirty-two names?  Randomly selected.  When your number is

6   called, you just come forward, occupy a spot -- I don't know,

7   Lynn, if -- where number one is.

8          THE CLERK:  One is this first seat right to --

9          THE COURT:  Okay.  We've got one down this line and

10  then back and then we'll fill the front row here, then you'll

11  each have eleven or twelve questions to ask -- we're moving

12  along.  So let's see how you did.

13          THE CLERK:  (States juror's name.)

14          MR. COHEN:  (Indiscernible -- voice too low)

15          THE COURT:  Let me just tell counsel that if you want

16  to talk to whoever's sitting next to you, you push that little

17  button that says "push," the green light goes off, and we can't

18  hear you.  All right.  Number one is the front row far right.

19  Yeah.

20     (Clerk reads jurors' names)

21          THE COURT:  Sir, you're in the second row far right.

22  Second row here.

23     (Clerk reads jurors' names)

24          THE COURT:  All right.  Let's -- Lynn, can you just

25  stop there for a minute?  Counsel, can we have a brief

1    discussion -- (indiscernible) discussion just real quick?  Mr.

2    Cohen?

3              THE COURT:  Yes, Your Honor.

4         (Side bar not transcribed)

5              THE COURT:  Okay.  Juror No. 2, we're going -- based

6    on your letter and your request, we'll go ahead and excuse you.

7    So I want to thank you very much for sitting through here.  I

8    appreciate you taking the time to bring these things up.  And

9    you can just go back and tell the jury clerk you're excused.

10             Now here's the big challenge for the Clerks here.

11   You want to leave the chair open or you want everybody to move

12   one seat?  You tell me how to --

13             THE CLERK:  Leave it open.

14             THE COURT:  Leave it open is the instruction.  Okay.

15   All right.  We'll continue forward.  Counsel, you got that?

16             MR. COHEN:  Yes, Your Honor.

17             THE COURT:  All right.

18        (Clerk reads jurors' names)

19             THE COURT:  Now I want to make sure counsel are all

20   got their notes all cleared up, so let's pause for a minute.

21   Everybody up to speed?

22             MR. BARKELEY:  Thank you, Your Honor.  I may not be.

23   Was (states name) the last juror seated before the current

24   juror?

25             THE CLERK:  Yes.

1    MR. BARKELEY:  Thank you.

2    THE COURT:  Mr. Cohen, you got that?

3    MR. COHEN:  Yes, Your Honor.

4    THE COURT:  Okay.  So we'll start then in the back

5 row.

6    (Clerk reads jurors' names)

7    THE COURT:  So, ladies and gentlemen, we probably

8 will take a late lunch.  We're going to go until we select the

9 jury and it might take a little longer.  Is anyone going to be

10 upset if we go a little long, pick the jury, and then take

11 lunch, whenever that is?  Anyone really upset about that?

12 Okay, good.  Speak now or forever hold your peace.

13    (Clerk reads jurors' names)

14    THE COURT:  Is that thirty-two?

15    THE CLERK:  (Indiscernible.)

16    (Clerk reads jurors' names)

17    THE COURT:  Does everybody have a piece of paper?

18 Questions?

19    UNIDENTIFIED SPEAKER:  (Indiscernible - away from

20 microphone)

21    THE CLERK:  Oh, that's true.  Sorry, counsel.  It's

22 -- (states name) is the next one.

23                         (Pause)

24    THE COURT:  Okay.  Ma'am, you're going to be number

25 one.  You lead off and you just go down the list, okay?

1    JUROR NO. 1:  Okay.

2    MR. COHEN:  Excuse me, Your Honor.

3    THE COURT:  Yes.

4    MR. COHEN:  In terms of one additional question,

5 should I suggest that now or later on?

6    THE COURT:  No, you'll get a chance afterwards.

7    MR. COHEN:  Okay.

8                **INDIVIDUAL JURY VOIR DIRE**

9    JUROR NO. 1:  My name is (states name).  I live at

10 595 Pleasure Drive in North Pole.  I've lived in Alaska for

11 fourteen years.  My occupation is receptionist at the Catholic

12 diocese.  I've worked there for a year.  The previous year I

13 worked as a surgery orderly.  I had to leave.  The previous

14 five years I worked as home day care for my two grandchildren.

15 I've had two years of college.  I'm married.  My husband is a

16 U.S. Army civil service currently stationed in Iraq.  I have

17 three children, a son thirty-three who works as a mechanic,

18 (indiscernible - coughing in background) daughter who's a

19 bookkeeper, and a twenty-seven-year-old daughter who's a

20 bookkeeper.  I'm mostly involved in church.  No military

21 service.  I do make a public expression.  I've written a few

22 letters to the editor.  And I have not served on a trial jury.

23    THE COURT:  Good.  That wasn't -- was it hard?  Now

24 you get to sit down and pass it to the next person.

25    JUROR NO. 2:  My name is (states name).  I live at

1   252 Hendley (ph) Drive in Fairbanks.  I've lived in Fairbanks

2   -- in Alaska for forty-eight years.  I am an electrician by

3   trade.  I've worked for contractors to Alyeska Pipeline for the

4   past five years.  High school education plus five years in

5   trade school.  I am married.  My wife is a director at the

6   University of Alaska Fairbanks.  I have one eighteen-year-old

7   son who's a student.  I don't belong to any clubs or

8   organizations.  No military service.  I do not like bumper

9   stickers, and I've often thought of writing letters to the

10  editor, but never have.  And I served on one jury trial where

11  we convicted a fellow of shoplifting, and then also on a -- on

12  a (indiscernible).

13          THE COURT:  Very good.  Thank you.

14          JUROR NO. 3:  My name is (states name).  I reside in

15  Fairbanks, 1125 (indiscernible) Drive.  I've been in Alaska for

16  twenty-five years.  I am a manager with the Bureau of Land

17  Management, and I've been in that job for about two years.

18  Before that, I was a resource interpretative specialist with

19  the BLM.  I've got a Bachelor of Science degree.  I'm married.

20  My husband is a archivist at the University library.  I have a

21  twenty-two-year-old son who is a student and works in IT,

22  Information Technology.  Hobbies are raising sled dogs.  No

23  military.  No on number twelve, and I've been on two juries,

24  one federal which was a discrimination by a supervisor and he

25  was found not guilty, and one state court (indiscernible -

1   background noise) found guilty.

2        THE COURT:  'Kay.

3        JUROR NO. 4:  Your Honor, my name is (states name).

4   I live at 1315 22nd and I'm living in Apartment 4.  I've lived

5   in Alaska for twenty-nine years.  I'm retired.  My occupation

6   was a telephone engineer, and since retiring in 1999, I've been

7   working part-time surveying with RCA Surveys, so just part-

8   time, and then part-time going to school at the University of

9   Alaska Fairbanks.  I obtained a general education in nineteen

10  -- in the sixties.  I have an Associate Degree in engineering.

11  I'm divorced.  I have six -- six children, oldest thirty-eight,

12  youngest twenty-six.  Do you want to know all their

13  occupations?

14        THE COURT:  Does it ask for their occupations?

15        JUROR NO. 4:  Yes.

16        THE COURT:  It does?  Go ahead.  See, you've got a

17  different list than I do.

18        JUROR NO. 4:  My oldest son is -- has his own

19  business as computer data processing.  He lives in -- he does a

20  lot of work for -- consulting.  He's doing very good.  My

21  oldest daughter is Stephanie, she is -- got her Master's work

22  on her doctorate in psychology, and right now doing referral

23  and counseling and (indiscernible - away from microphone).  My

24  son Matthew was in the Marine Corps, he's now working in a

25  restaurant (indiscernible - away from microphone).  My daughter

1  Kristen is going to school at UAF, trying to get into the

2  nursing program.  My daughter Rebecca is married and living in

3  the Washington area.  And my youngest daughter Sarah is trying

4  to find her life.  She (indiscernible - away from microphone).

5          THE COURT:  Okay.

6          JUROR NO. 4:  And I belong to the Lions Club and

7  basically my hobbies are involved with my education right now

8  is art.  I was in the United States Navy during (indiscernible

9  - away from microphone) '66.  Came out as a (indiscernible -

10  away from microphone).

11          THE COURT:  Okay.

12          JUROR NO. 4:  I don't especially like bumper stickers

13  and I've also thought about writing letters to the editor, but

14  (indiscernible - away from microphone).

15          JUROR NO. 5:  My name is (states name).  I live at

16  2366 (indiscernible) Drive in Delta Junction.  I've been

17  continuously living in Alaska for the last twenty-nine years.

18          THE COURT:  Is that a Delta Junction accent that you

19  have?

20          JUROR NO. 5:  (Indiscernible - laughter.)  I'm a real

21  estate agent and my husband and I own and run Junction

22  Realtors.  (Indiscernible - away from microphone.)  I retired

23  from the school district in Delta Junction as a secretary for

24  thirty years prior to going full-time with my husband

25  (indiscernible - away from microphone).  I've got four years of

1  college.  I am married.  My husband is a retired (indiscernible

2  - away from microphone).  I have two children, one thirty-eight

3  who's a vice-president with Northrim Bank in Anchorage.  My

4  daughter is twenty-six.  She is an analyst with (indiscernible

5  - away from microphone) working on her Ph.D.  (Indiscernible)

6  active with Kiwanis Club, and I have not served in the military

7  (indiscernible) with my husband.  I don't have bumper stickers

8  (indiscernible).  I have been on one -- did one trial in Delta

9  (indiscernible).

10        THE COURT:  Okay.  Now it goes all the way back to

11  this gentleman.  See how teamwork works here?  There we go.

12        JUROR NO. 6:  My name's (states name).  I reside at

13  59 Chena Point Avenue (indiscernible).  I first came to Alaska

14  in 1971, but I haven't -- I spent some time in Europe in

15  between, so I don't know how long exactly I've been a resident,

16  but I've been back in Alaska since 2004.

17        THE COURT:  I think if you hold that microphone a

18  little closer.

19        JUROR NO. 6:  Sure.  Work history for the last five

20  -- I was employed as a location manager for the film Holland

21  before I returned.  Then I did some odd jobs in Seattle.

22  Worked on a maintenance crew for the Space Needle.  Out of the

23  last four summers, basically I've been working at Denali Park

24  Resorts as a radio technician.  I attended the University of

25  Alaska Fairbanks, (indiscernible) in broadcasting, and at the