1   presented to you in this court.  Therefore, during the trial

2   you must avoid reading any newspaper articles about the case or

3   listening to or watching any news stories about the case.  Are

4   you being distracted by these two counsel?  Are you listening

5   to me?

6          JUROR NO. 1:  (Indiscernible - away from microphone)

7          THE COURT:  You're listening.  Good sign.  Okay.

8          It will be my duty to decide what law must be

9   applied.  In so doing, I will look to a number of sources, the

10  statutes of the United States, the decisions of the United

11  States Supreme Court and other learned courts, and the evidence

12  presented by the attorneys who have appeared before you.  You

13  must apply the law as I give it to you; you may not apply the

14  law as you think it is or should be or as somebody else may

15  have told you it is.

16         At no time during the course of the trial will it be

17  my intention by anything I say or do or by any questions that I

18  may ask, to suggest what you should find to be the facts on any

19  question submitted to you or that I believe or disbelieve any

20  witness.  If anything I do or say seems to so indicate, you

21  will disregard it and form your own opinion.  What the verdict

22  shall be is your sole and exclusive duty and responsibility.

23         There are rules of law that prevent some types of

24  information from being presented as evidence in a court of law.

25  This is why objections may be made to certain questions of

1    counsel, answers of witnesses, or exhibits.

2         There will likely be bench conferences and legal

3    arguments outside of your presence to discuss these rules.

4    Basically, these rules are designed to do two things:

5         First, they try to keep you focused on important and

6    reliable evidence by keeping out interesting but not very

7    important and reliable information.

8         Second, the rules help you decide the case

9    objectively without being swayed by information that might

10   cause you to respond emotionally.

11        It is because the law protects what you hear that we

12   have such confidence in the impartiality and the integrity of

13   the jury.

14        You should not be influenced by the fact that

15   objections are made to questions or to the presentation of

16   evidence, or that requests are made that I take certain

17   actions; nor should you be influenced by the number of

18   objections or requests that are made.  Objections or requests

19   are not evidence.  You should draw no conclusions about the

20   case from my response to objections or requests.

21        My rulings on these matters must be determined by the

22   law and will not reflect anything about the merits of the case

23   or my views of the evidence or the witness.  So please remember

24   that my rulings that exclude evidence or that bar questions are

25   designed to help you decide the case fairly.  Of course, if I

1  decide that certain evidence should be excluded, you must

2  disregard it.  You may not speculate as to why the evidence was

3  excluded or what it may have been.

4        Now, the evidence you are to consider in deciding

5  what the facts are consist of:  One, the sworn testimony of

6  witnesses; two, exhibits which are to be received into

7  evidence, and any facts to which all the lawyers stipulate.

8        The following things are not evidence and must not --

9  and you must not consider them as evidence in deciding the

10  facts of the case:

11        Statements and arguments of the attorneys, questions

12  and objections of the attorneys, testimony that I instruct you

13  to disregard, and anything you may see or hear when the court

14  is not in session, even if what you see or hear is done or said

15  by one of the parties or by one of the witnesses.

16        Some evidence is admitted for a limited purpose only.

17  When I instruct you that an item of evidence has been admitted

18  for a limited purpose, you must consider it only for that

19  limited purpose and for no other.

20        Evidence may be direct or circumstantial.  Direct

21  evidence is direct proof of a fact, such as testimony by a

22  witness about what the witness personally saw or heard or did.

23  Circumstantial evidence is indirect evidence that; that is, it

24  is proof of one or more facts from which one can find another

25  fact.  Let me give you an example.

1    If, before you go to bed on a winter night, you look

2    out your window and see it snowing and you reach out the window

3    and feel it on your hand, you have personal knowledge that it

4    is snowing.  This is direct evidence.  But if when you go to

5    sleep the sky and ground are clear and you later awaken and the

6    ground is white and covered with snow, you conclude that it

7    snowed even though you did not see the snow fall.  This is

8    circumstantial evidence.

9    You are to consider both direct and circumstantial

10   evidence.  The law permits you to give equal weight to both,

11   but it is for you to decide how much weight to give to any

12   evidence.

13   In deciding the facts in this case, you may have to

14   decide which testimony to believe and which testimony not to

15   believe.  You may believe everything a witness says or part of

16   it or none of it.

17   In considering the testimony of any witness, you may

18   take into account the opportunity and ability of the witness to

19   see or hear or know the things testified to, the witness'

20   memory, the witness' manner while testifying, the witness'

21   interest in the outcome of the case and any bias or prejudice,

22   whether other evidence contradicted the witness' testimony, the

23   reasonableness of the witness' testimony in light of all the

24   evidence, and any other factors that bear on believability.

25   The weight of the evidence as to a fact does not

1    necessarily depend on the number of witnesses who testify.  You

2    still with me?

3                    JUROR NO. 1:  (Indiscernible - away from microphone)

4                    THE COURT:  Okay.  You may hear testimony from

5    persons who, because of education or experience, are permitted

6    to state opinions and the reasons for their opinions.  Opinion

7    testimony should be judged just like any other testimony, you

8    may accept it or reject it, and give it as much weight as you

9    think it deserves, considering the witness' education and

10   experience, the reasons given for the opinion, and all other

11   evidence in the case.

12                   If you wish, you may take notes to help you remember

13   what witnesses said.  If you do take notes, please keep them to

14   yourself until you and your fellow jurors go to the jury room

15   to decide the case.  Do not let note-taking distract you so

16   that you do not hear other answers by witnesses.  When you

17   leave, your notes should be left in the jury box.

18                   Whether or not you take notes, you should rely on

19   your own memory of what was said.  Notes are only to assist

20   your memory.  You should not be overly influenced by the notes.

21   And after the trial, the notes are destroyed unread.

22                   I will now say a few words about your conduct as a

23   juror:

24                   First, you are not to discuss this case with anyone,

25   including your fellow jurors, members of your family, people

1  involved in the trial or anyone else, nor are you allowed to

2  permit others to discuss the case with you.  If anyone

3  approaches you and tries to talk to you about the case, please

4  let me know about it immediately.  You must also avoid contact

5  with any of the persons who are participating in the trial.

6  This includes the parties, the lawyers, the witnesses, and any

7  persons that you see in close contact with these individuals.

8        Second, do not read any news stories or articles or

9  listen to any radio or television reports about the case or

10  about anyone who has anything to do with it.

11        Third, do not do any research, such as consulting

12  dictionaries, searching the Internet, or using other reference

13  materials, and do not make any investigation about the case on

14  your own or visit the scene where any of the events took place.

15        Fourth, if you need to communicate with me, simply

16  give a signed note to the bailiff to give to me.

17        Fifth, do not make up your mind about what the

18  verdict should be until after you have gone to the jury room to

19  decide the case and you and your fellow jurors have discussed

20  the evidence.

21        You are expected to evaluate the evidence

22  independently until you are told to deliberate as a group.

23  Keep an open mind until then.

24        Remember that you are to decide the case only on the

25  evidence presented here in court.

1    At the end of the trial, you will have to make your

2   decision based on what you recall of the evidence.  You will

3   not have a written transcript of the trial, although you may

4   ask that testimony be replayed if necessary.

5    Okay.  That's it.  You're going to have copies of

6   this.  You don't have to memorize everything, okay?

7    So, counsel anything else before we bring the -- who

8   are we missing?

9    MR. COHEN:  You have the more important --

10    THE COURT:  Where did Mr. Barkeley go?

11    MR. COHEN:  Your Honor, it's all right.  We can do

12   this with me only.

13    THE COURT:  I suppose we can, but the -- okay.  Well,

14   let's bring in the rest of the jury.  And with the exception of

15   the one.

16    THE CLERK:  (Indiscernible - away from microphone)

17    THE COURT:  Okay.  There's going to be a little

18   confusion because -- oh, they're back here?  Does the -- does

19   the jury that's been excused know that they've been excused?  I

20   presume it does.

21    So you're now caught up with everyone else.  Only

22   thing you don't know is that when -- that the jurors are now

23   being held in the small room and that when you go out, you'll

24   go back to that room.  And they're going to come in and be

25   confused and they'll think someone took their chair, but I will

1    explain to them that they're all to move down on, okay?  And

2    you don't have to stand.

3                              (Pause)

4          (Remaining jury members in at 2:41 p.m.)

5                THE COURT:  Okay.  Can you remember where you were

6    seated?  This is going to be really confusing.  Okay.  If you

7    were two, you're now three.  If you were three, you're now

8    four.  If you were four, you're now five, and so on.  I think.

9    Number one should be seated where number two was.  Okay.

10   Where's number one?  Okay.  Number one knows she's number two.

11   Okay.  Now that'll get us started.  This will get easier with

12   time.  If you were two before, you're now three, if you were

13   three before, you're now four.  And let's -- yeah, we can check

14   the list to make sure.  We'll probably take a roll to make sure

15   we've got everybody.

16                    (Pause - side conversation)

17                THE COURT:  Okay.  We're going to take -- now we're

18   going to read the list just to make sure that we've got

19   everybody in the right order.

20        (Roll call taken)

21                THE COURT:  And everybody is seated in the right

22   spots.  Now can you remember that?  Now to really confuse

23   matters, Juror No. 6, I told her that she could sit in the back

24   row if she wanted and stand up as necessary.  You're free to

25   sit where you are or you can take any one of those three chairs

1  because she has a little back problem and she needs to stand up

2  from time to time.  And so don't be concerned if she stands up.

3  I've given her this -- I told her before that she can do this,

4  so you can pick one of those seats, and then if you feel like

5  you need to stand up, just do it.  If anybody needs a recess

6  for any reason, just let me know.  The idea is to make -- to

7  let you be as comfortable as possible.

8            Okay.  Counsel, do you see the jury now?

9            MR. BARKELEY:  Yes, Your Honor.

10            THE COURT:  Does everyone know where everyone's

11  seated and understand who the jury is?

12            MR. BARKELEY:  Yes, Your Honor.

13            MR. COHEN:  Yes, Your Honor.

14            THE COURT:  Okay.  So we've got the jury.

15            MR. COHEN:  Your Honor, you didn't ask us if we liked

16  the jury.

17            THE COURT:  You love the jury.

18            MR. COHEN:  We love the jury.

19            THE COURT:  That's right.  So that you know, there

20  was a little confusion here and so we brought in -- we had to

21  -- we had a couple of (states name) and we had everything -- so

22  now we've got everything squared away and we -- (states name)

23  is Juror No. 1 has -- I've read him everything I read to you

24  before.  That's what we were doing.  So he's all up to speed,

25  he's taken the juror's oath, we're already to go with opening

1    statements.  I think counsel had one thing they wanted me to

2    read.  Do you have a copy of that handy?

3                MR. COHEN:  Yes, Your Honor.

4                          (Pause)

5                THE COURT:  Okay.  What we're doing is going to --

6    I'm going to read you the initial Indictment in this matter.

7    Remember, the defendant's already been convicted of two of

8    these charges, and we're just going to -- you know, no secret,

9    but that's not a factor here.  So I'm going to read you the

10   Indictment so you know how this thing started.

11               MR. COHEN:  And, Your Honor, just to -- I'm sorry to

12   interrupt, just so the jury can follow along, that Mr. Colette

13   was convicted of counts one and two and then he was acquitted

14   of counts three and four.

15               THE COURT:  That's true.  So here's what he was

16   charged with and he was convicted of this:

17               "Count one.  On or about November 28, 2005, in the

18               District of Alaska, the defendant, Jason Colette, did

19               knowingly and intentionally possess with intent to

20               distribute a controlled substance, to wit, five

21               hundred grams or more of a mixture or substance

22               containing a detectable amount of cocaine, all in

23               violation of Title 21, United States Code, Sections

24               841(a)(1) and 841(b)(1)(B)."

25   That's count one.  Count two -- and he was convicted of this:

1      "On or about November 18, 2005, within the District

2      of Alaska, the defendant, Jason Colette, did

3      knowingly and intentionally distribute a controlled

4      substance, to wit, a mixture or substance containing

5      a detectable amount of cocaine, all of which is in

6      violation of Title 21, United States Code, Sections

7      841(a)(1) and 841(b)(1)(C)."

8   Count three -- and he was found not guilty of this:

9      "On or about November 28, 2005, within the District

10     of Alaska, the defendant, Jason Colette, did

11     knowingly and intentionally possess a firearm in

12     furtherance of a drug trafficking crime as described

13     in counts one and two of this Indictment, to wit" --

14  You want me to read all the -- these are the -- is this the --

15  am I -- are you following me, counsel, where I am?

16          MR. COHEN:  Yes, Your Honor.

17          THE COURT:  Okay.  So I read these"

18     -- "to wit, an Ingram Model 10A1, forty-five caliber

19     nine millimeter machine gun, serial number A6041381,

20     with a silencer; a Bowers nine-millimeter suppressor,

21     Model CAC9, serial number S927.  All of which is in

22     violation of Title 18, United States Code, Section

23     924(c)(1)(B)(ii)."

24  Count four -- and he was found not guilty of this:

25     "On or about November 28, 2005, within the District

1      of Alaska, the defendant, Jason Colette, did

2      knowingly and intentionally possess a firearm in

3      furtherance of a drug trafficking crime as described

4      in counts one and two of this Indictment, to wit" --

5  You want me to read all those?

6          MR. COHEN:  Your Honor, there are fourteen different

7  firearms that are listed there --

8          THE COURT:  Thirteen.

9          MR. COHEN:  -- including the -- including the four

10 that the Government is seeking to forfeit right now.

11         THE COURT:  So should I read all thirteen of them?

12         MR. COHEN:  Well, all of them are going to come into

13 evidence.  I don't know if it's necessary to read all thirteen

14 of them.

15         THE COURT:  I will if you want.  It doesn't --

16 there's thirteen different guns involved.  He's found not

17 guilty of that, and all of them will be coming into evidence.

18 You want me to read every one of them and their serial number?

19         MR. BARKELEY:  The only (indiscernible - too close to

20 microphone) relevant to this part of the case, Your Honor, are

21 three.  There's a Remington Woodsmaster .30-06 --

22         MR. COHEN:  Well, we're in disagreement about what's

23 relevant to this part of the case.

24         THE COURT:  Okay.  All right.  So anyhow --

25         MR. COHEN:  I mean, I would prefer -- I'm -- ideally

1    if the jury could hear the whole thing, that would be great.

2              THE COURT:  Okay.  Well, then we'll --

3              MR. COHEN:  I don't want to waste a lot of time.

4              THE COURT:  Okay.  "Number one, Remington Mohawk 848,

5         12-gauge shotgun, serial number 5279681.

6              "Two.  Harrington & Richardson Topper, Model 48,

7         12-gauge shotgun, serial number AM250982.

8              "Number three.  American Arms, 10-gauge shotgun,

9         serial number 0220016.

10             "Number four.  Remington Woodsmaster, Model 740

11        .30-06, serial number 83245.

12             "Number five.  Winchester, Model 190, twenty-

13        two, serial number B1822823.

14             "Number six.  A Model 67E, 12-gauge shotgun,

15        serial number D395391.

16             "Number seven.  Winchester, Model 94, .30-30

17        rifle, serial number 4139992.

18             "Number eight.  A Colt Sporter 762, thirty-nine

19        rifle, serial number LHO10714.

20             "Number nine.  An Armas Bost Eibar, 20-gauge

21        double-barrel shotgun, serial number 1928.

22             "Ten.  A Mossberg, Model 500A, 12-gauge shotgun,

23        serial number L100810.

24             "Eleven.  A Mossberg, Model 50084, 10-gauge

25        shotgun, serial number P317355.

1          "Number twelve.  A Colt Super 38, thirty-eight

2     semi-auto pistol, serial number 126180.

3          "Number thirteen.  A Mossberg, Model 500A, 12-

4     gauge shotgun, serial number L986808.

5          "All of which is in violation of Title 18,

6     United States Code, Section 924(c)(1)(A)(i)."

7     Count six -- these are the ones you're dealing with:

8          "As a result of committing the controlled substance

9     offenses alleged in counts one and two, in violation

10     of Title 21, United States Code, Section 841, and

11     upon conviction of either count one or two, an

12     offense punishable by imprisonment for more than one

13     year, defendant Jason Colette shall forfeit to the

14     United States any property constituting or derived

15     from any proceeds the defendant obtained, directly or

16     indirectly, as a result of such violation, and any

17     property used or intended to be used in any manner or

18     part to commit or facilitate the commission of such

19     violation, pursuant to 21 U.S.C. §§853(a)(1) and

20     853(a)(2), including but not limited to,

21     approximately thirty-eight thousand eight hundred and

22     forty-eight dollars [$38,848] in United States

23     currency seized from 1038 Lakeview Terrace,

24     Fairbanks, Alaska, on or about November 28, 2005."

25     Count seven:

1    "As a result of committing the controlled

2    substances offense alleged in counts one and two, in

3    violation of 21 United States Code, Section 841, and

4    upon conviction of either count one or two, an

5    offense punishable by imprisonment for more than one

6    year, defendant Jason Colette shall forfeit to the

7    United States any property constituting or derived

8    from any proceeds the defendant obtained directly or

9    indirectly as a result of such violation, and any

10   property used or intended to be used in any manner or

11   part to commit or facilitate the commission of such

12   violation, pursuant to 21 U.S.C. §§853(a)(1) and

13   853(a)(2), including but not limited to the following

14   firearms:  "Number one.  Ingram Model 10A1, forty-

15   five caliber, nine-millimeter machine gun, serial

16   number A6041381, with silencer; a Bowers, nine-

17   millimeter suppressor, Model CAC9, serial number

18   S927; a Remington Woodsmaster, Model 740, .30-06,

19   serial number 83245; a Colt Sporter 762, thirty-nine

20   rifle, serial number LHO10714; and a Mossberg, Model

21   500A, 12-gauge shotgun, serial number L966808, seized

22   from 1038 Lakeview Terrace, Fairbanks, Alaska, on or

23   about November 28, 2005."

24   Those are the charges.  I read the whole Indictment.  Only

25   thing you're dealing with is count six and seven, the

1  forfeiture elements.  We're going to first hear from Mr.

2  Barkeley for the Government, then we'll hear from defense

3  counsel, we'll proceed in that order.  Mr. Barkeley.

4          MR. BARKELEY:  Thank you, Your Honor.  Madam Clerk,

5  is there a clip-on microphone that I can use to --

6          THE CLERK:  Yes, sir.

7          MR. BARKELEY:  -- run around?  Right here?  Thank

8  you.

9          THE COURT:  I think it's hanging there, actually.

10         THE CLERK:  No, it's right on the front there at the

11  podium.

12         MR. BARKELEY:  All right.  Madam Clerk, are you

13  picking this up?

14         THE CLERK:  Yes, sir.

15         MR. BARKELEY:  Thank you.

16                 **GOVERNMENT'S OPENING STATEMENT**

17         MR. BARKELEY:  Good afternoon, ladies and gentlemen.

18  My name is James Barkeley, and I'm an Assistant U.S. Attorney,

19  a federal prosecutor, I represent the United States in this

20  case.

21         In opening, I would just like to tell you that as the

22  judge has already mentioned to you, this evidence that you're

23  about to hear, some of it was already presented to a jury which

24  convicted the defendant, Jason Colette, of counts one and two

25  of the original Indictment.  That same jury acquitted Mr.

1  Colette of counts three and four.

2          The conviction on counts one and two -- a conviction

3  on one or both of those was necessary for the Government to be

4  able to come to this phase of the case.  That's the only reason

5  you're hearing about it.

6          I'd like to say something at the very beginning of

7  these proceedings to make sure that you understand that the

8  Government is not suggesting to you that just because Mr.

9  Colette was convicted by the jury of trafficking in cocaine

10  under count one and count two, that the story ends there and

11  you should forfeit the property.

12          At the end of the case, the judge will give you some

13  jury instructions and explain to you what the law is, and

14  that's not going to be the law.  If that was the law -- that

15  is, if just being convicted was enough to take somebody's

16  property from them, being convicted of a drug trafficking

17  offense, then you wouldn't be here.  You'd have nothing to

18  decide.

19          The reason you've got something to decide is because

20  forfeiture of someone's property when they're convicted of a

21  crime is a penalty that -- and a form of punishment that has

22  been dictated by Congress --

23          MR. COHEN:  Objection, Your Honor.  This --

24          MR. BARKELEY:  -- under certain circumstances.

25          MR. COHEN:  We don't need -- this is an opening

1    statement, it's what the evidence will show, not a recitation

2    of the law.

3              THE COURT:  Overruled.  You can proceed, but focus on

4    what the -- you can finish your sentence, I guess.

5              MR. BARKELEY:  Yes, Your Honor.  As you heard when

6    the judge read you the Indictment, counts six and seven deal

7    with forfeiture, and they mention the statute that the

8    Government is relying on in terms of showing you the source in

9    the law, the authority for the proposition that under certain

10   circumstances, based on your decision, forfeiture should occur

11   of property when somebody's been convicted of a drug offense,

12   like the defendant was.

13             That statute is 21 U.S. Code, Section 853, it's cited

14   in the Indictment that you just heard about, and in particular,

15   you probably heard two things.  You heard two words or concepts

16   when you heard count six and seven.

17             Count six is dealing with the charge of forfeiting

18   some money, and count seven deals with four guns.  So that's

19   what the Government is seeking in these proceedings, is for you

20   to decide -- if you believe the evidence that you hear supports

21   it, to decide to forfeit the money in count six and the four

22   weapons in count seven.  And you'll be able to make a decision

23   about each and every one of the weapons.  It's not an all or

24   nothing proposition.  You'll have a form that you can select

25   whether to forfeit each of those four guns.  So, basically, I

1  think at the end of the case, you'll have to make five separate

2  forfeiture decisions.

3          Now in doing that, and in hearing from the Indictment

4  the way the judge read it, a certain statute was mentioned and

5  language from that statute (indiscernible) that statute was

6  mentioned.  One was proceeds and the other is facilitate.

7  Property which is the proceeds of a drug conviction violation

8  can be forfeitable, and so can property which facilitates a

9  drug transaction be forfeitable.

10          I cannot tell you at this time what the judge exactly

11  will instruct you in terms of the definition of what

12  facilitation means, but you will get some guidance, you will

13  not have to guess at that.  It's just too early in the case for

14  me to say exactly what it will be.  But just from the barest

15  common sense terms in this proceeding, here is what you're not

16  going to decide.

17          You're not going to decide the defendant's guilt on

18  counts one, two, three, or four.  That's been done.  You are

19  not going to decide anything in this case using the legal

20  standard from the underlying criminal trial, which is the

21  highest standard known to the law, beyond a reasonable doubt.

22  You are not dealing in the virtual certainty land of beyond a

23  reasonable doubt.

24          MR. COHEN:  Objection, Your Honor.  Misstates the law

25  of virtual certainty.  That's not the law on reasonable doubt.

1    THE COURT:  Okay.  Well, this is some background.
2  It's -- but we don't need to discuss what beyond a reasonable
3  doubt means that much because that's not the standard we're
4  dealing with.  Go ahead, Mr. Barkeley.
5    MR. BARKELEY:  Thank you, Your Honor.  Instead, as
6  the judge explained to you earlier this morning, the standard
7  is not as high as beyond a reasonable doubt, it's a standard of
8  preponderance of the evidence.  That is what the Government's
9  burden is in this case.  If the Government doesn't need it and
10  you decide the Government didn't need it, then you do not
11  decide -- you should not decide to forfeit any of this
12  property.  Obviously, the reverse is true if you feel the
13  evidence supports it, and I'll tell you in a second what I
14  believe the evidence is going to show you.
15    But with that legal overview, it must be made clear
16  the standard is not beyond a reasonable doubt anymore, the
17  standard is a lower one, which is a matter of probability; as
18  the judge said earlier, more likely than not.
19    Each of you comes from a different walk of life.  You
20  bring all kinds of life experience into this courtroom.  You
21  don't check it at the door.  You bring in whatever being a park
22  ranger, a homemaker, whatever your jobs are with you.
23  Personally, the job I liked the best was the guy who gets to
24  teach golf.  I mean, that's -- you know, if you can bring that
25  experience to bear, you've obviously got a lot of wisdom, but

1  the point is, ladies and gentlemen, each of you brings a unique

2  perspective and a contribution to this based on your common

3  experience and all the things the judge asked you questions

4  about; your live, your family, your jobs, your education,

5  everything, all the bumps in the road and everything you've

6  learned in your life.  You can apply that to the evidence as

7  you see it here in the courtroom.  And don't be shy about doing

8  that because the Government's position in this case is that

9  once you see the evidence, this is a very simple, common sense

10  matter.

11        That statute, 21 U.S. Code §853(a)(2) says that any

12  person convicted of a violation such as the one in count one,

13  which is the only count the Government is going to be arguing

14  about with you in these proceedings -- that's the only count

15  the Government will say supports forfeiture is count one.  Even

16  though the defendant was convicted of count two, count one is

17  the one.  It's a count in which the defendant was convicted of

18  knowingly possessing cocaine with the intent to distribute it,

19  okay?

20        And the Government's going to argue that the money

21  and each of those four guns facilitated his possession with

22  intent to distribute that cocaine.  A transaction occurred on

23  November 28th of 2005, just like the Court read to you in the

24  Indictment.  And because of that conviction, the statute says

25  that anyone convicted of an offense such as that in count one,

1   shall forfeit to the United States any of the person's property

2   used or intended to be used in any manner or part to commit or

3   to facilitate the commission of such violation.

4          And the Government is going to be arguing not that

5   the guns and the money were used by Mr. Colette to commit that

6   offense of possessing what you'll see the evidence will show

7   was twenty-three ounces or thereabouts of cocaine, instead the

8   language that the Government will be relying on in this

9   forfeiture proceeding is the language about intent.

10         The Government's argument is that the defendant

11  intended to facilitate the commission of that conduct in count

12  one, knowingly possessing cocaine with the intent to distribute

13  it, he intended to facilitate that with the money, about

14  thirty-eight thousand dollars in cash, almost thirty-nine, and

15  each of those four weapons.  Remember, the statute says in any

16  manner or part.  The defendant's property, in any manner or

17  part -- if any manner or part of it facilitated the transaction

18  in count one.

19         THE COURT:  Okay.  You need to proceed to the

20  evidence the Government intends to show.

21         MR. BARKELEY:  Yes, Your Honor.  The Government

22  intends to essentially present to you the testimony that was

23  already elicited at the criminal trial, and that was done

24  through four witnesses.  The lawyers are still talking whether

25  one of those witnesses will actually come to the courtroom and

1  read his testimony from the trial.  But as to two of those

2  witnesses, they will actually take the stand and sort of like a

3  play, they will -- they will -- the parties here will play a

4  part -- each play a part, and the exact testimony that the

5  prior jury in the criminal case heard, you will hear.  Direct

6  examination, which is that conducted by the Government, and

7  cross-examination, which is that conducted by the defense.

8          And the parties and the Court will have a copy of the

9  actual transcript of the testimony, that's what -- and the

10 witness, that's what people will be reading from.  So you'll

11 listen to that, so you will be just as informed as that jury

12 was about what each witness said.  Sometimes it will be the

13 actual witness and sometimes it will be somebody else reading

14 for that witness.  It will only be four witnesses -- the

15 testimony of those four witnesses.

16         And here's what the evidence is expected -- what the

17 Government says the evidence is going to show:

18         The parties have already talked about certain

19 exhibits which were admitted already in the criminal trial.

20 I'm only going to mention in the opening statement these first

21 nine.  They're marked consecutively Government's Exhibits 1

22 through 9.  They're from the original case, they're reflected

23 as admitted in the original trial in the official court

24 documents pertaining to that trial.

25         Essentially, the whole story to be presented in front

1   of you, ladies and gentlemen -- this is Government's Exhibit

2   Number 1 -- is what's inside that safe.  The first witness

3   you're going to hear from on behalf of the Government is a

4   lieutenant with the Alaska State Troopers, he was a sergeant

5   then, who went into the residence at which Mr. Colette was

6   living on November 28th, 2005, with a search warrant, and had

7   to get somebody to come out and drill this safe because the

8   warrant authorized the police to search the safe, and when it

9   was opened -- Government's Exhibit 2 -- this is what was

10  inside, a bunch of guns -- that's all you can see right here at

11  first blush in Exhibit 2.

12          You're going to hear Trooper Wall -- is his name --

13  testify with regard to each of these exhibits just like he did

14  in the original criminal trial about what he found when he

15  opened the safe, what he observed.  On top of the shelf was the

16  machine gun that you've heard about.  Exhibit 4, you're going

17  to hear testimony that there was sort of a Rubbermaid or

18  Tupperware type container in there, lot of cash, almost thirty-

19  nine thousand dollars in cash.  You're going to hear it was

20  wrapped up in individual bundles of a thousand dollars.

21          You're going to hear that right there in that same

22  safe in extremely close physical proximity to the banana clips

23  that fit the machine gun, you're going to see some kind of a

24  plastic grocery bag.  That was Government 5.  This is

25  Government 6.  This is what the tub of money looked like.  This

1   is the money the Government says is forfeitable for

2   facilitating the possession of something else which was in that

3   grocery bag, which was twenty-three ounces of cocaine.

4           You'll hear testimony about how much that sells for

5   on the street.  You'll hear that an informant came in to the

6   trial and testified that just a few days before the search

7   warrant was executed on November 28, 2005, he went over to the

8   defendant's house and bought cocaine out of a sack just like

9   that, out of that safe in Mr. Colette's master bedroom -- just

10  a few days beforehand.

11          And I'm sure all of you are familiar when you go into

12  a restaurant or cafeteria someplace and you see one of those

13  little Sweet'N Low packets or sugar packet?  That's a gram.  So

14  there are twenty-eight grams in an ounce, and there were

15  twenty-three ounces.  That's the quantity of cocaine there was

16  there.

17          Remember that the conviction on count one was a

18  conviction for possession with intent to distribute; not

19  personal use, distribution and sale, which is count two --

20  distribution -- he was convicted of that also, although the

21  Government is not relying on that for forfeiture.

22          Government's Exhibit 8 is a photograph of a machine

23  that the Government submits respectfully is not found in a

24  normal person's bedroom.  It's a money counting machine like

25  banks have, a commercial money counter for handling cash.  That

1    was found in the master bedroom as well.

2           Finally, you'll hear that a scale was also found in

3    the bedroom; digital scale, cocaine residue on the scale.

4    That's Government's 9.  That is what you're going to hear from

5    Trooper Wall.  You're going to hear exactly what he said in the

6    original trial.

7           You'll also hear from other witnesses about the

8    nature of the firearms.  You're going to hear that the

9    Government has no evidence whatsoever that Mr. Colette's

10   ownership or possession of those firearms was illegal.  None.

11   In fact, the only evidence is, is that the possession of the

12   machine gun was legal.  You can get permission to have a

13   machine gun and Mr. Colette did that.  So he's not -- he never

14   was on trial for that and he shouldn't be on trial for that now

15   either.  And he lawfully possessed the other three weapons as

16   well, as far as the Government knows.

17          And, of course, it isn't illegal to have cash either.

18   That's the thing in this forfeiture phase of the case, ladies

19   and gentlemen, that the Government submits you need to keep

20   your focus on and use your common sense when you look at the

21   evidence.  It is not illegal to own thirty-nine thousand

22   dollars of cash --

23          MR. COHEN:  Objection, Your Honor.  Again, it's not a

24   closing statement, it's to outline what the evidence will show.

25          THE COURT:  Sustained.

1    MR. BARKELEY: When the evidence comes in, ladies and

2 gentlemen, you will see that in terms of the property the

3 Government is seeking to forfeit, it all was found inside that

4 safe, Government's Exhibit 1, and what was inside there -- the

5 Government is saying, you can use circumstantial evidence like

6 the judge told you, you are entitled to rely upon, not just

7 direct evidence but circumstantial evidence in reaching your

8 decision in terms of whether that property facilitated the drug

9 trafficking which was the offense of conviction in count one.

10    If I may have one more moment, Your Honor?

11    THE COURT: All right.

12    MR. BARKELEY: Thank you.

13        (Pause)

14 Thanks very much, ladies and gentlemen. I have nothing

15 further, Your Honor.

16    THE COURT: All right. Thank you. Mr. Cohen?

17    MR. COHEN: Thank you, Your Honor. Can I have the

18    MR. BARKELEY: Would you like this microphone?

19    MR. COHEN: I was -- I was going to ask -- I'm not --

20 I need to (indiscernible). I can't just (indiscernible) pretty

21 loud voice.

22    THE COURT: Well, what's your question?

23    MR. COHEN: Can I just speak without wearing that?

24    THE COURT: No. I mean, I've been doing this long

25 enough to know the rule.

1    MR. COHEN:  All right.  My second question is can I

2  (indiscernible - away from microphone)?

3        THE COURT:  (Indiscernible - away from microphone)

4    MR. COHEN:  Thank you, Your Honor.

5    THE COURT:  Mm-hmm (affirmative).

6                (Pause)

7              **DEFENDANT'S OPENING STATEMENT**

8    MR. COHEN:  Good afternoon, ladies and gentlemen, and

9  thank you for your attention to this part of the case.  And as

10  I said, my name is David Cohen, I'm the attorney representing

11  Jason Colette, and Mr. Colette also appreciates all your

12  attention to this part of the case, to these counts, count six

13  and seven.

14    Now, interestingly, in looking at the Indictment,

15  count three and four, for which Mr. Colette was acquitted,

16  count three lists -- I'm sorry, count four lists fourteen

17  different firearms -- fourteen -- count -- I'm sorry -- count

18  four lists fourteen different firearms, and you're going to

19  hear evidence about fourteen different firearms, yet the

20  Government is only seeking to forfeit four.

21    The Indictment says that the firearms should be

22  forfeited because of convictions of counts one and two, yet the

23  Government is not arguing that there should be any forfeiture

24  based upon count two.  They're only arguing count one.  They

25  don't say that the distribution on November 18th of 2005 --

1    they don't say that that distribution facilitated -- was

2    facilitated by the money or was facilitated by the firearms.

3    They don't say that.  It happened ten days before.  They're not

4    pursuing that theory.  So that's dropped as well.

5         And the Indictment charges that the money and the

6    firearms are the proceeds of the drug offenses and facilitated

7    the drug offenses.  The Government is not arguing that the

8    firearms or the money are proceeds of the drug offenses.

9    They're not arguing that -- even that although that's in the

10   Indictment.

11        The only thing that the Government is seeking to

12   argue is that as to count one only -- as to count one only, the

13   thirty-eight thousand and the four firearms facilitated count

14   one.  That's all they're arguing -- that's all they're arguing

15   based upon the evidence that they're going to adduce before

16   you.

17        Now what they're arguing is, is that on November 28th

18   of 2005, Mr. Colette possessed cocaine with intent to

19   distribute -- he possessed cocaine with intent to distribute.

20   On November 28th, 2005, in Mr. Colette's trailer, in his room,

21   was found approximately six hundred and seventy grams of

22   cocaine, and he was convicted for possessing that with intent

23   to distribute.  What was also found was thirty-eight thousand

24   some-odd dollars, fourteen firearms -- the Government's picking

25   out four of those firearms and saying that those four firearms

1  facilitated the possession of cocaine.

2          Now as you listen to the evidence of this trial, ask

3  yourselves the question, he already had the cocaine -- he

4  already had the cocaine.  How did this money, this thirty-eight

5  thousand dollars -- how did that facilitate possession of this

6  cocaine?  He had it already.  How did these four firearms that

7  they're charging facilitate the possession of the cocaine?

8          Now let's talk about the firearms.  One of the

9  firearms -- excuse me for a second.  One of -- one of the

10  firearms is a MAC-10 machine gun, and you're going to hear --

11  and there was a silencer, and you're going to hear evidence

12  that that firearm was lawfully owned by Mr. Colette.  He had

13  the tax stamps for it, he lawfully owned it, he lawfully owned

14  the silencer.  And you're going to hear testimony from --

15  extensive testimony from a gun dealer in town who sells these

16  guns, that it's perfectly lawful to purchase these guns, that

17  they're sold all the time, that they're -- they're toys, quote

18  unquote, of -- of big boys, and that's -- that's the case, and

19  that it's absolutely possible to legally possess such a weapon.

20          As to the Colt Sporter that you're going to hear

21  about, that's a gun that can be used in hunting.  As to the

22  Mossberg 12-gauge shotgun, that can be used for sport and for

23  hunting, protection -- for bear type protection during hunting,

24  among other things.

25          And as to the Remington Woodsmaster Model 740, .30-06

1    rifle, it's a hunting rifle, and you're going to hear testimony

2    that Mr. Colette is an avid hunter, that he used that gun

3    specifically hunting, and he used these guns hunting, and he's

4    a gun enthusiast, a person who lawfully owns guns.

5           You're also going to hear testimony that Mr. Colette,

6    on November 28th, 2005, and in the three preceding years, had a

7    business called Arctic Alarm and Audio, which is a business in

8    which -- in which people -- numerous customers came in and had

9    car alarms, audio systems installed in their cars.  It was a

10   business here in Fairbanks, Mr. Colette owned the business, it

11   was a profitable business, and it was a business that generated

12   a lot of gross revenue, it was a business that generated a lot

13   of cash revenue, and Mr. Colette paid -- paid for services in

14   cash, he paid employees in cash, he obtained payment for

15   services in cash, and he stored the cash of the business in the

16   safe that was in his trailer.

17          Not only that, but there were seven checks that were

18   Arctic Alarm and Audio checks that were found in the safe

19   together with the case.  This was a gun safe.  This is a gun

20   safe where all the guns were found -- all fourteen guns were

21   found, and there was ammunition found, and there was -- there

22   was no ammunition for the -- for the MAC-10, but there was

23   ammunition for some of the other firearms.

24          So, there's going to be ample evidence that explains

25   why the thirty-eight thousand dollars was in the safe, there's

1  going to be ample evidence explaining why Mr. Colette had guns.

2  The question is what's the evidence going to be that shows in

3  any way that these firearms -- these four firearms or the cash

4  facilitated, made easier in any way the possession of this

5  cocaine which he already had.

6          The Government's going to call an informant, okay?

7  An informant.  His name is Eugene Johnson.  And Mr. Johnson --

8          MR. BARKELEY:  I'll object to that, Your Honor.

9  Given what we've been through this morning, representing the

10  Government's going to call that witness, that's not correct.

11          THE COURT:  Through -- read his deposition -- or read

12  his tape, is that what you meant?  Is that the concern?

13          MR. COHEN:  I mean, that the Government is going to

14  present testimony in the form that the Government explained to

15  the jury earlier from Eugene Johnson, an informant -- a cocaine

16  dealer, a person who possessed firearms, a liar, a man who was

17  arrested when a search warrant was executed earlier in the day

18  on November 28th of 2005.

19          And when Mr. Johnson was arrested, he was in serious,

20  serious trouble.  And right at the scene, he cut a deal with

21  the authorities, and you're going to hear about it, that if he

22  gave them somebody good -- if he gave them somebody, that he

23  wasn't going to do any jail time at all.  And so what he did

24  was he told them I bought cocaine from Jason Colette, and you

25  go and you look there, and you're going to find cocaine and

1  you're going to find this machine gun.  That's what he said.

2  He said I was there one time previously and I saw the machine

3  gun.  He said that he recalled -- when he testified at the

4  previous trial, he recalled being there on one occasion, even

5  though he originally said to the authorities he had been there

6  on many occasions.  He said he recalled being there on one

7  occasion, he said that he paid eleven hundred dollars for some

8  cocaine, and he said I got the cocaine and I left.  'Kay?

9  That's what he remembers.

10      He remembers looking into the safe -- he says the

11 safe was open, I didn't see any guns in the safe, I didn't see

12 any money in the safe.  What I do know -- what I did see was

13 this MAC-10 that was out there on the dresser in the bedroom.

14 That's what I saw.  And then he further says, you know, I was

15 thinking about going and stealing some cocaine from Mr.

16 Colette, but I decided not to do it because of that MAC-10.  So

17 that's the extent of his testimony.

18      So what, ladies and gentlemen, you need to decide is,

19 well, if Mr. Johnson purchased cocaine from Mr. Colette -- if

20 Mr. Johnson purchased cocaine from Mr. Colette and left, it was

21 Mr. Johnson that had the cocaine, he walked out with cocaine,

22 he possessed some cocaine that wasn't there anymore.  It wasn't

23 Mr. Johnson's cocaine that was there on November 28th of 2005.

24 He didn't possess that cocaine.

25      So how was it that what Mr. Johnson's talking about

1   supports in any way the fact the money that he paid for cocaine

2   that he left with facilitated the possession of the other

3   cocaine?  That's the only evidence that you're going to hear at

4   all from the Government about any money that had anything to do

5   with cocaine.  This eleven hundred dollars that was paid for

6   some other cocaine.

7          And the only evidence you're going to hear from

8   anybody about drugs and guns is about this MAC-10, and the only

9   evidence is going to be I saw this thing, I -- and I was

10  concerned that I couldn't steal it from him because of this

11  MAC-10.  So you're only going to hear evidence about that, and

12  the question is so even -- if he was concerned about stealing

13  cocaine, how did that facilitate the possession of the other

14  cocaine?

15         But even more than that, if that's the only evidence

16  that we hear about the guns, what about the other three guns

17  that they're seeking to forfeit?  There's going to be no

18  evidence at all that those guns had anything to do whatsoever

19  with the possession of that cocaine.

20         And the evidence that they have on the machine gun is

21  tenuous -- logically doesn't make any sense, but even more than

22  that, the testimony of this Mr. Johnson is completely

23  incredible.  It's not to be believed.  Wait until you hear it.

24  This guy is unbelievable.  You listen to this guy.  He's not

25  entitled to any credibility at all when he talks about the fact

1    that -- what he hid from the cops was the fact that there was

2    apparently some kind of leak inside the authorities where they

3    ticked him off with the search warrant that was going to be

4    executed, and he was able to clean out his house.  The cops

5    said, well, who was the person who leaked that information?  He

6    wouldn't tell them.  Cops said who were your other sources of

7    supply?  He had many sources of supply.  He wouldn't tell them.

8    You're going to hear all kinds of stuff about him during the

9    course of the evidence, and you're going to see he's absolutely

10   not to be believed.

11          The standard in this case is preponderance of the

12   evidence, not beyond a reasonable doubt, and the Government and

13   the defense agree on that.  Preponderance of the evidence is,

14   is it more likely than not that this thirty-eight thousand

15   dollars -- the Government doesn't talk about a part of the

16   thirty-eight thousand dollars, they don't have evidence that

17   talks about a part of the thirty-eight thousand dollars, a

18   portion of the thirty-eight thousand dollars, they don't talk

19   about anything about a part, they just say the thirty-eight

20   thousand dollars, the evidence is what it is, we found thirty-

21   eight thousand dollars there, we found cocaine there, and there

22   was this one deal that Mr. Johnson remembers.  That's what the

23   they talk about.

24          So the question is preponderance of the evidence, is

25   it more likely than not that any one of these four firearms or

1    any portion of the money made it easier for Mr. Colette to

2    possess the cocaine that day?  Logically, it doesn't make any

3    sense.  There's not going to be any evidence to that effect.

4    Is it more likely than not?  It's a lower standard, but they

5    still have to show it's more likely than not.  In other words,

6    that it's above fifty percent.  They've got to show it's more

7    likely than not.

8             If you've got two different scenarios, each one of

9    them is equally plausible -- well, this one might have

10    happened, this one might have happened, I don't know which one

11    happened.  They haven't sustained their burden because they've

12    got to show it's more likely than not that it happened in the

13    way that they said.

14             And when you hear our witnesses, the people that are

15    going to testify that were employees of Arctic Alarm and Audio,

16    people who were vendors who made deliveries to Arctic Alarm and

17    Audio, when you see what the business was about, when you see

18    how much money the business was making, when you see the fact

19    that there was a large portion of the proceeds from that

20    business and the money going into that business that was in

21    cash, when you see all of that, when you see the checks that

22    were in the safe that had to do with the business, when you see

23    the fact that business -- it's not unusual -- you're going to

24    hear testimony to this effect, that a business that deals in

25    cash, you want to keep that cash in a secure location, and when

1  you hear the evidence that these firearms, which the Government

2  concedes are legal -- they're legally possessed -- when you

3  hear the evidence that these firearms are firearms that are

4  used for sport and for hunting, and not only that, there's

5  absolutely no dispute that Mr. Colette is a gun and hunting

6  enthusiast.

7         When you hear all that evidence and you get to the

8  end of the trial, we're going to say have they showed that it's

9  more likely than not that this -- that it facilitated the

10  possession of cocaine with intent to distribute on that date?

11  Have they showed it's more likely than not -- have they

12  presented a plausible scenario?  We're going to say it's not

13  plausible.  We're going to say but in any event, in any case,

14  we presented an equally plausible scenario.  And if you've got

15  two of them and you're not sure which one it was, or you think

16  ours is more likely, we win.

17         Thank you again in advance for all your careful

18  attention.  I'm going to stand up at the end of the case, make

19  my closing argument, and I'm going to ask you to find that each

20  piece of property that is identified in the Indictment is not

21  forfeitable.  Thank you.

22         THE COURT:  So, Mr. Barkeley, are you ready to

23  proceed with your first witness?

24         MR. BARKELEY:  Yes, Your Honor.

25         THE COURT:  Are you okay to keep going, ladies and

1    gentlemen?  Okay.  Government's first witness?

2           MR. BARKELEY:  Yes, Your Honor.  Lieutenant Ron Wall

3    of the Alaska State Troopers.

4           THE COURT:  'Kay.

5           MR. BARKELEY:  And, Your Honor, I have reproduced a

6    copy from the transcript --

7           THE COURT:  'Kay.

8           MR. BARKELEY:  -- of the testimony.  I have one for

9    the witness, I also have one for Your Honor, if I may approach.

10          THE COURT:  That's fine.

11          MR. BARKELEY:  This is just to make sure, of course,

12   that everyone sticks to exactly what the testimony was.

13          THE COURT:  Okay.

14                   (Pause - side conversation)

15          THE COURT:  So, is he here, or do you have somebody

16   to read?

17          MR. BARKELEY:  He is, Your Honor.  I -- I --

18          THE COURT:  I mean, is he actually going to do the

19   reading?

20          MR. BARKELEY:  Pardon me?

21          THE COURT:  Is he going to read for himself?

22          MR. BARKELEY:  He is, Your Honor.

23          THE COURT:  Okay.  He's on his way then, I presume?

24          MR. BARKELEY:  Yes, Your Honor.  I believe --

25          THE COURT:  I don't see anybody.

1            MR. BARKELEY:  No, he was out in the hall.

2            THE COURT:  Okay.

3            MR. BARKELEY:  Witnesses were excluded --

4            THE COURT:  Okay, that's fine.

5                            (Pause)

6    Okay.  This is -- all right.  Basically what we've got is --

7    typically we swear in witnesses.  He was sworn in the trial and

8    he's here as a reader now, so we'll just give him the

9    deposition, which is that you promise to read it as it's

10   indicated.

11           THE WITNESS:  Yes, sir.

12           THE COURT:  And Madam Clerk, if you'll do that,

13   please.

14      **RONALD WALL, GOVERNMENT'S WITNESS, SWORN TO READ TESTIMONY**

15           THE CLERK:  Thank you.  You may be seated.  And sir,

16   for the record, could you please state your full name, spelling

17   your last name?

18           THE WITNESS:  It's Ronald Wall, W-A-L-L.

19           THE COURT:  All right.  Ladies and gentlemen, do you

20   understand what's going on here?  He actually testified at the

21   trial, but so that you hear what the other jury heard, they're

22   just going to read exactly what happened, okay?  Very well.

23   Counsel?

24           MR. BARKELEY:  Thank you, Your Honor.  Ladies and

25   gentlemen of the jury, for your information, we're reading from

1    a transcript.  I'll be playing the part of Mr. Schroder where

2    it says Mr. Schroder here because was the government attorney

3    during the trial.  Mr. Cohen will be playing the part of Mr.

4    Butler -- Rex Butler, who was the attorney for the defendant

5    during the criminal case.  The witness is going to be himself.

6            Trooper Wall, do you have a copy of the transcript of

7    your testimony from the trial?

8            THE WITNESS:  Yes, sir.  I do.

9            MR. BARKELEY:  Thank you, sir.  Briefly, if you

10   would, take a moment, look up there, there's a set of

11   photographs.  Each of them is marked with a government's

12   exhibit number on the back of them.  They're mounted on some

13   kind of foam board.  Please take a moment to look at those and

14   tell the Court and the jury whether you remember those as

15   exhibits which you discussed in your testimony during the

16   trial.

17           THE WITNESS:  Yes, sir.

18           MR. BARKELEY:  You do?  I'm sorry, you're looking.

19   All right.

20                              (Pause)

21           THE WITNESS:  Yes, sir.

22           MR. BARKELEY:  Thank you.  Your Honor, may I

23   approach?

24           THE COURT:  That would be fine.

25                              (Pause)