1  amounts were.

2  Q    "Did Mr. Johnson ever admit to you all that he was moving

3  a kilo a week?

4  A    "He did not, sir.

5  Q    "Did he ever admit to you how much cocaine he was moving

6  per week?

7  A    "No, sir.

8  Q    "Would it -- is it -- would it be correct for me to

9  conclude that Mr. Johnson kind of keeps his information close

10 to the vest?

11 A    "Yes, sir.  That would be one way to term it.

12 Q    "And is that one of the reasons why you would say or you

13 would conclude that Mr. Johnson is not at all that reliable?

14 A    "No.  That's -- that would be an accurate statement.

15 Q    "That would not be accurate?

16 A    "That wouldn't -- that would be an accurate statement,

17 okay.

18 Q    "I'm sorry.  That would not be accurate?

19 A    "Would not be.

20 Q    "That -- what part of that statement would not be

21 accurate, sir?

22 A    "Well, I don't believe that because he withholds

23 information of his own choosing, that would definitely

24 determine whether or not his information was true and accurate.

25 Q    "Even though that information is information you would

Wall - Cross (Reading)                                    1-220

1  want to have?

2  A    "Whether or not it's information that I would want to

3  have, sir, that's information that he's got to be willing to

4  give me.  Just because a person doesn't tell me something

5  doesn't mean that they're not guilty of something or that they

6  don't know the information that I want.  I can't compel them to

7  give me that information.  That doesn't necessarily mean that

8  they're being dishonest or -- about a subject or untruthful.

9  It just means that they're withholding that information.

10 Q    "Would you want to know whether he was moving a kilo a

11 week, sir?

12 A    "Absolutely.

13 Q    "Okay.  And would you want to know where that kilo -- that

14 brick, for example -- would be coming from, would you --

15 wouldn't you?

16 A    "Yes, sir.

17 Q    "Now when you were questioning Mr. Johnson, you mentioned

18 a minute ago about he had a conviction for domestic violence,

19 but did you check his background?

20 A    "The background was checked beforehand, yes, before the

21 execution of the warrant.

22 Q    "Okay.  And did his background play any role in how you

23 viewed the information you were getting from him?

24 A    "I would say not so much as his background, but more of

25 his personality.

1  Q    "What do you mean, sir?

2  A    "Mr. Johnson had an assault in his background that didn't

3  necessarily deal with anything, but Mr. Johnson did want to

4  provide the information that was favorable to him if he knew

5  that we were going to cooperate with him.  That's -- that's

6  more of an accurate statement as -- as far as his personality.

7  Q    "When you look at a person like that, you certainly want

8  to know what their criminal history is as well, don't you?

9  A    "Yes, sir.

10  Q    "And that's why you checked it ahead of time, didn't you?

11  A    "We do that as a course of business, sir.

12  Q    "Okay.  And that also gives you an idea of whether the

13  person may be savvy as it relates to dealing with law

14  enforcement, isn't that right?

15  A    "That's correct.

16  Q    "I mean, the more history, there may be more savviness in

17  the way that they deal with law enforcement, isn't that right?

18  A    "It may be -- well, it may be, but they're just not as

19  adept at getting away with it.

20  Q    "Okay.  And Mr. Johnson had some savviness about him,

21  didn't he?

22         MR. BARKELEY AS MR. SCHRODER:  "Objection, Your

23  Honor.  This is improper impeachment to go -- using this

24  witness to try to go into the criminal history of another

25  witness.

1          THE COURT:  "Well, I don't know exactly where you're

2   going, but are you done with this line?

3          MR. COHEN AS MR. BUTLER:  "Well, just -- well, the

4   part about the savviness, if I can get that answered -- I'd

5   like to get that answered.

6          THE COURT:  "Well, you got that answer about three

7   different ways.  I mean, three different times he said that

8   he's maybe -- or maybe not, I don't know.

9          MR. COHEN AS MR. BUTLER:  "Okay.  Well, all right.

10  If he answered that as to Mr. Johnson, then that'll be my last

11  question on that area --

12         THE COURT:  "Okay.

13         MR. COHEN AS MR. BUTLER:  "-- Judge.

14         THE COURT:  "Any redirect?

15         MR. COHEN AS MR. BUTLER:  "On that area?

16         THE COURT:  "Oh, on that area?  I thought I heard you

17  say last question.

18         MR. COHEN AS MR. BUTLER:  "No, on that area, Judge.

19         THE COURT:  "All right.

20  BY MR. COHEN AS MR. BUTLER:

21  Q   "Now when you went into Mr. Colette's residence, sir --

22  no, you didn't let anyone know outside getting" -- strike that.

23  I'll start from the beginning.  "Now, when you went into Mr.

24  Colette's residence, sir -- no, you didn't let anyone know

25  outside of getting the search warrant and what have you that

1  you were going in that residence, isn't that right?

2  A    "What do you mean, outside of the rest --

3  Q    "Outside of normal law enforcement channels.

4  A    "No, sir.  The court system and the law -- and the law

5  enforcement.

6  Q    "So the execution of the search warrant was by surprise,

7  wouldn't you say?

8  A    "That's correct.

9  Q    "And when you went in there, you didn't find firearms

10  laying out in bedrooms and things like that, did you?

11  A    "No, sir.

12  Q    "Okay.  Firearms and things were locked away in a safe,

13  isn't that right?

14  A    "That's correct.

15  Q    "Okay.  Have you ever had to go into a safe to get

16  something out?

17  A    "Yes, sir.

18  Q    "It takes a little bit of time, doesn't it?

19  A    "Some safes, yes.

20  Q    "It's not the kind of thing you just grab up and wave or

21  you can't just grab something and wave it around if it's locked

22  up in a safe, isn't that right?

23  A    "No.  It depends on what type of safe you have, but some

24  take more time than others.

25  Q    "And the safe was in the bedroom, right, sir?

1  A     "Yes, sir.

2  Q     "And you've testified, I think, to drugs that were found

3  that were locked up in the safe, right?

4  A     "Yes, sir.

5  Q     "And all the guns were locked up in the safe, isn't that

6  right?

7  A     "Yes, sir.

8  Q     "And the guns that you described as a -- I guess it's an

9  automatic weapon of some sort?

10  A     "It was an Ingram submachine gun, sir.

11  Q     "Okay.  It was legal for Mr. Colette to own it at the

12  time, wasn't it?

13  A     "That's my belief, sir, yes.

14  Q     "Well, in fact, you saw the paperwork that he went through

15  to get it, didn't you?

16  A     "Yes.

17  Q     "It was right there in the safe.

18  A     "Correct.

19  Q     "Went through the federal process, so to speak, right?

20  A     "Well --

21  Q     "It's not a state process, is it?  It's a federal process.

22  A     "That -- that is correct.  I guess it's a -- it's a two-

23  part question.  The belief of that legally possessing a

24  firearm, yes; in that circumstance, no.

25  Q     "Well, that's your opinion about the circumstance, isn't

1   that right, sir?

2   A     "Well, not necessarily.  The lab, I believe, field test --

3   or tested the product of, I believe it was cocaine, so you're

4   asking what I believed at the time.

5   Q     "No, no.  What I asked you was it was legal for him to

6   possess it at the time, was it not?

7   A     "The firearm, yes.

8   Q     "Yes.  Other words -- in other words, it wasn't something

9   that was bought off the street.

10  A     "That's correct.

11  Q     "The receipts and everything are right there was --

12  weren't they?

13  A     "A receipt and a tax stamp, sir.

14  Q     "And the tax stamps with his picture on them, right, sir?

15  A     "That's correct.

16  Q     "Including for the suppressor.  It was all legal.

17  A     "That's correct.

18  Q     "Okay.  And in fact, there were no bullets in the firearm

19  when you found it, were there, sir?

20  A     "I don't believe there were, sir.

21  Q     "And there were no bullets to that firearm even in the

22  safe, were there?

23  A     "I don't recall that, sir.

24  Q     "Do you recall, sir, where there any bullets belonging to

25  that firearm in the safe?

1  A    "I don't recall, sir.  I did -- I didn't empty any

2  ammunition out of the safe.

3  Q    "Now are you the case officer here?

4  A    "I was part of the case.  I was the case manager for the

5  state.  Once the items were located inside the safe, there were

6  certain federal thresholds that were met.  Special Agent Foran,

7  as well as ATF, took over the -- Eric Cohoon with ATF took over

8  the investigation.

9  Q    "You all transferred the case to them, right?

10  A    "We did.

11  Q    "But it was a state case, right?

12  A    "Initially, sir, yes.

13  Q    "Okay.  And you basically looked at the photographs and

14  you testified about what was in the photographs for us, didn't

15  you do that, sir?

16  A    "That's correct.

17  Q    "And you were there during the execution of the warrant,

18  weren't you, sir?

19  A    "Yes, sir.

20  Q    "And that particular firearm was of great interest, wasn't

21  it?

22  A    "It was, sir.

23  Q    "Okay.  And so had there been bullets in that safe to go

24  with it, that would have probably been of some interest as

25  well, wouldn't it?

Wall - Cross (Reading)                                    1-227

1  A    "Well, there were boxes of ammunition, sir.  The --

2  whether the weapon was loaded or unloaded, I'm not familiar

3  with that weapon, so I can -- so I can't -- rest assured that I

4  didn't handle it until it was cleared by someone who knows how

5  it functions.  So, I know that being there, the weapon was

6  unloaded.

7             MR. COHEN AS MR. BUTLER:  "If I may have a moment,

8  Judge?

9             THE COURT:  "All right.

10 BY MR. COHEN AS MR. BUTLER:

11 Q    "Sir, you had mentioned on the record you weren't too much

12 -- and if I misstate this, please correct me -- that you

13 weren't too interested in accurate information, just truthful

14 information, and I was wondering what the difference was?

15 A    "Well, the -- I -- I have to correct you.  The -- the

16 question was truthful versus useful.

17 Q    "Oh, okay.  Because I thought the term accurate was used

18 in a --

19 A    "No, sir.  It was truthful versus useful.

20 Q    "But you want useful information, don't you?

21 A    "Absolutely.

22 Q    "And if it's useful, that means it's probably accurate or

23 true if it's useful.

24 A    "Sometimes, yes.  Not -- not all the time.  It has to be

25 legally obtained.  It can be.

1  Q    "But the question was in reference to an informant.  If

2  the informant (indiscernible) -- because the question was

3  whether and you're getting information from an informant, you

4  know, useful versus truthful, and the word accurate was in

5  there somewhere, but if it's coming from an informant and it's

6  useful, then there must be some truth to it, right?

7  A    "Not necessarily.  Useful information can be obtained

8  illegally by an informant, or it can be something that leads to

9  surveillance or other types of investigation.  As -- as far as

10 truthful information would be something that would be provided

11 -- provide testimony before a judge or magistrate for.

12 Q    "Truthful -- you said truthful information would go in

13 front of a magistrate.

14 A    "That's my definition of it.  Yes, sir.

15 Q    "But isn't it true that people lie under oath?

16 A    "I'm sure they do.

17 Q    "Okay.  Or don't tell everything when they're on the

18 witness stand, right?

19 A    "I'm sure they do.

20 Q    "Okay.  So when a person testifies to you, it doesn't

21 always mean it's truthful, isn't that right?

22 A    "I'm sure not for everybody, sir.

23        MR. COHEN AS MR. BUTLER:  "Pass the witness, Your

24 Honor.

25        THE COURT:  "All right.  Thank you.  Redirect?

1     MR. BARKELEY AS MR. SCHRODER:  "No redirect, Your

2  Honor.

3     THE COURT:  "All right.  Thank you, sir.  You're

4  excused."  That's -- that's it for this witness, isn't it?

5     MR. BARKELEY:  Yes, Your Honor.

6     THE COURT:  Okay.  So you are excused.  Thank you,

7  sir.

8     THE WITNESS:  Thank you, Your Honor.

9     MR. COHEN:  Yes, Your Honor.  Your Honor, I'd ask

10 that the witness not be excused and be subject to recall in the

11 defense case.

12     THE COURT:  Subject to recall, but he's excused for

13 today.

14     MR. COHEN:  For today, yes.  Because he's been served

15 with a --

16     THE COURT:  Okay.

17     MR. COHEN:  Okay.

18     THE COURT:  All right.  Very well.  Well, we've done

19 it, ladies and gentlemen.  We made it through the day.  How are

20 you holding up?  Got one witness down.  And I'd like to start

21 at 8:30 tomorrow morning.  Can you -- can you do that?  Because

22 we want to get -- keep -- keep moving.  So if you could be here

23 about 8:20 in the big -- in the big room, they'll take you on

24 down to the little room, and we'll try to start right with the

25 next witness right at 8:30 tomorrow morning.

1        MR. COHEN:  Your Honor, I think -- I think Sergeant

2  Wall should leave the transcript that he was reading with the

3  Court.

4        THE COURT:  Did he take it with him?

5        MR. COHEN:  He took it with him, yeah.

6        THE COURT:  Okay.  We'll get it.  We can just get the

7  transcript back.

8        MR. COHEN:  Should I go tell him?

9        THE COURT:  They're getting it.  All right.  So the

10  jury clerk is coming?  Okay.  So have you been to the little

11  room yet?  So you know where it is, huh?  Oh, you're free to go

12  there now if it's unlocked.  Is it unlocked?

13        THE CLERK:  No, not yet (indiscernible).

14        THE COURT:  Okay.  We'll let you go there and see you

15  tomorrow morning.  She's on her way down to get you.

16        THE CLERK:  So court 8:30 tomorrow?

17        THE COURT:  Yeah, yeah.  We'll try to start at 8:30

18  sharp.  If they can be there at 8:20 -- and you know I told

19  you, you can't read any information -- all that stuff I told

20  you before, that still applies to tonight, okay?

21                    (Pause)

22      (Jury out at 4:30 p.m.)

23        THE COURT:  Okay.  Did you get your transcript back?

24        MR. COHEN:  I'm not sure if somebody went --

25        THE COURT:  We got the tran --

1        MR. COHEN:  Yes.

2        THE COURT:  Okay.  Okay.  Counsel, what's -- what's

3  next?

4        MR. COHEN:  Your Honor, I have a copy of the proof of

5  service of the witness in Florida filled out.

6        THE COURT:  'Kay.  Okay, good.  What do you want me

7  to do about it?

8        MR. COHEN:  Well, based on that, Your Honor, I

9  believe as this witness was served a subpoena to appear

10  today --

11        THE COURT:  'Kay.

12        MR. COHEN:  -- he didn't contact me at all --

13        THE COURT:  'Kay.

14        MR. COHEN:  -- it was a valid subpoena, and I think

15  based upon that, the Court should issue a warrant for his

16  arrest.

17        THE COURT:  Who is this person?

18        MR. COHEN:  He's -- he's a -- an employee of Mr.

19  Colette's business -- a former employee of Mr. Colette's

20  business.

21        THE COURT:  It's no secret is it?  What's his name?

22        MR. COHEN:  Oh, no, no, no, no.  I (indiscernible) --

23  it's interesting why --

24        THE COURT:  Well, I'm asking both.

25        MR. COHEN:  His name is --

1          THE COURT:  Stay at a microphone.

2          MR. COHEN:  Oh, I'm -- his name is Damon Wamsley,

3     W-A-M-S-L-E-Y.

4          THE COURT:  And you have an indication before you

5     that he's been served with a subpoena and that he didn't

6     respond to it.

7          MR. COHEN:  That's correct, Your Honor.

8          THE COURT:  Do you happen -- do you have a phone

9     number for him or anything?

10         MR. COHEN:  We do not have a phone number for him.

11    We didn't have a phone number for him.  We did have his

12    address, and a process server in Florida served him at the

13    address, and has sworn to the fact that it was served.

14         THE COURT:  Mr. Barkeley, what's your position on

15    this?

16         MR. BARKELEY:  The Government doesn't take any

17    position, Your Honor.  I --

18         THE COURT:  Well, I just don't see how this --

19         MR. BARKELEY:  -- I don't know what value Mr. Wamsley

20    has.

21         THE COURT:  -- what's good it going to do.  We arrest

22    him in Florida, it takes him three weeks to get here.

23         MR. COHEN:  Well, the -- the -- if Your Honor issues

24    the warrant, perhaps I could have the process server go out

25    there and alert him that there's a warrant out and you --

1        THE COURT:  Well, I'll issue the warrant.  I have no

2  problem with that if -- based on your representation that he's

3  been served and your representation that he's ignored service,

4  he's a material witness, I'll -- I presume you're telling me

5  that --

6        MR. COHEN:  Yes, Your Honor.

7        THE COURT:  -- and you -- you need to have him

8  arrested so that you can encourage him to fly up here.

9        MR. COHEN:  That's correct, Your Honor.

10        THE COURT:  That's what you're talking about.

11        MR. COHEN:  That's correct.

12        THE COURT:  Now is this a witness that could attend

13  telephonically or not?

14        MR. COHEN:  Well, maybe he could.  If he'd called --

15        THE COURT:  I don't know.

16        MR. COHEN:  -- if he called me, then perhaps we could

17  arrange for him to attend --

18        THE COURT:  Well, I think the Government would have

19  to consent to it, but they could talk to him and give an offer

20  of proof and --

21        MR. COHEN:  I would be fine -- and the Government has

22  a copy of the statements that he would make.  We provided those

23  to --

24        THE COURT:  So it's no secret --

25        MR. COHEN:  It's not.

1        THE COURT:  -- what he's going to say.

2        MR. COHEN:  It's not.

3        MR. BARKELEY:  What -- what statements are you

4   referring to, counsel?

5        MR. COHEN:  We provided --

6        MR. BARKELEY:  The depositions that your investigator

7   took?

8        MR. COHEN:  That's correct.

9        MR. BARKELEY:  Okay.

10        MR. COHEN:  They were provided -- well, they were

11   provided at the sentencing hearing and also later on

12   (indiscernible - away from microphone).

13        MR. BARKELEY:  Okay.  But those -- you're saying he

14   won't testify about anything except what was mentioned in

15   there?

16        MR. COHEN:  Well, I --

17        THE CLERK:  Mr. Cohen, I need you to either turn

18   around --

19        MR. COHEN:  I can't -- I can't guarantee that every

20   question is going to track exactly what was in there, but

21   that's --

22        THE COURT:  I understand, but that's --

23        MR. COHEN:  -- that's generally -- that's the subject

24   matter.

25        THE COURT:  That's the reason you want to call him.

1          MR. COHEN:  That's -- that's correct, Your Honor.

2          THE COURT:  You want to call him to have him testify

3    consistent with the letter he sent the Court at sentencing,

4    true?

5          MR. COHEN:  The statement at sentencing, the

6    statement in connection with our forfeiture motion, we may have

7    some other questions for him --

8          THE COURT:  Okay.

9          MR. COHEN:  -- as -- as well, Your Honor.

10          THE COURT:  Maybe you can get that stipulation, I

11    don't know, but I -- I will -- I'll issue the warrant.

12          MR. COHEN:  If the Government would agree to have him

13    attend telephonically, we're not wedded to having him sit right

14    here.

15          THE COURT:  Okay.  Well, you've got --

16          MR. COHEN:  (Indiscernible) if they'll -- if they'll

17    agree.  So how does that process work if the Court issues a

18    warrant?

19          THE COURT:  I'm not sure I know.  Where's Carolyn?

20    She knows everything.  Usually, I say the warrant will issue,

21    and it somehow magically does, but I have a feeling somebody

22    has -- and last -- didn't we do this, Mr. Barkeley in a case --

23    with the Government?  What happened there?  I said a warrant

24    will issue and you ended up having to go create one, didn't

25    you?  Or did we create it?

1    MR. BARKELEY:  I believe the Court created it.  There

2   was a -- although the witness complied before you ever did it,

3   Your Honor, but I think it was in the Borden-Michie (ph) case

4   and the witness appeared telephonically from California.

5    THE COURT:  I didn't even do Borden-Michie case, did

6   I?

7    MR. BARKELEY:  I think you did.

8    THE COURT:  That was Judge Sedwick.    Bruno Borden-

9   Michie was Judge Sedwick.

10    MR. BARKELEY:  Yeah.  Not the criminal trial, but you

11   did the ancillary proceedings, I believe, Your Honor, and they

12   were civil in character, and you were asking us about whether

13   that was the case and --

14    THE COURT:  'Kay.

15    MR. BARKELEY:  That's the only time I remember one

16   was issued.  But before an arrest warrant is issued, Your

17   Honor, the Government (indiscernible) -- I would be willing to

18   stipulate to whatever this guy would testify to and, frankly,

19   this is why the Government felt the threshold question is -- to

20   get a proffer of what this witness is going to testify about --

21   is it relevant?  Are you going to let it in?  I mean --

22    THE COURT:  I don't -- I can't remem -- I remember a

23   letter was written.  I can't remember what it said.

24    MR. BARKELEY:  If the Government is going to only put

25   on, which I think it's clearly committed to now --

1      THE COURT:  Yes.

2      MR. BARKELEY:  -- testimony about facilitation, what

3  is the relevance of -- of arresting someone in Florida and days

4  of testimony basically to counter a proceeds case?  And that --

5  that's what it would be --

6      THE COURT:  So what --

7      MR. BARKELEY:  -- to say, oh, this guy was paying us

8  in cash and whatever.

9      THE COURT:  Maybe -- Mr. Cohen, can you give me an

10  offer of proof what he would say?  You've been very general.

11      MR. COHEN:  Yes.  I mean, he's -- he's one of the

12  employees who will basically say I worked for Mr. Colette --

13      THE COURT:  Right.

14      MR. COHEN:  -- it was a viable business, a lot of

15  money was coming in, (indiscernible - coughing in background)

16  there were no drugs involved, it was a legitimate business, and

17  my --

18      THE COURT:  He wrote me a letter, didn't he?

19      MR. COHEN:  Yeah -- well, it's just a -- I submitted

20  a --

21      THE COURT:  Well, I'm talking about at sentencing.

22      MR. COHEN:  It wasn't -- it wasn't a sentencing

23  letter, but it was a transcript of --

24      THE COURT:  Okay.  I didn't see that.  I just was --

25  I received lots of letters --

1    MR. COHEN:  Right.

2    THE COURT:  -- at sentencing.  I'm just trying to

3  figure out if he -- if his was one of them.

4    MR. COHEN:  You did see -- you did see it at

5  sentencing because we submitted four transcripts of the

6  interviews --

7    THE COURT:  I -- okay.

8    MR. COHEN:  -- of -- of employees at sentencing

9  (indiscernible - away from microphone).

10    THE COURT:  Okay.  So maybe Mr. Barkeley can look at

11  that transcript, see what he thinks about submitting it into

12  evidence as is, have it read as a -- as an exhibit, and solve

13  the problem.  But in the meantime, whatever I can do, issue a

14  warrant, I will, but I'm concerned if this gentleman is in

15  Florida today, which is Tuesday, by the time that a Marshal

16  tracks him down, arrests him, and tries to fly him back here,

17  the trial will be long over.

18    So what we're trying to do is either get a

19  stipulation from the Government or maybe a telephonic -- that

20  would be more reasonable.  And the question  -- again, the

21  question is relevancy.  So I'd like Mr. Barkeley to have the

22  evening to look at the transcript, look at the proffered

23  testimony, and then tell me what the Government's position is

24  because I can't remember -- I remember now having seen it, but

25  I can't remember who said what, that type of thing.

1         MR. COHEN:  All right.

2         THE COURT:  I don't remember anything that specific

3  as what you just set forth in your offer of proof.

4         MR. COHEN:  Well, I think the course -- the course I

5  would generally -- is -- or as a general subject area.  I'm not

6  reading from -- I don't have it in front of me --

7         THE COURT:  I understand.

8         MR. COHEN:  -- at this -- at this point, but

9  generally, that's the subject area.  As far as -- again, I --

10 it's late in the day and this -- I -- I just want the Court to

11 be clear that we're not disputing the proceeds theory, we're

12 disputing the facilitation theory, as I said earlier.

13        THE COURT:  I understand that.

14        MR. COHEN:  We're not trying to put in evidence on

15 that.

16        THE COURT:  I understand that.  I listened to your

17 opening statements, both of yours.

18        MR. COHEN:  And -- but in any event, I was hoping

19 that perhaps we could address anything further tomorrow morning

20 because I started to look through the Court's instructions.

21 I'm not prepared to address that quite yet.

22        THE COURT:  I'm not surprised.  I wouldn't expect you

23 to be.  You've been busy doing other things, right?

24        MR. COHEN:  Yes, Your Honor.

25        THE COURT:  'Kay.  Same with Mr. Barkeley, so I

1  wouldn't -- you know, if we could come in here at 8:15, we'll

2  take a few minutes early in the morning to talk about them.

3  We're not going to get too far, but at least you can alert me

4  as to your concerns, Government can alert me as to the

5  Government's concerns, and I can be kind of working with them.

6         So we'll -- we'll be -- we will meet at 8:15, we'll

7  bring the jurors in at 8:30, give you a few minutes to kind of

8  alert and focus me on your concerns.  At least you have a

9  packet to read.

10        MR. COHEN:  No, no.  I wasn't -- I wasn't complaining

11 about the fact that I had it, I was just --

12        THE COURT:  I know you're not complaining.

13        MR. COHEN:  -- saying that -- that I was hoping for

14 some time to address it.

15        THE COURT:  You got -- you have some.  You've got all

16 night.  Mr. Barkeley, what do you need?

17        MR. BARKELEY:  Just two matters possible for

18 germination overnight, Your Honor, along with the ones you've

19 given us.

20        THE COURT:  You have some more instructions?

21        MR. BARKELEY:  I do.  I corrected them to the effect

22 of what I said this morning, that we're only pursuing

23 facilitation and only on count one --

24        THE COURT:  Are those filed or do you want to hand

25 them to me?

1    MR. BARKELEY: They are filed and I have a copy as

2 well here for the Court and for counsel.

3    THE COURT: That would be great. And you probably

4 have -- you probably haven't had a chance to review what I've

5 done either, have you?

6    MR. BARKELEY: I have not (indiscernible - away from

7 microphone).

8    THE COURT: So maybe I have all this in there. It's

9 pretty --

10    MR. BARKELEY: (Indiscernible - away from microphone)

11    THE COURT: Maybe I've already included these in --

12 in my proposed ones.

13    MR. BARKELEY: These are identicals of the ones

14 submitted earlier by the Government except for correcting them

15 to fit the single theory of facilitation, and made corrections

16 in the proposed special verdict forms because I saw the

17 potential for some confusion if the Government didn't include

18 the language of substantial connection, so I added that, that

19 the jury has to find two things, there was facilitation and

20 there was a substantial connection. I added that to each of

21 the five verdict forms.

22    THE COURT: 'Kay.

23    MR. BARKELEY: Other than that, the only change is

24 across the board, which is drop count two and just go with

25 count one.

1        THE COURT:  I don't know what you mean when you say

2   that.

3        MR. BARKELEY:  Oh, here's what I mean, Your Honor.

4   In the Indictment, the Government alleged two theories of

5   forfeiture and it pointed to a conviction of either count one

6   or two as a basis for doing the forfeiture --

7        THE COURT:  Okay.

8        MR. BARKELEY:  -- because you need a predicate drug

9   conviction.

10        THE COURT:  Right.  And now you just want -- and

11   now --

12        MR. BARKELEY:  Now it's just count one.

13        THE COURT:  And you may need to correct what I've

14   done there.  I can't remember -- I probably used one and two --

15        MR. BARKELEY:  Yes.

16        THE COURT:  -- in my proposal.

17        MR. BARKELEY:  Yes.  So it should --

18        THE COURT:  Well, you've got all night.  You've got

19   what I -- what I think is a reasonable starting place.  It has

20   some of this probably in it, probably doesn't have all of it.

21        MR. BARKELEY:  Okay.

22        THE COURT:  And it needs to have some corrections

23   because of changes that have occurred since I got those done.

24   I need to change the verdict form apparently.  And I think

25   we're on the right track.

1         MR. BARKELEY:  Yes, sir.

2         THE COURT:  What else?

3         MR. BARKELEY:  The second matter is -- and if you

4    have any guidance at this time, Your Honor, I'm sure the

5    parties would appreciate it.  The Government does not intend to

6    introduce every exhibit that was introduced in the original

7    criminal trial.  If I may approach, I have a copy of the

8    Court's exhibit list from the trial --

9         THE COURT:  Okay.

10        MR. BARKELEY:  -- the one of record in the case

11   that's filed.

12        THE COURT:  Okay.

13        MR. BARKELEY:  All right.  So this is what I provided

14   a copy of to counsel, and then we were able to agree, based on

15   Exhibits 1 through 9, for example, Your Honor --

16        THE COURT:  Right.

17        MR. BARKELEY:  -- Trooper Wall could testify about

18   those and they were already admitted.

19        THE COURT:  Right.

20        MR. BARKELEY:  Once you go beyond nine, you'll see

21   there are items, for example, which are controlled substances

22   themselves --

23        THE COURT:  Right.

24        MR. BARKELEY:  -- the cocaine wipe, the cocaine from

25   the safe, the packaging material, more cocaine, the plane

1  guard.  Your Honor, this again is -- the Government is serious

2  about this.  These are not relevant to the issue of forfeiture

3  and, therefore, the Government's position is that it is not

4  going to attempt to have witnesses whose transcripts talk about

5  these exhibits discuss the exhibits if they're not relevant to

6  forfeiture.

7          Obviously, based on the Government's opening, this

8  jury knows that the Government's entire forfeiture case is

9  based on what was inside that safe.  That's essentially it.

10          THE COURT:  'Kay.

11          MR. BARKELEY:  And so I feel the Government is not

12  obliged to introduce evidence of all of these other fourteen

13  guns the Government went after in the criminal case, nor is it

14  obliged to introduce sandwich bags and all the other stuff that

15  goes to the drug convictions.  I think the Government's

16  essentially done with exhibits is what I'm saying, Your Honor,

17  but counsel is telling me I have to get them in, and I do not

18  have to get them in, I don't believe.

19          THE COURT:  Well, he --

20          MR. BARKELEY:  And since we're starting tomorrow, if

21  you have guidance on that front, I'd appreciate it, because I

22  don't intend to use any more exhibits tomorrow with those

23  witnesses.

24          THE COURT:  'Kay.  Mr. Cohen?

25          MR. COHEN:  Your Honor, I'm not completely

1    understanding what Mr. Barkeley is saying.

2              THE COURT:  He's saying that he's exhibit -- he has

3    submitted all the exhibits he intends to submit.

4              MR. COHEN:  Well, we're going to be reading a

5    transcript and the transcript is going to refer to exhibits.

6    It's going to say whatever those exhibits are.

7              MR. BARKELEY:  Yes, but --

8              MR. COHEN:  The jury's going to be --

9              MR. BARKELEY:  What it'll say is this -- is this the

10   sack with the cocaine, Your Honor, but --

11             THE COURT:  Wait.  Let him finish his --

12             MR. BARKELEY:  I'm sorry.

13             THE COURT:  -- sentence.

14             MR. COHEN:  The jury's going to be listening to this

15   and there's going to be discussion of these various exhibits,

16   like we had today.  The jurors are going to be wondering what

17   the witnesses are talking about.  If there's an exhibit that

18   the witnesses are talking about while we're reading the

19   testimony, the jury should be able to see the exhibit that

20   we're talking about.

21             The exhibits -- what we're doing is we're presenting

22   -- this is the Government's -- remember, I -- that's not our

23   view.  We think the Government should have started from -- a

24   new trial.  What they're doing is over our objection, but the

25   Government's view was we are going to put the jury in the same

1    position they were in at the point of this -- of the question

2    waiver except for they're not being able to see the demeanor of

3    perhaps -- of certain witnesses. Other than that, we're

4    reading the trial in. This was their suggestion.

5                What I say was it's all hearsay. They say --

6                THE COURT: Don't recount for me, I just want to

7    hear --

8                MR. COHEN: So now they're going further and they're

9    saying we're not going to put it all in, we're going to put in

10   part of it, and the jury's going to be wondering what are we

11   referring to. So they're putting in a direct testimony, we're

12   putting in a cross, and we're discussing exhibits, then the

13   jury ought to see the exhibits.

14               Now in one case, there is -- I guess there's

15   ammunition that's been destroyed, but the Government has a

16   photograph of the ammunition. We don't have any objection to

17   that. We're not saying they have to actually have the

18   ammunition, but they should be able to see what the witnesses

19   are talking about.

20               Similarly, counsel should be able to argue at closing

21   about what the witnesses were talking about when they testified

22   when they refer to exhibits.

23               THE COURT: Is this -- are these exhibits available?

24               MR. COHEN: Yes, they are. The Government just

25   doesn't want to do it.

1      THE COURT:  No, I'm turning now -- are they

2  available?

3      MR. BARKELEY:  I'm -- Your Honor, I'm not sure.  I

4  haven't asked anybody whether the cocaine is still around, but

5  I don't know what they do with that, whether they just have to

6  destroy it and now there are just photographs of it or what.  I

7  know -- there's an appeal, so ordinarily that evidence would --

8      THE COURT:  This is all available.

9      MR. BARKELEY:  Yeah.  It's already admitted, Your

10  Honor.  Here's -- here's -- here's the problem.  What is the --

11  I would think -- although it's not my side of the case, I would

12  think it would be highly prejudicial -- I don't want to hear

13  this on appeal -- that the Government paraded twenty-three

14  ounces -- twenty-three zips of cocaine in front of these

15  people --

16      THE COURT:  Well, but they want it in.

17      MR. BARKELEY:  It's not relevant.  The Government's

18  forfeiture case is about the property.  The Government has put

19  in the exhibits that deal with the property.

20      THE COURT:  You want it in -- you want the cocaine

21  in?

22      MR. COHEN:  (Indiscernible - away from microphone) I

23  don't care whether the see the actual powder or whether --

24      THE CLERK:  Sir, microphone.

25      MR. COHEN:  I don't -- I don't care whether they see

1  the actual powder or whether -- if the discussion is the

2  exhibit is the cocaine --

3          THE COURT:  Okay.

4          MR. COHEN:  -- we're talking about baggies of

5  cocaine, am I going to insist that they go find bags of cocaine

6  and put it into the jury room?  No, I don't care about that, as

7  long as it's clear to the jury what it is.  We can explain to

8  the jury, we -- you know, bags of cocaine, we're not sending

9  them back to the jury room.  That's fine.  I -- I don't care

10  about that.

11          I was saying that -- that they should be able to see

12  what the exhibits are.  They saw a picture of the baggies of

13  cocaine.

14          THE COURT:  Right.  They got --

15          MR. COHEN:  That's efficient for us.  If that's what

16  the question is, that's the cocaine.

17          THE COURT:  Okay.  So --

18          MR. COHEN:  I'm not -- I'm not trying to force them

19  to look at the powder.  I don't care.

20          THE COURT:  Well, the jury -- you know, jurors by

21  nature are going to want to see cocaine, I would think.  I

22  mean, I don't know --

23          MR. COHEN:  And if they want to see it, that's fine

24  with us.  I'm just saying that what we've said to them in

25  opening and we're presenting to you the four witnesses the

1-249

1    other jury saw, let's present it to them.  They can see it.

2            THE COURT:  All of the exhibits are in -- are

3    observable in the photographs of --

4            MR. COHEN:  No, well, I don't know if that's -- that

5    I don't know.  I mean, I know that the cocaine is

6    (indiscernible) --

7            THE COURT:  What about the other nine guns, do you

8    want them here?

9            MR. COHEN:  I don't need the other nine guns here.

10   We didn't --

11           THE COURT:  Okay.  So, let's make --

12           MR. COHEN:  We can -- we can -- we can agree and we

13   can tell the jury this --

14           THE COURT:  Okay.  Mr. Barkeley, he's agreeing to --

15   he doesn't want the other nine guns, okay?  He does not want

16   the other nine guns.

17           MR. BARKELEY:  Well, he shouldn't be able to have

18   them, Your Honor --

19           THE COURT:  He doesn't want them.

20           MR. BARKELEY:  If the Court will remember, the

21   defense --

22           MR. COHEN:  We have (indiscernible - simultaneous

23   speakers).

24           MR. BARKELEY:  -- insisted that the Government return

25   them.

1    MR. COHEN:  We have them, we have them --

2        (Indiscernible - simultaneous speakers.)

3        THE COURT:  Okay.  You're right.

4        (Indiscernible - simultaneous speakers)

5        MR. BARKELEY:  -- subpoena the brother who picked

6    them up --

7        (Indiscernible - simultaneous speakers)

8        THE COURT:  Okay.  So we're not talking the other

9    nine guns.

10        MR. COHEN:  We can bring them to court if the --

11        THE COURT:  I don't -- nobody wants them.

12        MR. COHEN:  All I'm concerned with is that the jury

13    has a complete picture.  If they know that the -- that an

14    exhibit is a gun, they see a picture of it, that's fine.

15        THE COURT:  They've seen pictures of the guns.

16        MR. COHEN:  They've seen pictures of the guns, we

17    know what the guns are, they've seen pictures of the cocaine --

18        THE COURT:  So guns is not a problem.  Cocaine is

19    not --

20        MR. BARKELEY:  The guns are here in the courtroom

21    anyway.  We brought the guns.  If they want to actually see the

22    guns, the guns are here.

23        MR. COHEN:  Well, I think that they --

24        MR. BARKELEY:  The guns in question.

25        THE COURT:  The four.

1          MR. BARKELEY:  The four.

2          MR. COHEN:  I think they should be able to see those

3  four, sure.

4          THE COURT:  Okay.

5          MR. BARKELEY:  Yes, that's why they're here.

6          THE COURT:  Well, those guns are available.  Okay.

7  The four that are the subject of the trial are available.

8          MR. BARKELEY:  Not with the ammunition.

9          THE COURT:  Not with the ammunition.

10         MR. BARKELEY:  But there will be testimony, Your

11  Honor -- for example, this is a case in point.  The witnesses

12  are going to testify that certain guns were loaded.

13         THE COURT:  All right.

14         MR. BARKELEY:  So there are pictures that they were

15  loaded, but the ammunition is no longer here.

16         THE COURT:  Okay.

17         MR. BARKELEY:  So those exhibits -- it'll be a place

18  in the transcript where Mr. Cohen is correct, the witness will

19  be talking about ammunition, and it ain't here anymore.  The

20  Government's position is you don't have to put that on.  The

21  factual issue for forfeiture is whether the gun was loaded at

22  the time, and we have proof of that in the testimony.

23         MR. COHEN:  If the govern -- if -- if the fact is, is

24  that the exhibit and the transcript -- I -- I don't know the

25  transcript from memory, but if the exhibit in the transcript is

1  the ammunition, I'm satisfied with an instruction to the jury

2  that says, ladies and gentlemen, the ammunition at the original

3  trial is no longer available, but that was the ammunition that

4  would have that -- at that time, or what -- whatever.  I don't

5  care about that.  All I want them to -- I don't want there to

6  be some exhibit where it's discussed and they can't -- they

7  can't see it.  I don't know if it's a documentary exhibit -- I

8  don't know what exhibit we're talking about.

9            But as to the ammunition, the guns, the cocaine --

10 again, that's my position.  If the jury wants to see the

11 cocaine, it's really up to the Court what the Court wants to

12 do.  I -- if the cocaine is available and and -- and they want

13 to see it, then I have no objection to them seeing it.  All I'm

14 saying is I'm not requesting that it has to go into evidence --

15 that it has to be presented to them in evidence.  It is in

16 evidence.

17            THE COURT:  I just think we have just now gone full

18 circle.

19            MR. BARKELEY:  I agree.

20            MR. COHEN:  Well, no, I don't --

21            THE COURT:  This has been -- this has been ten

22 minutes -- what exactly do you want?

23            MR. COHEN:  Well, it's not exactly what I want, it's

24 what the Government wants.  I -- I -- I --

25            THE COURT:  Well, then I'll ask Mr. Barkeley.  What

1  exactly do you want?

2         MR. BARKELEY:  I envision in the morning, Your Honor,

3  starting with Special Agent Cohoon.  He's going to start

4  reading in the original --

5         THE COURT:  'Kay.

6         MR. BARKELEY:  -- order of trial the direct

7  examination of Johnson -- he'll be Johnson, okay?  My

8  understanding is cross will be conducted with Johnson here in

9  person at the behest of the defense's subpoena --

10         THE COURT:  Okay.  He's going to be here tomorrow at

11  8:30.

12         MR. BARKELEY:  -- the Court has said he'll come here,

13  and so we'll go through Johnson.  I don't believe --

14         THE COURT:  And -- okay, and that's the way you want

15  to do it, huh?  Just not have Johnson do the whole thing?

16         THE DEFENDANT:  Yeah.

17         MR. COHEN:  Wait, wait, wait, Jason.

18         THE COURT:  Okay.  It's up to you.  It's your call.

19         MR. BARKELEY:  Yes.

20         THE COURT:  Okay.

21         MR. BARKELEY:  Because I -- I would do it the other

22  way, Your Honor, if I knew that counsel was going to stick just

23  to the transcript, but counsel has made it clear he's not going

24  to, so --

25         MR. COHEN:  Well, I don't -- okay.  That's what I --

1    see, that's what I'm confused about.  I thought we had an

2    agreement that we're just reading all the stuff in together

3    with the exhibits.  I thought the Court ruled that I can't go

4    beyond the direct, I'm just reading the script.  I thought

5    that's what the ruling was this morning.

6              THE COURT:  That -- well, I don't know what you're

7    talking about anymore.  I know that that's what we -- that's

8    what we had asked for.  I'm not precluding you in your case

9    when it becomes your case --

10             MR. COHEN:  In my -- in my case -- in my case.

11             THE COURT:  Yeah.

12             MR. COHEN:  I'm talking about in the Government's

13   case --

14             THE COURT:  The Government's case, the Government

15   presents --

16             MR. COHEN:  -- it's my understanding the Court had --

17             THE COURT:  -- the case the way the Government wants

18   to present the case, and then you present your case the way you

19   want to present your case.

20             MR. COHEN:  Right.  And it's my understanding that

21   the Court ruled this morning that in the Government's case, I

22   cannot ask additional questions on cross beyond what Mr. Butler

23   asked at the original trial.

24             MR. BARKELEY:  See, I would waive any objection to

25   that, Your Honor, out of convenience for the witness.

1        THE COURT:  I don't remember -- I really don't

2   remember saying that, but if you --

3        MR. BARKELEY:  Yeah.  I -- I -- I -- Mr. Cohen, if --

4        THE COURT:  ·I mean, I don't remember even considering

5   that issue.

6        MR. COHEN:  I thought that that was the whole point.

7   If that wasn't the point, then I -- then I would have cross-

8   examined Sergeant Wall this afternoon.  I thought the whole

9   point was that I was limited, I couldn't cross him other than

10  -- than to read the script.  I thought that's what we were

11  doing.

12       MR. BARKELEY:  That -- that --

13       MR. COHEN:  That's what I -- that's what I think the

14  Government asked for.  I thought that's what the Court ruled

15  this morning.

16       MR. BARKELEY:  That -- that part --

17       MR. COHEN:  I -- I -- I made it clear --

18       THE COURT:  Wait, wait, wait.  Mr. Barkeley?

19       MR. BARKELEY:  Your Honor, I think that's what --

20  that's what the Court said with regard to what the Government's

21  case in chief was going to be.  I believe the Court said this

22  morning also, Mr. Cohen, is that in your case, you can put

23  Johnson up there and ask him anything you like, and I'll object

24  as I see fit based on relevance or whatever.

25       So what I'm saying to you is if he's on the stand

1    tomorrow for cross-examination, that's my understanding of

2    what's going to happen, okay?  You -- I will not object if you

3    wish -- after you complete the cross on the transcript -- to go

4    right into your case in -- in -- in direct again, okay?  He's

5    your witness, he's coming on your subpoena tomorrow, but to

6    avoid making him come back, I'm just saying you can take your

7    part of the case out of order and use Mr. Johnson to the

8    fullest tomorrow and be done with Mr. Johnson.

9              MR. COHEN:  The problem I have with that is I want

10   the record to be clear.  I want (indiscernible - away from

11   microphone) from beginning and be able to cross all the

12   Government's witnesses during the Government's case.  The

13   Government said no, the Government has to do it this way, the

14   Court agreed and said we're going to do it this way, then the

15   Court said you, Mr. Cohen, you can put on your evidence as you

16   wish in your case, but in the Government's case, you're going

17   to be limited to the script.

18             That is what I understood, that was how I -- I made

19   my opening.  I wanted to expand the cross, I would have done it

20   with Sergeant Wall this afternoon if I knew I could do that.

21             THE COURT:  Sergeant Wall is coming -- under your

22   subpoena, he's available --

23             MR. COHEN:  Right.

24             THE COURT:  -- but my view is we stick to the script

25   while we're doing the script, and it's clear now we put the

1   script down and we haven't had this -- we haven't had

2   interruptions in it, then if you want to -- if you want to go

3   beyond that, I don't mind that as long as it's clear to the

4   jury what's going on.  But I don't want the transcript to be

5   interrupted with things that are not part of the transcript.

6          MR. COHEN:  Well, if that's the case, then what I

7   will ask for is to -- to continue the cross-examination of

8   Sergeant Wall right now because that's what I would want to do

9   is to go beyond that.

10          MR. BARKELEY:  That's not your case in chief.  That's

11   the difference.  That's not your case in chief.  It's beyond

12   the scope automatically, Your Honor.  All the Government

13   elicited was what is in the transcript, that's all he's

14   entitled to cross about.

15          MR. COHEN:  I would -- I would have additional

16   questions.

17          MR. BARKELEY:  We're not doing a new criminal trial.

18   I'm sure you would.  You've asked me for Jencks material, this

19   isn't a criminal trial.

20          THE COURT:  What do you mean additional -- questions

21   about what?

22          MR. COHEN:  I would ask additional questions based

23   upon the direct that the Government -- the Government -- that

24   the Government elicited.  I thought the Court ruled I couldn't

25   do that.  If I can do that, I would -- that's what I was asking

1  for this morning.

2          THE COURT:  As far as I'm concerned, if we can get --

3  the Government presents its -- its -- this transcript, no one

4  interrupts, we do it as is.  After you've done your thing, then

5  you can cross-examine.  We can bring him back tomorrow if that

6  makes you feel better.  We'll bring him back first thing in the

7  morning and you can cross-examine if you want.  Then the second

8  witness will be Mr. Johnson, I guess.  We'll do the script

9  exactly like it is, then if you want to cross-examine and

10  direct, it's all going to mesh together --

11          MR. COHEN:  (Indiscernible - away from microphone) --

12  well, that's -- but if I ask the question of either of those

13  witnesses that goes beyond the scope, then it's going into my

14  case (indiscernible - away from microphone).

15          THE COURT:  Well, we're going to have some leeway

16  there to avoid to having to recall him.  Okay?

17          MR. BARKELEY:  Yes.  And I will be reasonable about

18  that, but I want it to be clear that according to the rules,

19  he's going to make him his witness.  It's not going to be on

20  cross.  It's his witness, he can't leave, I can object.

21          THE COURT:  Well, we'll just get -- we'll just get it

22  done.

23          MR. COHEN:  Well, this -- this is different than what

24  I thought it -- that we're going to go.

25          THE COURT:  Well, I just said you can have what you

1    wanted.  I don't know what else -- you want to keep -- keep

2    arguing the issue?

3              MR. COHEN:  I didn't bring this up, (indiscernible -

4    away from microphone).  I'm just explaining to you what I

5    thought.

6              THE COURT:  Well, I just told you what -- what you

7    can do.  You can do what you want to do.  We'll start off

8    tomorrow at 8:30 with your cross-examination -- completing your

9    cross-examination of Sergeant Wall (indiscernible), then we'll

10   go from there into Johnson.  We'll read the transcript of

11   Johnson completely, and when we're done, you can question

12   Johnson.

13             MR. COHEN:  All right.  And then -- and then I'm

14   going to have a choice of either going into direct or going

15   back (indiscernible - away from microphone).

16             THE COURT:  That's up to you.  But I'd just as soon

17   -- you know, it'd be better to get it all done at one time.

18             MR. COHEN:  I understand, I understand, but it may be

19   -- all right, let me think about it overnight.  It may be

20   preferable (indiscernible - away from microphone) because I

21   wasn't --

22             THE COURT:  You can say to me, Judge, I'm going to --

23   I have no questions at this time, but I'm going to call him

24   back in my case.

25             MR. COHEN:  All right.

1-260

1      THE COURT:  You're free to say that.

2      MR. COHEN:  All right.

3      THE COURT:  Okay.  Everyone gets a fair shot.  Don't

4  worry about it.  All right?  Mr. Barkeley, anything else?

5      MR. COHEN:  So it's -- and -- and as far as the

6  exhibits, I think we've solved that.

7      THE COURT:  I don't know if we solved it at all.  I

8  can't imagine in a trial of this nature why you would not admit

9  -- admit the four -- you've got the four weapons in question,

10  the cocaine, and the cash.  Cash still available?

11      MR. BARKELEY:  No, Your Honor.  That was -- that

12  wasn't even available at the original trial.  That was turned

13  into a check as required by federal law --

14      THE COURT:  Okay, that's right, that's right.

15      MR. BARKELEY:  -- within three days (indiscernible).

16      THE COURT:  You're right.  I -- okay.  What was that

17  stipulation that was read into the record last time, number

18  thirty, does anybody remember what that was?  Is that relevant

19  in this trial?

20      MR. BARKELEY:  There were several stipulations, Your

21  Honor.  I don't remember what --

22      THE COURT:  There was one that was read into the

23  record, it's Exhibit Number 30.

24      MR. BARKELEY:  Oh, I believe -- I believe that was a

25  stipulation that the Ingram qualified as a machine gun under

1    federal law.

2            THE COURT:  Okay.  Well, that doesn't -- that's not

3    relevant in this case.

4            MR. BARKELEY:  No.

5            THE COURT:  So we don't -- That's a good example --

6            MR. BARKELEY:  Everyone's admitted that.

7            THE COURT:  It's not even relevant, so you wouldn't

8    do that.

9            MR. BARKELEY:  Well, it's relevant because Mr.

10   Johnson said he saw a machine gun.

11           THE COURT:  Yes, but it's not -- okay.

12           MR. COHEN:  Well, it's in -- it's going to be in the

13   transcript when we read it.

14           THE COURT:  Okay.  So it can come in.  I don't care.

15   I mean, that's a minor thing.  A stipulation that's it's a

16   machine gun.  You know, we're spending more time talking about

17   this than if we just went through this and if the items are

18   available, we submit them; if they're not available, we don't.

19   Most of the items are available --

20           MR. COHEN:  I think -- I think we should go home so

21   that we can prepare for tomorrow.

22           THE COURT:  I'm all for it.  Anything else from the

23   Government's perspective for tonight?

24           MR. BARKELEY:  Just on the exhibits, Your Honor, then

25   -- would it be acceptable then -- all the guns, and I'm

1    informed now all the ammunition, were returned to the

2    defendant's brother, so as long as that's all right, the

3    Government can just -- when it comes up in the transcript, the

4    Government will say that's been given back to the defendant's

5    brother.

6             MR. COHEN:  That's fine with us.

7             MR. BARKELEY:  Okay.

8             MR. COHEN:  And we stipulated to that.

9             MR. BARKELEY:  Okay.

10            MR. COHEN:  That's fine.

11            THE COURT:  Okay.  That's done.  Anything else?

12            MR. BARKELEY:  So that covers the --

13            MR. COHEN:  (Indiscernible) --

14            MR. BARKELEY:  -- only unavailable exhibits that I

15   know of other than we may not be able to get the cocaine.

16            MR. COHEN:  I think -- I was in -- what I would say,

17   it's been given back to the defendant, not to the defendant's

18   brother.

19            THE COURT:  To the defendant.

20            MR. COHEN:  Yeah.

21            THE COURT:  It's been returned to the defendant.

22            MR. COHEN:  Yeah.

23            MR. BARKELEY:  Well, it wasn't returned to the

24   defendant, it was returned to the defendant's brother.  The

25   defendant's a felon, he can't have guns -- he can't -- he can't

1-263

1    possess guns.  They were not given back to the defendant.

2             THE COURT:  'Kay.

3             MR. COHEN:  They were given back to his brother as

4    the agent -- in other words, they were (indiscernible - away

5    from microphone) --

6             MR. BARKELEY:  They were given to his brother,

7    period.

8             THE COURT:  They were returned to the family.

9             MR. COHEN:  -- they were -- they were returned to the

10   defendant's family, how about that?

11            THE COURT:  Okay.  It's a compromise.

12            MR. COHEN:  All right.

13            THE COURT:  I -- okay.  If this information -- it

14   should -- as much of the information that is available should

15   be -- should be available tomorrow in case it's needed.  Sounds

16   like it's unclear as to what's needed, and you need to do what

17   you can to get a-hold of that witness or Mr. Barkeley's going

18   to look at that and see if he'll stipulate as to the testimony,

19   and I think we're done for the day.  If there's anything

20   else --

21            MR. BARKELEY:  Thank you, Your Honor.

22            THE COURT:  Is there anything else?

23            MR. COHEN:  Not right now, Your Honor.

24            THE COURT:  Okay.  Have a great evening.

25            THE CLERK:  (Indiscernible.)

NoDak Rose Transcripts
721 North 19th Street
Bismarck, North Dakota  58501-4721
(701) 255-1054

1          THE COURT:  What's that?

2          THE CLERK:  8:15 tomorrow?

3          THE COURT:  8:15.  We'll be in court at 8:15.

4          THE CLERK:  This matter is adjourned.  Court stands

5   in recess until 8:15 tomorrow.

6        (Proceedings concluded at 4:59 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
**INDEX**

2

3

| | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|

4
WITNESSES FOR THE
  GOVERNMENT:

5

6
Ronald Wall          1-178    1-205
  (reading
  testimony)

7

8

9
EXHIBITS:                                          Marked    Received

10
GOVERNMENT:

11
1    Photograph (previously admitted)                      1-191
12
2    Photograph (previously admitted)                      1-191
3    Photograph (previously admitted)                      1-191
13
4    Photograph (previously admitted)                      1-191
5    Photograph (previously admitted)                      1-191
14
6    Photograph (previously admitted)                      1-191
7    Photograph (previously admitted)                      1-191
15
8    Photograph (previously admitted)                      1-191
16
9    Photograph (previously admitted)                      1-191

17

18                                                          Page

19
GOVERNMENT'S OPENING STATEMENT: Mr. Barkeley                1-153

20
DEFENDANT'S OPENING STATEMENT: Mr. Cohen                    1-165

21

22

23

24

25

1

## CERTIFICATE

2

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.

3

4

5    _D. Kathleen Stegmiller_                    _October 4, 2007_
     Signature of Approved Transcriber                    Date

6

7    D. KATHLEEN STEGMILLER
     Typed or Printed Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**NoDak Rose Transcripts**
721 North 19th Street
Bismarck, North Dakota  58501-4721
(701) 255-1054