**COPY**

RECEIVED
OCT 2 2 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 4:05-cr-00042-01-RRB |
| ) | |
| Plaintiff, ) | Fairbanks, Alaska |
| ) | Thursday, September 6, 2007 |
| vs. ) | 8:20 o'clock a.m. |
| ) | |
| JASON S. COLETTE, ) | **TRIAL BY JURY - DAY 3** |
| ) | |
| Defendant. ) | |

VOLUME III
**TRANSCRIPT OF PROCEEDINGS**

BEFORE THE HONORABLE RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JAMES BARKELEY, ESQ.
                            Assistant U.S. Attorney
                            U.S. Attorney's Office
                            222 West 7th Avenue, #9
                            Anchorage, Alaska   99513-7567
                            (907) 271-5071

For the Defendant:          DAVID J. COHEN, ESQ.
                            Cohen & Paik, LLP
                            177 Post Street, Suite 600
                            San Francisco, California 94108
                            (415) 398-3900

Court Recorder:             LYNN GROVES-KELLEY
                            U.S. District Court
                            101 12th Avenue, Room 229
                            Fairbanks, Alaska   99701
                            (907) 451-4792

```
1    Transcription Service:        NODAK ROSE TRANSCRIPTS
                                    721 North 19th Street
2                                   Bismarck, North Dakota  58501
                                    (701) 255-1054
3

4    Proceedings recorded by electronic sound recording.
     Transcript produced by transcription service.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      FAIRBANKS, ALASKA - THURSDAY, SEPTEMBER 6, 2007

2      (Call to Order of the Court at 8:20 a.m.)

3      (All parties present; defendant present)

4      (Jury not present)

5      THE CLERK:  His Honor the Court, the United States

6  District Court for the District of Alaska is now in session,

7  the Honorable Ralph R. Beistline presiding.  Please be seated.

8      THE COURT:  Good morning.

9      MR. BARKELEY:  Good morning, Your Honor.

10      THE COURT:  All ready to go?

11      MR. COHEN:  Yes, Your Honor.

12      THE COURT:  Okay.  I guess we start -- we've got

13  fifteen minutes, but -- we'll get Mr. Coe on the telephone, get

14  Mr. Johnson in here and get that over with.

15      MR. BARKELEY:  Your Honor, I think there are -- there

16  are a couple matters I just have to mention if it's all right

17  with the Court.

18      THE COURT:  Okay.  All right.

19      MR. BARKELEY:  I had a phone call early this morning

20  about six o'clock from Mr. Cohen's witness, Damon Wamsley.

21      THE COURT:  Okay.

22      MR. BARKELEY:  And I told him I can't be his

23  attorney.

24      THE COURT:  Yeah.

25      MR. BARKELEY:  Apparently he spoke with Mr. Cohen

1    last night --

2            THE COURT:  Okay.

3            MR. BARKELEY:  -- but he's concerned about the arrest

4    warrant.  He wants to resolve this situation, and requests that

5    -- I believe Mr. Cohen has his phone number.  He requested that

6    the Court call him.  I said I will relay this information to

7    the Court and if we have time before we start, the Court can

8    call him and see where we go from here.  That's about all I

9    know.

10           THE COURT:  Okay.  Mr. Cohen?

11           MR. COHEN:  Your Honor, I've decided not to call him

12   because we're trying to move through this morning --

13           THE COURT:  Well, I've got to quash that -- that

14   warrant.  I mean --

15           MR. BARKELEY:  Well, that's what he wants to talk to

16   the Court about.

17           THE COURT:  -- they're -- they're going to arrest him

18   this morning.

19           MR. COHEN:  They are?

20           THE COURT:  Oh, yes.  We're doing everything we can

21   to help you.

22           MR. COHEN:  I saw the arrest warrant in the computer

23   (indiscernible).

24           THE COURT:  We're moving on it.  Yeah, he'll be

25   arrested within the next hour or so.

1          MR. COHEN:  But looked at the case last night and I

2   -- just to save time, I think we can dispense with him.

3          THE COURT:  Well, all right.  It's your choice.

4   Which (indiscernible) --

5          MR. COHEN:  I mean, I -- the Court -- I mean, I'd

6   like to see -- and I shouldn't say I'd like to see him

7   arrested, we can arrest him, but I'm just teasing.  I'm

8   (indiscernible).

9          THE COURT:  No, I don't want to arrest him, but I

10  don't want to -- if you don't want him, we've got to quash that

11  warrant.

12         MR. COHEN:  I think we -- I think we -- we should

13  probably do that because there's two witnesses that I'm --

14         THE COURT:  Okay.

15         MR. COHEN:  -- attempting to cut out.  There's one

16  witness, however, that I would like to call whose name is Mr.

17  Avila, who has been under subpoena and he said he was going to

18  be here yesterday.  I called him, he was home last night, and

19  he's not here.  So that's -- that's the other one that I

20  actually would like to call, but --

21         THE COURT:  Okay.  Well --

22         MR. COHEN:  -- he's not here.  Hopefully he will.  I

23  instructed to have him here at nine o'clock.

24         THE COURT:  Okay.  Well, it's only 8:18.

25         MR. COHEN:  Right.  So that's the -- so I'm going to

1    call --

2              THE COURT:  Okay.  So what I'm going to do is --

3    based on your request, I'm going to quash the warrant that we

4    issued yesterday.

5              MR. COHEN:  Yes, Your Honor.

6              THE COURT:  Okay.  And that's for Damon Wamsley.

7    Okay.

8              MR. BARKELEY:  He will be relieved to hear that, I

9    think, Your Honor.  I -- I may call --

10             THE COURT:  Does he know there's a warrant out for

11   his arrest?

12             MR. COHEN:  Yes.

13             MR. BARKELEY:  Yes, he does.

14             MR. COHEN:  I told him.

15             MR. BARKELEY:  That's why I suggested he contact the

16   Court and discuss this matter rather than just stay outside the

17   process --

18             THE COURT:  Yeah.

19             MR. BARKELEY:  -- or the Court contact him, but --

20             MR. COHEN:  I told -- I told him next time he's

21   subpoenaed, to contact the person who subpoenas him.

22             THE COURT:  Right.  That's good advice.  Okay.

23             MR. BARKELEY:  But the Government may call him in

24   rebuttal.

25             THE COURT:  Okay.  Well, so what -- so -- but I still

1    should quash the warrant, right?

2         MR. BARKELEY:  Yeah, absolutely.

3         THE COURT:  Okay.  That's number one.  Next issue.

4    I've got to get going on that 'cause Florida, what, they're

5    four hours ahead of us.

6         MR. BARKELEY:  Yes.

7         THE COURT:  They're probably already -- he's probably

8    not at home anymore.

9         MR. BARKELEY:  I'd like to invoke the witness

10   exclusion rule today, Your Honor.  I think I forgot to do that

11   at the beginning of the trial.  I know there's been a sign

12   posted, but witnesses will be piling up again today, so I'm --

13   I'm invoking that.

14        THE COURT:  Okay.  Well, we've been -- we've been

15   following that as far as I can tell.

16        MR. BARKELEY:  I think so.

17        THE COURT:  Okay.  Anything else, Mr. Cohen?

18        MR. COHEN:  I don't have anything else, Your Honor.

19        THE COURT:  So you're ready to go at 8:30 then?

20        MR. COHEN:  Yes, Your Honor.

21        THE COURT:  Okay.  I'm going to go tell the Clerk to

22   try and quash that warrant, okay?  Thank you.

23        MR. BARKELEY:  Yes, Your Honor.  Thank you.

24        THE CLERK:  This matter is in brief recess.

25        (Recess at 8:24 a.m., until 8:39 a.m.)

1          (Jury not present)

2               THE CLERK:  All rise.  His Honor the Court, this

3    United States District Court is again in session.

4               THE COURT:  Okay.  Mr. Cohen, can you hear us?

5               MR. COE:  This is Charlie Coe.

6               THE COURT:  I mean, Mr. Coe.  That's right.  I've got

7    Mr. Cohen, Mr. Coe.  All right.  So Mr. Coe, can you hear us?

8               MR. COE:  Yes, Your Honor.

9               THE COURT:  Okay.  Your client's here, he's on the

10   stand.  We're going to bring the jury in, and then we'll swear

11   him in and we'll just start examination.  If you have an issue,

12   just let us know, and we'll excuse the jury, okay?

13              MR. COE:  Okay.  And my understanding is that --

14   we'll see how cross-examination goes --

15              THE COURT:  I don't think it's going to be that much

16   of a problem.

17              MR. COE:  -- whether we need to do that.  On your

18   side bars, Your Honor, if you -- just a little bit louder or

19   some --

20              THE COURT:  Okay.

21              MR. COE:  -- so I can hear.

22              THE COURT:  Okay.  All right.  We'll keep that in

23   mind.  I don't -- I doubt there will be any, but we'll see.

24   Okay.  Let's bring the jury in.

25              MR. BARKELEY:  Your Honor, for your information and

1    counsel's information, I spoke with Mr. Wamsley, he's aware

2    the warrant has been quashed or was in the process of being

3    quashed.

4            THE COURT:  It's in the process of being quashed.  We

5    -- we've done it --

6            MR. BARKELEY:  It's in the process.

7            THE COURT:  -- but who knows where it is down the

8    road.

9            MR. BARKELEY:  Yes.  I simply told him --

10           THE COURT:  Yeah.

11           MR. BARKELEY:  -- that he doesn't have to contact the

12   Court until further notice and --

13           THE COURT:  Good.

14                        (Pause)

15      (Jury in at 8:41 a.m.)

16           THE COURT:  Okay.  Well, good morning, ladies and

17   gentlemen.  How are you doing?  We're going to -- we're moving

18   right along and we're -- we've got the next witness, Mr.

19   Johnson.  Sir, if you'll stand, my Clerk will swear you in.

20           **EUGENE JOHNSON, DEFENDANT'S WITNESS, SWORN**

21           THE CLERK:  Thank you.  You may be seated.  And for

22   the record, please restate your full name.

23           THE WITNESS:  Eugene Johnson.

24           THE CLERK:  Thank you.

25           THE COURT:  Mr. Cohen.

1              MR. COHEN:  Yes.

2                          **DIRECT EXAMINATION**

3     BY MR. COHEN:

4     Q     Good morning, Mr. Johnson.

5     A     Morning.

6     Q     If I'm correct, you said that I got to do what I got to

7     do, blood is thicker than water, I have to protect my family.

8     Did you -- did you say that?

9     A     Can you refer me to what you're talking about?

10             MR. BARKELEY:  Objection.  Asked and answered.

11             THE COURT:  He can -- this is cross-examination.  A

12    little leeway -- or direct exam -- I don't know what it is --

13    it's direct and cross.

14    BY MR. COHEN:

15    Q     Sir, do you want me to refer you to a page and line?

16    A     Please.

17    Q     1-241, lines two and three.

18                          (Pause)

19    A     Yeah.  If it was in here, it was the truth then and it's

20    the truth now.

21    Q     Sorry?

22    A     If it -- if it was in here, it was the truth then and it's

23    the truth now, yeah.

24    Q     So it's the truth now that you've got to do what you've

25    got to do to protect your family, is that correct?

 1   A    Most definitely.

 2   Q    Blood is thicker than water.

 3   A    Yes.

 4   Q    So that means that you're going to do what you've got to

 5   do when it comes to being concerned about your family, is that

 6   true?

 7           MR. BARKELEY:  Objection.  Asked and answered, Your

 8   Honor.

 9           THE COURT:  Sustained.

10   BY MR. COHEN:

11   Q    Means that you've going to violate the law to protect your

12   family --

13   A    Oh, no --

14   Q    -- is that right?

15   A    When I was younger, I would do whatever I had to do, but

16   since I'm on probation now, I'm just being a family man full-

17   time parent.

18   Q    Back then, before November 28th, 2005 --

19   A    Correct.

20   Q    -- you were willing to do whatever it took, including

21   violating the law, to protect your family.

22   A    I had to do whatever I had to do.

23   Q    You, on November 28th, 2005, had that mind set, didn't

24   you?

25   A    Oh, yeah.

1  Q    You were doing, on November 28th, 2005, what you had to do

2  to protect your family, weren't you?

3            MR. BARKELEY:  Objection.  Asked and answered, Your

4  Honor.

5            THE COURT:  Well, we can't keep asking the same

6  question.  So if you -- he can -- I'll allow him to clarify it

7  if he can.  So you can answer it if you can, sir.

8  A    So you're saying on November 28th, I had to do whatever I

9  had to do, yeah.

10 BY MR. COHEN:

11 Q    That includes lying, doesn't it?

12 A    Oh, no.

13 Q    That includes lying under oath, doesn't it?

14 A    Oh, no.  Everything I have under oath is the truth.

15 Q    You were willing to rob to protect your family, weren't

16 you?

17 A    If I had to.

18 Q    You were willing to deal drugs to protect your family,

19 weren't you?

20            MR. BARKELEY:  Objection.  Leading, Your Honor.  The

21 witness can be asked what he would be willing to do or what he

22 meant, but this is direct examination.

23            THE COURT:  Overruled.  Go ahead, ask the question.

24 BY MR. COHEN:

25 Q    You were willing to deal drugs to protect your family.

1    A    Yeah, when I was younger --

2    Q    I'm not talking about --

3    A    -- I was most definitely willing to do whatever I had to

4    do.

5    Q    I'm talking about on November 28th of 2005, not today.

6    A    November 28th, two thou -- 2005, I was being raided --

7    Q    The day that --

8    A    -- I wasn't selling drugs.

9    Q    The day that you were arrested.

10   A    Right.

11   Q    You weren't selling drugs that day?

12   A    I never was arrested though.

13   Q    The day that you were -- that the search warrant was

14   executed --

15   A    Right.

16   Q    -- you weren't arrested that day?

17   A    No.

18   Q    'Kay.  You weren't selling any drugs that day.

19   A    No.

20   Q    You hadn't cleaned up your place and taken the drugs out

21   that day.

22   A    No.

23   Q    You hadn't taken the drugs out that day and given them to

24   your friend Monty.

25   A    Oh, no.

1   Q     You hadn't asked your friend Monty to store the drugs with

2   your friend Jason.

3   A     Oh, no.

4   Q     You didn't do that.

5   A     No.

6   Q     That's not why you knew that the drugs were in Jason's

7   safe, right?

8   A     I knew they were there because I seen them with him.

9   Q     You were there --

10  A     Yeah, he showed me.

11  Q     Because you had been to his house before?

12  A     Right.

13  Q     But you weren't even sure whether or not he had a

14  girlfriend.

15          MR. BARKELEY:  Objection, Your Honor.  That's not in

16  the record.  That's inconsistent with the testimony.

17          MR. COHEN:  Not -- I'm not talking about what's in

18  the record, I'm asking new questions.

19  BY MR. COHEN:

20  Q     You weren't even sure he had a girlfriend, were you?

21  A     I'm pretty sure I knew his girlfriend, yeah.

22          MR. BARKELEY:  Well, then it's beyond the scope of

23  direct and cross if this is a new area.

24          MR. COHEN:  This goes to his credibility, Your Honor.

25  That's always an --

1        THE COURT:  Okay.  Well, he said he thought he knew

2   he had a girlfriend.

3        MR. COHEN:  'Kay.

4   BY MR. COHEN:

5   Q    I'm sorry?

6   A    I believe I knew her already, yeah.

7   Q    You believe you knew her.

8   A    Yeah.

9   Q    'Kay.  But you told the magistrate during the -- under

10  oath during the application for the search warrant that you

11  weren't sure whether or not he had a girlfriend.

12  A    I believe I had said that -- they asked me was she around,

13  and I was like I'm not sure if she's around or not.

14       MR. COHEN:  That's not what happened.

15       MR. BARKELEY:  Motion to strike counsel's remark,

16  Your Honor.  It's not a question.  That's not what happened.

17  It's not evidence.

18       THE COURT:  Well, I don't -- I -- I'm not sure what

19  he said, but whatever he said is stricken.

20       MR. BARKELEY:  Thank you.

21                       (Pause)

22  BY MR. COHEN:

23  Q    You never -- you never -- you never indicated any doubt

24  when you testified before the magistrate in connection with the

25  search warrant with -- you never indicated any doubt about

1  whether Jason had a girlfriend?

2  A     I don't remember.

3             MR. BARKELEY:  Objection.  Relevance.

4             THE COURT:  Well, I'll allow him to complete this

5  line of questioning, although it's marginally relevant.

6                    (Pause - side conversation)

7  BY MR. COHEN:

8  Q     Are you going to answer the question?

9  A     Can you repeat it?

10 Q     You never indicated that you had any doubt under oath,

11 when you testified in connection with the search warrant, that

12 Mr. Colette had a girlfriend.

13 A     Man, that was a long time ago.  I'm not actually sure.  I

14 can't remember actually.

15 Q     You test --

16 A     If you have it on testimony, may I look at it?

17 Q     You testified in front of the magistrate under oath on

18 November 28th of 2005, did you not?

19 A     Yes.

20 Q     They brought you in front of the magistrate right after

21 the search warrant was executed on your house.

22 A     Right.

23 Q     When you went in front of that magistrate, you said that

24 the cocaine was in a big bag, is that right?

25 A     I'm not sure.  It's a long time ago.

1              (Pause - side conversation)

2              THE COURT:  Okay.  It looks like counsel are

3    conferring on something.  Is there confusion here?

4              MR. COHEN:  Yes.

5              MR. BARKELEY:  We're just trying to avoid some

6    foundational issues, Your Honor.

7              THE COURT:  Okay.  All right.

8                         (Pause)

9    All right.  Mr. Cohen, you just provided the witness with

10   something.  What was that?  A copy --

11   BY MR. COHEN:

12   Q   I'm asking you if the document that I show you refreshes

13   your recollection of what you said to the grand -- to the -- in

14   the application for the search warrant to the magistrate that

15   day.

16             MR. BARKELEY:  Well, I'll object to that as vague.

17   The witness has to be directed what it is that he allegedly

18   said.

19             THE COURT:  Well --

20             MR. COHEN:  We're talking about -- I'm sorry.

21             THE COURT:  -- the first issue is does the wit -- the

22   witness has been handed something.  Does he know what it is

23   he's been handed?

24             MR. COHEN:  Well, I can attempt to refresh his

25   recollection with anything, that's my first question --

1          THE COURT:  Okay.  Well --

2          MR. COHEN:  -- is whether it refreshes his

3   recollection.

4          THE COURT:  Well, does it -- does -- all right.  Go

5   ahead.  Ask him that question.

6          MR. COHEN:  All right.  I thought I was.

7   BY MR. COHEN:

8   Q    Does that refresh your recollection as to what you told

9   the magistrate under oath about whether it was in a big bag?

10                          (Pause)

11  A    It's down here, so it must be the truth, so -- I -- I

12  really don't remember that.  Like I say, it was a long time

13  ago.

14  Q    But you do remember that you gave that testimony under

15  oath to the magistrate.  You do remember that?

16  A    Like I said, if it's down here, it must be what I said.

17  Q    Okay.  I understand that.  I'm asking you another

18  question.  You do have a recollection today, don't you, that

19  you gave testimony to the magistrate under oath on November

20  28th of 2005?

21  A    Yes.

22  Q    When you gave that testimony to the magistrate under oath,

23  you told the magistrate that you thought that the cocaine --

24  you thought the cocaine was kept in a safe, is that correct?

25  A    I'm not sure.

1                          (Pause)

2    Q    You testified at the trial, didn't you, that -- you

3    testified at the trial, didn't you, that you saw the safe open

4    when you came in for the purchase, is that correct?

5    A    Where are you referring to, on what page?

6    Q    I'm not referring to -- I'm not referring to a page right

7    now.  I'm asking you.  Didn't you testify at the trial, which

8    you just read yesterday, that when you -- on more than one

9    occasion you said it, that when you came in to Mr. Colette's

10   trailer, when you went into the master bedroom, the safe was

11   open.

12              MR. BARKELEY:  Objection.  Foundation.  Facts not in

13   evidence.

14              MR. COHEN:  The question is, is did he --

15              MR. BARKELEY:  The transcript is available.  It's the

16   best evidence of what was said at trial.

17              THE COURT:  It's sustained.  We've got the

18   transcripts.  If you want to refer to a specific area, that

19   would be fine.

20                          (Pause)

21   BY MR. COHEN:

22   Q    I'm going to show you another page from that same

23   transcript that the affidavit (indiscernible - coughing in

24   background) -- or the testimony in front of the magistrate in

25   support of the search warrant, and I'm going to ask you again

1    if it refreshes your recollection as to whether what you said

2    before the search warrant was executed, what you told the

3    magistrate was I believe that there was a safe in his bedroom.

4            MR. BARKELEY:  Objection to the form of the question.

5    The question should just be asked.

6            THE COURT:  Well, I'm not sure that there is a

7    question.  He's showing him something.

8            MR. COHEN:  The question is whether line two of that

9    document that I showed him -- the question is whether line two

10   of that document that I showed him refreshes his recollection

11   as to whether he said under oath on November 28th, 2005, that

12   he believes that it was in a safe.

13           MR. BARKELEY:  Objection.  Foundation, Your Honor.

14   The recollection attempting to be refreshed here -- the failure

15   to recall that was not established.  The prior questions were

16   about what the witness testified about at trial, not before the

17   magistrate.

18           THE COURT:  Okay.  I just want to make sure it's

19   clear.  What I'm holding in hand is a transcript of the -- of

20   the testimony of the trial that he read yesterday.  What you're

21   questioning about is -- you apparently have a transcript of the

22   search warrant proceeding, and that's what you're questioning

23   him about now, is that right?

24           MR. COHEN:  Yes, Your Honor.

25           THE COURT:  And so you've asked him if he recalls

1    what he said.

2            MR. COHEN:  He said --

3            THE COURT:  He said he doesn't recall specifically,

4    and now you want to show him to refresh his recollection.

5            MR. COHEN:  That's correct, Your Honor.

6            THE COURT:  Okay.  So he can read that, and then you

7    can ask if it refreshes his recollection, and go from there.

8            MR. COHEN:  I think that that question is pending,

9    Your Honor.  I can ask again.

10           THE COURT:  Well, is he -- he's apparently reviewing

11   that to see, after having read that page, which I understand

12   now is a transcript of the search warrant proceeding.

13           MR. BARKELEY:  Your Honor, the Government's objection

14   is simply that the only question in the record, I believe, is

15   the witness has demonstrated a present inability to recall what

16   he said about this at trial, but not what he said about this at

17   the search warrant proceeding.  He should be asked first

18   whether he recalls what he said about that.

19           MR. COHEN:  Well, I thought I asked him that, but

20   I'll ask him again if that --

21           THE COURT:  Okay.  Go ahead.

22           MR. COHEN:  -- that would satisfy the Government.

23   BY MR. COHEN:

24   Q    Do you remember saying that under oath in the search

25   warrant proceeding that you didn't re -- that -- that you

1  thought it might be a safe -- you thought it was kept in a

2  safe?

3  A     I don't see that right here, what you're talking about you

4  thought.   It says I believe.   Like I said, if it's on this

5  transcript, I must have said it.   It was a long time ago, so I

6  kind of don't remember it.

7  Q     Okay.   So now having looked at that transcript, does it

8  refresh your recollection that what you said under oath that

9  day to the magistrate was, "I believe it's in his bedroom in a

10 safe"?

11 A     So if it's down here, it must be the truth.

12           MR. BARKELEY:   Your Honor, objection, relevance to --

13 to forfeiture and, you know, cumulative as to bias --

14           THE COURT:   It's --

15           MR. BARKELEY:   -- considering the trial testimony.

16           THE COURT:   Okay.

17           MR. COHEN:   Well, we -- this is has been one question

18 we've been going on for five minutes.   If the Government had

19 let me ask it --

20           THE COURT:   Well, it's a -- objection is overruled.

21 Keep going.

22           MR. COHEN:   All right.

23 BY MR. COHEN:

24 Q     And he said that -- you said, didn't you, that the -- that

25 you were promised no jail time in exchange for all of your

1  cooperation and testimony in this case?

2  A    I believe that's what happened.

3  Q    You're not in jail, are you?

4  A    No.

5  Q    You haven't been in jail at any time since November 28th,

6  2005, have you?

7  A    No.

8  Q    And you admitted to the agents, didn't you, that you had

9  been dealing in large quantities of cocaine, didn't you?

10 A    I'm not sure.  Where's that at in this testimony?

11 Q    I'm asking you right now, not where it's at, you admitted

12 that to them or didn't you?

13 A    I can't recollect.  If it's on this transcript, yeah,

14 that's the truth, that's what I said.

15 Q    Well, you were dealing in large quantities of cocaine,

16 weren't you?

17 A    I don't know about large.

18 Q    Forty-four ounces all the way up to a kilo, right?

19 A    No.

20 Q    No?

21 A    No.

22 Q    You had multiple sources of cocaine, didn't you?

23 A    Yeah, but it wasn't no kilos.  Maybe half zip, a zip,

24 nothing irregular like --

25 Q    You didn't --

1  A    The most -- the most cocaine I seen was at Jason's house.

2  Q    'Kay.  You bought -- you told Agent Cohoon that you -- you

3  told Agent Cohoon and Agent Foran, didn't you, that you bought

4  three ounces just a few days before November 28th from Mr.

5  Colette?

6  A    I'm not sure.  Like I say, it was a long time ago.  If you

7  can show me in the transcript --

8  Q    It's not -- I'm not trying to show you a transcript, I'm

9  asking your recollection.

10  A    Like I said, it was a long time ago.

11  Q    But you do have a recollection that it was just, what,

12  half --

13  A    A lot of stuff has been said since November 28th --

14  Q    I'm asking you a question --

15  A    -- 2005.

16  Q    -- right now.  I'm asking you a question right now, which

17  is what's your recollection of the amount of cocaine you sold?

18  You said it was what, half an -- half an ounce?  That's the

19  most?  That's what you're saying?

20  A    No, I didn't say that.

21  Q    Okay.  What are you saying?

22  A    When I bought cocaine from Jason, it was at least a ounce

23  at a time.

24  Q    Okay.  And you bought -- and you told them that you bought

25  three ounces that day, right?

1    A    No, I -- I'm not sure.

2    Q    Okay.  And you -- and you're saying that the most cocaine

3    you ever dealt with at one time was one ounce?  Is that your

4    testimony today?

5    A    No.  I said my usual -- what I got from Jason was maybe a

6    ounce.

7    Q    I'm asking you a different question, sir.  I'm asking you

8    that is it your testimony today that the most cocaine you ever

9    dealt with at one time was one ounce?

10   A    No.

11   Q    'Kay.  That's -- what is -- so what is the largest amount

12   you ever dealt with?

13   A    I'm not sure.

14   Q    You don't have any recollection of that.

15   A    No.

16   Q    You were dealing cocaine for years, since you were a

17   teenager, right?

18   A    Right.

19   Q    And you have no recollection of that as you sit here

20   today?

21   A    Like it fluctuates.  It's hard -- it's hard to say.  It

22   all depends, I guess.

23   Q    So -- but I -- but the bottom line is other than the one

24   ounce from Jason at a time that you remember, you have no other

25   recollection of what the quantities were today, is that true or

1  not true?

2  A     (Indiscernible.)  Like I said, I'm not sure.

3  Q     You had, in your -- in your -- in your place when the

4  search warrant was executed, more than one gun, is that true?

5  A     Believe so.

6  Q     And the authorities explained to you that based on their

7  knowledge of the cocaine that you had been dealing and the guns

8  that you had, that you were looking at up to ten years in the

9  Alaska state prison or federal charges, isn't that right?

10 A     I'm not sure.

11 Q     You have no recollection of that?

12 A     Like I said, it was a long time ago.  They were saying

13 something like that, ten maybe.

14 Q     Yeah, they were saying that and you -- you were saying to

15 yourself I've got to do something to protect my family.

16 A     Right.

17 Q     Excuse me?

18 A     Right.

19 Q     And you -- do you recall -- do you recall saying in the

20 transcript yesterday that -- that we read yesterday -- that you

21 never dealt any drugs out of your parents' house?

22 A     Can you show me what page?  Can you tell me what page?

23                        (Pause)

24 Q     I take it you're -- you're -- you don't remember anything

25 about what you read yesterday?  I'm going to have to point it

1    out every time?

2    A    Is that a problem?

3    Q    I'm asking you --

4    A    I should be able to know what you're talking about, at

5    least see where -- where you're coming from.

6                              (Pause)

7    Q    All right.  On 2-33, you talk about how your parents'

8    house was not close by your house, is that true?

9                              (Pause)

10   A    What line?

11   Q    Line twenty to twenty-two.

12   A    Okay.  Can you repeat your question?

13   Q    I'm saying do you recall either what was read yesterday or

14   do you recall independently whether you sold dope out of your

15   parents' house?

16   A    I've never sold dope out of my parents' house.

17          MR. BARKELEY:  Counsel, take a look at 221, at line

18   twenty-one -- lines twenty-one through twenty-five.

19                              (Pause)

20          MR. COHEN:  Yeah.  That's -- that's correct.  That --

21   thank you.

22   BY MR. COHEN:

23   Q    Lines twenty-one to twenty-five on page 2-21 [sic].

24   That's consistent with what you just said, right, that you

25   never sold dope out of your parents' house.

<u>Johnson - Direct</u>                                3-28

1   A    Right.

2   Q    Correct?

3   A    Correct.

4   Q    Now Agent Cohoon says under oath that he saw you go into

5   your parents' house, pick something up, and go back and do a

6   dope deal at your other place.  If he says that, would he be

7   telling the truth?

8   A    I would have to say he's incorrect.

9   Q    Say --

10  A    I never -- I never seen Agent Cohoon at my parents' house.

11  Q    I'm saying if he says he was surveiling you -- he was

12  watching you as part of his investiga --

13  A    I would say he was incorrect.

14  Q    You'd say he never saw that?

15  A    I'm not saying what he saw, but he didn't see me do that.

16  Q    Now you said that -- you said that --

17  A    I know my parents used to babysit my kid and so I'm

18  frankly going over to my family's house.

19  Q    When you -- when the search warrant was executed, it was

20  early in the morning, is that right?

21  A    Right.

22  Q    It was cold outside, is that right?

23  A    Yes.

24  Q    And you were naked, is that right?

25  A    Yes.

1   Q     Yet you said that the -- that the scale that was still

2   there was found in your -- in your pocket, do you remember

3   that?

4   A     Right.

5   Q     You said that, didn't you?

6   A     I believe so.

7   Q     You were naked though.

8   A     When they came into my house, yes, I was naked.

9   Q     And going back to the -- going back to the blood is

10  thicker than water, you say that you're on probation now and

11  you've changed, is that right?

12  A     Yeah, I'm a full-time parent.

13  Q     You're older now, is that right?

14  A     I'm a little bit older, yeah.

15  Q     That was in your younger days when you did all this stuff,

16  is that your testimony?

17  A     Yes, for the most part.  Yes, sir.

18  Q     So you -- so you didn't show the -- the blue rag of the

19  Crips gang colors yesterday to my client's brother and sister

20  in the hallway?

21  A     Oh, no, that's my -- I got it in my pocket now.  It's my

22  snot rag and sweat rag.

23  Q     Okay.  And you didn't show that to the two of them?

24  A     No.  I'm -- the whole time I had it in my hand.

25  Q     You didn't show it to them deliberately?

1   A    No, not at all.

2   Q    You didn't walk up to my client's sister yesterday and you

3   say --

4            MR. BARKELEY:  Objection.  Call the client.  There's

5   no foundation for this.

6            THE COURT:  I'm not quite sure what the question is

7   and what the point is.

8            MR. COHEN:  This is examination of his credibility.

9            THE COURT:  Well, I think he should maybe --

10           MR. COHEN:  I -- I --

11           THE COURT:  You should do it without leading.

12  BY MR. COHEN:

13  Q    Did you walk up -- did you -- did you say anything to my

14  client's sister yesterday?

15  A    It was in the hallway, and a few -- her and few of her

16  friends were out there talking, and she was like -- one of the

17  other guys said, Wendy, and she like you shouldn't say anything

18  in front of this guy, and I -- I maybe said, yeah, now I know

19  your name is Wendy, being sarcastic.  So that was it.

20  Q    So you said now I know your name.

21  A    Right.

22  Q    And after that, you showed her the blue rag, is that

23  right?

24  A    I had the rag all day yesterday, even in the courtroom.

25  The rag has nothing to do with anything.

1  Q   You also said to her at the last trial when you passed

2  her, you said you're next, is that right?

3  A   That's what she told me.

4  Q   That's what you told her.

5  A   Nuh-uh (negative).  That's what she said to me.  I didn't

6  say anything to her.  She was coming at me crazy.

7               (Pause)

8  There's no Crips in Alaska.  Shit.  I don't -- I don't remember

9  seeing Crips in Alaska.

10  Q   And you've had all kinds of arrests for violence and

11  assault, haven't you, sir?

12  A   I'm not sure.  I can't -- I don't believe so.

13       MR. BARKELEY:  Your Honor, again, objection,

14  relevance.  This isn't even going to credibility, and what does

15  it have to do with forfeiture?

16       THE COURT:  Mr. Cohen?

17       MR. COHEN:  Again, the credibility of the witness is

18  always at issue.  I don't have that many more questions, so I

19  don't think there's -- that's a different area of questioning

20  that I didn't go into before.  I'm trying to get through this.

21       THE COURT:  Well, credibility can -- you can -- you

22  can address crimes of honesty, but that's it.

23       MR. COHEN:  So any arrests for assault --

24       MR. BARKELEY:  Objection.  You're not testifying,

25  counsel.

1          MR. COHEN:  -- (indiscernible - simultaneous

2  speakers).

3          THE COURT:  Those are -- those are irrelevant.  Those

4  are irrelevant.

5          MR. COHEN:  Well, can I -- can I least make a proffer

6  for the record so I have my record as to what I wanted to

7  question him about?

8          MR. BARKELEY:  Objection to doing it in front of the

9  jury.

10      (Indiscernible - simultaneous speakers)

11          MR. COHEN:  I -- I'm -- can I --

12          THE COURT:  You'll have your opportunity, yes.

13          MR. COHEN:  -- do it at the next break?

14          THE COURT:  Yes.

15          MR. COHEN:  All right.  That's fine.

16                          (Pause)

17  BY MR. COHEN:

18  Q    Now I want to ask you a few questions about what you told

19  the agents, okay?  About what you told the agents about the gun

20  -- the Uzi that you saw, all right?

21  A    Is it in this transcript --

22  Q    I'm just going to ask you --

23  A    -- where you're referring to for I could recollect --

24  Q    I'm not re --

25  A    -- look back?

1   Q    I'm going to ask you a few questions about that.  First

2   question is when you went into the trailer a few days before

3   November 28th, 2005, there was a gun which you believed to be

4   an Uzi on the dresser, is that true?

5   A    I believe so.

6   Q    Now it's true, isn't it, that that was the first time that

7   you had seen that gun?

8   A    I'm not sure.

9   Q    And you, didn't you -- you said you were the person who

10  brought up the gun with Mr. Colette.  In other words, he didn't

11  bring up the gun with you, you said to Mr. Colette what's that.

12  A    I'm not sure.

13  Q    You don't remember telling that to Agent Cohoon, that you

14  were the one who brought it up?

15          MR. BARKELEY:  Objection, foundation.

16          THE COURT:  Overruled.

17  A    I'm not sure.

18  BY MR. COHEN:

19  Q    I'm not sure meaning you don't remember telling that to

20  Agent Cohoon?

21          MR. BARKELEY:  Objection, foundation.  Agent Cohoon

22  is -- there's no evidence that anything was said to Agent

23  Cohoon.  Is there a report you're referring to?

24  A    I'm not sure.

25          THE COURT:  He said he doesn't recall.  He's not

1    sure.

2              MR. COHEN:  I'm trying to find out what he doesn't

3    recall.  He doesn't recall ever saying it or he doesn't recall

4    saying it to Agent Cohoon or what?

5    A    I don't remember.

6    BY MR. COHEN:

7    Q    You don't remember talking to Agent Cohoon?

8    A    We talked, but I don't recall what we talked about.  Just

9    -- man, it was long time ago.

10   Q    You sat down with Agent Cohoon and Agent Foran and Trooper

11   Wall, all in a group, and you talked to all of them, didn't

12   you?

13   A    I think -- something like that.  I think Wall wasn't right

14   there when I was talking to -- to -- to the two agents.  I'm

15   not sure though.  It was a long time ago.

16   Q    Okay.  You remember talking to Cohoon and Foran before the

17   search warrant application to the magistrate, don't you?

18   A    I believe I talked to them at my house, yeah, when they

19   were there.

20   Q    As part of the search warrant --

21   A    For my house.

22   Q    Right.

23   A    When they were in my house, I remember them talking to me,

24   but I'm not sure what was said.

25   Q    'Kay.  You don't have any recollection of what was said.

1  A    It's hard to say.  It was a long time ago.

2  Q    Yeah, I'm going to ask you several questions about what

3  was said.  If you remember, fine; if you don't, fine.  Okay?

4  First question.  I already asked did you tell them that it was

5  you that pointed out the gun to Jason and said what's this?

6           MR. BARKELEY:  Objection, foundation.  There is no

7  evidence that this was said.  Counsel's repeatedly making

8  statements as though they have been made somewhere at some time

9  and asking the witness does he remember that.  It's essentially

10 testifying.

11          MR. COHEN:  It's not essentially testifying if I have

12 a good faith basis for knowing that he said that and -- and

13 I --

14          THE COURT:  Well, he said he doesn't recall saying

15 it.

16          MR. COHEN:  Okay.

17 BY MR. COHEN:

18 Q    So I'm going to ask you -- I'm going to ask you the next

19 one.  Do you recall telling Agent Cohoon that Mr. Colette told

20 you -- when you asked about the gun, he said, oh, that's my new

21 toy?  Do you remember that?

22 A    I'm not sure.  Like I said, it was a long time ago.

23 Q    Do you remember telling Agent Cohoon that Mr. Colette then

24 said, yes, I've taken that out to the range already and I've

25 shot it there.  I'm really proud of it.  Do you remember

1  telling him that?

2  A    I'm not sure.  Like I said, long time ago.  We talked, but

3  I'm not sure what was actually said.

4           THE COURT:  So I'm going to sustain the objection

5  now.  You're basically testifying.

6  BY MR. COHEN:

7  Q    All right.  So you have no recollection of what was said

8  to Agent Cohoon.

9           MR. BARKELEY:  Objection.  Asked and answered.

10          THE COURT:  Sustained.

11          MR. COHEN:  All right.  One more -- one more area,

12  Your Honor.

13                    (Pause)

14  BY MR. COHEN:

15  Q    Is -- your testimony is that you've been to Jason's

16  trailer on more than one occasion, is that correct?

17  A    Right.

18  Q    So you know what it looks like?

19  A    Yeah.

20  Q    Excuse me?

21  A    Yes.

22  Q    How many years had you been going there?

23  A    I'm not sure.  Not -- it wasn't years.  It was maybe a

24  year.

25  Q    You'd been going there on and off for a year?

1  A    Maybe, yeah.

2  Q    And also to Jason's shop?

3  A    Correct.

4  Q    Yes?  Is that right?

5  A    Right.

6  Q    And there are two sheds -- two outbuildings that are

7  adjacent to the -- let me -- before I ask that, you -- and you

8  -- when you talked to the agents and you told them the

9  information that they used for the search warrant -- when you

10  talked to the agents about that, you said -- you described the

11  property, you described you going up there to the trailer to

12  buy cocaine, is that right?

13  A    I know it was something in that nature was said, but I

14  don't know the exact words that were said.

15  Q    No, I'm not talking about the exact words, but you told

16  them that you would buy cocaine from Jason at the trailer.

17  A    Right.

18  Q    And you described it to them, is that right?

19  A    Right.

20  Q    So you know, don't you, that in describing that trailer,

21  that there are two sheds that are adjacent to the trailer on

22  either side?

23  A    I'm not sure if there was two trailers -- or two sheds on

24  the side.

25  Q    You're not sure?

1  A    I know what the trailer looks like, but I'm not sure if he

2  had two sheds outside.  I never been in his shed with him.

3  Only time I ever at Jason's house, we were in his house.

4  Q    Okay.  So when you walked up to that trailer, you're

5  saying you didn't see sheds on either side?

6  A    I remember seeing a Arctic entryway to his house, but --

7  Q    I'm sorry?

8  A    A Arctic entryway to his house.

9  Q    'Kay.

10  A    But that's not no shed.

11  Q    You don't remember seeing sheds at all?

12  A    I don't remember.

13  Q    No outbuildings, just the trailer.

14  A    I don't remember him having two sheds outside.  I don't --

15  I remember seeing his neighbor's trailer right next to it and

16  another trailer.  I don't remember seeing the sheds.  I

17  remember seeing a Arctic entryway.

18  Q    'Kay.  And you've been there on -- by your testimony on a

19  number of occasions over a year.

20  A    Right.

21  Q    Is that right?  Is that right?

22  A    I've been over there a few times, yeah.

23          MR. COHEN:  All right.  One moment, Your Honor.

24                  (Pause - side conversation)

25  BY MR. COHEN:

1   Q     All right.  Now it was -- it was the -- it was not up to a

2   year, but it was a year or two that you had been going to

3   Jason's house?

4   A     I'm not sure.  Maybe a year.

5   Q     I'm going to show you -- I'm going to show you a part of

6   that same transcript from the application for the search

7   warrant.  I'm going to ask you if it refreshes your

8   recollection about what I just asked you, okay?

9                         (Pause)

10  A     Yeah.  (Indiscernible) on this, I must have said it.

11  Q     Okay.  So does -- does -- now in looking at that, does

12  that refresh your recollection that you were --

13  A     Says for the last year or two.

14  Q     That -- that you'd been going over there, right?

15  A     If it's on here, it must be correct.  I was under oath and

16  they wrote it down.  This must be what I said.

17  Q     So if you had been going there for a year or two on a

18  number of occasions and you'd been to his shop, wouldn't you

19  have known his girlfriend and her name?

20  A     I mean, I don't remember ever seeing her at the shop.

21  Q     What about at the house on all those times?  You never saw

22  his girlfriend?  You never learned her name?

23  A     I seen her around with him in traffic or -- but --

24  Q     You never saw --

25  A     It was -- it was never relevant for me to remember her

1  name.  That -- who cares?  He has a girlfriend.

2  Q    So you didn't know her --

3  A    I'm a family man.  I don't worry about other people's

4  women.

5  Q    So you didn't know her name, you didn't know whether she

6  was his girlfriend or his wife from all the times you went over

7  there, is that your testimony?

8           MR. BARKELEY:  Objection, relevance.

9  A    It was none of my business who she was.

10          THE COURT:  And asked and answered.  Okay.

11          MR. COHEN:  I don't have any further questions, Your

12  Honor.

13          THE COURT:  All right.  Cross-examination?

14                    (Pause)

15          MR. BARKELEY:  Your Honor, if I could have a little

16  bit of leeway, I'm not sure myself whether this is cross or --

17  or direct, but the witness is here.

18                 **CROSS-EXAMINATION**

19  BY MR. BARKELEY:

20  Q    Good morning again, sir.

21  A    Good morning.

22  Q    First, do you recall being asked a question about some

23  kind of an exchange out in the hall yesterday with somebody

24  named Wendy?  Do you recall this coming up just during the

25  examination --