1  break for lunch and we could do it (indiscernible - away from

2  microphone).

3       THE COURT:  Well, go -- okay.

4            (Pause - side conversation)

5       MR. COHEN:  They're not?  They're not here, Your

6  Honor, so I believe that we should break for lunch and put on

7  the -- the expert witness because we're not going to be able to

8  ask him more than a few questions, and then -- and then the gov

9  -- I'll ask the questions, I'm sure after a little bit of a

10  break, I'll be able to ask more quickly.  The Government will

11  cross-examine, hopefully we'll be done with that witness --

12  we'll get Mr. Avila here, I hope, that should be rather

13  short --

14       THE COURT:  We still might -- we might be able to do

15  closing statements late -- later in the afternoon.

16       MR. COHEN:  Your Honor, I'm -- it's -- I'm all for

17  it.

18       THE COURT:  Okay.

19       MR. BARKELEY:  I believe so.  The Government might

20  have one rebuttal witness.  It just depends on the rest of the

21  presentation.

22       THE COURT:  Okay.  So trying to figure out how to do

23  this because I have a hearing at 1:30, it's going to take about

24  three minutes, five minutes.  Ms. Haden, can that hearing be at

25  one?

1          MS. HADEN:  Excuse me, Your Honor?

2          THE COURT:  Can we do your hearing at one o'clock

3    instead of 1:30, you think, if they have the people over here?

4          MS. HADEN:  Your Honor, if you're talking about the

5    detention hearing or the (indiscernible - away from

6    microphone), that's not my hearing.

7          THE COURT:  Okay.  But isn't there a final pretrial

8    conference?

9          MS. HADEN:  I'm here for the final pretrial

10   conference.  I'm -- I'm good at one o'clock, but you have two

11   other attorneys.

12         THE COURT:  Okay.  I'll see what I can do.  Thank

13   you.  How are you doing?  What do you want to do?  You're ready

14   to eat?  Okay.  So we'll take a lunch break.  I'm trying to

15   figure out when to have you come back, and I'm thinking let's

16   just have you come back at -- I have a hearing at 1:15, but

17   it's going to be a very short hearing, so why don't you come

18   back at 1:15, and we'll get the -- I'll try -- and we'll just

19   see what we can do, okay?  And that'll give counsel a chance to

20   get your -- all your witnesses ready to go.  I think my

21   hearing's at 1:15.  Isn't it 1:15?

22         THE CLERK:  Yes.

23         THE COURT:  Okay.  All right, good.  So you're fine.

24   We'll see you at 1:15.

25         MR. COHEN:  You mean -- you mean 1:30 or --

1          THE COURT:  No, I want them back at 1:15 --

2          MR. COHEN:  Oh, okay.

3          THE COURT:  -- 'cause I want to try to do the other

4   one early.

5          MR. COHEN:  Okay.

6                       (Pause)

7       (Jury out at 11:56 a.m.)

8          THE COURT:  So I'm just going to try to do my 1:15

9   hearing at one o'clock.  We'll have Carolyn do some phone

10  calls.  That doesn't matter to you, does it?

11         MR. COHEN:  No.

12         THE COURT:  You're fine with that?  So it's just a

13  matter of getting the other two attorneys.  Okay.  So counsel,

14  be ready to go at 1:15, okay?

15         MR. COHEN:  That's not --

16         THE COURT:  I have another hearing in here that we'll

17  try to do at one (indiscernible).

18         MR. COHEN:  All right.  That's fine.

19         THE COURT:  So you need to get your witnesses ready

20  to go so that we can -- we'll get right on it.

21         MR. COHEN:  Well, I've -- the expert witness is

22  sitting here.  I mean, we're ready to go with him --

23         THE COURT:  Okay.

24         MR. COHEN:  -- that's not a problem.  The only issue

25  -- the only witness that I'm talking about is this one

1  gentleman, Mr. Avila, who we're trying to get in.  Now if we

2  can't get him in then, we're going to keep trying to get him

3  in --

4        THE COURT:  Well, what happened?  I thought he --

5        MR. COHEN:  -- and put the expert on.

6        THE COURT:  -- you talked to him last night?

7        MR. COHEN:  I did.  Well, we talk -- I've spoken to

8  him personally and my office has spoken to him on several

9  occasions.  He's committed to coming in here.  He hasn't been

10 here.

11        THE COURT:  Maybe he's gone to the other courthouse.

12        MR. COHEN:  I don't know what he did.  I left a

13 message last night, we left a message this morning, we know

14 where he lives, so we're trying to get him in here.

15        THE COURT:  Okay.  Maybe he went to the state

16 courthouse, I don't know.

17        MR. COHEN:  I don't know -- I don't know where --

18        THE COURT:  But you chased him down, you know where

19 he lives and have him ready to go and it'd be nice if he could

20 go at 1:15 and get him in and out.

21        MR. COHEN:  We're doing everything we can to try to

22 do it.

23        THE COURT:  Okay.  Mr. Barkeley?

24        MR. BARKELEY:  Just looking ahead, Your Honor, the

25 Government would request that it be given an opportunity very

1    briefly to be heard about the scope of the expert witness'

2    testimony.  That's a sig --

3                MR. COHEN:  Oh, I --

4                MR. BARKELEY:  -- that's a significant witness and I

5    -- I --

6                THE COURT:  Okay, I'm listening.

7                MR. BARKELEY:  -- I've got a legal argument I need to

8    make.

9                THE COURT:  I'm listening.

10               MR. COHEN:  I'm sorry.  I just -- just before we get

11   to that, I'm -- as far as Agent Foran is concerned, I'm going

12   to need to call him based upon this one exhibit to try to get

13   in the one exhibit --

14               THE COURT:  The checks.

15               MR. COHEN:  -- the checks.  I think that that's --

16               THE COURT:  That's two questions, right.

17               MR. COHEN:  It should be.  I think he's going to

18   admit those are the ones and we're going to be done.  So that's

19   the only other witness --

20               THE COURT:  Well, if -- if you want to show him the

21   checks and if he's going to do that, then they might stipulate.

22               MR. COHEN:  Well, I've asked.  I don't think so.

23               THE COURT:  Well, you've got to --

24               MR. BARKELEY:  Did you show him the exhibit though?

25               MR. COHEN:  I haven't -- when Foran came in, he said

1  I'm available today and he just let the Government know if you

2  need me.

3        THE COURT:  Well, you can talk about that.  You might

4  resolve that without -- I don't -- doesn't matter to me.

5        MR. COHEN:  Right.

6        THE COURT:  Okay.  That issue, okay.

7        MR. COHEN:  All right.

8        THE COURT:  Next issue.

9        MR. BARKELEY:  The next issue is, Your Honor, with

10  regard to the expert witness, I'm just making sure --

11        THE COURT:  He's not here.  Okay.

12        MR. BARKELEY:  Okay.  The Government believes that

13  this witness, while he might be qualified as an expert and

14  won't be opposed in terms of accounting expertise, he's really

15  sort of, I think, prepared to give an opinion on the ultimate

16  issue of the Government's legal theory; that is, that I think

17  counsel intends to argue that based on the -- I don't what

18  he'll actually testify to, but based on the report that we've

19  been given, which itself is inadmissible, he's going to say

20  that this cash didn't -- it was facilitating a business, it

21  wasn't facilitating cocaine trafficking.  And I don't -- I

22  don't think under the rules, 701 and following, he can say

23  that.

24        THE COURT:  I think he can say that this cash is

25  consistent with a business practice.  He can't make -- I don't

1   think he can give --

2            MR. BARKELEY:  Yeah.

3            THE COURT:  -- the ultimate opinion --

4            MR. COHEN:  Well, I --

5            THE COURT:  -- but he can give opinion that isn't --

6   isn't it true that this is consistent with?  He can give his

7   opinion about that, but he can't testi -- he can't take the

8   role of the jury and say I know that this cash was a result of

9   the business and not the result of cocaine distribution.

10            MR. BARKELEY:  Or the -- or the converse, this did

11   not facilitate drug trafficking.

12            MR. COHEN:  Well, Your Honor, I -- I --

13            THE COURT:  Unless he was there -- unless he -- I

14   don't know anything about his foundation.

15            MR. COHEN:  Well, he -- no, he's not going to say

16   that, he's not going to say that.  He's going to say -- he's

17   not going to say he was there and he knows what happened.  He's

18   going to say based upon all this -- all this analysis that I've

19   done, it's consistent -- it's consistent and plausible that

20   this cash came --

21            THE COURT:  Okay.

22            MR. COHEN:  -- it was related to the business.

23            THE COURT:  Okay.

24            MR. COHEN:  That's what he's going to say.  But I --

25   but I also think that, you know, whether he uses the word

1  facilitate or not, I don't know, but under Rule 704(a), the

2  rules says:

3      "Except as provided in subdivision (b), testimony in

4      the form of an opinion or an inference otherwise

5      admissible is not objectionable because it embraces

6      an ultimate issue to be decided by the trier of

7      fact."

8      THE COURT:  I'm just saying that he can testify that

9  it's consistent with this business practice.  He can't say,

10  unless he was there observing it, that it was not obtained from

11  cocaine sales.

12      MR. COHEN:  Of course he can't say that.  He's not

13  going to say that.  He's going to say that --

14      THE COURT:  Because it could be consistent with a

15  business, it could be consistent with cocaine sales.

16      MR. COHEN:  He's going to say that.  He's going to

17  say that on cross-examination.  He's going to say I wasn't

18  there but based on everything I've looked at, it's entirely

19  reasonable to believe that this is what happened.  In fact,

20  it's a plausible explanation for it.  Do I know what happened?

21  I wasn't there.  Of course, he's going to say that.  How could

22  he say anything (indiscernible)?

23      THE COURT:  Okay.  Well --

24      MR. BARKELEY:  One last point, Your Honor.  This is

25  what we're really in the weeds on the jury instructions and the

1    issue, remember, of commit or intend to -- to facilitate?

2              THE COURT:  Yes.

3              MR. BARKELEY:  The intent issue.  The same rule, 704,

4    that counsel cited, says even though the opinion has been

5    liberalized since the old days and you can embrace the ultimate

6    issue, you can't comment on the defendant's intent.

7              MR. COHEN:  That's in -- that -- it says --

8              MR. BARKELEY:  It's a mens rea and there's an intent

9    requirement in there.  The gov --

10             THE COURT:  He can't -- how can he possibly know --

11             MR. BARKELEY:  -- the Government is arguing --

12             THE COURT:  -- his intent?

13             MR. COHEN:  No, there's no intent requirement here.

14   This -- as the Government has argued repeatedly, the only issue

15   here is nexus.  It has nothing to do with Mr. Colette's intent.

16             THE COURT:  He cannot comment about the intent.  It

17   doesn't seem like it's necessary to comment --

18             MR. COHEN:  We're not -- we're not talking about

19   intent.

20             MR. BARKELEY:  Yes, we are.

21             MR. COHEN:  We're talking about nexus.

22             MR. BARKELEY:  The legal theory relied upon by the

23   Government, and I'm going to argue in closing, is that cash --

24   this gentleman intended that that cash --

25             THE COURT:  But you're fine.  You can argue that.

1      MR. BARKELEY:  -- was used in drug dealing.

2      THE COURT:  You can argue that.

3      MR. BARKELEY:  That's what the statute says.

4      THE COURT:  And he can argue it wasn't.

5      MR. BARKELEY:  It says --

6      MR. COHEN:  Well, but that's -- that's --

7      MR. BARKELEY:  -- property used or intended to be

8  used in drug dealing.

9      MR. COHEN:  Well, if that's his -- if that's his

10 argument, it's an improper argument because he has to show a

11 nexus between the cash and this crime of conviction, count one.

12     THE COURT:  True.

13     MR. COHEN:  He can't just say this cash was used

14 intended to be used for drug dealing in general.  He has to --

15 this whole case is about a nexus between the cash --

16     THE COURT:  Absolutely.

17     MR. COHEN:  -- and the crime.  That's what he's got

18 to argue.

19     THE COURT:  I agree.  I understand.

20     MR. COHEN:  Okay.  So I don't think the intent is the

21 issue, it's nexus.  In any case -- so I think -- I don't think

22 it's going to be a problem.  I think --

23     THE COURT:  Doesn't sound like it's going to be a

24 problem.  He cannot testi -- he -- I just -- you -- I think

25 we're arguing about something we all agree on.

1    MR. COHEN:  I don't think there's going to be a
2  problem.  I don't think he's going to say I think this is what
3  happened -- or I know this is what happened.  He's not going to
4  say that.

5    THE COURT:  Unless he was there.

6    MR. COHEN:  Of course not.  How could he say that?

7    THE COURT:  He's going to say that he's reviewed the
8  -- the business practice, blah, blah, blah, and it's his
9  opinion this kind of cash could be consistent, is consistent
10  with whatever.

11    MR. COHEN:  Well, he's going to go further than
12  saying it's consistent.  He's going to say it's a plausible
13  explanation given everything he's looked at for that
14  (indiscernible).

15    THE COURT:  It's one?  Okay.

16    MR. COHEN:  (Indiscernible - away from microphone)

17    THE COURT:  That is -- but he doesn't know what
18  happened and I imagine --

19    MR. COHEN:  Course he doesn't.

20    THE COURT:  -- cross-examination will --

21    MR. COHEN:  He's going to say -- that's what he's
22  going to say when they ask him the first question.

23    THE COURT:  Cross -- we all know what he's going to
24  say both on direct and cross it sounds like.

25    MR. COHEN:  Right.  We generally know.

3-155

1        THE COURT:  So let's just do it.  But I -- does that

2   satisfy your concern, Mr. Barkeley?

3        MR. BARKELEY:  Yes, I think so.  I mean, I'm just

4   going to watch in terms of the intent, that's all.  But -- but

5   that would be cross --

6        THE COURT:  He's not going to -- he's not going to

7   talk about intent.

8        MR. COHEN:  I don't think intent is relevant --

9        THE COURT:  So he doesn't even think it's relevant.

10        MR. BARKELEY:  Well, Your Honor, obviously, depending

11   on how the witness testifies, the intent is the whole issue.

12   If he's saying the intent of this was to make business

13   purchases --

14        THE COURT:  He's not going to say that.

15        MR. BARKELEY:  Oh, he will say that -- he will say

16   that money was being hoarded to make business purchases, and

17   the Government's argument is that money being hoarded to use in

18   drug trafficking?  That's why it was there with the dope.

19        MR. COHEN:  (Indiscernible - away from microphone)

20        THE COURT:  Well, you know -- you've seen the report,

21   but -- you know, he -- he can only testify as to his -- his

22   opinion after examining the business practices that this is

23   consistent with that.  He can't get into what the intent was

24   'cause you'd have to jump into someone's mind.

25        MR. COHEN:  He's not going to talk about what his

1    intent was.  I'll say that right now.  He's going to say it's a

2    plausible explanation, that in fact it's a reasonable --

3    perhaps even more than reasonable explanation given what he's

4    looked at that this cash was being used in connection with the

5    business.  That's what he's going to say.  He's also going to

6    say on cross-examination that I have no idea what happened

7    because I wasn't there.

8            THE COURT:  It could be -- it could -- yeah, and it

9    could be used to -- for the sale of drugs, too.

10           MR. COHEN:  He's going to say that.  He's going to

11   say I don't -- I don't think -- I think that my explanation is

12   as or more plausible than that, but I can't say that that

13   didn't happen.

14           THE COURT:  Then cross-examine him, and then we go

15   for it.

16           MR. COHEN:  Then -- and then I --

17           MR. BARKELEY:  Yes.

18           MR. COHEN:  That's what he's going to say.  He's

19   going to say -- he's going to say I think that my explanation

20   is as or more plausible than that, you guys disagree, but I

21   can't say it was used 'cause I wasn't there.

22           THE COURT:  Then the jury decides.

23           MR. COHEN:  Then the jury decides, and that's --

24   that's (indiscernible - away from microphone).

25           THE COURT:  Okay.  That issue seems to be resolved.

1    Next issue.

2            MR. COHEN:  I don't have --

3            THE COURT:  I don't know about this tape you -- that

4    you -- that you --

5            MR. BARKELEY:  Well, that's a big issue, Your Honor.

6    That's huge.

7            THE COURT:  Well, I don't know anything about it.

8            MR. BARKELEY:  You want to deal with it now?

9            THE COURT:  We're going to end the trial today.  We

10   should talk -- get it resolved.

11           MR. COHEN:  Well, one issue (indiscernible - away

12   from microphone) --

13           THE COURT:  That -- that issue is a minor issue, that

14   issue, that exhibit 'cause --

15           MR. COHEN:  That I think we're going to resolve --

16           THE COURT:  Okay.

17           MR. COHEN:  -- with Foran.  The other issue is I'm

18   marking this grand jury testimony into evidence as Defense EE,

19   okay?

20           THE COURT:  Okay.

21           MR. COHEN:  And that was the grand jury testimony

22   that I was referring to --

23           THE COURT:  'Kay.

24           MR. COHEN:  -- when I -- when I was asking him and

25   questioning him.  I just got this grand jury testimony last

1  evening.

2       THE COURT:  Okay.  Okay.

3       MR. COHEN:  And -- and -- and I would like to -- you

4  know, and I'd like to tell the Court a couple of things about

5  that.

6       MR. BARKELEY:  Me, too.

7       MR. COHEN:  I'm sure.

8       MR. BARKELEY:  I'll be listening 'cause I never heard

9  it.

10      MR. COHEN:  Okay.

11      THE COURT:  I haven't either.

12      MR. COHEN:  Okay.  Number one -- number one.  Mr.

13  Butler was given a letter that said that we're provide -- this

14  is from Mr. Schroder that said I'm providing to you all the

15  Jencks material for Agent Cohoon, okay?

16      THE COURT:  Mm-hmm (affirmative).

17      MR. COHEN:  He did not provide the grand jury

18  testimony to agent -- I'm sorry -- to Mr. Butler.

19      THE COURT:  'Kay.

20      MR. COHEN:  Mr. Butler was on the understanding,

21  therefore, based upon that letter --

22      THE COURT:  Mm-hmm (affirmative).

23      MR. COHEN:  -- that he -- that Agent Cohoon did not

24  testify in the grand jury because all his Jencks material had

25  been produced.

1          THE COURT:  'Kay.

2          MR. COHEN:  I made a motion for the grand jury -- the

3    Jencks material --

4          THE COURT:  Mm-hmm (affirmative).

5          MR. COHEN:  -- the Government has said that there's a

6    letter that they have that was given to Mr. Butler that says we

7    have produced you all of the Jencks material.

8          THE COURT:  'Kay.

9          MR. COHEN:  Now I've asked Mr. Barkeley to produce

10    that letter, he said he had it in his hotel room.  I still

11    haven't seen that letter.  I have not seen that letter in the

12    file.

13          MR. BARKELEY:  Here's the latest answer on that.

14    There was a letter that said here's -- here's the -- something

15    dealing with Special Agent Cohoon consisting of thirteen pages.

16          MR. COHEN:  Right.  That --

17          MR. BARKELEY:  So everyone thought that that was --

18    our office thought that was the grand jury testimony.

19          MR. COHEN:  That's what we -- and that's what Mr.

20    Butler thought was the grand --

21          THE COURT:  Okay.

22          MR. COHEN:  That's what Mr. Butler thought was the --

23    not the grand jury testimony, he thought that was the Jencks

24    material --

25          THE COURT:  Okay.

1         MR. COHEN:  -- for Agent Cohoon.

2         THE COURT:  All right.

3         MR. COHEN:  I moved for the grand jury testimony

4    before sentencing, I moved for it in connection with this

5    trial, I got it last night finally.

6         THE COURT:  'Kay.

7         MR. COHEN:  I -- I listened to the grand jury

8    testimony of Agent Cohoon.

9         THE COURT:  'Kay.

10        MR. COHEN:  All right?  First of all, I asked the

11   Court to order the Government, based upon Agent Cohoon's

12   testimony just now, that he has notes, he took notes of

13   interviews with Mr. Johnson -- to order the Government to order

14   Mr. Cohoon not to destroy those notes pend -- while this case

15   is still pending.

16        THE COURT:  'Kay.

17        MR. COHEN:  The reason for that is, is that during

18   the course of the trial, Mr. Butler made a motion for all

19   statements and notes in connection with Mr. Johnson to be

20   produced.  If the Court will remember, the reports in this case

21   in connection with the initial interview with Mr. Johnson on

22   November 28th, 2005, indicate that an audio tape was made of

23   the interview.  That audio tape, by the time of the trial,

24   disappeared.  The Government was unable to produce that audio

25   tape.  Mr. Butler never got that audio tape.  The Government

1  represented they would try to find the audio tape and produce

2  it if they could.   They were unable to find it and they didn't

3  produce it.

4          The Government, on Mr. Butler's motion, also

5  represented that they would look to see if there were any notes

6  of those interviews, or that interview, and produce it.   The

7  Government never produced it.

8          THE COURT:   'Kay.

9          MR. COHEN:   In fact, it was the understanding, or the

10  representation at the time of the trial, there were no notes.

11  So this is the first that we've heard that there -- there are

12  existing notes of interviews with Mr. Johnson, and I think

13  those notes, at the very least, are to be ordered preserved.   I

14  think the Court just did that.   I'm not sure.

15          THE COURT:   Okay.   No, I'm -- I'm --

16          MR. COHEN:   Oh, there's no objection -- there's no

17  objection from the Government.   I mean, this is --

18          MR. COHEN:   All right.   So -- so I --

19          THE COURT:   Okay.   So -- so the order is there's no

20  destruction of any notes that might now exist.

21          MR. COHEN:   Right.   Because I'm going to -- I'm going

22  to ask for the Government to produce those notes to me.   I'm

23  not sure if the Government's going to object or not, but at

24  least if they're -- they're preserved, we --

25          THE COURT:   If they exist.

1          MR. COHEN:  If they -- well, no, he says they exist.

2    He says he took notes.

3          MR. BARKELEY:  No, he didn't say that.  He said -- he

4    said that if the grand jury information is that he took notes,

5    then he has notes in the case file.

6          MR. COHEN:  Okay.

7          THE COURT:  So he'll check the case file and see.

8    Okay.

9          MR. COHEN:  Okay.  Well, okay, well -- well, that's

10   -- that was -- that was --

11         THE COURT:  Okay.  Take -- take -- just take a

12   breath.

13         MR. COHEN:  -- that --

14         THE COURT:  Carolyn, did you know I wanted to try to

15   start my 1:15 at one?

16         MS. BOLLMAN:  We have a confirmation from Mr.

17   Draper's office that he can be here, M.J. can be here.

18         THE COURT:  Okay.

19         MS. BOLLMAN:  I left a message with the probation

20   officer, she's already gone to lunch.

21         THE COURT:  Okay.

22         MS. BOLLMAN:  She will call back as soon as she gets

23   there --

24         THE COURT:  Okay.

25         MS. BOLLMAN:  -- and we're still trying to locate Mr.

1  Wonnell.

2           THE COURT:  Good work.

3           MS. BOLLMAN:  So we may be running like ten after.

4           THE COURT:  That's all right.  We're just trying,

5  that's all.  Good work.  Thank you.

6           MS. BOLLMAN:  Okay.

7           THE COURT:  Okay.

8           MR. COHEN:  All right.  I'm sorry.

9           THE COURT:  No, you don't have to be sorry.  Go

10 ahead.

11          MR. COHEN:  I'm saying, Your Honor, so -- so Agent

12 Cohoon said --

13          THE COURT:  Well, wait a second.  I've already

14 granted your request.

15          MR. BARKELEY:  He'll look for them today.

16          THE COURT:  He's going to look for them today.

17          MR. BARKELEY:  I mean, he'll go get the file.

18          MR. COHEN:  Well, this -- okay.  So my request is

19 first that they be preserved.  Second, that any tape that might

20 exist, I renew Mr. Butler's request that any tape that might

21 exist, A, be preserved and my -- my other request is, is that

22 the tape, if it exists, be produced and the notes if they exist

23 be produced.

24          THE COURT:  Okay.  So ordered.  Next.

25          MR. COHEN:  That they be produced.

1          THE COURT:  That they be preserved and if they can be

2    found, they be produced.

3          MR. BARKELEY:  Your Honor, I'm not -- I'm not sure

4    what this tape is --

5          THE COURT:  It's the grand jury tape.

6          MR. BARKELEY:  -- I was not involved in this --

7          MR. COHEN:  No, it's not the grand jury tape, it's

8    the tape of the interview that was conducted --

9          THE COURT:  Oh, okay.

10          MR. COHEN:  -- with -- with Eugene Johnson --

11          THE COURT:  The Johnson interview.

12          MR. COHEN:  -- on November 28th of 2005, which is --

13    which is referenced in the reports as having been made and has

14    never been produced.

15          THE COURT:  Okay.  The Johnson interview.

16          MR. COHEN:  It was a -- it was a tape made before he

17    went to the grand jury --

18          THE COURT:  If that can be --

19          MR. COHEN:  I'm sorry, before he went to the

20    magistrate and swore out the search warrant.

21          THE COURT:  I understand.  If that exists, it should

22    be preserved and produced.

23          MR. COHEN:  Okay.  Now --

24          MR. BARKELEY:  I'm sorry.  I have to ask if the

25    Government's going to be ordered to do this, who -- who

1    recorded this?  Who are you saying recorded it?  The

2    Government's practice is not to record these, so who are you

3    saying recorded this?  I do not understand.

4            THE COURT:  I don't know -- I don't know if it

5    exists, I'm just saying if it does exist --

6            MR. COHEN:  I'm saying -- I'm saying --

7            THE COURT:  -- it should --

8            MR. COHEN:  -- I'm saying that in the reports that

9    were produced by the state officers, Carson and Wall, they

10   indicate that they made tape -- they made an audio tape of

11   it --

12           THE COURT:  Sometimes the State people make tapes.

13           MR. COHEN:  -- okay?  And we've ask that it be

14   preserved and produced, and defense has been asking this for

15   quite some time.

16           THE COURT:  Okay.  Well --

17           MR. COHEN:  So --

18           THE COURT:  -- sometimes the State do -- the State

19   does that, the feds don't do that, so okay, go ahead.

20           MR. COHEN:  Okay.  We -- there's a tape that was made

21   and we -- we haven't been able to get a-hold of it --

22           MR. BARKELEY:  Why didn't you ask any of the

23   witnesses, either Johnson or Lieutenant Wall about this?

24           MR. COHEN:  Because they were already asked about it

25   at the first trial.

1          THE COURT:  Okay.  It's --

2          MR. COHEN:  I didn't want to waste time.

3          THE COURT:  Let's keep going.

4          MR. COHEN:  We still don't have the tape.  What -- he

5     -- that's what they said back then, they looked for it, they

6     couldn't find it even though it was in the report.  We have a

7     transcript of that.

8          THE COURT:  I understand.

9          MR. COHEN:  But now that -- I now know they also said

10    that about the notes.  I know the notes exist based upon Agent

11    Cohoon's testimony, I'm asking for the notes -- so is the Court

12    ordering that the notes be -- and the -- and the tape be

13    preserved and produced if they have them?

14         THE COURT:  Yes.

15         MR. COHEN:  Okay.  All right.  So now --

16         THE COURT:  To the extent they exist.  Okay.  Now

17    we're done with that.

18         MR. COHEN:  Obviously, okay.

19         THE COURT:  Okay?

20         MR. COHEN:  All right.  So then the next -- the next

21    step is this.  Because I just got this grand jury testimony,

22    and I believe that there's -- that Mr. -- that this is new

23    information -- that this grand jury testimony is new

24    information and Mr. Butler reasonably believed that he had all

25    the statements of --

1        THE COURT:  Mm-hmm (affirmative).

2        MR. COHEN:  -- of -- of Agent Cohoon --

3        THE COURT:  Mm-hmm (affirmative).

4        MR. COHEN:  -- that this is new information and it

5   bears on issues that Mr. Butler may well have wanted to bring

6   up.  I've listened to this.

7        THE COURT:  Okay.

8        MR. COHEN:  Issues -- if Mr. Butler had this --

9   this --

10       THE COURT:  Mm-hmm (affirmative).

11       MR. COHEN:  -- grand jury testimony -- and I -- I --

12  like I said, I think -- I think he was misled by that letter

13  that he received --

14       THE COURT:  Okay.

15       MR. COHEN:  -- I --

16       THE COURT:  I'm trying to get to your bottom line.

17  What are you asking?

18       MR. COHEN:  My bottom -- my bottom line is that

19  there's information here that Mr. Butler could well have used

20  not only in the trial --

21       THE COURT:  Okay.

22       MR. COHEN:  -- the original trial, but also relevant

23  to the search warrant motions because --

24       THE COURT:  Okay.

25       MR. COHEN:  -- it's additional information.

1          THE COURT:  All right.

2          MR. COHEN:  For those reasons, I am -- and because we

3   identified it and I asked Agent Cohoon about it and he said,

4   well, I don't even remember what happened back then, I have no

5   transcript, I'm trying to mark it.

6          THE COURT:  Okay.

7          MR. COHEN:  I have marked it --

8          THE COURT:  You have marked it.

9          MR. COHEN:  -- and I -- and I want it in the record,

10  and the reason for that is, is that once we have it in the

11  record, it can be referred to and we can -- we can seek the --

12  whatever appropriate relief we can seek because --

13         THE COURT:  In this trial?

14         MR. BARKELEY:  Not in this trial.

15         MR. COHEN:  I can't seek it in this trial.  Not in

16  this trial.

17         THE COURT:  Okay.  So all you're -- see, I'm just

18  trying to get to your bottom line.

19         MR. BARKELEY:  Right.

20         MR. COHEN:  You just want that in the record so that

21  you can address the other trial.

22         MR. BARKELEY:  Exactly.

23         MR. COHEN:  Well, not -- not as -- I want it in the

24  record, first of all, because this is what we referred to just

25  now in his --

1          THE COURT:  In the record, but you're -- you're not

2   asking that it become an exhibit in this trial --

3          MR. COHEN:  Well, I don't care --

4          THE COURT:  -- you just want it as a matter of record

5   so --

6          MR. COHEN:  -- I don't care if it's an exhibit in the

7   trial or whether it's in the case file -- in the Court's

8   file --

9          THE COURT:  You don't intend to talk about that in

10  your closing argument to this jury?

11         MR. COHEN:  That is -- that is correct.

12         THE COURT:  Okay.  You see, that's -- I'm just trying

13  to find out what you want.

14         MR. COHEN:  Right.  That's correct.  I just want to

15  mark it so --

16         THE COURT:  So why do we have to have a long

17  discussion about what's on that tape now if you don't want it

18  in this trial?  You just want it in the record so you have --

19  you can preserve the right to file substantive motion practice

20  in the other -- in the main case.

21         MR. COHEN:  That is correct.

22         THE COURT:  Okay.

23         MR. COHEN:  That's correct.

24         THE COURT:  That's where I thought you were going.

25  That's why you have to say --

3-170

1    MR. COHEN:  I just -- I just listened to it.  I have

2  to have it transcribed (indiscernible - away from microphone).

3    THE COURT:  Okay.  So Mr. Barkeley, what's wrong with

4  that?

5    MR. BARKELEY:  Oh, nothing, Your Honor, but it

6  doesn't belong in this forfeiture trial, and if counsel

7  wants --

8    THE COURT:  It's not come -- it's only coming in --

9    MR. BARKELEY:  He needs to file a motion in the main

10  case and -- and address this Jencks issue.  That's what he

11  needs to do.

12    THE COURT:  Okay.  Then that's fine.

13    MR. COHEN:  That's fine, but -- but I -- but in that

14  -- in that --

15    THE COURT:  You're holding it in your hand.  You can

16  file it in the other case, it'll be there.  Let's not confuse

17  our cases.  You may have a legitimate argument in the other

18  case, that's fine.  You've got it in your hand, you need to get

19  it transcribed, and once you get it transcribed, it would be

20  good if you would file the transcript.  Oh, I'm sure you will

21  attach it to any motion practice.

22    MR. COHEN:  Right.

23    THE COURT:  Okay.  That's all I wanted to find out.

24    MR. COHEN:  All right.

25    THE COURT:  Now we just took ten minutes.  That's why

1    I keep saying what's the bottom line.  Okay.  Any -- what's

2    next?

3                MR. BARKELEY:  Well, only -- only that counsel might

4    consider filing that -- that under seal --

5                MR. COHEN:  Wait, wait, wait, wait.  I'm sorry.  I'm

6    sorry.  I have another point that I'm --

7                THE COURT:  Okay.  Let's file this -- this thing that

8    you've been holding up under seal because we don't know what's

9    in it, I guess, and then --

10               MR. BARKELEY:  Well, it's grand jury testimony --

11               THE COURT:  It's grand jury testimony.  It should be

12   filed --

13               MR. BARKELEY:  -- and it's about a case unrelated to

14   -- to -- to Mr. Colette's case also, I'm told.

15               THE COURT:  Okay.  You know that, I don't know that,

16   so this --

17               MR. BARKELEY:  Counsel told me that.  I haven't even

18   heard it yet, but --

19               THE COURT:  Okay.  So file it under seal in the main

20   case -- in this -- not in the forfeiture part of the case, but

21   in the main case.

22               MR. COHEN:  All right.

23               THE COURT:  Okay.

24               MR. COHEN:  Just -- my client points out and he's

25   correct that with regard to the tape recording point that I

1    made earlier --

2            THE COURT:  Yeah.

3            MR. COHEN:  -- not only is it in the police reports,

4    but Agent Cohoon testified today that there was a tape

5    recording of the interview.

6            THE COURT:  I heard that.  So you can -- you can

7    raise that in the main case, too.

8            MR. COHEN:  Right.

9            THE COURT:  'Kay.

10            MR. COHEN:  Because it -- okay.  But -- but is it --

11    just with respect to the tape, the way we've -- and the notes,

12    the way we've left it is the Government is going to go look for

13    it again and they're going to get back to me.

14            THE COURT:  Yes.

15            MR. BARKELEY:  Yes.

16            MR. COHEN:  'Kay.  And can we have a, you know --

17    would it -- would it be fair for them to get back to me -- it

18    doesn't have to be before the end of this trial, does it?

19            THE COURT:  No, no.  It'd be good if they could do it

20    today.

21            MR. BARKELEY:  Maybe we could do it over the lunch

22    hour.

23            THE COURT:  Do it over the lunch hour.

24            MR. BARKELEY:  I mean, once we're done here, we'll go

25    look right now and --

1          THE COURT:  Yeah, but that's not -- see, we've got

2     two things going on here and -- and I want to keep -- I want to

3     finish this trial.  We're not prejudicing -- doing anything to

4     prejudice you in the main case.

5          MR. COHEN:  Right.

6          THE COURT:  So the Government can look today, if they

7     find it today, fine; if they don't, that doesn't mean they

8     shouldn't look tomorrow.  This trial may be over, they still

9     are under an obligation not to destroy any notes or any tapes,

10    and to provide what they have to you as soon as reasonably

11    possible.

12         MR. COHEN:  Okay.

13         MR. BARKELEY:  Yes.  And counsel, we could possibly

14    -- if we -- if you are willing to wait until tomorrow, once

15    this trial concludes, hopefully it will by sometime tomorrow,

16    you can come over to the ATF office, you can look for whatever

17    you want, and then when you file your motion, you can address,

18    you know, all of these things at the same time.

19         THE COURT:  There's nothing -- we're trying to be

20    open.  There's nothing to --

21         MR. BARKELEY:  Yeah.

22         THE COURT:  -- no secrets.

23         MR. COHEN:  Well, there's nothing -- I mean, this

24    particular tape that we're talking about may not be at the ATF

25    office.  It may be with -- because --

1       THE COURT:  I'm guessing it's not because --

2       MR. COHEN:  -- there's different agencies here.

3       THE COURT:  Well, if it's done by the State --

4       MR. BARKELEY:  Right.  But while -- while you're in

5   town -- I'm saying I know that Agent Cohoon will work with me

6   tomorrow and we will hook you up with those people and help

7   track down where it is.  I mean, we -- we will help you --

8       THE COURT:  Typically, my experience is the State

9   some -- frequently records things.  That doesn't always go to

10  the feds when they take over a case, so you're going to have to

11  go back, trace the -- the dots, so to speak, to find out where

12  within the State file it is, and try to get it.  I've got other

13  cases where -- and Mr. Schroder's had great effort -- gone to

14  great efforts to try to trace them down, and sometimes it's not

15  all that easy to find, so you've got to -- I suspect it's

16  within the -- if they exist, somewhere it's in the State

17  offices.

18      MR. COHEN:  Well, the Government was ordered back in

19  the original trial to locate it and produce.

20      THE COURT:  Well, I suspect the Government didn't

21  have it then.  It didn't -- it's somewhere, I'm guessing, in

22  the State offices and that's why it's going to take some

23  research to see where it is and -- my order's real clear.

24  Don't destroy any tapes or notes --

25      MR. BARKELEY:  And produce them --

1       THE COURT:  -- and produce them to the extent you

2  have them --

3       MR. BARKELEY:  -- if we find them.

4       THE COURT:  -- or can get them.  Okay?  Now let's get

5  back to this case, the forfeiture trial.  We've got -- only got

6  forty-five minutes now.  All right, you've got -- you have an

7  hour.  I only have forty-five minutes.

8       MR. BARKELEY:  Well, we never get lunch, Your Honor.

9  We --

10       THE COURT:  Oh, okay.

11       MR. BARKELEY:  I --

12       MR. COHEN:  I think we should -- the attorneys should

13  be complimented for being here early and moving --

14       THE COURT:  I think things are going great.  I think

15  it kind of got dragging a little bit here in the last couple of

16  hours, but that's -- that's the way life is, but I think you're

17  moving along real well.  I have no complaints.  I just -- I

18  think you need to go catch your breath, get ready for your one

19  -- your one -- what did you say, 1:15?  Get your witnesses

20  together and we'll keep moving forward.

21       I've got the jury instructions.  I'm going to make

22  one little more change and I'll have them after lunch for you,

23  so you'll have them in your hands before you argue.  Anything

24  else?

25       MR. COHEN:  Hopefully, that's a change to the benefit

1    of the defense.

2           THE COURT:  No, no changes basically.

3           MR. BARKELEY:  As usual.

4           THE COURT:  No, I've done them as I understand the

5    law to be.  Okay.  Thank you.

6           MR. BARKELEY:  Yes, Your Honor.  Thank you.

7           THE CLERK:  This matter is in recess until 1:15.

8        (Recess at 12:19 p.m., until 1:30 p.m.)

9        (Jury not present)

10          THE CLERK:  All rise.  This Court is again in

11   session.

12          THE COURT:  Okay.  Mr. Cohen, are you ready with your

13   next witness?

14          MR. COHEN:  Yes, Your Honor.  Your Honor, let me just

15   -- let me just bring something up quickly that might move

16   things along.  This -- this witness has a number of schedules

17   to his report --

18          THE COURT:  Okay.

19          MR. COHEN:  -- and I'm not asking to put his report

20   up, his conclusions or anything, I'm going to ask him about

21   that in testimony --

22          THE COURT:  Okay.

23          MR. COHEN:  -- but I'm wondering whether the Court

24   might consider and the Government might consider agreeing to

25   putting up the schedules so that he can explain his testimony

1   -- his schedules on the overhead.  I think that's going to move

2   things along.

3            THE COURT:  Well, I don't think there's a problem

4   with that.  You're entitled to do that.

5            MR. BARKELEY:  It won't be offered as an exhibit?

6            MR. COHEN:  I will -- I will not have offered them as

7   an exhibit --

8            THE COURT:  It's just to help explain his testimony?

9            MR. COHEN:  That's correct.  I mean, I -- I may --

10           THE COURT:  I have no problem with that.

11           MR. COHEN:  -- I may -- I may mark his report as an

12  exhibit, but I'm not going to offer the report into evidence.

13           THE COURT:  Okay.  That's fine.

14           MR. COHEN:  Just so we know what we're talking about.

15           THE COURT:  I think we all know what we're talking

16  about.

17           MR. COHEN:  All right.  And -- and if somebody can

18  help me with the overhead --

19           THE COURT:  Oh, I knew you were going to ask that

20  next question.

21           MR. COHEN:  We didn't -- well no, because --

22  because --

23           THE COURT:  I was going to say as long as you know

24  how to operate it, I have no problem.

25           MR. COHEN:  Well, no, we had -- we had a whole --

1    that whole (indiscernible - away from microphone) what happened

2    to Mr. Butler, and I thought if somebody knew how to do it --

3         THE COURT:  Well, I think it works this time.

4         (Pause - side conversation - screen descending noise)

5         THE COURT:  Okay.  Is the witness there?  You can

6    bring him in.

7         MR. COHEN:  Yes, yes, he is, Your Honor.

8              (Pause - side conversation)

9         MR. COHEN:  Let me get the witness in, Your Honor.

10        THE COURT:  Okay.  Mr. Barkeley, you had something,

11   too, or not?

12        MR. BARKELEY:  I do, Your Honor.  I just want to make

13   a record of the fact that your order to produce the notes has

14   been complied with, so --

15        THE COURT:  Good.

16        MR. BARKELEY:  -- he's got them.

17        THE COURT:  Good.

18        MR. COHEN:  Your Honor, I guess on that --

19        THE COURT:  I hope those aren't all exhibits.

20        MR. COHEN:  No, Your Honor.

21        THE COURT:  Okay.

22        MR. BARKELEY:  A through triple Z, Your Honor.

23                   (Pause)

24        MR. COHEN:  Your Honor, just -- just on that last

25   point, I -- I'd like to indicate that just within the last few

1  minutes, before the Court reconvened, Agent Cohoon gave me

2  three sets of notes --

3         THE COURT:  Okay.

4         MR. COHEN:  -- which he said that he took.  One is

5  from December 1, one is from -- which is a interview of Eugene

6  Johnson, one is from December 7th which is an interview of

7  David Sauer, and one is from December 7th, an interview of

8  apparently Mr. Wamsley, although on December the -- the second

9  -- the second December 7th notes, the interview of Wamsley

10  appears to be in the handwriting other than Agent Cohoon and

11  he's not sure why.  But anyway, he produced them all to me.  I

12  have a -- I have copies of them and -- and he's -- he stated

13  when he produced them I don't under -- I don't know why these

14  were not produced before.

15         THE COURT:  All right.  Well, they are now, so you've

16  got them for whatever you need them for --

17         MR. COHEN:  All right.

18         THE COURT:  Now we'll move on -- you've got your

19  witness, he's on the stand.  Sir, what's going to happen is

20  we're going to bring the jury in, you'll stand, we'll swear you

21  in, and then they'll ask the questions, okay?

22         THE WITNESS:  All right.

23         THE CLERK:  Now we're sure that --

24         THE COURT:  The screen works?

25         THE CLERK:  Yeah, before we get --

1    MR. BARKELEY:  No, but I'll try it.  You want me to
2  try it?

3    THE CLERK:  Yeah.

4    THE COURT:  And if you could expedite the issue
5  regarding -- counsel, if you can expedite the expertise issue
6  so we don't have to go spend all -- all day going over that.

7    MR. COHEN:  Yes, Your Honor.

8    MR. BARKELEY:  Agree -- agreed.

9    THE COURT:  Okay.  That's fine.  Now the only problem
10  is we can't get it up on the screen, is that the problem?

11                         (Pause)
12  We have to push the jury button, I know that, but I don't know
13  where the jury button is.

14    THE CLERK:  Should be on the -- on the podium.

15    THE COURT:  On the podium?

16    MR. BARKELEY:  Oh.  Oh, yeah, that's right.  That's
17  what I did before.  Thank you, everyone.  Twice I think I was
18  told before.

19    THE COURT:  Is it going?  I don't see it up there.

20    MR. BARKELEY:  No, it's not up there.  Jury button is
21  on.

22                   (Pause - side conversation)
23    MR. COHEN:  All right.  Your Honor, I'm going to --
24  I'm going to call my short witness first.

25    THE COURT:  Okay.  Tell the -- explain it to him,

1    it's not us that's throwing him out.

2            MR. COHEN:  All right.  If that's possible.

3            THE COURT:  You can leave the box.

4            MR. COHEN:  Leave the box.  I'm going to call a short

5    witness first.  We have -- we have --

6            THE COURT:  Okay.  We won't need it for this witness.

7            MR. COHEN:  Then we'll -- then we'll -- yeah --

8                    (Pause - side conversation)

9            THE CLERK:  She's on the way in, just so you --

10           THE COURT:  So you can go ahead and bring the other

11   witness in.

12           MR. COHEN:  All right.

13           THE COURT:  You don't need this for that next

14   witness, do you?

15           MR. COHEN:  Exactly.  That's -- that's what I

16   thought.

17                         (Pause)

18           THE COURT:  See, Carolyn, we've got that thing on and

19   we can't get it up on the screen.

20                    (Pause - side conversation)

21           THE COURT:  Okay.  Now, counsel, how many of you said

22   -- you remember me saying he's probably over at the other

23   courthouse?

24           MR. COHEN:  Yes, you did, Your Honor.

25           THE COURT:  'Cause that's where he was.

1    MR. COHEN:  You were right, Your Honor.

2    THE COURT:  That's what I wanted to hear.

3    MR. COHEN:  You were right.

4    THE COURT:  Okay.  Let's bring the jury in.

5    MR. COHEN:  You were right.

6                     (Pause)

7    (Jury in at 1:38 p.m.)

8    THE COURT:  We got a chair problem?

9    UNIDENTIFIED JUROR:  This chair sits very low.

10   THE COURT:  Well, maybe --

11   UNIDENTIFIED JUROR:  And because my knees are above

12   my (indiscernible - away from microphone).

13   THE COURT:  Well, why don't you -- do you want to

14   just move and sit in the back row?

15   UNIDENTIFIED JUROR:  Yeah.

16   THE COURT:  How about that for a solution?  How's

17   that -- does that -- try that on.  Is that any better?

18   UNIDENTIFIED JUROR:  Much better.

19   THE COURT:  Okay.  See all you have to do is tell us

20   and we solve the problems.  Okay, thank you.  All right, we've

21   got a witness.  Sir, if you'll stand, my Clerk here will swear

22   you in.

23   THE CLERK:  Raise your right hand.

24   **JASON AVILA, DEFENDANT'S WITNESS, SWORN**

25   THE CLERK:  Thank you.  You may be seated.  For the

1   record, could you please state your full name and spell your

2   last?

3               THE WITNESS:  Jason R. Avila, A-V-I-L-A.

4               THE CLERK:  Your city and state of residence?

5               THE WITNESS:  Fairbanks.

6               THE CLERK:  Thank you.

7               THE COURT:  Mr. Cohen.

8               MR. COHEN:  After -- thank you, Your Honor.

9                       **DIRECT EXAMINATION**

10  BY MR. COHEN:

11  Q    Good afternoon, Mr. Avila.  Do you know Jason Colette?

12  A    Just from taking my truck there for an auto-start.

13  Q    And what do you -- what do you do for a business?  What's

14  your work?

15  A    I own a paving company.

16  Q    And about what year do you remember taking your truck

17  there for an auto-start?

18  A    Two years ago, I believe, so it'd be what, '05.

19  Q    And -- and did they -- was the auto-start installed?

20  A    Yes.

21  Q    And how did that work?

22  A    That still works until today.

23  Q    Okay.  How much did it cost?

24  A    Three hundred.

25  Q    'Kay.  Did you pay that in cash or by check?

1   A    Check.

2   Q    Did you at any time -- how long were you at the -- at the

3   shop?

4   A    I went in, got a price, negotiated for the next day for it

5   to be done, he gave me a ride home.

6   Q    Okay.  Who's he?

7   A    Jason.

8   Q    And did -- were you at the shop on any other occasions?

9   A    Just when I checked the prices of the auto-start and when

10  he brought me back and --

11  Q    And were you there on any other occasions?

12  A    No.

13  Q    Okay.  And are you -- did you recommend Mr. Jason's shop

14  to anybody else?

15  A    I probably -- nothing offhand I can remember, but they did

16  a good job, truck was clean, and nothing was damaged.

17  Q    Okay.  And when you --

18  A    It still works.

19  Q    And when you went in there, was it based upon an

20  advertisement or you heard about the store, or how did you know

21  about it?

22  A    He lived a couple houses down from me and I figured give a

23  local person, you know, the business, so --

24  Q    All right.

25  A    -- that's what I went off of.