1      MR. BARKELEY:  -- you said a lot of bad stuff about

2 what was going on at Arctic Alarm --

3      THE COURT:  Right, right.

4      MR. BARKELEY:  Okay.  And he denied it.  He said I --

5 I said that you told the police officer that there was a duffle

6 bag with twenty to thirty zips in it, and he said no zips, just

7 I said there was a duffle bag.

8      THE COURT:  'Kay.

9      MR. BARKELEY:  Well, since that time, I've contacted

10 the police officer who conducted the interview and wrote that

11 report.

12      THE COURT:  'Kay.

13      MR. BARKELEY:  He indicated that because he's a state

14 law enforcement officer -- City of Fairbanks PD actually --

15 there is a recording of that interview.  I've listened to the

16 recording of the interview.  The witness said loud and clear

17 that he was told there were twenty to thirty zips in there.  In

18 other words, I believe he perjured himself.

19      THE COURT:  'Kay.

20      MR. BARKELEY:  Now I'm not saying I want to make any

21 charges on that, I'm just saying I think it's clear that what

22 he said yesterday in court was not true.

23      THE COURT:  So what do you propose to do?

24      MR. BARKELEY:  And so while I don't want to offer the

25 recording or the officer's testimony for the -- for the truth

1  of the matter about what they're talking about, it does show

2  that this jury should not believe what that gentleman said on

3  direct.

4           MR. COHEN:  Well, it --

5           THE COURT:  So it's a credibility issue.

6           MR. COHEN:  -- it -- it --

7           MR. BARKELEY:  Yes.

8           MR. COHEN:  All right.

9           MR. BARKELEY:  Strictly for impeachment is the only

10  reason I want to get it in --

11           MR. COHEN:  I --

12           MR. BARKELEY:  -- but I'm open to suggestions from

13  everybody.

14           THE COURT:  Good.

15           MR. BARKELEY:  Yep.

16           MR. COHEN:  All right.  I've got -- I've got a couple

17  of comments on it.  One is I'm not convinced -- and I -- you

18  know, the record is what it is --

19           THE COURT:  Right.

20           MR. COHEN:  -- it's my personal recollection was that

21  the question was did you know that there were twenty to thirty

22  zips in it, and not were you told that there were twenty to

23  thirty zips in it, okay?  So that's number one, and I think

24  that if there's going to be this type of impeachment, it's got

25  to be impeachment on -- obviously, they've got a statement

1  that's inconsistent, it's got to be inconsistent.  So that's
2  number one.

3       Number two.  If the question was were you told that
4  twenty to thirty zips were in a duffle bag, then I should have
5  objected to that question on the grounds of hearsay, and if I
6  didn't, then I should have, and at this point, I move to strike
7  it because it was a question eliciting inadmissible hearsay.

8       In any event, the -- the proffered impeachment is
9  proffered impeachment of a hearsay statement.  That's what it
10 is.  I think it's an improper hearsay statement, but it's
11 proffered impeachment of a hearsay statement.

12      Now the next question is this.  Generally, unless the
13 matter that we're talking about for impeachment, you're going
14 to call somebody back, another witness to impeach.  It's got to
15 be on a material matter, otherwise we have a -- otherwise we
16 have a mini-trial on a collateral matter -- or the potential of
17 a mini-trial on a collateral matter.

18      Now in this case, the -- apparently what the
19 proffered statement is that he was told by Damon Wamsley, and I
20 found out, of course, after he released Damon Wamsley as a
21 witness, that the Government found this tape, that Damon
22 Wamsley is the one who told him this.  Now that raises a
23 problem that we released Damon Wamsley as a witness, I called
24 him on the phone, I can't get him so that I can ask him the
25 question did you tell him that?

1          Now Mr. Wamsley did an interview with our

2   investigator in which he says he didn't say that.  But what I'm

3   saying is the whole issue -- it puts me in a position where I

4   have to call -- try to bring Wamsley back.  I have an interview

5   I did with him on that issue.  I didn't know the Government was

6   planning to play this tape at the point that -- you know, we

7   already served Wamsley in Florida, I released him just to

8   shorten the trial, and it puts us in a position where, you

9   know, we have a potential trial on a -- on a collateral

10  issue --

11          THE COURT:  Okay.

12          MR. COHEN:  -- a mini-trial on a collateral issue and

13  -- and for those reasons, I -- I would suggest that the first

14  -- the starting point would be let's find out what he actually

15  said on the record and let's find out what he actually said on

16  the tape.

17          THE COURT:  Well, I -- I don't think -- I'm not going

18  to let him testify.  I think it is impeachment on a collateral

19  issue, and I think that particular witness' testimony was so

20  marginal, that it really doesn't impact anything.  I mean, he

21  was a young kid that came in here and said that it seemed like

22  a good business.  If that -- you know, I -- I don't want to

23  head off on these side trips, so I just don't think that's

24  necessary or appropriate rebuttal testimony, although it may --

25  maybe he -- I thought that -- I thought that the issue of

1  impeaching him would be didn't you tell the police officer

2  this, and he said no.  But again --

3          MR. BARKELEY:  That's what I said.  Yeah, that's what

4  I asked.

5          THE COURT:  See, that would have been the area of

6  concern.

7          MR. BARKELEY:  That's the only area of impeachment,

8  and see, I could do this without the tape.  I'm only -- I'm

9  only mentioning that there is a tape because I am saying that I

10  can assert to the parties and the Court that the witness did

11  say -- say this.

12          THE COURT:  So it's only --

13          MR. BARKELEY:  But what I could -- what I could

14  elicit from the rebuttal witness, the officer who took the

15  interview, would be a lot tamer.  He doesn't have to mention

16  Damon Wamsley --

17          THE COURT:  No.  It just -- the issue is didn't --

18  'cause you -- you -- you asked him didn't you tell the police

19  officer this?

20          MR. BARKELEY:  Yes, yes, and the officer would say,

21  yeah, he told me that.

22          THE COURT:  And he said, no, I didn't tell him that.

23  So that's the only issue.

24          MR. BARKELEY:  Right.

25          THE COURT:  I don't think we -- so how significant is

1    that?

2          MR. COHEN:  I still think it's a collateral issue,

3    Your Honor.

4          THE COURT:  Well, that's what I'm wondering.  How

5    significant --

6          MR. BARKELEY:  How is lying collateral?  Is lying

7    ever collateral?

8          MR. COHEN:  Well, it's collateral when it's on a

9    minor issue, yes.

10          MR. BARKELEY:  Your Honor, here's why it's not minor.

11    In the Government's view, the reason this isn't minor is look

12    what we've got.  We've got -- we've got an assertion by the

13    Government that this guy has money and property that was being

14    used to facilitate drug dealing.  On the other hand, the

15    defense is all about the legitimate business.  And here we have

16    a witness who was point-blank asked after the -- on direct --

17    they elicit all this good stuff that it was an honest, going

18    concern, business and everything and I worked there --

19          THE COURT:  Yeah.

20          MR. BARKELEY:  -- and then I say but there was all

21    kinds of drug trafficking going on and talk about it at that

22    business.

23          MR. COHEN:  (Indiscernible - away from microphone)

24          MR. BARKELEY:  It shows that -- that the defendant

25    could easily have had drug money at his house.  It's directly

1   relevant.  This isn't collateral at all.

2           MR. COHEN:  Well, that's not what he asked him about

3   there was all this drug stuff going on at the business, he's --

4   he just said did you know -- my recollection of the question

5   was did you know that there were zips in this duffle bag that

6   was in that '63 car?  And he said, no, I didn't know anything

7   about zips.  And he said didn't you tell the cop that?  He said

8   I never told the cop anything (indiscernible - away from

9   microphone).

10          THE COURT:  Okay.  That's the --

11          MR. BARKELEY:  That's the issue.

12          THE COURT:  -- that's the issue.

13          MR. COHEN:  That's what I think.  That's why --

14          THE COURT:  Then you -- but he has a tape that says

15  he did tell the police officer that, so that's the impeachment.

16          MR. COHEN:  Well, I -- well, I think the question is,

17  is -- is -- like I say, did he say I was told that, which makes

18  it a hearsay statement, was -- did he tell him I knew that it

19  was there, I think that was the question, but --

20          MR. BARKELEY:  Doesn't make it hearsay.  The hearsay

21  can be taken piecemeal.  The hearsay is who told you and what

22  did they say.  Whether he told the officer something is not

23  hearsay.  It doesn't call for hearsay.  He lied.  He didn't

24  want to get into that because he knows he told the police that

25  there was drug dealing going on at that business in the Chevy

1    blue Impala we talked about for two days.

2          MR. COHEN:  I'm not not talk -- I'm not talking about

3    what he told the officer.  I'm saying the question being did

4    you tell the officer that you were told, that's the part I'm

5    talking about -- that you were told, that's the part I'm

6    talking about, and I -- and I -- I'm saying it raises the whole

7    issue about Wamsley, and I do think it's on a collateral issue

8    and it puts me in a position where I've got to call -- call --

9    call Wamsley back on that particular issue.

10         MR. BARKELEY:  No, you don't.  I don't have to elicit

11   anything about Wamsley.  Doesn't matter who told that witness

12   what.  I won't mention Wamsley.

13         MR. COHEN:  Well, we still have to find out what the

14   original question was, and I thought the Court was leaning in

15   the direction that it's collateral.

16         THE COURT:  Well, it seems I'm leaning in that

17   direction, but you know it seems like it's one little issue.

18   It's not all these other things about hearsay, it's whether or

19   not this witness lied about the ques -- did he tell the police

20   officer.

21         MR. BARKELEY:  In order to protect the record, Your

22   Honor, I'd rather -- I'd rather we focus on another objection

23   that I think is a better one for him.

24         THE COURT:  What's that?

25         MR. BARKELEY:  Which is 403, 404.  Now there's a real

1    chance here that if I get into this area, I suppose, that, you

2    know, they're going to decide the forfeiture based on some

3    supposed link between the business and the house, which I don't

4    think is fair because I only want to say that he lied to the

5    officer, not what he lied -- not the merits of what he lied

6    about.   I -- I think -- I'm just talking out loud here --

7    thinking out loud here, Your Honor, but I --

8            THE COURT:  Okay.  Well, I think I --

9            MR. BARKELEY:  -- I'm getting ready to go along with

10   what you were going to rule --

11           THE COURT:  And I'm going to rule that it's

12   collateral and --

13           MR. BARKELEY:  No rebuttal, right.

14           THE COURT:  -- that the --

15           MR. BARKELEY:  Because I think the prejudice --

16           THE COURT:  -- prejudice outweighs the -- the -- so

17   let's not --

18           MR. BARKELEY:  I think that's the better objection.

19           THE COURT:  Okay.

20           MR. BARKELEY:  So, okay.

21           THE COURT:  Mr. Cohen, you win.

22           MR. COHEN:  I win for the reasons the prosecutor

23   proffered.

24           THE COURT:  Well, I was leaning that way before he

25   started talking.

1          MR. COHEN:  Right.

2          MR. BARKELEY:  Okay.

3          MR. COHEN:  So I got a little bit.

4          MR. BARKELEY:  So, thank you.

5          THE COURT:  You get some credit.

6          MR. BARKELEY:  On reflection, it's a good call.

7          THE COURT:  Because we don't want to have what they

8    say, you don't want the side show to take over the -- and

9    that's what would happen.  So you've got ten minutes now to

10   (indiscernible) -- okay, let me just clear this up.  Is there a

11   stipulation with regard to the checks?  Yes or no.

12         MR. COHEN:  Yeah -- I mean --

13         MR. BARKELEY:  Yes, there is, Your Honor, yes.

14         THE COURT:  Okay.  So the checks are coming in.  I'm

15   going to allow the tax returns to come in.  What other

16   unresolved issues are there?

17      (Government's Exhibits 33-35 admitted)

18         MR. BARKELEY:  I don't think there are any.

19         MR. COHEN:  There are no --

20         THE COURT:  Are you ready to close and take fifteen

21   minutes to come back with closing arguments?

22         MR. COHEN:  The only thing about that is that --

23   these are the reasons I'm not wanting to close.

24         MR. BARKELEY:  We need to see the instructions, too,

25   Judge, because we'd like to refer to them in the closing.

1          MR. COHEN:  That was the first reason.

2          THE COURT:  Here they are.

3          MR. COHEN:  And I need -- I need -- I'm not sure if

4   the Court made any changes from yesterday, so I need to be able

5   to review them --

6          THE COURT:  Sure.

7          MR. COHEN:  -- and lodge objections.  And the second

8   reason is I want to make sure -- I don't know when the evidence

9   is all kind of all put into evidence --

10         THE COURT:  Well, okay, you can have a half an hour.

11         MR. COHEN:  Sure we put -- but I'm saying how does

12  the Court work?  Do we put the evidence actually formally into

13  the record now or (indiscernible - away from microphone) --

14         THE COURT:  The evidence has been admitted piecemeal

15  as we've gone along.  Once the -- once we do our closing

16  arguments and we excuse the jury, then the evidence is put in

17  the evidence cart wherever that is, you -- the three of you

18  work together, get it in the cart, and we take it and it goes

19  in to the jury.

20         MR. COHEN:  All right.  So -- so in order to find

21  (indiscernible - away from microphone) --

22         THE CLERK:  Mr. --

23         MR. COHEN:  (Indiscernible - away from microphone)

24  review what exhibits are actually in evidence, I can ask the

25  Clerk and she knows --

1          MR. BARKELEY:  Right.  You and I reconcile that, the

2   adversary system at its best, we say no, 80 didn't come in or

3   whatever, and --

4          MR. COHEN:  And I want to do that before closing.

5          THE COURT:  Yeah, right.  Well, clo -- absolutely.

6          MR. COHEN:  That's what I'm saying, so --

7          THE COURT:  But I think everybody -- you gentlemen

8   need a restroom break --

9          MR. COHEN:  Well, that's another point.

10          THE COURT:  Well, come back in ten minutes, we'll

11   give you the --

12          MR. BARKELEY:  I'd like to have lunch still.

13          THE COURT:  Huh?  Okay.  We'll let me give you the

14   jury instructions.  Lynn, here, can you hand these to them?

15          MR. COHEN:  All right.

16          THE COURT:  And then let them take a break for ten

17   minutes, we'll come back and figure out what we need to do

18   next.  How about that?

19          MR. COHEN:  All right.  Great.

20          MR. BARKELEY:  In the meantime, I will get the -- I

21   will get the evidence like the guns, Your Honor, (indiscernible

22   - away from microphone).

23          THE COURT:  Okay.

24          THE CLERK:  This matter stands in recess.

25      (Recess at 3:31 p.m., until 3:53 p.m.)

1        (Jury not present)

2            THE CLERK:  All rise.  You just -- you just --

3            THE COURT:  I just want to come in and make sure

4   we're moving in the right direction.

5            THE CLERK:  Okay.

6            MR. BARKELEY:  We are, Your Honor.  We've assembled

7   pretty much all the exhibits.  We're now talking about whether

8   the tax returns should come in.  Counsel -- counsel talked with

9   his client, and --

10           THE COURT:  I already said they could come in.

11           MR. BARKELEY:  Well, I know, but whether they should

12  now because --

13           MR. COHEN:  I think -- I think there's a

14  misunderstanding on the tax returns.  I think that these were

15  printouts from the computer of this accountant, and they were

16  filed -- he actually filed them all on time.

17           MR. BARKELEY:  I mean, they can still come in, but I

18  think the jury needs to be told that they were not all prepared

19  in April of '07 --

20           MR. COHEN:  Yeah.

21           MR. BARKELEY:  -- 'cause I crossed on that.  I didn't

22  know that.

23           THE COURT:  Yeah.

24           MR. BARKELEY:  This witness just didn't understand, I

25  guess, the document he relied on.  So I'm not -- I'm telling

1    him if they tell them that the accounting firm -- he doesn't

2    need to call that witness and bring him in --

3          THE COURT:  Okay.

4          MR. BARKELEY:  -- I'll take his word for it and --

5    and

6          THE COURT:  Okay.

7          MR. BARKELEY:  -- we'll just --

8          THE COURT:  Well, he just left so we can't talk

9    'cause he just walked out the door.

10          MR. BARKELEY:  He's talking to the accountant.

11          THE COURT:  He's talking to the accountant.  Okay.

12    Let's go off record, yes.

13          THE CLERK:  We're off record.

14      (Off record, at 3:54 p.m.)

15      (On record, at 4:02 p.m.)

16      (Jury not present)

17          THE CLERK:  We're on record.

18          THE COURT:  We're back on the record.  Okay.

19          MR. COHEN:  Okay.  Your Honor, in talking to the

20    accountant, who's name is Clay --

21          THE ACCOUNTANT:  Clay Woods.

22          MR. COHEN:  -- Clay Woods, he told me that the 2003

23    and 2004 returns were filed -- were -- A, they were filed and,

24    B, they were filed on time.

25          MR. BARKELEY:  And Mr. Colette brought him the

1  materials in person to his office and --

2          THE COURT:  Okay.

3          MR. BARKELEY:  Okay.

4          MR. COHEN:  And after Mr. Colette was in custody, the

5  2005 return, which was due in April of 2006, that was not filed

6  on time, but it was filed 'cause there was some question about

7  whether they were filed.  It was filed -- it was filed late,

8  and he said it was --

9          MR. BARKELEY:  It was filed in '07, and so, you know,

10  that's the only one that was possibly prepared in anticipation

11  of litigation, not the other two.

12          THE COURT:  'Kay.  So --

13          MR. COHEN:  (Indiscernible - away from microphone)

14          THE DEFENDANT:  (Indiscernible - away from

15  microphone) exact date that I wrote the check to the preparers,

16  but -- but I thought it was in the spring.

17          MR. COHEN:  Spring of this year?

18          THE DEFENDANT:  Of this year.

19          MR. COHEN:  Okay.  So and -- so it was filed.  So --

20          THE COURT:  So are you going to be able to close

21  tonight or not?  Do your closing tonight?

22          MR. COHEN:  We -- well, this is our joint suggestion,

23  Your Honor --

24          THE COURT:  Okay.

25          MR. COHEN:  -- that -- that if the Court is okay with

1  this, would be have the Court instruct the jury tonight --

2  because we've looked through the instructions and we're --

3          THE COURT:  Okay.

4          MR. COHEN:  -- I think we're both -- we're both fine

5  subject to the objections --

6          THE COURT:  Sure.

7          MR. COHEN:  -- that -- that we both raised --

8          THE COURT:  Mm-hmm (affirmative).

9          MR. COHEN:  -- on the record yesterday.  I think it's

10  consistent with what we talked about --

11          THE COURT:  'Kay.

12          MR. COHEN:  -- and the Court made changes, and to the

13  extent that our objections are clear that -- to whatever the

14  content is of these instructions yesterday, we -- we -- we're

15  incorporating them.

16          THE COURT:  Mm-hmm (affirmative).

17          MR. COHEN:  So I don't think we need to have a longer

18  discussion on that.

19          THE COURT:  Okay.

20          MR. COHEN:  I think the Court can read these

21  instructions, and then our suggestion is we reconcile the

22  exhibits, figure out what we're going to say about this -- this

23  point -- I -- I also need to put in the -- the stipulation --

24  the --

25          THE COURT:  'Kay.

1          MR. COHEN:  So there's actually going to be two
2  stipulations, the stipulation on the taxes and the stipulation
3  on Exhibit --
4          THE COURT:  'Kay.
5          MR. COHEN:  -- on -- on Exhibit DD.  So what I'm
6  saying is we do that, we do the stipulations, the Court
7  instructs the jury, we come in tomorrow at whenever the Court
8  wants, as early as possible --
9          THE COURT:  We'll -- it'll just a nine o'clock.  I
10  have an 8:30 change of plea.
11          MR. COHEN:  'Kay.  That's going to give us -- we'll
12  be able to close more quickly, frankly.  Both of us are tired
13  and I think that we're -- we can collect our thoughts -- we're
14  not going to stand up forever posing --
15          THE COURT:  How long are you going to close -- take
16  to close maximum?
17          MR. COHEN:  Well, you know, I don't know, Your Honor,
18  but --
19          MR. BARKELEY:  Maximum half hour for the Government,
20  Your Honor.  Maximum.
21          MR. COHEN:  Well, the Government -- the Government is
22  also -- also can re -- have a rebuttal closing --
23          MR. BARKELEY:  Right.
24          MR. COHEN:  -- so I don't know whether they're
25  talking about both -- both sides --

1          THE COURT:  Well, what do you need?  If -- if we give

2    you forty-five minutes, is that enough?

3          MR. COHEN:  Definitely enough.

4          THE COURT:  Is that enough for you?

5          MR. BARKELEY:  Yes, Your Honor.

6          THE COURT:  Okay.  So both parties get a maximum of

7    forty-five minutes total.

8          MR. BARKELEY:  Yes.  Okay.

9          MR. COHEN:  And then I think if the jury will get

10   this case -- if the Court's instructed them tonight, the jury

11   will get the case, and we'll have a verdict tomorrow before the

12   end of the day.  I can't think --

13         THE COURT:  If we do find otherwise, I've got to

14   cancel my -- or postpone my trial in Sacramento which I'll --

15   I'll do, but I have to know that 'cause I'm traveling -- I

16   start another trial in Sacramento Monday, which -- if this --

17   if they're deliberating over the weekend, obviously, that's not

18   going to --

19         MR. COHEN:  Well, I think the -- even if they started

20   deliberating -- they're not going to start deliberating in any

21   event, so --

22         THE CLERK:  Mr. Cohen?

23         MR. COHEN:  I'm sorry.  They're not going to start

24   deliberating in any event until tomorrow as we sit here right

25   now.

1          THE COURT:  Okay.  And then I'll check and see that

2    if they do deliberate -- if they're getting close to

3    deliberations, that we have the option of letting them

4    deliberate longer in the evening tomorrow night maybe.  We

5    check into that.  It's a little unusual, they usually stop at

6    4:30 or five, but if they're close, we can let them go to six

7    or seven, and we can all be --

8          MR. COHEN:  Well, as long as we don't -- we're not

9    pushing them.

10         THE COURT:  No, I'm -- no, I'm just -- you know, in

11   the state court, they go 'til midnight, and they don't have

12   these limitations, they just go.  I think that's the way it

13   used to be.  Lynn, is that how it still is?

14         THE CLERK:  Yes, sir.

15         MR. COHEN:  You know, like I said, I'd have to take a

16   look at how they're being instructed on that, but that's down

17   the road.

18         THE COURT:  Okay.

19         MR. COHEN:  I don't want to be here, believe me.

20         MR. BARKELEY:  Well, my request, Your Honor --

21         MR. COHEN:  I mean as nice as Alaskans are, I --

22   they're very nice.

23         THE COURT:  Okay.

24         MR. BARKELEY:  My request, Your Honor, is that rather

25   than the parties stipulate, you get whatever information you

1   need from both of us, we talked to the accountants, and then

2   you, as the judge --

3          THE COURT:  Mm-hmm (affirmative).

4          MR. BARKELEY:  -- tell the jury what happened as

5   opposed to it being a stipulation.  I don't think Mr. Cohen

6   believes that I, you know, improperly elicited that.  I -- I

7   have no -- I had no idea that this witness --

8          THE COURT:  I understand.

9          MR. BARKELEY:  -- didn't know how the preparer got

10  these dates on here, otherwise I wouldn't have even asked it --

11         THE COURT:  Mm-hmm (affirmative).

12         MR. BARKELEY:  -- and I would have crossed on that,

13  but for -- for one of the lawyers to say what happened could

14  look like I did it on purpose or I did something wrong, and I

15  think if the Court just says --

16         THE COURT:  Unless you -- unless you -- you are the

17  one that said it or --

18         MR. COHEN:  Well, if we come up with a stipulation

19  and the Court reads it, then we can do that.

20         THE COURT:  Well, when are you going to do all this?

21  Right now?

22         MR. COHEN:  We can -- that we can do right now --

23         THE COURT:  'Kay.

24         MR. COHEN:  -- and that -- and -- and I just need to

25  find this exhibit --

1          MR. BARKELEY:  I just think it's more of an

2    instruction to them --

3          THE COURT:  Okay.  Well, tell me how you want to do

4    it.

5          MR. BARKELEY:  -- not to consider the --

6          THE COURT:  I'm going to come back in fifteen

7    minutes.  By then you should have done -- got the stipulations

8    ready to go --

9          MR. COHEN:  Right.

10         THE COURT:  -- then everything -- and then I'm ready

11   to instruct the jury.

12         MR. COHEN:  Right.

13         THE COURT:  So is fifteen minutes long enough to do

14   that?

15         MR. COHEN:  Yes, Your Honor.  We'll -- we'll write --

16         MR. BARKELEY:  Well, the other stipulation -- we

17   don't have to have a stipulation, do we?  We're stipulating

18   that it's admissible; therefore, we give it to the Clerk and

19   the judge -- you know --

20         MR. COHEN:  Right.  I was just trying to find the

21   original (indiscernible - away from microphone).

22         MR. BARKELEY:  There's no stipulation.

23         THE COURT:  He just lost the original.

24         MR. COHEN:  I just can't find the original one I

25   marked, but I have another copy here.

1    THE COURT:  Well, it's in this -- it's in this -- no

2  one has taken it out of the building.

3    MR. COHEN:  Did I mark it as DD?

4    THE CLERK:  That's what you said, yes.

5    THE COURT:  (Indiscernible - away from microphone)

6    THE CLERK:  DD was the copies of checks.

7    MR. COHEN:  Right.  So let me put another one on

8  here.  I have another copy --

9    MR. BARKELEY:  (Indiscernible - away from microphone)

10              (Pause)

11    (Defendant's Exhibit DD marked for identification)

12    MR. COHEN:  Okay.  So we have that -- we have that

13  marked, and then I'll be able -- I'm going to work on the

14  stipulation (indiscernible - away from microphone).

15    THE CLERK:  Sorry.

16    MR. COHEN:  Yeah.

17    THE COURT:  So --

18    MR. COHEN:  I'm going to work on the stipulation and

19  then I'm going to work on getting the Clerk the exhibits, but I

20  don't think the second part is necessary --

21    THE COURT:  Okay.

22    MR. COHEN:  -- before you instruct.

23    THE COURT:  Okay.  So as soon as you get the

24  stipulation, let me know, I'll instruct the jury, then you

25  people can stay, get the exhibits squared away.  To make it

1    clear, the defense has rested and the Government has indicated

2    it doesn't have any rebuttal, is that true?

3              MR. COHEN:  We'll rest subject to the two

4    stipulations.

5              THE COURT:  Subject to the exhibit -- to the two

6    stipulations.

7              MR. COHEN:  Yeah.

8              MR. BARKELEY:  Yes, Your Honor.

9              THE COURT:  Okay.  Call me back when you're ready to

10   start -- for me to start reading.

11             THE CLERK:  Court is in brief recess.

12        (Recess at 4:09 p.m., until 4:24 p.m.)

13        (Jury not present)

14             THE CLERK:  All rise.  Court is reconvened.

15             MR. COHEN:  Your Honor, very -- very quickly, I --

16   there was one issue that I failed to raise earlier.  I asked

17   Agent Cohoon about two pieces of the MAC-10 that were separated

18   in the safe --

19             THE COURT:  Uh-huh (affirmative).

20             MR. COHEN:  -- if the Court recalls.  He said it

21   wasn't called a receiver, it was the forty-five -- a piece of

22   the MAC-10, they were kind of attached, and almost -- so it

23   could shoot forty-five caliber rounds and then forty-five

24   magazine.  And it's our contention that those attachments are

25   not specifically listed in the Indictment or in any forfeiture

1   request by the Government.  I wanted to raise that on the

2   record.  I don't think it's going to affect the jury right now

3   because they're going to decide one way or the other, but I

4   wanted to raise that on the record.

5           THE COURT:  Sure.  It's the subject of a post-trial

6   motion.

7           MR. COHEN:  It's the subject of -- I just want to

8   make sure I had -- had my record on that so that I -- I don't

9   think -- our view is the jury is not deciding forfeiture on

10  those two and they've never been subject to forfeiture, and

11  they should be returned.  So I just wanted to --

12          THE COURT:  Very well.

13          MR. COHEN:  -- raise that.

14          THE COURT:  Okay.  With regard to the checks, they're

15  just going to come in, is that right?  No need to recite a

16  stipulation?

17          MR. COHEN:  On that -- yeah, we're going to -- we're

18  -- well, we're going to say that the -- we're going to tell the

19  jury that the parties have stipulated that Exhibit DD is --

20  which are -- which are the seven Arctic Alarm and Audio checks,

21  are now admiss -- are now admitted into evidence.

22          THE COURT:  Who's going to say that?

23          MR. COHEN:  I can say it.

24          THE COURT:  Okay.  All right.  Mr. Barkeley, anything

25  else before I read the closing instructions to the jury?

1      MR. BARKELEY: Only, Your Honor, to say the

2  Government isn't waiving anything by not responding to --

3      THE COURT: No, I understand.

4      MR. BARKELEY: -- if the motion comes in, you know,

5  the Government -- the testimony was it's a functional part of

6  the weapon and it's all considered to the weapon --

7      THE COURT: Right.

8      MR. COHEN: And the Court has the written

9  stipulation?

10      THE COURT: Right.

11      MR. COHEN: And the Court can read my handwriting?

12      THE COURT: With some effort, I can -- I think I can

13  figure it out. Okay. Anything else?

14      MR. BARKELEY: Yes, Your Honor.

15      THE COURT: Okay. Madam Clerk, if you can bring us

16  -- bring the jury in.

17      MR. COHEN: Now where is the -- all right.

18      THE COURT: You know, I -- go ahead. We'll probably

19  start tomorrow at nine 'cause I have an 8:30 and if they need

20  to deliberate Saturday, I'm making arrangements for that as

21  well, if that's okay with everybody, if the jury agrees.

22      MR. BARKELEY: It is, Your Honor.

23                      (Pause)

24      (Jury in at 4:26 p.m.)

25      THE COURT: Okay. Here's where we are. Bring you up

1  to speed.  You've heard the Government's case, and the

2  Government rested, and now you've heard the defense case and

3  the defense has rested, so we're all done with the evidence.  A

4  couple of little things we're going to do here in terms of

5  stipulations.  I'm going to read the jury instructions to you

6  now and then we'll adjourn for the day, come back tomorrow at

7  nine o'clock.  First -- first thing tomorrow morning, you'll

8  hear the closing arguments.  That will take roughly forty-five

9  minutes per side, then the case will be yours for deliberation.

10           When you get here in the morning, there will be a

11  menu so you can order your lunch, and that will be provided to

12  you here, and you'll have all day to deliberate.  If you're

13  able to reach a verdict by the end of the day, fine; if not,

14  we're considering the possibility (indiscernible - microphone

15  interference) deliberate Saturday as well.  So those are the

16  things we'll talk about and I have no idea whether that will be

17  necessary (indiscernible - microphone interference).  You with

18  me so far?

19           Okay.  Now the parties did stipulate with regard to

20  these checks, the admissibility of these checks, is that right,

21  Mr. Cohen?

22           MR. COHEN:  Yes.  I can read that, Your Honor, or I

23  can --

24           THE COURT:  You can say it.

25           MR. COHEN:  -- I guess I can say that, I mean.  Okay.

3-293

1    Exhibit DD are the copies of the Arctic Alarm and Audio checks

2    that were seized from the safe in Mr. Colette's trailer.  The

3    parties now stipulate and agree that the copies of those checks

4    are admissible into evidence and, therefore, they will be

5    available for your consideration in the jury room.

6          (Defendant's Exhibit DD admitted)

7               THE COURT:  Okay.  And there was another issue with

8    regard to the date of the Arctic Alarm and Audio tax returns,

9    and the parties have looked at that, and they've stipulated

10   between the parties that the 2003 and 2004 tax returns for

11   Arctic Alarm and Audio were filed with the IRS on -- and filed

12   on time.  It is further stipulated that the 2005 tax return was

13   filed with the IRS in the spring of 2007 because the Mr.

14   Colette was in jail and the family was gathering the business

15   records.  The dates of preparation reflect only the date the

16   copies were presented -- or printed by the preparer.  Does that

17   make sense?  Okay.  So that takes care of that.

18               Counsel, I'm ready to start reading the -- the

19   instructions.  Ready to go?

20               MR. BARKELEY:  Yes, Your Honor.

21               MR. COHEN:  Yes, Your Honor.

22                         **JURY INSTRUCTIONS**

23               THE COURT:  Okay.  Ladies and gentlemen, the evidence

24   has now been presented.  You will hear arguments of counsel

25   tomorrow morning.  I will now give you instructions concerning

1   the law to be applied to the case.  The instructions on the law

2   given to you at the beginning of the trial are still

3   applicable, and I will not take up your time reading them

4   again.  You will have the full set of the Court's instructions

5   with you in the jury room to refer to.

6          In other words, you'll have as many copies of these

7   instructions with you tomorrow -- probably at least a half a

8   dozen -- to have with you so you don't have to memorize

9   everything I say right now, but the law requires that I read

10  them out loud, so that's what we're doing here.

11         Under your oath as jurors, each of you has sworn to

12  decide the case solely on the evidence in this trial and the

13  law as to which I will instruct you.

14         Jason Scott Colette has been convicted by a federal

15  jury of one count of violating 21 U.S.C. §841(a)(1), possession

16  of cocaine with intent to distribute, and one count of

17  violation of 21 U.S.C. §841(a)(1), distribution of cocaine.  He

18  was acquitted by the same jury of using or carrying the guns in

19  violation of 18 U.S.C. §924(c), which guns are the subject of

20  this forfeiture trial in connection with the two drug counts of

21  which he was convicted.

22         We have set forth here the elements of each of the

23  aforesaid counts.

24         You must determine whether the Government has proven

25  by a preponderance of the evidence that certain property is

1  forfeitable.  Forfeiture means that Mr. Colette is to be

2  divested or deprived of his ownership or interest in the

3  property.

4        The Government must prove that there is a nexus or a

5  connection between count one of the Indictment and the subject

6  property.  In order for you to determine there is the required

7  nexus, you must find that the subject property was used or

8  intended to be used in any manner or part to commit or

9  facilitate the possession of cocaine with intent to distribute

10 as charged in count one of the Indictment.

11        Count one of the Indictment reads:

12        "On or about November 28, 2005, within the District

13        of Alaska, the defendant, Jason Colette, did

14        knowingly and intentionally possess with intent to

15        distribute a controlled substance, to wit, five

16        hundred grams or more of a mixture or substance

17        containing a detectable amount of cocaine, all of

18        which is in violation of Title 21, United States

19        Code, Sections 841(a)(1) and 841(b)(1)(B)."

20 Now the elements of the four counts as set forth in the first

21 trial are as follows.  Count one -- this would be the elements

22 of count one in the first trial:

23        "The defendant is charged in count one of the

24        Indictment of possession with intent to distribute

25        cocaine in violation of Sections 841(a)(1) of Title

1    21 of the United States Code.  In order for the

2    defendant to be found guilty of that charge, the

3    Government must prove each of the following elements

4    beyond a reasonable doubt:

5        "First, the defendant knowingly possessed

6    cocaine;

7        "Second, the defendant possessed it with the

8    intent to deliver it to another person."

9        "It does not matter whether the defendant knew

10   that the substance was cocaine.  It is sufficient

11   that the defendant knew that it was some kind of

12   prohibited drug.

13       "To possess with intent to distribute means to

14   possess with intent to deliver or transfer possession

15   of a controlled substance to another person with or

16   without any financial interest in the transaction."

17   Count two:

18       "The defendant is charged in count two of the

19   Indictment with distribution of cocaine in violation

20   of Section 841(a)(1), Title 21 of the United States

21   Code.  In order for the defendant to be found guilty

22   of that charge, the Government must prove each of the

23   following elements beyond a reasonable doubt:

24       "First, the defendant knowingly delivered

25   cocaine; and

1     "Second, the defendant knew that it was cocaine

2   or some other prohibited drug."

3 Count three:

4     "The defendant is charged in count three of the

5   Indictment with possession of a firearm in

6   furtherance of a drug trafficking crime, in violation

7   of Section 942(c) of Title 18, United States Code.

8   In order for the defendant to be found guilty of that

9   charge, the Government must prove each of the

10   following elements beyond a reasonable doubt:

11     "First, the defendant committed the crime of

12   possession of cocaine with intent to distribute as

13   charged in count one of the Indictment or

14   distribution of cocaine as charged in count two of

15   the Indictment;

16     "Second, the defendant knowingly possessed a

17   firearm, to wit, an Ingram Model 10A1, forty-five

18   caliber, nine-millimeter machine gun, serial number

19   A6041381, with a silencer; a Bowers, nine-millimeter

20   suppressor, Model CAC9, serial number S927; and

21     "Third, the defendant possessed a firearm in

22   furtherance of the crime."

23     "A person has possession of something if the

24   person knows of its presence and has physical control

25   over it, or knows of its presence and has the power

1     and intention to control it.

2          "To prove that the firearm was possessed in

3     furtherance of a drug trafficking crime, the

4     Government must show the defendant intended to use

5     the firearm to promote or facilitate the crime.

6          "Possession of the firearm by an individual

7     convicted of a drug crime is insufficient to convict

8     the defendant.  Whether the firearm was possessed in

9     furtherance of the drug trafficking crime may be

10    shown by a number of factors including the proximity

11    of the weapon to the drugs, the accessibility of the

12    weapon during the drug transactions, and the

13    strategic location of the firearms in relations to

14    the drug activities."

15  Count four:

16          "Defendant is charged in count four of the

17    Indictment with possession of a firearm in

18    furtherance of a drug trafficking crime in violation

19    of Section 924(c) of Title 18 of the United States

20    Code.  In order for the defendant to be found guilty

21    of that charge, the Government must prove each of the

22    following elements beyond a reasonable doubt:

23          "First, the defendant committed the crime of

24    possession of cocaine with intent to distribute as

25    charged in count one of the Indictment or

1    distribution of cocaine as charged in count two of

2    the Indictment;

3        "Second, the defendant knowingly possessed a

4    firearm, to wit, a Remington Mohawk 48, 12-gauge

5    shotgun, serial number 5279681.

6        "Two.  Harrington & Richardson Topper, Model 48,

7    12-gauge shotgun, serial number AM250982.

8        "Three.  American Arms, 10-gauge shotgun, serial

9    number 0220016.

10        "Four.  Remington Woodsmaster, Model 740 .30-06

11    rifle, serial number 83245.

12        "Five.  Winchester, Model 190, twenty-two rifle,

13    serial number B1822823.

14        "Six.  Stevens Model 67E, 12-gauge shotgun,

15    serial number D395391.

16        "Seven.  Winchester, Model 94, .30-30 rifle,

17    serial number 4139992.

18        "Eight.  A Colt Sporter 762, thirty-nine rifle,

19    serial number LH010714.

20        "Nine.  An Armas Bost Eibar, 20-gauge double-

21    barrel shotgun, serial number 1928.

22        "Ten.  A Mossberg, Model 500A, 12-gauge shotgun,

23    serial number L100810.

24        "Eleven.  A Mossberg, Model 500E, 14-gauge

25    shotgun, serial number P317355.

1        "Twelve.  A Colt Super 38, thirty-eight semi-

2        auto pistol, serial number 126180.

3        "And thirteen.  A Mossberg, Model 500A, 12-gauge

4        shotgun, serial number L986808.

5        "Third, the defendant possessed the firearm in

6        furtherance of the crime."

7        A person has possession of something if the person

8 knows of its presence and has physical control over it, or

9 knows of its presence and has the power and intention to

10 control it.

11        To prove that the firearm was possessed in

12 furtherance of a drug trafficking crime, the Government must

13 show that the defendant intended to use the firearm to promote

14 or facilitate the crime.  Mere possession of the firearm by an

15 individual convicted of a drug crime is insufficient to convict

16 the defendant.

17        Whether that firearm was possessed in furtherance of

18 the drug trafficking of crime may be shown by a number of

19 factors, including the proximity of the weapon to the drugs,

20 the accessibility of the weapon during the drug transactions,

21 and the strategic location of the firearms in relation to the

22 drug activities.

23        The forfeiture statute is not limited to property

24 used or intended to be used to actually carry out the offense.

25 It also covers property that the defendant used or intended to

1  be used in any manner or part to facilitate the commission of

2  the offense.  This is what is called facilitating property.

3       Facilitating property in drug trafficking cases is

4  any property used or intended to be used in any way to promote

5  drug trafficking or make such trafficking easier to conduct.

6  This includes property that was used or intended to be used to

7  purchase or manufacture controlled substances or to transport,

8  store, conceal, or protect drug traffickers or their controlled

9  substances.

10      Property may not be indispensable to the commission

11  of a drug violation and may not be used exclusively for illegal

12  drug trafficking to be facilitating property.  All that is

13  necessary is that the Government prove that the property was

14  used in any manner or part to commit or facilitate the

15  commission of the drug violation.

16      Facilitation occurs when the property makes the

17  prohibited conduct less difficult or more free from obstruction

18  or hindrance.

19      The mere pooling or co-mingling of tainted and

20  untainted funds in an account without more does not render the

21  entire contents of the account subject to forfeiture.  The

22  connection between the property and the offense must be

23  substantial.  Substantial means significant and not merely an

24  accidental, incidental, or fortuitous connection between the

25  subject property and the offense.

1        The Government alleges that thirty-eight thousand

2   eight hundred and forty-eight dollars [$38,848] in United

3   States currency and four firearms were used or intended to be

4   used to commit or to facilitate the commission of the crime of

5   possession of cocaine with intent to distribute as charged in

6   count one of the Indictment.

7        Your task is to determine whether the Government has

8   established by a preponderance of the evidence that the thirty-

9   eight thousand eight forty-eight in United States currency and

10  the four firearms were used or intended to be used in any

11  manner or part to commit or to facilitate the commission of

12  that offense.

13       As to each of the four guns, it is permissible to

14  find that one or more guns are subject to forfeiture and one or

15  more are not.

16       I instruct you that the previous jury's determination

17  that defendant is guilty of possessing cocaine with intent to

18  distribute it, count one, and distribution of cocaine, count

19  two, is binding in these proceedings.  You must not discuss or

20  consider anew whether defendant is guilty or not guilty on

21  those charges; however, you must determine whether criminal

22  forfeiture is appropriate in this matter, according to these

23  instructions, and without regard to the prior jury's findings

24  on the other charges.

25       The Government has the burden of proving that the

1  thirty-eight thousand eight forty-eight in United States

2  currency and the four firearms described in count six and seven

3  of the Indictment, are subject to forfeiture.  The Government

4  has to prove these allegations by a preponderance of the

5  evidence.  A preponderance of the evidence as the term is used

6  in this instruction simply means that that which is more likely

7  true than not true, or that which is more probable.

8        The Indictment is not evidence.  The defendant has

9  pled not guilty to the charge.  The defendant is presumed to be

10  innocent and does not have to testify or present any evidence

11  to prove innocence.  The Government has the burden of proving

12  every element of the charge beyond a reasonable doubt.

13        You're instructed to count six and seven of the

14  Indictment charge separate and distinct offenses.  You must

15  decide each count separately on the evidence and the law

16  applicable to the court, uninfluenced by your decision as to

17  any other count.

18        When, as in this case, it is alleged that the crime

19  charged was committed on or about a certain date, if the jury

20  finds that the crime was committed, it is not necessary that

21  the proof show that it was committed on that precise date.  It

22  is sufficient if the proof shows that the crime was committed

23  on or about that date.

24        The punishment provided by law for this crime is for

25  the Court to decide.  You may not consider punishment in

1  deciding whether the Government has proved its case by a

2  preponderance of the evidence.

3      If it becomes necessary during your deliberations to

4  communicate with me, you may send a note through the bailiff

5  signed by the foreperson or by one or more members of the jury.

6  No member of the jury should ever attempt to communicate with

7  me except by a signed writing, and I will respond to the jury

8  concerning the case only in writing or here in open court.  If

9  you send out a question, I will consult with the lawyers before

10  answering it, which takes some time.  You may continue your

11  deliberations while waiting for the answer to any question.

12  Remember that you are not to tell anyone, including me, how the

13  jury stands numerically or otherwise on the question of the

14  guilt of the defendant until after you have reached a unanimous

15  verdict or have been discharged.

16      As jurors, you have a duty to consult with one

17  another and to deliberate with a view to reaching an agreement,

18  if that can be done without violence to individual judgment.

19  Each juror must decide the case for himself or herself, but

20  only after an impartial consideration of the evidence with the

21  other jurors.

22      In the course of deliberations, a juror should not

23  hesitate to reexamine his or her own views and change his or

24  her opinion if convinced it is erroneous.  But no juror should

25  surrender an honest conviction as to the weight or effect of

1    the evidence solely because of the opinion of other jurors or

2    for the mere purpose of returning a verdict.

3            You were accepted as jurors in this case in reliance

4    upon your answers to the questions asked you concerning your

5    qualifications.  You are just as much bound by those answers

6    now and until you are finally discharged from further

7    consideration of this case, as you were then.  The oath taken

8    by you obligates you to try this case well and truly, and to

9    render a true verdict according to the law and the evidence.

10   Both the Government and the defendant have a right to expect

11   that you will conscientiously consider and weigh the evidence

12   and apply the law of the case, and that you will reach a just

13   verdict.

14           Upon returning to the jury room to commence your

15   deliberations, you will take with you these instructions, the

16   exhibits, and verdict forms.  You will then select one of your

17   fellow jurors to act as a foreperson who will preside over the

18   deliberations and who will complete and sign the verdict to

19   which you have agreed.  Before you may return a verdict in this

20   case, it must be unanimous.

21           Verdict forms have been prepared for you.  After you

22   have reached unanimous agreement on a verdict, your foreperson

23   will fill in the form that has been given to you, sign and date

24   it, and advise the Court that you are ready to return to the

25   courtroom.

1        A defendant in a criminal case has a constitutional

2   right not to testify.  No presumption of guilt may be raised,

3   and no inference of any kind may be drawn, from the fact that

4   the defendant did not testify.

5        On the day you reach your verdict, if you should

6   agree on your verdict -- this is a little different.

7   Typically, jurors go to 4:30 or 5:00.  We'll have some

8   flexibility, but when you do reach your verdict -- if you don't

9   reach your verdict by the end of the day, you should have your

10  foreperson -- if you do reach your verdict before the end of

11  the day, you should have your foreperson date and sign the

12  verdict form unanimously agreed upon by your members, and

13  return it immediately into open court in the presence of the

14  entire jury, together with any exhibits in these actions.

15       In the event that you do not arrive at a verdict

16  before the close of court -- this says 4:30 -- you may go to

17  your homes or place of abode for the night, but you must return

18  to the jury room to continue your deliberations at 9:00 a.m.

19  the following morning.

20       And that's the instructions, and then we have these

21  verdict forms that will be attached.  I don't expect you to

22  remember everything I just said, that's why we're going to give

23  you copies of them, but was it kind of clear?  You have kind of

24  an idea what's going on?  These verdict forms just take you

25  right through -- you just go from one to the next, to the next,

1  and you answer yes or no, yes or no, and that's -- that's how

2  you do it.

3       So we're going to -- we -- we're going to start

4  tomorrow at nine, so you get to sleep in tomorrow.  If you

5  could be here by ten to nine, then we hope to start right off

6  with the closing arguments, and counsel will at least have

7  their opportunity -- the way it goes is the Government gets to

8  argue, then the defendant argues, then the Government gets to

9  respond, and then we're done.  And both counsel told me they

10  won't take any more than forty-five minutes apiece total, which

11  means by 10:30, it'll be in your hands.

12       If everybody's healthy, we'll excuse the alternate at

13  that time.  If someone gets sick or can't proceed, we'll just

14  excuse that person and the alternate will continue.  Any other

15  questions?  Okay.  Have a great evening.  See you tomorrow

16  morning at ten to nine.

17                         (Pause)

18       (Jury out at 4:44 p.m.)

19       THE COURT:  Okay.  Counsel, the jury has left the

20  room.  What do you have to say, Mr. Barkeley, anything?

21       MR. BARKELEY:  Nothing, Your Honor.  Thank you for

22  your help on the jury instructions.

23       THE COURT:  Are they okay?  Did they -- I mean, any

24  objections to them -- to the way I read them?

25       MR. BARKELEY:  No, Your Honor.  I -- I -- I noted, I