1   What's your view if they want jury playback of any testimony?

2   You -- you -- either we're all here or -- or none of us are

3   here.

4           MR. COHEN:  Your Honor, my -- my view, not only for

5   this trial, but my view is that everybody -- we should have it

6   all -- it should be done in open court.

7           THE COURT:  Okay.  So if they request playback, we

8   just all come here and quietly sit and listen to it.

9           MR. COHEN:  Yes, Your Honor.  And, Your Honor, I had

10  a couple points to make, Your Honor.

11          THE COURT:  Okay.

12          MR. COHEN:  Actually three.  The first point -- point

13  number one is, is I was just -- when I got back from finishing

14  the closing, what was on counsel's table is a letter turning

15  over to me a copy of the tape from -- of the interview of

16  Eugene Johnson on November 28th, 2005 --

17          THE COURT:  'Kay.

18          MR. COHEN:  -- which is the one we've been seeking in

19  discovery before the first trial, during the first trial, after

20  the first trial, and up until today, and it's been produced for

21  the first time to the defense today.

22          THE COURT:  'Kay.

23          MR. COHEN:  This is the Jencks material as to Mr.

24  Johnson and his -- and his statements -- and his statement.  I

25  haven't had a chance yet to listen to it.

1          THE COURT:  Sure.

2          MR. BARKELEY:  Your Honor and counsel, just for the

3    record, the letter also tells you in it that for the first

4    time, the federal government came into possession of it was

5    yesterday, and Special Agent Cohoon turned it over to you this

6    morning.

7          MR. COHEN:  Well, the letter --

8          THE COURT:  Well, the letter speaks for itself.

9    What's the --

10         MR. COHEN:  -- the letter says -- the letter says

11   what it says.

12         THE COURT:  Right.

13         MR. COHEN:  Okay, so that's the point -- the first

14   point.  The second point is I'm -- just wanted to remind Your

15   Honor of what I said yesterday at -- when -- about Saturday

16   deliberations.

17         THE COURT:  I told them that they can go -- didn't

18   you hear what I just said to them?

19         MR. COHEN:  I -- I'm sorry, I didn't --

20         THE COURT:  I just told them they can deliberate

21   today, they can deliberate Saturday if they want, if they

22   choose, they can come back Monday, it's up to them.

23         MR. COHEN:  Oh, okay.  That -- that's -- okay, I

24   didn't hear that.  I'm sorry.

25         THE COURT:  Oh, I made a point of saying that --

1    MR. COHEN: Okay.

2    THE COURT: -- just to make you happy.

3    MR. COHEN: I'm sorry, I -- I should have heard that.

4 I didn't -- I didn't hear it.

5    THE COURT: Oh, I was very clear about that.

6    MR. COHEN: Okay. Then --

7    THE COURT: And I just said they just have to let us

8 know what their plans are so we can make appropriate --

9    MR. COHEN: No, I -- that -- that -- I'm sure that

10 happened. I was probably focusing on something else.

11    THE COURT: Yeah. Well, and they didn't let us know,

12 but at some point, we're going to have to get their sense as to

13 whether -- 'cause we have to make accommodations if they're

14 going to go Saturday. I don't care if they go Saturday and

15 come back Monday. They -- I don't them that.

16    MR. COHEN: Right. Okay. That's great. The third

17 point is, Your Honor, as long as we may have some time, it

18 would be my request that we perhaps address this -- there's an

19 outstanding issue that's not part of this particular

20 proceeding. In other words, this jury trial --

21    THE COURT: Uh-huh (affirmative).

22    MR. COHEN: -- but in the overall case. There's an

23 outstanding issue which has been -- I addressed exten --

24    THE COURT: Can I -- can I -- if that -- I would like

25 to get these exhibits back to the jury and get these

1  instructions to them --

2          MR. COHEN:  All right.

3          THE COURT:  -- and then we can talk.

4          MR. COHEN:  That'll be great.

5          THE COURT:  'Cause they're sitting there waiting for

6  it.

7          MR. COHEN:  Okay.

8          THE COURT:  This is -- okay.

9          MR. COHEN:  (Indiscernible - away from microphone)

10          THE COURT:  You don't have to do anything, but Lynn

11  does, so she's got to stop what she's doing and take this back.

12          THE CLERK:  Actually, I give them to the --

13          THE COURT:  Oh, here they are.  Oh, here's the

14  bailiff, okay.

15          THE CLERK:  Yeah.

16          THE COURT:  Did you hand those --

17          THE CLERK:  Yeah.

18          THE COURT:  Okay.  Counsel are satisfied that all the

19  exhibits are on this cart now?

20          MR. BARKELEY:  (Indiscernible - away from microphone)

21          MR. COHEN:  Let me just make sure.

22                      (Pause)

23          MR. BARKELEY:  Your Honor, the Government notes there

24  are some juror pads -- note pads back there.  Maybe the bailiff

25  should take them back just in case they have something on them

1    that a juror forgot or something.  I don't know.

2         THE COURT:  I don't know.  I told them to take

3    their --

4         UNIDENTIFIED SPEAKER:  (Indiscernible - away from

5    microphone) one is the alternate.

6         THE COURT:  One is the alternate's.

7         UNIDENTIFIED SPEAKER:  (Indiscernible) there's

8    another one.

9         MR. BARKELEY:  There's more than one back there.

10        THE COURT:  So maybe they just didn't take notes.  I

11   don't know.  I told them they could take their notes with them,

12   so that -- that query can be made to the jurors, say there's

13   some note pads here, did anybody need a note pad?  If not,

14   we'll just take them.  Okay.  The exhibits have now gone back

15   to the jury as well as the instructions and the verdict forms.

16        Now, Mr. Cohen, now we don't have -- now -- no stress

17   now.  What -- what's your third point.

18        MR. COHEN:  All right.  So this -- this has to do

19   with the -- the purported administrative forfeiture of the

20   Jetski and the trailer.  That's come up at various times and --

21        THE COURT:  Don't know anything --

22        MR. COHEN:  What happened was at -- there was a

23   Jetski and a trailer that was outside of the --

24        THE COURT:  Okay.

25        MR. COHEN:  -- Mr. Colette's residence that was taken

1   by DEA on November 28th, 2005.

2           THE COURT:  'Kay.

3           MR. COHEN:  Now there's a -- there's a dispute about

4   whether Mr. Colette received notice of that administrative

5   forfeiture.

6           THE COURT:  'Kay.

7           MR. COHEN:  The Government's position is, is that

8   they sent out to the Fairbanks jail notice of the

9   administrative forfeiture, they produced a -- a green card

10  showing return -- a return receipt requested card which they

11  say shows that the notice of administrative forfeiture went to

12  the jail, and that there was no response made in time --

13          THE COURT:  Okay.

14          MR. COHEN:  -- and, therefore, it's forfeitable --

15          THE COURT:  All right.

16          MR. COHEN:  -- administratively.

17          THE COURT:  'Kay.

18          MR. COHEN:  Our position has been that Mr. Colette

19  did not receive appropriate notice at the jail.

20          THE COURT:  'Kay.

21          MR. COHEN:  The Government correctly pointed out that

22  -- that in order for us to make that motion, we need to do so

23  under --

24          MR. BARKELEY:  18 U.S. Code §983.

25          MR. COHEN:  -- (a)(1)(A).

1          THE COURT:   'Kay.

2          MR. COHEN:  We have not made such a formal motion

3    because we were trying to get the information the Government

4    had and evaluate the overall situation, and I filed a

5    supplemental memorandum with the Court on this issue and we've

6    just -- it's just been kind of held in abeyance.

7          What I'd like to do, Your Honor, this morning if the

8    Court would permit it is to make that motion under -- under --

9    under that section for return of the -- for return of the

10   Jetski and the -- and the Caravan trailer which accompanied the

11   Jetski, the basis being that Mr. Colette did not receive notice

12   at the jail.

13         And I'm -- I'm in possession of the -- of the -- I'm

14   in possession of the green card that the Government provided to

15   us --

16         THE COURT:   Mm-hmm (affirmative).

17         MR. COHEN:   -- and I'm in possession also of the

18   document they say was sent to the jail together with the green

19   card.

20         THE COURT:   All right.

21         MR. COHEN:  And I -- and I've attached those to a

22   supplemental filing that I made back on (indiscernible) -- I

23   can't -- there's a whole bunch of them, I think it was May

24   29th --

25         THE COURT:   'Kay.

1          MR. COHEN:  -- or 23rd, but at the of May.  It's in

2    the -- it's Docket 284-1 that's in the court file.

3          THE COURT:  'Kay.

4          MR. COHEN:  I attached the two of those.  Now first

5    of all, there's no --

6          MR. BARKELEY:  Your Honor, object -- I'm going to

7    object to this.  He wants to hold some kind of a hearing --

8          THE COURT:  I don't know what's going on.  You've got

9    to tell me what you --

10          MR. BARKELEY:  -- or oral argument on something, he's

11    got to file a motion on it.

12          THE COURT:  Okay.  I don't know what you're talking

13    -- I mean I know what you're talking about, what are you asking

14    me to do?

15          MR. COHEN:  Well, I'm -- what I -- what I'm saying is

16    that I think it's something that since we have some time and

17    we're all here on this case, we -- the issue is pretty basic, I

18    think we can both present it to the Court and the Court could

19    -- can decide one way or the other.  I have -- I'm able to make

20    that motion now, I have a basis for it, and that's it.  I think

21    it's very basic.  The Government's going to argue that --

22    that --

23          MR. BARKELEY:  Counsel, let me argue what the

24    Government's going to argue, will you?

25          THE COURT:  Let -- let -- let -- right.  You're doing

1    fine with your argument.  Let --

2          MR. COHEN:  Well, sometimes they -- sometimes they

3    argue for me and they've actually won.  So --

4          THE COURT:  Okay.

5          MR. COHEN:  -- in the past, but -- so -- well, I'd

6    like to address it now.  If the Government thinks that -- is

7    saying --

8          MR. BARKELEY:  No.

9          MR. COHEN:  -- that -- that we shouldn't and I should

10   file a written motion, I -- you know, I can do that.

11         THE COURT:  That's typically what we do.

12         MR. COHEN:  I mean, I can do that, it's just -- it's

13   just --

14         THE COURT:  It's a notice issue.  Apparently he --

15   you're saying he got -- he did not receive notice.  I don't

16   know what the Government's going to say.  If he didn't receive

17   notice and the law wasn't complied with, then he gets it back,

18   right?

19         MR. COHEN:  Well, I think the way -- that there --

20         MR. BARKELEY:  Maybe.

21         THE COURT:  I don't know.

22         MR. BARKELEY:  Maybe.

23         THE COURT:  Maybe.

24         MR. COHEN:  Yeah.  What -- what --

25         THE COURT:  I haven't heard the side with -- I'd like

1    to hear from Mr. Barkeley.

2              MR. COHEN:  Okay.  Well, let me -- let me -- let me

3    just say that what -- what I found, which -- which I didn't

4    know before reviewing this -- all these documents, is that

5    there was -- Mr. Colette was represented by M.J. Haden from the

6    Federal Defender --

7              THE COURT:  'Kay.  Right.  She was here yesterday.

8              MR. COHEN:  Right.  And -- and M.J. apparently --

9    there were -- there were -- apparently there were two notices

10   that forms were sent out, one for the thirty-eight thousand in

11   currency --

12             THE COURT:  'Kay.

13             MR. COHEN:  -- and one for the Jetski and the

14   Caravan.  Now what I didn't know before and I -- and I found is

15   that M -- and I -- and I didn't -- I couldn't understand if

16   that's the case, why was the thirty-eight thousand dollars part

17   of this proceeding --

18             THE COURT:  Mm-hmm (affirmative).

19             MR. COHEN:  -- if they had sought the administrative

20   forfeiture and the time had run.

21             THE COURT:  It's done all the time, counsel.  This is

22   what we would have -- say in a brief if we were given a chance

23   to brief it.  This --

24             THE COURT:  Okay.  Well, I haven't even heard from

25   the Government yet --

1          MR. COHEN:  Well, let -- let -- let me --

2          THE COURT:  -- but I want you to finish your thought.

3          MR. COHEN:  But it appears from this document, which

4    I -- which I found, that M.J. received the notice of forfeiture

5    for the thirty-eight thousand dollars and filed a response to

6    it and that was why -- she filed the appropriate response and

7    it was sent back for a civil judicial proceeding.  And it's my

8    view that the green card the Government provided is a green

9    card for the thirty-eight thousand dollars because the Jetski

10   -- M.J. did not have notice of the Jetski, she had notice of

11   the thirty-eight thousand, that's what was in the certified

12   delivery to the jail, that's what Mr. Colette gave to M.J., and

13   that's what she filed a claim on.  If he had received the

14   Jetski notice, he would have given that to M.J. and she would

15   have filed a claim on that.

16         THE COURT:  So you're saying he didn't receive notice

17   of the Jetski, bottom line.

18         MR. COHEN:  And I'm saying -- I'm saying that the

19   green card that they produced is -- is a green card for the

20   thirty-eight thousand dollars and not for the Jetski.

21         THE COURT:  Okay.  Mr. Barkeley.

22         MR. BARKELEY:  Well, Your Honor, while counsel is

23   saying while we all have some time, it's -- it's been -- the

24   Government counsel has a lot of other matters to attend to and

25   has been on e-mail and and phone conversations, as I'm sure the

1  Court has.

2          THE COURT:  Mm-hmm (affirmative).

3          MR. BARKELEY:  This is not the time where we -- just

4  because we supposedly have extra time, we're going to have a

5  hearing on a motion counsel has not filed.  The statute, as the

6  Government has briefly repeatedly, this argument is frivolous.

7  The statute says this -- a motion under this section shall be

8  the exclusive remedy.  It doesn't say an oral motion at the

9  tail end of a forfeiture trial which was waived in the original

10 criminal trial shall be -- it says you file a motion, cite your

11 law, the Government gets a chance to respond both factually and

12 legally instead of dealing with this at the end of a four-day

13 trial.

14          THE COURT:  Okay.

15          MR. BARKELEY:  That's what you need to do, not talk

16 about --

17          THE COURT:  So what you're saying is you're not

18 willing to do it here on this ex parte -- I mean --

19          MR. BARKELEY:  Absolutely not.  I'm not prepared to

20 do that.

21          THE COURT:  Okay.  And I think that's true.  I --

22 this is the first time I've really given the -- the matter any

23 thought.  Obviously --

24          MR. COHEN:  That -- that's -- that's completely fair.

25 I'm not -- I'm not disputing what Mr. Barkeley says and I can

1  file a written motion.

2         THE COURT:  Well, I -- 'cause I want to make the

3  right decision.  I don't want to make a decision without

4  briefed --

5         MR. COHEN:  I'm also -- I was only -- right.  I was

6  -- I was -- I was just raising it 'cause we're all here and I

7  thought maybe we could -- maybe we -- since we're all here and

8  we're -- we're -- we're -- this case has been called, maybe we

9  could deal with it right now.  If -- if Mr. Barkeley wants a

10  notice motion and an opportunity to respond, he's entitled to

11  that obviously, and that's -- that's --

12         THE COURT:  And he said he wants it.

13         MR. COHEN:  -- that's fine, and we can do -- we'll do

14  it that way.

15         THE COURT:  Okay.  Good.  He may agree with

16  everything you say after he's had a chance to look at what you

17  say.

18         MR. COHEN:  Well, he may.  He has before --

19         MR. BARKELEY:  That's true.

20         MR. COHEN:  -- on some things.

21         MR. BARKELEY:  I might, but the Court deserves to be

22  fully informed --

23         THE COURT:  That's --

24         MR. BARKELEY:  -- and that means the lawyers get to

25  brief it and we get -- we've got to find out what happened at

4-75

1   the jail and all sorts of things.  I can tell you this.  If Mr.

2   Colette didn't get notice, he will be treated fairly, and in

3   all likelihood get the property back.  That's just the law.

4   But --

5           THE COURT:  Yeah.

6           MR. BARKELEY:  -- but you've got to get at it, you

7   know.  I don't know exactly what happened and I'm not ready to

8   respond to it right now.

9           THE COURT:  Okay.  Anything else, counsel?

10          MR. COHEN:  That's it, Your Honor.

11          THE COURT:  You want to make sure the Clerk has your

12  telephone numbers, that you stand ready for a verdict any time,

13  it could happen any time today.  They've got the exhibits.  If

14  there's playback requested, we will all attend it.  If there's

15  any significant questions of substance, I'll notify everybody.

16  Mr. Colette will be here in the building, so he'll be available

17  to attend those.

18          MR. BARKELEY:  Madam Clerk, I will just be in the

19  U.S. Attorney's Office --

20          THE COURT:  Okay.

21          MR. BARKELEY:  -- 456-0245.  Thank you.

22          THE COURT:  Okay.  Are we done?

23          MR. COHEN:  I think so, Your Honor.

24          THE COURT:  Thank you very much.

25          MR. COHEN:  Thank you very much.

1          THE COURT:  Okay.

2          MR. BARKELEY:  Thank you, Your Honor.

3          THE CLERK:  This matter now stands in recess.

4     (Recess at 10:48 a.m., until 12:53 p.m.)

5     (Jury not present)

6          THE CLERK:  All rise.  This matter is again in

7  session.

8          THE COURT:  Mr. Cohen, do you know the time that that

9  note was dated?

10         MR. COHEN:  11:53, Your Honor.

11         THE COURT:  All right.  It didn't get to us until a

12 little after that, but we can't have you unavailable.  We've

13 been looking for you for the last forty-five minutes.

14         MR. COHEN:  I apologize, Your Honor.  My phone was

15 on.  I was eating lunch, and for whatever reason, the cell

16 phone was not working in that restaurant.

17         THE COURT:  Okay.  Well, I'm going to order that you

18 remain in the building throughout the rest of the day, okay?

19 'Cause we can't have this.  We've just been waiting and

20 searching for you.

21         MR. COHEN:  Well, you --

22         THE COURT:  Now what's your response to the note?

23         MR. COHEN:  Your Honor, the -- my response to the

24 note, Your Honor, is that the jury should be told to -- that

25 the instruction should be the Court has given instructions on

1  this and to consult with the instructions as already given.  I

2  wouldn't suggest that we give them any further response.

3          THE COURT:  Mr. Barkeley?

4          MR. BARKELEY:  All or none.

5          THE COURT:  Pardon?

6          MR. BARKELEY:  All or none.

7          THE COURT:  That's your response?

8          MR. BARKELEY:  Well, it's -- the note says --

9          THE COURT:  I know, but --

10         MR. BARKELEY:  -- is it an all or none proposition,

11  so I'd suggest saying, yes, it is, and the reason is that it's

12  entirely consistent with the verdict form.  The verdict form

13  says is the thirty-four -- or thirty-eight eight forty-eight

14  forfeit -- to be forfeited, yes or no.  It doesn't say if yes,

15  what lesser amount do you find or anything else, and I think

16  it's entirely consistent with the Government's argument that

17  even legitimately earned money can facilitate.

18         THE COURT:  They actually -- in a way, they ask two

19  questions within this one question:

20         "The jury would like to know if we may consider the

21         cash found in Mr. Colette's safe to have come from

22         separate sources?"

23         MR. BARKELEY:  Mm-hmm (affirmative).

24         THE COURT:  That's an interesting question -- "or is

25  it an all or none proposition?"  That's another interesting

1    question.

2            MR. BARKELEY:  It is -- it is two questions.

3            THE COURT:  And I think what they really want to know

4    -- and I -- you know, I'm -- I drafted a response.  It may not

5    be appropriate, but my -- my response just as I was sitting

6    here said:

7            "In a response to your note of 11:53 a.m., the issue

8            is not so much where the cash came from but whether

9            its presence facilitated the crime of possession of

10           cocaine with intent to distribute, and that is

11           whether the cash was a tool of the underlying crime

12           of possession of cocaine with intent to distribute."

13   Maybe that's more than they asked for, but I think that's what

14   they're kind of -- they're --

15           MR. BARKELEY:  I think you're right, Your Honor.

16           THE COURT:  -- they seem like they're --

17           MR. BARKELEY:  The confusion is they seem to be

18   thinking about a proceeds theory.

19           THE COURT:  Proceeds.  They seem to be --

20           MR. BARKELEY:  Yes.

21           THE COURT:  -- thinking about a proceeds issue --

22           MR. BARKELEY:  They're thinking about a proceeds

23   theory.

24           THE COURT:  -- and I think that they're -- that's not

25   the issue.  The issue is whether or not the cash was there to

1   facilitate the crime.

2          MR. BARKELEY:  Yes.  I agree with your -- your --

3   your response, Your Honor.

4          THE COURT:  Did you read -- did you hear it?

5          MR. COHEN:  Did I hear the Court's proposed --

6          THE COURT:  Yes.

7          MR. COHEN:  -- response.  Yes, Your Honor.  And

8   again, I think that that's giving the jury more information

9   than they're asking for, number one, and number two, I think

10  it's -- it's -- it was very clear from the Court's original

11  instructions -- and we have a whole record on this one --

12         THE COURT:  Right.  This --

13         MR. COHEN:  -- that -- no, I'm -- just so I can very

14  quickly -- that it's very clear from the original instructions

15  what is they're supposed to do, and I would refer them to the

16  original instructions.  I wouldn't --

17         THE COURT:  Do you have any one in particular you

18  would refer them to?

19         MR. COHEN:  I would refer them to the instructions --

20  I don't -- I don't -- I don't have them in front of me right

21  now, Your Honor.

22         THE COURT:  Okay.

23         MR. COHEN:  I don't know if the Court does, but I

24  would refer them again to the Court's instructions that there

25  -- there's one that says your -- your task is to consider

1  whether there's a nexus, if this is facilitating property, and

2  what facilitation means.

3          THE COURT:  I agree.

4          MR. COHEN:  Those -- those three.  I would refer them

5  to those instructions.

6          MR. BARKELEY:  Your Honor, the reason the Government

7  favors your response and suggests that -- I suggest that it was

8  in part invited by what I -- I argued and believe I was

9  sustained on was improper closing.  The closing made a

10 deliberate attempt to confuse the jury on proceeds versus

11 facilitation.  It suggested proceeds, talked a lot about where

12 the money may have come from.  This jury is clearly confusing

13 proceeds theory with facilitation.

14          And I think my initial response of all or none was

15 incorrect.  The Court is correct in saying nothing more than

16 this is a facilitation case, look at the facilitation

17 instruction.  That's why it's appropriate.

18          MR. COHEN:  Your Honor --

19          MR. BARKELEY:  He said -- he said we started out with

20 a proceeds theory, then we abandoned it, and I think that's got

21 a lot to do with this.

22          MR. COHEN:  Your Honor, look, look.  I don't think --

23 I disagree with Mr. Barkeley that we have any way to know what

24 the jury is thinking or what whether they're thinking about

25 proceeds or what is their thinking or what motivated this.  I

1  disagree with that.  I don't think we can devine what's in

2  their minds from this question.  I think it's -- it's -- it's

3  -- I think what the Court did originally was appropriate, which

4  was to instruct the jury on the law.  The parties both have

5  their view of the law, we have a record on it, and the question

6  -- the -- the -- the -- the issue is what is -- what is the law

7  on nexus, what is the law on facilitation, what is the law on

8  facilitating property.  That's what you have to look at.

9           Now if the Court wants to say this is not a proceeds

10  case --

11           THE COURT:  It's kind of what I said.

12           MR. COHEN:  Well, I -- I just -- I don't -- I don't

13  agree that we should do that, Your Honor.  I think the --

14  the --

15           THE COURT:  Well, you started to say you wanted --

16           MR. COHEN:  I think we should point them to the

17  appropriate instructions that they should consider and say

18  these are the instructions to consider on -- on this issue in

19  response to your question.  I don't think we should give them

20  additional -- I don't think there's any reason to give them

21  additional insight, particularly if it goes further than their

22  question.

23           THE COURT:  "The jury would like to know if we may

24  consider the cash found in Mr. Colette's safe to have come from

25  separate sources."  Now they're starting to think, hmm --

1          MR. COHEN:  They might be considering that on the

2    question of facilitation.

3          MR. BARKELEY:  No, that's the proceeds theory.

4          MR. COHEN:  You don't -- you don't know what it is

5    they're considering.  They may --

6          THE COURT:  They might think that if they conclude

7    that Mr. Johnson bought some of this, that's enough to convict.

8    Separate sources.

9          MR. COHEN:  They might think that, they might think

10   that -- they might think that, they might think that should our

11   -- is it true that we can consider the -- Mr. Cohen's argument

12   that it came from one source and the Government's argument that

13   it came from a different source?  Can we consider both of those

14   arguments in deciding on facilitation?  That's what they

15   might --

16         THE COURT:  Let me ask you this question.  Let me --

17   let me read you slowly what I propose and you tell me if I'm

18   misstating the law:

19              "The issue is not so much where the cash came from,

20              but whether its presence facilitated the crime of

21              possession of cocaine with intent to distribute."

22         MR. COHEN:  I think that that -- that is confusing

23   because where the cash came from, Your Honor --

24         THE COURT:  Mm-hmm (affirmative).

25         MR. COHEN:  -- our argument is in this -- I'm not --

1    I'm not trying to play games or anything, I just --

2              THE COURT:  Okay.

3              MR. COHEN:  I -- I think this is the crux of the

4    issue.  Our argument is that where the cash came from is

5    circumstantial evidence of what it was being used to

6    facilitate.  If the cash is all business related, then our

7    argument is, is that it facilitated the business.  That was

8    what we said.  That's what we've been arguing.  If the cash all

9    came from -- from drug sales, okay?  If it all came from drug

10   sales, then I still made the argument you -- there has to be

11   some logical way that it facilitated this particular drug

12   transaction.

13             But I don't think it's irrelevant where the cash came

14   from.  I think the issue is -- is what did this cash

15   facilitate.

16             MR. BARKELEY:  The reason your note is appropriate,

17   Your Honor, is because your note doesn't say that the cash

18   source is irrelevant, it just says it's not so much a question

19   of, and it's not, and this is consistent entirely with what the

20   Government has argued.  The Government didn't emphasize the

21   source of the money, the Government simply -- and the fact

22   that, you know, they have an expert and other testimony saying

23   that this is business money, that does not preclude a

24   facilitation theory.  That's why your note is appropriate.  It

25   doesn't eliminate their considering where the money came from

4-84

1    and deciding whether it facilitated it.

2              MR. COHEN:  But by saying the words "it's not so

3    much," it's -- it's making a judgment about that piece --

4              THE COURT:  Okay.

5              MR. COHEN:  -- of our case, and I -- and I --

6              THE COURT:  "In response to your note of 11:53 a.m.,

7    the issue is whether the presence of the cash facilitated the

8    crime of possession of cocaine with intent to distribute."

9    That's the issue.

10             MR. COHEN:  That's -- that is -- I -- I would have no

11   objection to that response because that's what I think the

12   issue is.

13             THE COURT:  "In response to your note of 11" --

14             MR. COHEN:  I would say facilitated the crime of

15   possession of cocaine --

16             THE COURT:  -- "the issue is" --

17             MR. COHEN:  -- with intent to distribute of which Mr.

18   Colette was convicted in count one.  That -- that -- that would

19   be the full response.  Not any -- any crime of possession, but

20   the crime in count one of which he was convicted.

21                           (Pause)

22             THE COURT:  Okay.  Now:

23             "In response to your note of 11:53 a.m., the issue is

24             whether the presence of the cash facilitated the

25             crime of possession of cocaine with intent to

1       distribute, i.e., whether the cash was a tool of the

2       underlying crime of possession of cocaine with intent

3       to distribute which" --

4           MR. COHEN:  No, I -- I wouldn't say, Your Honor, it

5   was a tool.  I -- I --

6           THE COURT:  Is that a misstatement of the law?

7           MR. COHEN:  I think the way the Court first said it,

8   it would be the correct saying, which is the issue is, is

9   whether the cash facilitated the crime of possession of cocaine

10  with intent to distribute as -- as was charged in count one or

11  that Mr. Colette was convicted of in count one.  Going to this

12  question of whether it was a tool or whatever, we're making --

13  that's additional instructions that I think expand or change

14  what the --

15          THE COURT:  Okay.  Well, I'm wondering if this answer

16  is going to help them at all.  Do you think it will -- if we

17  write:

18          "In response to your note of 11:53 a.m., the issue

19          before you is whether the presence of the cash

20          facilitated the crime of possession of cocaine with

21          intent to distribute which defendant was convicted of

22          in count one."

23          MR. COHEN:  Exactly.

24          THE COURT:  Will that help them?

25          MR. COHEN:  I think that that's -- that they have to

1  -- they have to have -- they -- I think that the jury -- I

2  think it helps them because they know that that's the response

3  from the Court, number one.  Number two, the jury -- we have to

4  give the jury what the law is, and they have to make a

5  decision --

6           THE COURT:  Okay.

7           MR. COHEN:  -- based on the law.

8           THE COURT:  Mr. Barkeley?  "In response to your note

9              of 11:53 a.m., the issue is whether the presence of

10             the cash facilitated the crime of possession of

11             cocaine with intent to distribute of which defendant

12             was convicted of in count one."

13          MR. COHEN:  Right.  And --

14          THE COURT:  Anything wrong with that?

15          MR. BARKELEY:  Only that, Your Honor, the Government

16  request that it simply add three words, whether the cash -- the

17  presence of the cash "more likely than not" facilitated.

18          THE COURT:  Okay.

19          MR. BARKELEY:  That is the issue.

20          MR. COHEN:  I wouldn't say more likely than not, I

21  would say whether the Government has proven by a preponderance

22  of the evidence.  That's not -- that's changing --

23          THE COURT:  That's the same thing.

24          MR. COHEN:  Well, I -- I -- I -- I think if we're

25  going to get into that, we -- that's the -- we had a

1    disagreement about that in our closing.  I mean, the -- I think

2    I'm correctly stating the law which is it's the Government's

3    burden to prove that by a preponderance of the evidence, and if

4    we put in more likely than not --

5                THE COURT:  It's the same thing.

6                MR. COHEN:  The issue is whether the Government has

7    proven by a preponderance of the evidence --

8                THE COURT:  That's true.  I agree with you.  Which

9    means what?

10               MR. COHEN:  I don't have any problem if --

11               THE COURT:  It means more likely than not, right?

12   Isn't that what we instructed them?

13               MR. COHEN:  If the Court is going to put in the issue

14   is whether the Government has proven that it is more likely

15   than not that -- I would prefer that it say preponderance of

16   the evidence, but if the Court --

17               THE COURT:  I don't mind doing both, preponderance of

18   the evidence, parentheses, more likely than not, end

19   parentheses --

20               MR. COHEN:  That's fine.

21               THE COURT:  -- then everybody's happy.

22               MR. COHEN:  That's fine, Your Honor.

23               THE COURT:  "In response to your note of 11:53 a.m."

24               -- comma -- "the issue before you is whether the

25               presence of the cash" --

1      MR. COHEN:  Is whether the Government has proven

2      THE COURT:  -- "is whether the Government has proven

3      by a preponderance of the evidence" -- parentheses --

4      "(more likely than not) that the cash" --

5   -- involved or that the cash --

6      MR. BARKELEY:  That the presence of the cash.

7      THE COURT:  -- "that the presence of the cash

8      facilitated the crime of possession of cocaine with

9      the intent to distribute which defendant was

10     convicted of in count one."

11     MR. COHEN:  Right.  And Your Honor may wish to also

12  consider saying the definition of facilitated is contained in

13  -- on page whatever of the instructions.

14     THE COURT:  Mr. Barkeley, what do you think of that?

15     MR. BARKELEY:  I just -- I think it's -- I think it's

16  a bit much.  I think questions back to the jury shouldn't be

17  ongoing closing argument, but it's, you know, obviously up to

18  the Court.

19     THE COURT:  Okay.  Here's what I have:

20     "In response to your note of 11:53 a.m." -- comma --

21     "the issue before you is whether the Government has

22     proven by a preponderance of the evidence (more

23     likely than not) that the presence of the cash

24     facilitated the crime of possession of cocaine with

25     intent to distribute which defendant was convicted of

1    in count one." Period.  Bam.

2        MR. BARKELEY:  I mean, counsel, if you want, I guess

3   you can say you have been instructed on the meaning of

4   facilitation, and see instruction number whatever.  I mean, if

5   that's what you want.  Just short.

6        MR. COHEN:  I think that that's fine.  I just want to

7   make sure that the one you say see is the correct one.

8        THE COURT:  Well, you've got them before you, don't

9   you?

10        MR. BARKELEY:  I think it's eighteen.

11        MR. COHEN:  I -- do you have them in front of you?

12        MR. BARKELEY:  No.  But I -- I believe it's eighteen.

13        THE COURT:  See instruction eighteen --

14        MR. COHEN:  Well --

15        THE COURT:  -- regarding --

16        MR. COHEN:  Can I just look -- does the Court have it

17   in front of him?

18        THE COURT:  No, but I'll -- I obviously will look

19   before I send it back.  I've got it back here.  Eighteen

20   regarding the definition of facilitate.

21        MR. COHEN:  Well, I just want to make sure because

22   there's one that defines facilitating property and then there's

23   another one that defines facilitate.

24        THE COURT:  Which one do you want?

25        MR. COHEN:  The one that defines facilitate.

1          MR. BARKELEY:  Well, they need both now, don't they?

2     Aren't we saying the cash is facilitating property?  This is

3     what I mean.  This has gone from an instruction -- response

4     that --

5          THE COURT:  Okay.  I'm not going to give either one.

6     I'm going to do this:

7               "In response to your note of 11:53 a.m., the issue

8               before you is whether the Government has proven by a

9               preponderance of the evidence (more likely than not)

10              that the presence of the cash facilitated the crime

11              of possession of cocaine with intent to distribute

12              which defendant was convicted of in count one, and

13              which has more specific -- and which was more

14              specifically defined in these instructions."

15         MR. COHEN:  That's -- that would -- that would be

16    great.

17         MR. BARKELEY:  Mm-hmm (affirmative).

18         THE COURT:  And -- and which was more specifically --

19    and which is more specifically defined in the instructions.

20    Okay?

21         MR. BARKELEY:  Yes, Your Honor.

22         MR. COHEN:  That's fine, Your Honor.

23         THE COURT:  Now, I'm going to have Lynn or Carolyn

24    type this up before I send it back, and I'll make sure it says

25    just as I read it.

1          MR. BARKELEY:  Yes, Your Honor.  Thank you.

2          THE COURT:  Okay?  So I don't want to lose you again.

3  They may be getting close to a verdict and they may not.

4          MR. COHEN:  Your Honor, can I just ask the Court to

5  reconsider that earlier order?  Can I explain why?

6          THE COURT:  I don't want to lose you again.

7          MR. COHEN:  You're not going to lose me again.  I was

8  -- I -- I'm staying at the Regency right across the street.

9          THE COURT:  Well, now we know a little more.  Staying

10  at the Regency.

11          MR. COHEN:  Okay.  I'm staying at the Regency right

12  across the street.  I've been eating lunch there every day.  I

13  haven't had any trouble with my cell phone.  Today, I had a

14  lunch at a place called The Iris which is a different place.

15          THE COURT:  Okay.

16          MR. COHEN:  Apparently, when I walked out of there

17  from lunch, my cell phone had these messages, they all lit up.

18  It was -- there was no reception in there.  I have no intention

19  of going back there for the remainder of the afternoon.

20          THE COURT:  Okay.

21          MR. COHEN:  And I know that my cell phone has been

22  working in the Regency and outside.

23          THE COURT:  Okay.  You can be here or at the Regency.

24  How about that?  I don't want to lose you again.

25          MR. COHEN:  Yeah, I'm not going to go anywhere -- I'm

1    not going to go anywhere besides --

2           THE COURT:  Don't go sightseeing, don't go out

3    looking for the aurora -- Northern Lights or anything like

4    that.

5           MR. COHEN:  I'm not -- I'm not going to do anything

6    like that.  I'm not going to watch the Northern Lights, I'm

7    just going to be here, I'm going to pack, I'm going to call my

8    office and do some work --

9           THE COURT:  Okay.  You can do that --

10          MR. COHEN:  That's what I'm going to do.

11          THE COURT:  -- but if -- if -- we want to be able to

12   call you on your cell phone and have you answer it.

13          MR. COHEN:  I'm going -- I'm also going to give you

14   the number for the families who are in touch with me as well --

15   or give the clerk the number.

16          THE COURT:  Well, they need to have their cell phones

17   turned on, too.

18          MR. COHEN:  Well, they do.  I mean, I -- I think it

19   was only 'cause I was in a restaurant where it didn't have

20   reception.

21          THE COURT:  Okay.  Well, good luck on that.  All

22   right.  You can go to your hotel, but I just don't want to lose

23   you again.  Okay?

24          MR. COHEN:  Thank you, Your Honor.

25          THE COURT:  All right.  Carolyn, I need something

1    typed up.  I'm going to type up this answer and give it to

2    them.  I -- my writing (indiscernible - away from microphone),

3    so --

4              MS. BOLLMAN:  Are you going to go right into your

5    1:30 -- I mean, excuse me, your 1:15?

6              THE COURT:  Yes.  Yes.  I'm going right now.  So

7    we're -- we're in recess in this one.  Go right into the 1:15.

8              THE CLERK:  This matter is recessed.

9         (Recess at 1:12 p.m., until 3:04 p.m.)

10        (Jury not present)

11             THE CLERK:  All rise.  His Honor the Court, this

12   Court is again in session.  Please be seated.

13             THE COURT:  How's everybody doing?

14             MR. COHEN:  Very well, Your Honor.

15             THE COURT:  Okay.  I've got --

16             MR. BARKELEY:  Fine, thank you.

17             THE COURT:  -- two things.  One I was going to send

18   the jury this note that says:

19             "In the event you do not reach a verdict today, would

20             you like to reconvene tomorrow, Saturday, at 9:00

21             a.m., or on Monday, September 10th?  Please advise."

22             MR. COHEN:  That's fine with the defense.

23             MR. BARKELEY:  That's fine, Your Honor.  Thank you.

24             THE COURT:  I mean, that would make it real simple.

25   I don't care whether they stay or not, it just -- we just need

1    to know for --

2              MR. COHEN:  Right.

3              THE COURT:  -- for a lot of different reasons.  So

4    where's -- oh.  We can -- if we can deliver that to the

5    bailiff, I can take up my other issues.  Lynn, can you somehow

6    get that to the bailiff?  We'll go off the record while you do

7    that?

8              THE CLERK:  Yeah.  (Indiscernible.)

9              THE COURT:  Yes.  Okay.

10              THE CLERK:  Thank you.

11              THE COURT:  That was the first issue.  The second

12    issue, when the verdict comes back -- let's -- let's presume

13    that they come back with a verdict for the Government in some

14    regard.  I read the verdict into the record, but in the typical

15    case, I would then schedule sentencing.

16              MR. BARKELEY:  Yes.

17              THE COURT:  What do you -- how do you -- have you

18    thought that out?

19              MR. BARKELEY:  I haven't, Your Honor.

20              THE COURT:  But this is not the typical criminal

21    case --

22              MR. BARKELEY:  No.

23              THE COURT:  -- this is simply asking a question with

24    regard to an issue that doesn't require a new sentencing.

25              MR. BARKELEY:  No, it doesn't -- it doesn't require a

1   new sentencing and here's -- here's why not -- see what counsel

2   says to this, but I believe I've made a record of the fact that

3   because the Government conceded the argument as to whether Mr.

4   Colette waived on the record with Mr. Butler the right to a

5   jury trial on the criminal forfeiture issue, in return, in

6   writing --

7        THE COURT:  Mm-hmm (affirmative).

8        MR. BARKELEY:  -- defense said that it would not

9   object to the Court amending the preliminary order of

10  forfeiture to address -- to reflect whatever this jury decides.

11       THE COURT:  Okay.  So that can be done --

12       MR. BARKELEY:  By motion.

13       THE COURT:  That would just -- that doesn't require

14  reconvening in seventy-two days --

15       MR. BARKELEY:  No, no.

16       THE COURT:  -- it doesn't require anything to -- when

17  the verdict comes in.  It simply requires nothing.  We just

18  read --

19       MR. BARKELEY:  Correct.

20       THE COURT:  -- the verdict in, parties can -- the

21  parties will know what the jury said, I excuse the jury, excuse

22  the parties, and then Government files a motion to amend the --

23  whatever it would be --

24       MR. BARKELEY:  Yes.

25       THE COURT:  -- and I would enter an order consistent

1   with whatever the jury said.

2          MR. BARKELEY:  Yes.  And the order that you enter to

3   be consistent with what the jury says.  If the jury comes back

4   in Mr. Colette's favor --

5          THE COURT:  Right.

6          MR. BARKELEY:  -- in any regard or totally, then I

7   think it would be helpful just to move things along for the

8   Court to direct that the U.S. Marshals take steps to promptly

9   return the property which was not forfeited to Mr. Colette or

10  her desig -- his designee in accordance with the law.

11  Something -- something to that effect.

12         THE COURT:  Okay.

13         MR. COHEN:  Uh --

14         THE COURT:  Yes, Mr. Cohen.

15         MR. COHEN:  I'm sorry.  On -- on the second point --

16  you know, I -- again, I don't -- I'm not presuming at all that

17  anything would be resolved in our favor, but if it were, any

18  piece of it, and Mr. Colette would say this in open court, he

19  would authorize any return of any property to be to his family

20  or to his brother or his sister.

21         THE COURT:  Sure.  Well, why doesn't he do it right

22  now if he -- he's in open court.  Do we --

23         MR. COHEN:  Why -- why don't we do that, then we

24  don't have to involve the United States Marshals.

25         MR. BARKELEY:  Well, I'm not -- see, that's the part

4-97

1    I'm not so sure of, Your Honor.  I -- I -- I believe that the

2    Marshals are going to want a court order.

3              THE COURT:  Right.

4              MR. BARKELEY:  They might accept it if you said it

5    from the bench, it's up to them.

6              THE COURT:  No, but I mean I just want to -- I'm just

7    trying to think ahead.  What if there's --

8              MR. BARKELEY:  Yeah, it's a very good point.

9              THE COURT:  So if there's a verdict for the

10   Government, I do nothing --

11             MR. BARKELEY:  You simply await a motion, the

12   Government has to do something to make something happen.

13             THE COURT:  Okay.  If there's a verdict in any way

14   for the defendant, why not I do nothing else and await the

15   motion, too, and then sign the order, submitted by Mr. Cohen?

16   If --

17             MR. COHEN:  I mean, I -- that would be fine, although

18   I think that the Court would just order in the ordinary course

19   for the property to be returned to Mr. Colette's family.

20             THE COURT:  We know that's going to happen, but, you

21   know --

22             MR. COHEN:  Right.  Right.  I mean, I don't think

23   that -- I don't think that -- that it would require a further

24   motion.  Your Honor, may I have one moment to confer with Mr.

25   Barkeley?

1          THE COURT:  With who?

2          MR. COHEN:  With Mr. Barkeley.

3          THE COURT:  Oh, sure.  Let's go off the record.

4          THE CLERK:  Off record.

5     (Off record, at 3:08 p.m.)

6     (On record, at 3:13 p.m.)

7     (Jury not present)

8          THE COURT:  We've been off the record.

9          THE CLERK:  Back on record.

10          THE COURT:  We've been off the record.  Counsel have

11     been discussing a little bit about the consequence of a verdict

12     one way or the other, and why don't you clear that up for us.

13     Who wants to do that?  Mr. Barkeley or --

14          MR. BARKELEY:  If I may, counsel?

15          MR. COHEN:  That's fine, Your Honor.

16          MR. BARKELEY:  Thank you.  Your Honor, counsel have

17     spoken here in the courtroom about the question the Court --

18     Court fortunately raised, which is what various scenarios do

19     the parties see unfolding depending on what the jury verdict is

20     in this case.

21          In the event of a jury verdict completely or

22     partially in favor of the Government, the idea would be that

23     the Government would move for a preliminary order of

24     forfeiture --

25          THE COURT:  In a subsequent --

1          MR. BARKELEY:  -- in a subsequent motion --

2          THE COURT:  -- motion.

3          MR. BARKELEY:  -- which would reflect that the trial

4     had been conducted --

5          THE COURT:  Mm-hmm (affirmative).

6          MR. BARKELEY:  -- and that the jury had decided in a

7     certain way, and that the order contain the typical language in

8     it that says that -- that addresses the disposition of the

9     property from thereon by the United States Marshals, including

10    publication and moving the process along to a final decree of

11    forfeiture after eliminating through the ancillary proceedings

12    any interest of any third parties.

13          The other branch of this decision tree would be if

14    the jury came back and rendered a verdict completely or

15    partially in favor of Mr. Colette.  And in the event the jury

16    does that, then the Government would move again for a

17    preliminary order of forfeiture which would more accurately now

18    reflect the jury's verdict, more accurately when compared to

19    the previously entered preliminary order of forfeiture in this

20    case.  And once that was entered, it would also contain

21    language which would address the ultimate disposition of the

22    various assets by the Marshals.

23          Defense counsel correctly pointed out that -- and the

24    Marshals also came and talked to me, for which I thank them,

25    pointing out that the disposition of the property should be

1  addressed in this preliminary order, and it will be, no matter

2  now the verdict comes out because some of the property is being

3  held by the United States Marshals and some of it is in the

4  custody of ATF.

5          So this will have to all be custom fit to the jury's

6  verdict, but we would propose, no matter how the verdict goes,

7  to advise the Court to order -- seek permission to get the

8  Court to order the agencies in custody of property to be

9  returned to do so to Mr. Colette's designee and, similarly, if

10 the Government were to prevail as to one or more assets, the

11 instructions to the agencies for continuing forfeiture

12 proceedings accordance -- in accordance with the law would also

13 be in the order.

14         The -- in either case, if any property is left on the

15 table for forfeiture to the Government, the next step, which is

16 also reflected in that preliminary order, the Court in the

17 order typically, and would in this case just as usual,

18 authorize the publication of the notice of the preliminary

19 order of forfeiture, telling the rest of the world -- that is,

20 everybody except Mr. Colette whose interest in something has

21 been extinguished by the preliminary order -- telling the rest

22 of the world -- everybody in Fairbanks would read in the

23 newspaper if you had a claim to the thirty-eight thousand

24 dollars or one of these guns, you need to file a claim within a

25 certain time.  That would institute these ancillary

1  proceedings.

2          THE COURT:  Okay.

3          MR. BARKELEY:  Ordinarily, and I expect it in this

4  case because of the fact that all this stuff came from his

5  bedroom and I just don't -- I just don't think there will be

6  any third-party claims -- ordinarily, once the publication

7  period closes, no one files claims, then the Government moves

8  for a final decree of forfeiture.  And at that point, the

9  forfeiture proceedings are concluded.

10          What the parties had agreed upon previously, Your

11  Honor, was that in exchange for the Government's acquiescence

12  in the argument advanced by counsel that Mr. Colette did not

13  knowingly and intelligently waive his right to a criminal

14  forfeiture trial back in the proceedings on the original trial

15  when defendant was represented by Rex Butler, for giving up,

16  essentially, opposing -- opposing that argument, in return

17  defense counsel agreed that he would not object to an amended

18  preliminary order reflecting whatever this jury's decision may

19  be, or to a -- an amended judgment of conviction for the

20  defendant -- the JC in this case which the Court has already

21  issued pursuant to the previous IOS proceedings.

22          If there is some property forfeited, then that

23  becomes part of the defendant's criminal sentence and it will

24  relate back by this amendment to the time of the imposition of

25  sentence.

1      THE COURT:  Okay.  Do you agree with that, Mr. Cohen?

2      MR. COHEN:  I agree with all of that.  The only -- I

3  agree with all of that.  The only -- the only issue that I have

4  is, is that there's a pending appeal in the underlying case and

5  ordinarily of the forfeiture component had been in the original

6  judgment of conviction, then that would be part of the appeal.

7  So I'm -- I'm -- it's -- it's an unusual situation in terms of

8  do I have ten days from the amended judgment of conviction to

9  appeal this or ten days from the verdict today?  And I'm, out

10  of an abundance of caution, going to file an notice of appeal

11  within ten days of the verdict --

12      THE COURT:  Mm-hmm (affirmative).

13      MR. COHEN:  -- then I'm going to move to consolidate

14  that proceeding --

15      MR. BARKELEY:  Yes.

16      THE COURT:  Sounds -- sounds reasonable.

17      MR. COHEN:  -- before the Ninth -- in the Ninth

18  Circuit with the original proceeding, and if it turns out that

19  the Ninth Circuit concludes that they have to wait until the

20  amended judgment or whatever they conclude, that's up to them,

21  but at least I feel like --

22      THE COURT:  That you're safe.

23      MR. COHEN:  Yeah.  I'm going to do that and ask that

24  it --

25      THE COURT:  What happens if the verdict comes back