1  entirely for the defendant?

2        MR. COHEN:  Then, as I understand it, there would be

3  this -- this period of --

4        THE COURT:  Okay.

5        MR. COHEN:  -- of ancillary -- this period of

6  notice --

7        THE COURT:  Okay.

8        MR. COHEN:  -- and then -- and then it would be

9  returned.  And I think -- to the defendant -- but I think

10 that's why it might be useful for Mr. Colette on the record to

11 say that if -- in that event, any or all of it should be

12 returned to his family so we don't have the additional

13 complication of him being at Terminal Island or some other

14 federal facility at that time.

15       THE COURT:  Well --

16       MR. BARKELEY:  And -- and -- and -- I'm sorry, Your

17 Honor --

18       THE COURT:  I want to get -- I've got a -- I need to

19 get this resolved pretty quick 'cause I've got to make a phone

20 call before 3:30, so I don't want to keep talking in circles.

21       MR. COHEN:  Right.

22       MR. BARKELEY:  Okay.  Well, I -- this -- this -- this

23 -- just to make a correction, if the verdict came back

24 completely for the defendant --

25       THE COURT:  Mm-hmm (affirmative).

4-104

1          MR. BARKELEY:  -- there will be no preliminary order

2   of forfeiture.

3          THE COURT:  Okay.

4          MR. BARKELEY:  Okay?

5          THE COURT:  Then what will happen?

6          MR. BARKELEY:  Which -- which means -- which means

7   that what was said is just not quite accurate.  We don't do

8   ancillary proceedings --

9          THE COURT:  So what happens?  All I want to know is

10  what happens if the verdict comes back in favor of the

11  defendant?  What do we do?

12         MR. BARKELEY:  I -- I will work with defense counsel

13  to put an order together and a motion, submit it to the Court,

14  and the Court is going to have to tell the agencies that have

15  custody of each of those assets --

16         THE COURT:  Release the weapons and the money --

17         MR. BARKELEY:  -- to give them back.

18         THE COURT:  -- to a representative of the defendant.

19         MR. BARKELEY:  Yes.

20         THE COURT:  Now, can I put -- we have the defendant

21  sitting right here.  Why not ask him?  Is it okay with you,

22  sir, if -- if these items -- if you do prevail, the money and

23  guns are returned to who?  Who do you want them sent to?

24         THE DEFENDANT:  My brother Shawn or my sister Wendy.

25         THE COURT:  I need their full names.

1          THE DEFENDANT:  Shawn Colette or Wendy Colette.

2          THE COURT:  Okay.  And give us your name so it's

3  clear on the record.

4          THE DEFENDANT:  My name is Jason Colette.

5          THE COURT:  And you understand everything that's

6  going on here and -- if you prevail, you can't -- we can't send

7  you the guns to -- at the jail, you understand that.  So the

8  question is --

9          THE DEFENDANT:  Yes, yes, I do, and I -- I think I'm

10  with all this, so --

11          THE COURT:  Okay.  So you understand it all and what

12  -- if you prevail, there will be some motion practice,

13  ultimately the weapons, the money will have to be sent

14  somewhere, and we're going to send -- you can't say either,

15  you've got to tell us who to send them to.

16          MR. COHEN:  Say Shawn.

17          THE DEFENDANT:  Yeah, Shawn Colette.

18          THE COURT:  To your brother, Shawn Colette.

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you have an address for him?

21          THE DEFENDANT:  I do.

22          THE COURT:  What is that offhand -- if you can think

23  of it.

24          THE DEFENDANT:  701 North Marcel Loop, Palmer,

25  Alaska.

1          THE COURT:  Palmer, Alaska.  Okay.

2          MR. COHEN:  And, Your Honor, I guess that that would

3   also apply if it comes in our favor on any one of the counts.

4          THE COURT:  That would apply in your -- if he gets

5   anything back at all --

6          MR. BARKELEY:  Yes.

7          THE COURT:  -- it will be sent to his brother as his

8   agent, he's agreed to that.

9          MR. COHEN:  Yes, Your Honor.

10          THE COURT:  You, as his attorney, have agreed to

11   that.

12          MR. COHEN:  Yes, Your Honor.

13          THE COURT:  The Government has agreed to that.  What

14   more can -- and I agree to that.

15          MR. COHEN:  Right.

16          THE COURT:  What else can we do?

17          MR. COHEN:  The other -- the only other thing is, is

18   that in the event that some or all is forfeited to the

19   Government, I'd ask that it be preserved pending the appeal in

20   this -- in this case.

21          THE COURT:  Any problem with that?  The money, that's

22   not an issue.  It's whether the weapons --

23          MR. BARKELEY:  That's -- the money is not an issue.

24   I'm just trying to think of whether the weapons are -- are an

25   issue.

1    MR. COHEN:  Well, we're seeking -- I mean for two

2  reasons.  One is there would be an appeal of the forfeiture

3  proceeding --

4    THE COURT:  Right.

5    MR. COHEN:  -- but also, in the event that we get a

6  new trial on the underlying appeal, we'd certainly want the

7  evidence to be available.

8    THE COURT:  That makes sense.  So the evidence should

9  be maintained until this is resolved.  That makes sense.

10    MR. BARKELEY:  Well, then, Your Honor, you're going

11  to -- you'd have to stay the preliminary order -- I don't know.

12  We'll have to brief the Court on that -- that's just --

13    THE COURT:  Well, we'll address that in -- in motion

14  practice.  Okay.

15    MR. BARKELEY:  Yeah.  That would be addressed in

16  motion practice.

17    MR. COHEN:  Both the subject of the forfeiture and

18  any other evidence, we'd ask that it be preserved

19    THE COURT:  Okay.  And that makes sense --

20    MR. BARKELEY:  It's --

21    THE COURT:  -- but it'll be the subject of motion

22  practice, okay?

23    MR. COHEN:  That's fine, Your Honor.

24    THE COURT:  All right.  Now --

25    MR. BARKELEY:  Your Honor, one additional

4-108

1    complication.  I'm sorry, but -- but my case agent isn't

2    here --

3              THE COURT:  Yeah.

4              MR. BARKELEY:  -- and I'm not an ATF agent, but I can

5    tell you this, I strongly suspect that that machine gun can't

6    be returned to Shawn.  After all, it has to be applied for and

7    registered to a certain person --

8              THE COURT:  That makes sense.

9              MR. BARKELEY:  -- and -- and I don't think it can be

10   just given to your designee.  That's the one exception.

11             THE COURT:  Okay.

12             MR. COHEN:  Right.  Well, let's --

13             MR. BARKELEY:  It's a fully automatic machine gun.

14             THE COURT:  -- let's cross that bridge if we -- if we

15   need to, in addition to the point that I made about --

16             MR. BARKELEY:  There he is now.

17             MR. COHEN:  -- the attachments that are separate from

18   that.

19             THE COURT:  Sure.  This is -- you know, they go to

20   the defendant or his designee providing it's legal.  Obviously,

21   if he's not allowed to have it or if he doesn't qualify, then

22   he'll have to pick another designee.

23             MR. COHEN:  Yes, or -- or we'll wait until he becomes

24   qualified.

25             THE COURT:  Right.

4-109

1          MR. BARKELEY:  Your Honor, the agent will inform me

2    as to whether --

3          THE COURT:  Well, I --

4          MR. BARKELEY:  -- the machine gun (indiscernible)

5    back.

6          THE COURT:  No, I -- I don't need to be informed

7    because I know that -- I've been listening through this trial,

8    he has -- whoever gets it has to be licensed --

9          MR. BARKELEY:  Yes.

10         THE COURT:  -- and that's obvious.  So you don't give

11   it to someone who's not allowed to have it.  Okay.  Now if -- I

12   haven't gotten -- heard back from the jury.  I gave them that

13   notice, that was twenty minutes ago and I haven't -- maybe that

14   was -- they haven't given us the note yet to --

15         THE COURT SECURITY OFFICER:  No.

16         THE COURT:  -- answer that question?  Just check with

17   the bailiff and see if he has an answer.

18         MR. BARKELEY:  Maybe they're voting on that.

19         THE COURT:  I don't know.  Did you have a question?

20         MR. COHEN:  No, Your Honor.  I was just listening --

21         THE COURT:  Okay.  Here's my concern is I have a

22   trial starting in Sacramento on Monday.  Like 3:30, I have to

23   tell them whether or not they're going to call that jury in.

24   I've talked to Judge Burgess, he's willing to take the verdict

25   in this case if it comes in.  I'll be here as long as necessary

1  today and tomorrow morning, but judge verdict -- Judge Burgess

2  has indicated -- he's a district court judge in Alaska -- that

3  he will take the verdict if I'm not here.  Does the Government

4  have any objection to that?

5          MR. BARKELEY:  No, Your Honor.

6          THE COURT:  Any objection to that, Mr. Cohen?

7          MR. COHEN:  No, Your Honor.  Just -- and for -- I'm

8  sorry.

9          THE COURT SECURITY OFFICER:  They said a couple more

10  minutes (indiscernible - away from microphone).

11          THE COURT:  What does that mean?

12          THE COURT SECURITY OFFICER:  Ten more minutes.

13          THE COURT:  On the answer to the what?

14          THE COURT SECURITY OFFICER:  To your question that

15  you sent back to them.

16          THE COURT:  I have seven minutes.

17          THE COURT SECURITY OFFICER:  I told them that.  I

18  told him that you needed it by 3:30.

19          THE COURT:  I need it by before --

20          THE COURT SECURITY OFFICER:  Okay.

21          THE COURT:  They're sitting here in Sacramento.  But

22  they have agreed, haven't you, that Judge Burgess can take the

23  verdict if I'm --

24          MR. BARKELEY:  Yes.

25          MR. COHEN:  We -- we -- we have agreed, and if that's

1    the case, I may actually ask an attorney -- a local attorney to

2    stand in for me as well.

3            THE COURT:  To take the verdict?  That's -- I think

4    we've done everything but take the verdict, and do you -- you

5    oppose -- mind of a local attorney stands in for Mr. Cohen --

6            MR. BARKELEY:  No.

7            THE COURT:  -- if it comes in next week sometime?

8            MR. BARKELEY:  Certainly not.

9            THE COURT:  Okay.  So I'm going to tell the people in

10   Sacramento, A, I'll be there --

11           MR. BARKELEY:  Mm-hmm (affirmative).

12           THE COURT:  -- I'm going to tell you people that if

13   the verdict comes in any time next week, Judge Burgess will

14   take it, and he's a -- he's a legitimate United States federal

15   court judge, he'll fly -- and he's been here -- so he can

16   certainly do it.  I think we've addressed the issues that I've

17   wanted to address before that and as -- when the verdict comes

18   in, nothing happens.  We just read it into the record --

19           MR. BARKELEY:  Yes, Your Honor.

20           THE COURT:  -- and you file your appropriate motions

21   afterwards, so he doesn't have to do anything but say what's

22   the verdict, read it to the parties, and that's it, isn't that

23   right?

24           MR. BARKELEY:  Well, I believe so, Your Honor.  Does

25   -- you -- you take care of sending any notes that would come to

4-112

1  Judge Burgess --

2          THE COURT:  Right.

3          MR. BARKELEY:  -- while you're gone.

4          THE COURT:  He would just take -- yeah, right.

5          MR. BARKELEY:  Yeah, okay.

6          THE COURT:  And if he thought that it needed my

7  input, he'd call me on the telephone.

8          MR. BARKELEY:  Okay.

9          THE COURT:  Okay.  They circled Monday.  That means

10 they're not going to convene tomorrow.  That means they will --

11 they will come -- if they don't finish today, they'll come back

12 Monday at 9:00 a.m., and then they'll deliberate as long as

13 necessary afterwards.  So all they did was -- they didn't write

14 a thing, they just put a circle around the word "Monday."  So

15 they're taking the weekend off --

16         MR. BARKELEY:  Okay.

17         THE COURT:  -- if they don't reach a verdict by the

18 end of the day.

19         MR. COHEN:  And, Your Honor, what is the end of the

20 day?

21         THE COURT:  Well, let's make it five o'clock.  Is

22 that okay with you?  Or do you want to make it six o'clock to

23 -- I don't -- it doesn't matter.  I -- the written thing says

24 4:30, but I told them they could have a little more

25 flexibility, and we can stand by -- I'm told that these are --

1  we can stand by 'til five or six.

2         MR. COHEN:  Well, I just -- I just don't want to

3  pressure them, so --

4         THE COURT:  Well, I'm not trying to pressure them.

5         MR. COHEN:  Yeah.  So my view would be -- the

6  instruction says 4:30 --

7         THE COURT:  Well, I don't -- I -- it's a roughly --

8  they'll tell us -- they'll leave.  If they're still here at

9  six, we'll ask them what they're doing here.  But I suspect

10  they'll -- they'll come in at 4:30.  They usually come in

11  around 4:30 or five --

12         MR. COHEN:  I mean, I'm here until tomorrow morning,

13  so it doesn't matter when it is.  I just don't want to pressure

14  them.

15         THE COURT:  Okay.  And so, Mr. Colette, you just

16  heard your attorney say he might get another attorney to stand

17  in for purpose of the verdict.  Do you understand that?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  Is that okay with you?

20         THE DEFENDANT:  That's fine.  That's fine.

21         MR. COHEN:  (Indiscernible - away from microphone)

22  Covel (ph).

23         THE COURT:  Oh, Covel -- he's around.

24         MR. COHEN:  Yes.

25         THE COURT:  Today -- what was today -- today's

1   Friday.

2                MR. BARKELEY:  Friday.

3                THE COURT:  Okay.  So what we decided is that Judge

4   Burgess needs to get a ticket up here Monday 'cause it looks

5   like they're going to -- they're not going to deliberate

6   Saturday, so it doesn't do anybody any good to stay around here

7   Saturday.  Once they go home today, we're not going to have a

8   verdict until next week sometime, true?

9                MR. BARKELEY:  True.

10               MR. COHEN:  Right.

11               THE COURT:  And so my plan is I will stay here as

12  long as they stay today, then I'm going to depart, contact

13  Judge Burgess, he will take the verdict.  The verdict simply

14  involves reading into the record what the -- how the jury

15  answers these questions, or if they're hung to deal with them

16  you would any other hung jury on the issue.  Declare a mistrial

17  if appropriate, he can do all that, but he doesn't have to make

18  any other legal rulings 'cause that's going to all be addressed

19  in subsequent motion practice --

20               MR. BARKELEY:  Correct.

21               THE COURT:  -- right?

22               MR. BARKELEY:  Correct.

23               THE COURT:  Right, Mr. Cohen?

24               MR. COHEN:  Right, Your Honor.

25               THE COURT:  Okay.

1    MR. COHEN: And -- and as far as the motion I

2 referred to this morning, I understand the Government is

3 preserving the Jetski and the trailer pending my motion.

4    THE COURT: I don't know anything about that.

5    MR. BARKELEY: Yeah, I don't know anything about that

6 either.  I don't know what the Government's doing.

7    THE COURT: If you're entitled to the Jetski and the

8 whatever -- the trailer, and it's -- and it's been destroyed,

9 then you would be entitled to the value of it.

10    MR. BARKELEY: Right.

11    THE COURT: I mean, that's -- I mean, it might not be

12 the actual one, but you'd get the monetary value of it, I would

13 think.

14    MR. COHEN: I'd -- I'd ask if it exists for the

15 Government to preserve it, and would the Court ask the

16 Government to do that?

17    THE COURT: This is brand new to me.  You don't know

18 if it exists, do you?

19    MR. BARKELEY: No.  No, I don't know what happened

20 with it, and it's -- again, he's got to file the motion under

21 the statute involved and seek that authority from the Court and

22 -- no, we -- this is just not like a --

23    THE COURT: I would just be surprised if it still

24 existed, but maybe I'm wrong.

25    MR. COHEN: Well, it did exist a couple of months ago

1   and Agent Foran still had it, so --

2          THE COURT:  Well, maybe he -- does it still exist?

3   The Jetski?

4          AGENT FORAN:  I don't know, sir.  I think there was

5   one there when we did the search warrant.  I'm not aware --

6          THE COURT:  Okay.  Well, you might want to check and

7   see and if it's still there, try to make efforts not to destroy

8   it.  If it's gone, it's gone, and we're just talking about the

9   monetary value of it.

10         MR. BARKELEY:  Well, they're never destroyed by the

11  Government, Your Honor.

12         THE COURT:  Well, they're sold.  I mean, they're --

13         MR. BARKELEY:  Yeah.

14         AGENT FORAN:  If they're taken by DEA, sir, I didn't

15  have anything to do with that.

16         THE COURT:  Okay.  Well, just everyone act in good

17  faith.  I don't know where it is, I'm not going to go out and

18  look for it, but if it exists, it's a lot easier just to take

19  the Jetski and drive it back to his property then argue over

20  the value of it and try to come up with -- with money, but

21  anyhow --

22         MR. COHEN:  I -- all I'm saying is I think it's --

23  the Government could certainly ask Agent Foran to preserve it

24  if it still exists.  I don't think that's a --

25         MR. BARKELEY:  Your Honor, Your Honor, I -- I object

4-117

1    to this strongly.  Let me tell you why.  I know that DEA --

2    there is a procedure involved, Your Honor.  We don't just take

3    spare time --

4            THE COURT:  I don't have spare time.

5            MR. BARKELEY:  -- as counsel puts it, in a -- in a

6    trial and -- and say how about some more injunctive relief,

7    Judge Beistline.

8            THE COURT:  No, I don't have any spare time.  I've

9    got to make a phone call.

10           MR. BARKELEY:  The Government is not going to take

11   any steps with regard to that unless ordered --

12           THE COURT:  Okay.

13           MR. BARKELEY:  -- by the Court pursuant to it not

14   (indiscernible - simultaneous speakers) the motion.

15           THE COURT:  I'm not going to make any orders, but

16   it's understood that if it's destroyed, then he gets the fair

17   market value of it.

18           MR. BARKELEY:  Of course.  That's just -- that's just

19   the law, but my understanding is this has already been

20   administratively forfeited and the Government has no obligation

21   at this point to go look for it or find it or anything else.

22           THE COURT:  I think that's true, it has been

23   forfeited, but that may have been in error, and if it's in

24   error, he gets the fair market value of it.

25           MR. BARKELEY:  Correct.

4-118

1          THE COURT:  Okay?

2          MR. BARKELEY:  Yes.

3          THE COURT:  So you can wait around for the next --

4   looks like they're going to go for about an hour or so more.

5   Maybe there will be a verdict, you never know, or maybe there

6   won't.  Okay?

7          MR. COHEN:  All right.  So -- and -- so if the jury

8   is dismissed for the day, will -- will the Court let me know or

9   should I just come back --

10          THE COURT:  We could, but I -- I would suggest you

11   not go very far.  They've only been --

12          MR. COHEN:  I haven't.  I'm just -- I have a

13   (indiscernible).

14          THE COURT:  I mean, it's going to be an hour at most.

15          MR. COHEN:  That's what I'm asking.  So should I

16   check back in an hour or should I wait for a call?

17          THE COURT:  Either way.  You can -- we'll call you

18   and tell you they've left for the day or there's a verdict

19   but --

20          MR. COHEN:  All right.  Great.

21          THE COURT:  Okay.  I think we've resolved all the

22   issues, right?

23          MR. COHEN:  Right.

24          THE COURT:  Mr. Colette, any questions?  You look

25   like you have a question.

1          MR. COHEN:  Hang on a second.

2                    (Pause - side conversation)

3          MR. COHEN:  Right.  Mr. Colette just wants to point

4  out that it was brand new and if it's --

5          THE COURT:  Well, that goes to the market value.

6          MR. COHEN:  -- it was -- it was -- no, he's saying it

7  should be fair market value as -- at the time they seized it,

8  not today.  That's all he's saying.

9          THE COURT:  That's a good -- that might be a good

10  argument, I don't know.

11          MR. BARKELEY:  Your Honor, I just argued that in

12  front of the Ninth Circuit three weeks ago.  We'll find out, I

13  guess, but not today, not verbally.

14          THE COURT:  We'll wait 'til the Ninth Circuit answers

15  that question.

16          MR. BARKELEY:  Yes.

17          THE COURT:  Okay.  Are we done?

18          MR. COHEN:  I think so, Your Honor.

19          THE COURT:  Okay.  All right.  I'm going to be around

20  until they leave, and we know they're not going to be here the

21  weekend.  Okay.  Thank you.

22          THE CLERK:  This matter now stands in recess.

23      (Recess at 3:31 p.m., until 4:08 p.m.)

24      (Jury not present)

25          THE CLERK:  All rise.  His Honor the Court, this

1  United States District Court is again in session.

2          THE COURT:  Okay, counsel.  You see that the --

3  please be seated.  You see that the jury has reached a verdict.

4  Are you ready for me to invite the jury in and receive the

5  verdict?

6          MR. BARKELEY:  Yes, Your Honor.

7          MR. COHEN:  Yes, Your Honor.

8          THE COURT:  Okay.

9                          (Pause)

10      (Jury in at 4:08 p.m.)

11          THE COURT:  You look like the foreperson.  Is that

12  right?

13          JUROR NO. 1:  (Indiscernible - away from microphone)

14          THE COURT:  Okay.  I guess the only sad thing about

15  this is we won't be able to share next week together, will we?

16  But you're free to stop by the courthouse whenever you want.

17  Sir, did you reach a unanimous verdict to all counts?

18          JUROR NO. 1:  Yes, we did.

19          THE COURT:  Would you deliver a copy of that to the

20  bailiff, and I'll read it into the record.  Okay.

21                          (Pause)

22                          **VERDICT**

23          THE COURT:  Okay.  It's United States of America v.

24  Jason Scott Colette, 4:05-0042, and the jury as reached a

25  verdict with regard to special verdict number six:

4-121

1           "We, the jury, duly empaneled and sworn to try

2       the above-entitled cause do find the following:

3           "Should thirty-eight thousand eight hundred and

4       forty-eight dollars [$38,848] in United States

5       currency be forfeited?"

6   Answer:   "Yes."  Special verdict number seven:

7           "Should the Ingram Model 10A1 forty-five caliber,

8       nine-millimeter machine, serial number A6041381 with

9       silencer, a Bowers nine-millimeter suppressor, Model

10      CAC-9, serial number S927, be forfeited?"

11  Answer:   "Yes."  Special verdict seven:

12          "Should the Remington Woodsmaster Model 740, .30-06

13      rifle, serial number 83245, be forfeited?"

14  Answer: "No."  Special verdict number seven:

15          "Should the Colt Sporter 762 thirty-nine rifle,

16      serial number LH010714, be forfeited?"

17  Answer:   "Yes."  And then we get to the last one of verdict

18  seven:

19          "Should the Mossberg Model 500A, 12-gauge shotgun,

20      serial number L986808, be forfeited?"

21  Answer:   "Yes."  Now that is all the questions presented.

22          I'm going to ask my Clerk to ask each and every one

23  of you if this is your true and correct verdict, and you can

24  just say yes or no.  Madam Clerk?

25          THE CLERK:  Juror number 1, is the verdict just read

1   your true and correct verdict?

2          JUROR NO. 1:  Yes, it is.

3          THE CLERK:  Juror number 2, is the verdict just read

4   your true and correct verdict?

5          JUROR NO. 2:  Yes.

6          THE CLERK:  Juror number 3, is the verdict just read

7   your true and correct verdict?

8          JUROR NO. 3:  Yes.

9          THE CLERK:  Juror number 4, is the verdict just read

10  your true and correct verdict?

11         JUROR NO. 4:  Yes.

12         THE CLERK:  Juror number 5, is the verdict just read

13  your true and correct verdict?

14         JUROR NO. 5:  Yes.

15         THE CLERK:  Juror number 6, is the verdict just read

16  your true and correct verdict?

17         JUROR NO. 6:  Yes.

18         THE CLERK:  Juror number 7, is the verdict just read

19  your true and correct verdict?

20         JUROR NO. 7:  Yes.

21         THE CLERK:  Juror number 8, is the verdict just read

22  your true and correct verdict?

23         JUROR NO. 8:  Yes.

24         THE CLERK:  Juror number 9, is the verdict just read

25  your true and correct verdict?

1          JUROR NO. 9:  Yes.

2          THE CLERK:  Juror number 10, is the verdict just read

3    your true and correct verdict?

4          JUROR NO. 10:  Yes.

5          THE CLERK:  Juror number 11, is the verdict just read

6    your true and correct verdict?

7          JUROR NO. 11:  Yes.

8          THE CLERK:  And juror number 12, is the verdict just

9    read your true and correct verdict?

10          JUROR NO. 12:  Yes.

11          THE CLERK:  So say you one, so say you all.  Your

12    Honor, the jurors have been polled and all have answered in the

13    affirmative.

14          THE COURT:  All right.  Thank you, ladies and

15    gentlemen.  I appreciate your time.  Counsel, is there any

16    reason why we can't excuse the jury from the Government's

17    perspective?

18          MR. BARKELEY:  No, thank you, Your Honor.

19          MR. COHEN:  No, Your Honor.

20          THE COURT:  All right.  Really, we thank you very

21    much.  I know it's been a tough week to be inside when it's

22    beautiful outside, but you've got beautiful weather for the

23    weekend, so thank you very much.  Look forward to seeing you

24    again in two years.  Okay.  And you're excused.  If you have

25    any questions, by the way, I'll swing in there in a few

4-124

1    minutes, so just stay -- any procedural questions you might

2    have, okay?

3                            (Pause)

4        (Trial jury excused)

5            THE COURT:  All right.  Counsel, I'm going to give

6    the verdict forms to Lynn and she -- and it's free for you to

7    examine.  If you'll do that.  And if counsel would remain and

8    take your exhibits back.

9            MR. BARKELEY:  Yes, Your Honor.

10           THE COURT:  Anything else from the Government's

11   perspective for us to accomplish today?

12           MR. BARKELEY:  No, thank you, Your Honor.

13           THE COURT:  Mr. Cohen, anything else?

14           MR. COHEN:  No, Your Honor.

15           THE COURT:  All right.  Thank you all very much.  By

16   the way, counsel both did an excellent job.  I appreciate that.

17   Thank you.

18           MR. BARKELEY:  Thank you, Your Honor.  Thank you for

19   your help, too.

20           MR. COHEN:  Thank you, thank you.

21           THE CLERK:  This Court now stands adjourned, subject

22   to call.

23       (Proceedings concluded at 4:13 p.m.)

24

25

1

**INDEX**

2

Page

3

GOVERNMENT'S CLOSING ARGUMENT: Mr. Barkeley       4-6

4

DEFENDANT'S CLOSING ARGUMENT: Mr. Cohen           4-25

5

GOVERNMENT'S REBUTTAL ARGUMENT: Mr. Barkeley      4-54

6

VERDICT                                           4-120

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**NoDak Rose Transcripts**
*721 North 19th Street*
*Bismarck, North Dakota  58502-1752*
*(701) 255-1054*

1

## CERTIFICATE

2

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.

3

4

5

*D. Kathleen Stegmiller*                    *October 18, 2007*
Signature of Approved Transcriber                    Date

6

7

D. KATHLEEN STEGMILLER
Typed or Printed Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NoDak Rose Transcripts
721 North 19th Street
Bismarck, North Dakota 58501-4721