COPY

RECEIVED OCT 2 2 2007 CLERK, U.S. DISTRICT COURT ANCHORAGE, AK

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | DISTRICT OF ALASKA | |
| 3 | UNITED STATES OF AMERICA, ) | Case No. 4:05-cr-00042-JA-RRB |
| 4 | Plaintiff, ) | Fairbanks, Alaska |
| 5 | vs. ) | Friday, September 7, 2007<br>9:03 o'clock a.m. |
| 6 | JASON S. COLETTE, ) | **TRIAL BY JURY – DAY 4** |
| 7 | Defendant. ) | |

VOLUME IV
**TRANSCRIPT OF PROCEEDINGS**

BEFORE THE HONORABLE RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JAMES BARKELEY, ESQ.
                            Assistant U.S. Attorney
                            U.S. Attorney's Office
                            222 West 7th Avenue, #9
                            Anchorage, Alaska   99513-7567
                            (907) 271-5071

For the Defendant:          DAVID J. COHEN, ESQ.
                            Cohen & Paik, LLP
                            177 Post Street, Suite 600
                            San Francisco, California 94108
                            (415) 398-3900

Court Recorder:             LYNN GROVES-KELLEY
                            U.S. District Court
                            101 12th Avenue, Room 229
                            Fairbanks, Alaska   99701
                            (907) 451-4792

NoDak Rose Transcripts
721 North 19th Street
Bismarck, North Dakota  58501-4721
(701) 255-1054



1  that a juror forgot or something.  I don't know.

2          THE COURT:  I don't know.  I told them to take
3  their --

4          UNIDENTIFIED SPEAKER:  (Indiscernible - away from
5  microphone) one is the alternate.

6          THE COURT:  One is the alternate's.

7          UNIDENTIFIED SPEAKER:  (Indiscernible) there's
8  another one.

9          MR. BARKELEY:  There's more than one back there.

10         THE COURT:  So maybe they just didn't take notes.  I
11 don't know.  I told them they could take their notes with them,
12 so that -- that query can be made to the jurors, say there's
13 some note pads here, did anybody need a note pad?  If not,
14 we'll just take them.  Okay.  The exhibits have now gone back
15 to the jury as well as the instructions and the verdict forms.

16         Now, Mr. Cohen, now we don't have -- now -- no stress
17 now.  What -- what's your third point.

18         MR. COHEN:  All right.  So this -- this has to do
19 with the -- the purported administrative forfeiture of the
20 Jetski and the trailer.  That's come up at various times and --

21         THE COURT:  Don't know anything --

22         MR. COHEN:  What happened was at -- there was a
23 Jetski and a trailer that was outside of the --

24         THE COURT:  Okay.

25         MR. COHEN:  -- Mr. Colette's residence that was taken

1  by DEA on November 28th, 2005.
2          THE COURT:  'Kay.
3          MR. COHEN:  Now there's a -- there's a dispute about
4  whether Mr. Colette received notice of that administrative
5  forfeiture.
6          THE COURT:  'Kay.
7          MR. COHEN:  The Government's position is, is that
8  they sent out to the Fairbanks jail notice of the
9  administrative forfeiture, they produced a -- a green card
10 showing return -- a return receipt requested card which they
11 say shows that the notice of administrative forfeiture went to
12 the jail, and that there was no response made in time --
13         THE COURT:  Okay.
14         MR. COHEN:  -- and, therefore, it's forfeitable --
15         THE COURT:  All right.
16         MR. COHEN:  -- administratively.
17         THE COURT:  'Kay.
18         MR. COHEN:  Our position has been that Mr. Colette
19 did not receive appropriate notice at the jail.
20         THE COURT:  'Kay.
21         MR. COHEN:  The Government correctly pointed out that
22 -- that in order for us to make that motion, we need to do so
23 under --
24         MR. BARKELEY:  18 U.S. Code §983.
25         MR. COHEN:  -- (a)(1)(A).

1    THE COURT: 'Kay.

2    MR. COHEN: We have not made such a formal motion
3 because we were trying to get the information the Government
4 had and evaluate the overall situation, and I filed a
5 supplemental memorandum with the Court on this issue and we've
6 just -- it's just been kind of held in abeyance.

7    What I'd like to do, Your Honor, this morning if the
8 Court would permit it is to make that motion under -- under --
9 under that section for return of the -- for return of the
10 Jetski and the -- and the Caravan trailer which accompanied the
11 Jetski, the basis being that Mr. Colette did not receive notice
12 at the jail.

13    And I'm -- I'm in possession of the -- of the -- I'm
14 in possession of the green card that the Government provided to
15 us --

16    THE COURT: Mm-hmm (affirmative).

17    MR. COHEN: -- and I'm in possession also of the
18 document they say was sent to the jail together with the green
19 card.

20    THE COURT: All right.

21    MR. COHEN: And I -- and I've attached those to a
22 supplemental filing that I made back on (indiscernible) -- I
23 can't -- there's a whole bunch of them, I think it was May
24 29th --

25    THE COURT: 'Kay.

1          MR. COHEN:  -- or 23rd, but at the of May.  It's in
2   the -- it's Docket 284-1 that's in the court file.
3          THE COURT:  'Kay.
4          MR. COHEN:  I attached the two of those.  Now first
5   of all, there's no --
6          MR. BARKELEY:  Your Honor, object -- I'm going to
7   object to this.  He wants to hold some kind of a hearing --
8          THE COURT:  I don't know what's going on.  You've got
9   to tell me what you --
10         MR. BARKELEY:  -- or oral argument on something, he's
11  got to file a motion on it.
12         THE COURT:  Okay.  I don't know what you're talking
13  -- I mean I know what you're talking about, what are you asking
14  me to do?
15         MR. COHEN:  Well, I'm -- what I -- what I'm saying is
16  that I think it's something that since we have some time and
17  we're all here on this case, we -- the issue is pretty basic, I
18  think we can both present it to the Court and the Court could
19  -- can decide one way or the other.  I have -- I'm able to make
20  that motion now, I have a basis for it, and that's it.  I think
21  it's very basic.  The Government's going to argue that --
22  that --
23         MR. BARKELEY:  Counsel, let me argue what the
24  Government's going to argue, will you?
25         THE COURT:  Let -- let -- let -- right.  You're doing

1  fine with your argument.  Let --
2          MR. COHEN:  Well, sometimes they -- sometimes they
3  argue for me and they've actually won.  So --
4          THE COURT:  Okay.
5          MR. COHEN:  -- in the past, but -- so -- well, I'd
6  like to address it now.  If the Government thinks that -- is
7  saying --
8          MR. BARKELEY:  No.
9          MR. COHEN:  -- that -- that we shouldn't and I should
10 file a written motion, I -- you know, I can do that.
11         THE COURT:  That's typically what we do.
12         MR. COHEN:  I mean, I can do that, it's just -- it's
13 just --
14         THE COURT:  It's a notice issue.  Apparently he --
15 you're saying he got -- he did not receive notice.  I don't
16 know what the Government's going to say.  If he didn't receive
17 notice and the law wasn't complied with, then he gets it back,
18 right?
19         MR. COHEN:  Well, I think the way -- that there --
20         MR. BARKELEY:  Maybe.
21         THE COURT:  I don't know.
22         MR. BARKELEY:  Maybe.
23         THE COURT:  Maybe.
24         MR. COHEN:  Yeah.  What -- what --
25         THE COURT:  I haven't heard the side with -- I'd like

1 to hear from Mr. Barkeley.
2         MR. COHEN:  Okay.  Well, let me -- let me -- let me
3 just say that what -- what I found, which -- which I didn't
4 know before reviewing this -- all these documents, is that
5 there was -- Mr. Colette was represented by M.J. Haden from the
6 Federal Defender --
7         THE COURT:  'Kay.  Right.  She was here yesterday.
8         MR. COHEN:  Right.  And -- and M.J. apparently --
9 there were -- there were -- apparently there were two notices
10 that forms were sent out, one for the thirty-eight thousand in
11 currency --
12        THE COURT:  'Kay.
13        MR. COHEN:  -- and one for the Jetski and the
14 Caravan.  Now what I didn't know before and I -- and I found is
15 that M -- and I -- and I didn't -- I couldn't understand if
16 that's the case, why was the thirty-eight thousand dollars part
17 of this proceeding --
18        THE COURT:  Mm-hmm (affirmative).
19        MR. COHEN:  -- if they had sought the administrative
20 forfeiture and the time had run.
21        THE COURT:  It's done all the time, counsel.  This is
22 what we would have -- say in a brief if we were given a chance
23 to brief it.  This --
24        THE COURT:  Okay.  Well, I haven't even heard from
25 the Government yet --

1		MR. COHEN:  Well, let -- let -- let me --
2		THE COURT:  -- but I want you to finish your thought.
3		MR. COHEN:  But it appears from this document, which
4	I -- which I found, that M.J. received the notice of forfeiture
5	for the thirty-eight thousand dollars and filed a response to
6	it and that was why -- she filed the appropriate response and
7	it was sent back for a civil judicial proceeding.  And it's my
8	view that the green card the Government provided is a green
9	card for the thirty-eight thousand dollars because the Jetski
10	-- M.J. did not have notice of the Jetski, she had notice of
11	the thirty-eight thousand, that's what was in the certified
12	delivery to the jail, that's what Mr. Colette gave to M.J., and
13	that's what she filed a claim on.  If he had received the
14	Jetski notice, he would have given that to M.J. and she would
15	have filed a claim on that.
16		THE COURT:  So you're saying he didn't receive notice
17	of the Jetski, bottom line.
18		MR. COHEN:  And I'm saying -- I'm saying that the
19	green card that they produced is -- is a green card for the
20	thirty-eight thousand dollars and not for the Jetski.
21		THE COURT:  Okay.  Mr. Barkeley.
22		MR. BARKELEY:  Well, Your Honor, while counsel is
23	saying while we all have some time, it's -- it's been -- the
24	Government counsel has a lot of other matters to attend to and
25	has been on e-mail and and phone conversations, as I'm sure the

1   Court has.

2             THE COURT:  Mm-hmm (affirmative).

3             MR. BARKELEY:  This is not the time where we -- just
4   because we supposedly have extra time, we're going to have a
5   hearing on a motion counsel has not filed.  The statute, as the
6   Government has briefly repeatedly, this argument is frivolous.
7   The statute says this -- a motion under this section shall be
8   the exclusive remedy.  It doesn't say an oral motion at the
9   tail end of a forfeiture trial which was waived in the original
10  criminal trial shall be -- it says you file a motion, cite your
11  law, the Government gets a chance to respond both factually and
12  legally instead of dealing with this at the end of a four-day
13  trial.

14            THE COURT:  Okay.

15            MR. BARKELEY:  That's what you need to do, not talk
16  about --

17            THE COURT:  So what you're saying is you're not
18  willing to do it here on this ex parte -- I mean --

19            MR. BARKELEY:  Absolutely not.  I'm not prepared to
20  do that.

21            THE COURT:  Okay.  And I think that's true.  I --
22  this is the first time I've really given the -- the matter any
23  thought.  Obviously --

24            MR. COHEN:  That -- that's -- that's completely fair.
25  I'm not -- I'm not disputing what Mr. Barkeley says and I can

4-74

1   file a written motion.
2           THE COURT:  Well, I -- 'cause I want to make the
3   right decision.  I don't want to make a decision without
4   briefed --
5           MR. COHEN:  I'm also -- I was only -- right.  I was
6   -- I was -- I was just raising it 'cause we're all here and I
7   thought maybe we could -- maybe we -- since we're all here and
8   we're -- we're -- we're -- this case has been called, maybe we
9   could deal with it right now.  If -- if Mr. Barkeley wants a
10  notice motion and an opportunity to respond, he's entitled to
11  that obviously, and that's -- that's --
12          THE COURT:  And he said he wants it.
13          MR. COHEN:  -- that's fine, and we can do -- we'll do
14  it that way.
15          THE COURT:  Okay.  Good.  He may agree with
16  everything you say after he's had a chance to look at what you
17  say.
18          MR. COHEN:  Well, he may.  He has before --
19          MR. BARKELEY:  That's true.
20          MR. COHEN:  -- on some things.
21          MR. BARKELEY:  I might, but the Court deserves to be
22  fully informed --
23          THE COURT:  That's --
24          MR. BARKELEY:  -- and that means the lawyers get to
25  brief it and we get -- we've got to find out what happened at

NoDak Rose Transcripts
721 North 19th Street
Bismarck, North Dakota 58501-4721
(701) 255-1054