NELSON  P. COHEN
United States Attorney

BRYAN SCHRODER
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone:  (907) 456-0245
Fax: (907) 456-0577
E-mail: bryan.schroder@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  4:05-cr-00042-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S OPPOSITION** |
| vs. | ) | **TO DEFENDANT'S MOTION** |
| | ) | **FOR A NEW TRIAL** |
| JASON SCOTT COLETTE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

COMES NOW  the United States of America, by and through counsel, and

opposes defendant's motion for a new trial. The Defendant, one year after the final

District Court proceeding in this case, has filed a motion for new trial based upon

information he received at during the time of that final proceeding.  Thus, he has

been holding this "newly discovered evidence" for one year.

The Defendant's motion for new trial must be denied because the additional information he received at the forfeiture trial would not have effected the outcome of the criminal trial. The Defendant's cites three bases for requesting a new trial, the discovery of new evidence under Federal Rule of Criminal Procedure 33, violations of U.S. v. Brady, 373 U.S. 83 (1963), and U.S. v. Giglio, 405 U.S. 150 (1972), and violations of the Jencks Act, 18 U.S.C. § 3500. The legal standards for all three of his complaints require a showing that the additional information would have changed the outcome of the trial. The evidence cited by the defendant does not meet that standard.

The additional information is related to the testimony of two witnesses. The cited evidence is almost solely useful for impeachment, and would have had no effect on the trial. The Defendant tries to paint these witnesses as critical to the guilty verdict in the original trial, referring to all other evidence introduced at trial as "circumstantial evidence." That evidence is not circumstantial, but direct physical evidence that the defendant was selling cocaine in his residence. The evidence introduced at trial included 23 individually wrapped ounces of cocaine, over ½ kilo of cocaine ready for sale, $38,000 in cash wrapped in $1000 bundles, and a submachine gun with a silencer, all in the defendant's bedroom, along with

scales, bindles, and other paraphernalia that indicated a drug distribution operation. What the defendant tries to characterize as "circumstantial evidence" is really direct and powerful physical evidence that showed he was dealing significant amounts of cocaine from his home.

The additional evidence is primarily cumulative, and would have had minimal impeachment value. Special Agent Cohoon's participation in the case was documented in case reports, thus his Grand Jury testimony provided little additional material information. Moreover, his trial testimony was limited to the execution of the search warrant and the seizure of the firearms. The few "inconsistencies" identified by the Defendant, even if they were true, were either not inconsistencies at all, or so minor as to have no effect on the jury's verdict.

The tape of the interview with Eugene Johnson that was turned over during forfeiture trial has no reference to Colette. It is merely an elongated discussion of the deal he wanted in return for cooperating with law enforcement. Throughout that discussion, the law enforcement officers consistently told Johnson that they could not promise a specific deal, but his cooperation would be identified to the District Attorney, and the more valuable his cooperation proved to be, the better the final deal. This information was well known to the defendant at the criminal trial.

I.    HISTORY OF THE CASE

On November 28, 2005, the defendant was arrested after officers searched his home in Fairbanks, Alaska.  The search, pursuant to a State search warrant, revealed 23 individually wrapped ounces of cocaine, a plastic container holding a smaller amount of additional cocaine and $38,000 in currency wrapped in $1000 bundles, and a fully automatic machine gun with a silencer, all in a safe in the defendant's bedroom.  Also in the bedroom the officers found digital scales, plastic bindles, and plates with cocaine residue, all consistent with a cocaine packaging and distribution operation.

The search warrant was obtained through a state magistrate, based upon the live testimony from two witnesses, Sergeant Ron Wall of the Alaska State Troopers, and Eugene Johnson, who had recently purchased cocaine from the defendant in the bedroom of the defendant's residence.  Officers had served a search warrant on the residence of Eugene Johnson on the morning of November 28th, and Johnson agreed to cooperate.

After the defendant's arrest, the Federal Magistrate Judge in Fairbanks held a preliminary hearing on December 8, 2005.  Based upon the Testimony of Special Agent Foran of the Drug Enforcement Administration (DEA), the defendant was held over pending indictment.  The defendant was indicted by the federal grand

jury on December 13, 2005. The grand jury witnesses for the Government were Special Foran and Special Agent Eric Cohoon of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

There was extensive pre-trial litigation, mostly related to the search warrant. Included was a defense motion to provide the identity of informants. In addition to Eugene Johnson as a Confidential Source (CS) in the case, Sgt. Wall testified at the search warrant proceeding that he had a previous confidential source, who a year earlier had identified the defendant as dealing drugs from his residence, thus somewhat corroborating Johnson's testimony. The defendant moved the Court to require the Government to identify that second CS. The issue was fully litigated, with the Court refusing to require the Government to identify a CS who's only minor role was in securing a search warrant. The Magistrate Judge also recognized that during the evidentiary hearing on the matter the defendant revealed he already knew the identify of the second CS. Docket 100. The second CS did not testify at trial.

The case went to trial on August 1, 2006. In the period leading to trial, the Government reviewed its files for potential material to discover to the defense under the requirement of Jencks and Brady/Giglio. Exhibit A, Declaration of Bryan Schroder. Based on this review, material was turned over to the defendant

on July 27and 28, 2006.  At the time the case was indicted in December 2005, the

testimony of the two grand jury witnesses, Special Agents Foran and Cohoon, was

not transcribed.  Id.  Moreover, the tapes of the grand jury testimony are

maintained by the grand jury court reporter, not in the Government files.  Id.

Thus, when the Government searched the files, no physical grand jury materials

were found, and the Government mistakenly failed to identify and retrieve the

recordings. Id.  The defendant claims to have made a request for Jencks material

pre-trial, but provides no citation to support that claim.   Docket 345, Trial

Transcript, p. 2.   Moreover, the while the defendant claims that he made a general

request for Jencks, he does not claim to have specifically requested grand jury

material, which likely would have triggered a specific search for the tapes of the

grand jury testimony.  Id.

       During the trial, Defense Counsel suggested that the state officers likely

recorded a conversation with Eugene Johnson on November 28, 2005, when the

officers searched his residence.  Docket 346-14, Trial Transcript, p. 1-151 to 1-

152. The defense requested any recording, and notes specifically of the troopers

for that interview on November 28, 2005.  The Government requested through Sgt.

Wall that the tape or notes be produced.  Sgt. Wall reported to the Government

that state officers were unable to find the tape.  That information was reported to

the Court.    Docket 346-14, Trial Transcript, p. 1-254.

One year later, at the subsequent forfeiture trial, new defense counsel specifically requested grand jury material. The defendant also renewed his request for the tape of any interview with Eugene Johnson.  Docket 346-28, Forfeiture Trial Transcript, p. 1-26 to 1-27.  This prompted a search for the material, and on September 5, 2007 the recording of the grand jury testimony was turned over to the defendant.  Docket 346-35.  The Government again asked the State law enforcement officers to search for the tape, which they were able to find.  It was provided to the defendant on September 7, 2007.  Docket 346-37.

II.    THE MOTION FOR NEW TRIAL MUST BE DENIED BECAUSE THE DEFENDANT FAILED TO MEET THE REQUIREMENTS FOR A NEW TRIAL; MOST IMPORTANTLY, THE "NEWLY DISCOVERED EVIDENCE" WOULD NOT RESULT IN AN ACQUITTAL.

The defendant is making his motion for new trial under Federal Rule of Criminal Procedure 33.  Motions for new trial should be granted "only in exceptional cases."  U.S. v. Pimental, 645 F.2d 538, 545 (9th Cir. 1981).

A.    Newly Discovered Evidence

"Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored and are viewed with great caution." Wright, Federal Practice and Procedure: Criminal 2d §557

(West 1982). In order to make out a motion for new trial based on newly discovered evidence, the defendant bears the burden of showing that: (1) the evidence was newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence will be neither cumulative nor impeaching; and (5) the evidence indicates that a new trial will probably result in acquittal. United States v. Sarno, 73 F.3d 1470, 1507 (9th Cir. 1995). In order for alleged new evidence to justify a new trial, it must, of course, be admissible. Kamel, 965 F. 2d at 491. "A Rule 33 motion based on 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged." United States v. Mett, 65 F.3d. 1531,1533 (9th Cir. 1995); United States v. Hanoum, 33 F.3d 11128, 1130 (9thCir. 1994) (newly discovered evidence of ineffective assistance of counsel does not excuse failure to file motion within 7 day limit). For this reason, for example, newly discovered evidence that is merely cumulative or impeaching cannot form the basis for a new trial. See United States v. Krasny, 607 F.2d 840, 843 (9th Cir. 1979). The trial judge has broad discretion to decide that new evidence is not sufficiently credible to support a motion for new trial. United States v. Diggs, 649 F.2d 731, 740 (9th Cir. 1981).

The defendant identifies the following information as new facts:

1.     That Eugene Johnson lied at trial by stating that he had been offered no jail time in exchange for his testimony. Motion for New Trial, Docket 345, p. 19.

2.     That Eugene Johnson only admitted to using marijuana at trial, when he had previously admitted using cocaine. Id.

3.     In his initial interview, Johnson lied about being a drug dealer. Id.

4.     Eugene Johnson failed to mention the machine gun during his interview, despite giving a "detailed account of the events." Moreover, Johnson only mentioned the machine gun at trial. Id.

5.     Johnson told law enforcement officers during the interview that he had been tipped off about their search of his house. Id.

6.     SA Cohoon lied to the grand jury when he stated that the defendant declined to provide the combination to the safe in the bedroom. Id. at 21.

7.     SA Cohoon lied to the grand jury when he stated that the defendant told him that he shared his bedroom with Karen Koch. Id. at 21.

8.     That in his grand jury testimony about Johnson's meeting with the defendant where he saw the machine gun, SA Cohoon originally stated that Johnson initiated the conversation about the gun, and in later testimony, both at grand jury and at trial, Cohoon stated Colette initiated the conversation. Id. at 21.

9.     That in his grand jury testimony, Cohoon stated that the magazine was not inserted into the machine gun, but at trial he stated it was. Id. at 21.

The defendant's "new facts" fail to meet the standards for a new trial under

F.R.Cr.P. 33 and the applicable precedent.

      1.   <u>Newly Discovered</u>

A number of the items cited above are not newly discovered evidence because they are incorrect or unsupported, thus not evidence. In item number 3, the defendant claims that Eugene Johnson admitted to being a drug dealer at trial, but denied being a drug dealer during his initial interview on November 28, 2005. The defendant fails to provide a citation to the interview to support that theory. In item 4, the defendant claims that Johnson gave a "detailed account of the events" during his interview on November 28, 2005, but failed to mention the machine gun. He goes on to claim that Johnson mentioned the machine gun for the first time at trial. The defendant is incorrect. The transcript of the Eugene Johnson interview provided by the defendant at Docket 346-37 shows only a discussion of the deal Eugene Johnson was hoping to obtain. There is <u>no</u> discussion of his purchase of cocaine from the defendant, much less a "detailed accounting." Moreover, Eugene Johnson testified about the machine gun at the original hearing in search of the state search warrant on November 28, 2005. Exhibit B. Thus, the defense had that information months before trial.

In item number 5, the defendant claims that he was unaware that Eugene Johnson said he had been tipped off about the police searching his house. In fact,

that statement by Eugene Johnson was well known to the defense, and Johnson was cross examined on that issue at trial.  Trial Transcript, Docket 346-16, p. 1-238 to 1-240.  The defendant goes on to claim that he was deprived of making the argument that Johnson may have hidden his cocaine in Colette's house, then gave up the defendant to save himself.  However, that was the exact argument made by defense counsel at trial.   Trial Transcript, Docket 346-22, p.3-25 to 3-28.  This was evidence was know to the defense and used extensively at trial, thus is not newly discovered.

As to SA Cohoon's testimony, in item 6 the defendant claims that SA Cohoon lied in grand jury when he stated that the defendant refused to provide the combination of the gun safe.  The defendant also claims in item 7 that Cohoon lied when he stated in grand jury that the defendant admitted he shared the bedroom at his residence with Karen Koch.  In both instances, the Defendant only cites the grand jury statements, and provides no citation to support his claim that those statements were false.  It is important to note that at trial, SA Cohoon provided only limited testimony, only related to the execution of the search warrant and the seizure of the firearms.  Trial Transcript, Docket 346-19 and 346-20, pp. 2-107 to 2-135.  SA Cohoon gave no trial testimony related to items 6, 7, or 8.

2.    <u>Lack of Diligence</u>

While this factor is most often related to the defendant's diligence in finding evidence, it is also appropriate for the Court to hold the defendant accountable for lack of due diligence in bringing the evidence to the attention of the court.  <u>U.S. v. Frankfeld</u>, 111 F.Supp. 919, 923 (D.Md. 1953).  The defendant has had possession of the "new" information since the time of forfeiture trial in August/September of 2007, but did not file the motion for new trial until the end of July in 2008.  In addition to the delay in filing the motion for new trial, in the intervening year the defendant has filed 7 motions to continue the filing of his opening brief to the Ninth Circuit Court of Appeals.  Coincidentally, the Motion for New Trial was filed the day before the defendant's brief was due to the Ninth Circuit on the 7th continuance.  The defendant the next day promptly filed for an 8th continuance. The defendant has exhibited a pattern of delay in the past year, a time when he had full knowledge of the "newly discovered" information that is the basis for his motion for new trial.  His lack of diligence should not be rewarded, and his motion for new trial should be denied.

3.    <u>Cumulative or Impeaching</u>

With the exception of item 6 of the defendant's claimed new evidence, the remaining items relate only to possible impeachment of the witnesses.  They are

claims of lies or inconsistent statements by either Eugene Johnson or SA Cohoon. The defendant admits that value of the evidence is to impeach the credibility of the witnesses.  Docket 345, p. 18-25.   Moreover, as was discussed above, the information in item 6 was known to the defense and used in trial for both cross examination and in closing.  Thus, at best, that piece of information is cumulative. New information that is only valuable for impeachment, or that is cumulative, is not a basis for a new trial.  U.S. v. Yang, 281 F.3d 534, 551 (6th Cir. 2002).   The defense had significant evidence with which to impeach Eugene Johnson related to his drug dealing, including his own admissions.  The items of "new evidence" related to SA Cohoon were mostly related to matters that he did not testify to at trial.

The defendant tries to bolster the limited value of this impeachment evidence by claiming that the remainder of the Government's case was "circumstantial evidence."  What the defendant thinks is circumstantial evidence was in fact powerful physical evidence: 23 individually wrapped ounces of cocaine, $38,000 in case wrapped in $1000 bundles, a machine gun with a silencer, scales, and other packaging materials.  All of this was found in the defendants bedroom, directly tying him to the drug distribution operation.  The testimony of the witnesses was primarily corroborative, supporting the clear story

told by the physical evidence.

In support of his proposition that impeachment evidence can be considered in the determination for a new trial, the defendant cites the case of <u>U.S. v. Davis</u>, 960 F.2d 820 (9th Cir. 1991). <u>Davis</u> is distinguishable on the facts, because situation was so egregious. In <u>Davis</u>, one of the key witnesses in the case was an undercover police officer. The defendants were trying to buy cocaine, so they were not in possession of any drugs. After the trial, the officer was indicted on charges related to stealing confiscated drug money. He pled guilty to structuring currency transactions to avoid reporting requirements, and was pending trial on other charges at the time of the appeal. <u>Id</u>. at 823-824. The Court recognized that newly discovered impeachment evidence is not a sufficient basis for a new trial, but if a witnesses testimony is uncorroborated, and the impeachment evidence was so powerful that it would make the testimony of the witness "totally incredible," it may qualify for a new trial under the "interests of justice" prong of F.R.Cr.P. 33. <u>Id</u>. at 825. That is certainly not the case in this instance. The impeachment value of the items specified by the defendant was minimal, and some were already known to the defense. Moreover, the testimony of the witnesses, especially Eugene Johnson, was strongly corroborated by the evidence found during the execution of the search warrant. <u>Davis</u> is inapplicable, and a new trial should not

be ordered on simple impeachment material.

### 4.     Evidence that a New Trial would result in Acquittal

The final requirement for a new trial based on newly discovered evidence is that the new evidence would result in an acquittal at a subsequent trial.  None of the new evidence in this case reaches that standard.  The specific items of evidence cited by the defendant, as listed above, are too limited to possibly effect the outcome of a trial.  This is especially true given the significant amount of physical evidence introduced against the defendant.

In item 1, the defendant claims that Eugene Johnson lied at trial by stating that he had been offered no jail time in exchange for his testimony.  In fact Eugene Johnson was more equivocal about this issue than the defendant portrays.  In the course of cross examination, Johnson stated that given the situation of an early morning search of his residence by law enforcement officers, his memory was not complete, and it was possible that the officers told him they would have to confer with the DA.  Docket 346-17, Trial Transcript, p. 2-15.  Even, if the defendant's contention was true, the defense counsel fully explored the deal between Johnson and state law enforcement officers in his cross-examination of Johnson and Sergeant Wall.   Docket 346-17, Trial Transcript, p. 2-13 to 2-15, and Docket 346-15, Trial Transcript 1-195 to 1-197.  This equivocal bit of information would have

had no effect on the jury.

In items 2 & 3, the defendant claims Johnson lied about being a drug dealer during his initial interview, and only admitted using marijuana at trial. However, at trial Johnson clearly admitted to the most damaging piece of evidence, being a drug dealer. Docket 346-16, Trial Transcript 1-215. He even admitted a willingness to be a violent drug dealer and steal from his competitors. Docket 346-16, Trial Transcript 1-222. The minor pieces of information in items 2 & 3, even if true, would have had little additional sway with the jury.

In item 4, the defendant claims that Eugene Johnson failed to mention the machine gun during his interview, despite giving a "detailed account of the events." Moreover, the defendant claims that Johnson only mentioned the machine gun at trial. As discussed above, this claim is false. Even if it were true, this additional information would not lead to an acquittal on the drug charges, and the defendant was already acquitted of the specific weapons charge. The information about the firearms is only a limited part of the proof on the drug charges, especially compared to the significant amount of physical evidence presented at trial. The evidence in item 4 would not result in an acquittal.

In item 5, Johnson told law enforcement officers during the interview that he had been tipped off about their search of his house. As stated above, the

defendant knew this information at the time of trial, and in fact cross-examined the

defendant on this matter.  Any additional information on this matter found in the

initial interview with Eugene Johnson would not have assisted the jury and would

not result in an acquittal.

As to the new information related to SA Cohoon, items 6,7, 8 are all matters

that SA Cohoon did not address in his limited testimony at trial.  Because the jury

did not hear this evidence, it had no effect.  Even if this information were

introduced at trial, in is inculpatory, not exculpatory, and would only help the

Government's case, not result in an acquittal.

In item 9, the defendant claims that SA Cohoon, in his grand jury testimony,

stated that the magazine was not inserted into the machine gun, but at trial he

stated it was.  This minor inconsistency is of minimal impeachment value.  The

key piece of information provided by SA Cohoon was that the machine gun was

unloaded.  He was clear about that fact in both instances.  Docket 346-19, Trial

Transcript 2-111, and Docket 346-35, Grand Jury Transcript, p. 16 (p. 14 of the

transcript).  That key fact went to the benefit of the defendant, who was acquitted

of the firearms charge directly related to the machine gun.  Even if the defendant's

claim were true, the minor inconsistency of whether the magazine was in the

firearm or not, would have no effect on the jury.

To evaluate the defendant's motion for new trial based on discovery of SA

Cohoon's grand jury transcripts and the tape of the initial interview with Eugene

Johnson, the Court must examine the defendant's specific claims related to

particular pieces of information.  As the Government has discussed above, those

pieces of information do not meet the legal standard for a new trial under

F.R.Cr.P. 33.  Nor would all the evidence, if examined as a whole, cause a jury to

acquit, as claimed by the defendant.  The evidence would be primarily used for

impeachment, and then only related to issues that were fully addressed at trial.

They would have no effect on a future jury verdict.

> B.     Interests of Justice

The defendant's argues that Government has committed a <u>Brady</u> violation,

thus creating a constitutional violation that demands a new trial to meet the

interests of justice.  As discussed specifically below, the Government has not

committed a <u>Brady</u> violation that would result in a new trial.  Thus, the

defendant's request for a motion for new trial on these grounds should be denied.

II.     <u>THERE IS NO BRADY VIOLATION BECAUSE THE ITEMS OF "NEW" INFORMATION IDENTIFIED BY THE DEFENDANT WERE NOT MATERIAL</u>.

> A.     General Standards

The government has an obligation under <u>Brady</u> to provide exculpatory

evidence to a criminal defendant. To establish a violation of that obligation, the

defendant must show the evidence to be (1) material; (2) favorable to the accused

because it is either exculpatory or impeachment material; and (3) suppressed by

the government, either willfully or inadvertently. U.S. v. Blanco, 392 F.3d 382,

387 (9th Cir. 2004).

Under <u>Giglio</u>, the government's obligation to disclose evidence extends to

that which could be used for impeachment purposes, when the reliability of the

witness may be determinative of the defendant's guilt or innocence. Id.

B.     <u>Materiality</u>

For issues of constitutionally mandated discovery, such as <u>Brady</u> and

<u>Giglio</u>, there is no such thing as a *per se* violation. Rather, the impact of the

prosecution's failure to disclose certain material turns on whether the evidence is

material or whether there was a reasonable likelihood that disclosure would have

affected the outcome. Strickler v. Greene, 527 U.S. 263, 281 (1999) (a <u>Brady</u>

violation turns on more than non-disclosure of exculpatory material; there cannot

be a <u>Brady</u> violation "unless the nondisclosure was so serious that there is a

reasonable probability that the suppressed evidence would have produced a

different verdict"); <u>Giglio</u>, 405 U.S. at 154 (the evidence at issue must be material,

and a new trial would be appropriate if the false testimony could in any reasonable

likelihood have affected the jury's decision).

A Brady/Giglio violation is only possible if the evidence is material.  U.S. v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988).  The 9th Circuit Court of Appeals further clarified that:

> The evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

Id. (Quoting U.S. v. Bagley, 473 U.S. 667, 682 (1985)).

As discussed above in section II. A, especially section II.A.4, the specific pieces of "new" information identified by the defendant, even if accepted as true, are relatively minor matters primarily related to impeachment, and would not result in an acquittal at a new trial.  Thus, for the same reasons discussed above, there is no reasonable probability that,  had this information been disclosed to the defense, the results of the proceeding would have been different.

The limited nature of the information would have done little to undermine the credibility of the witnesses, and the significant weight of the physical evidence of a drug distribution operation, and the defendant's role as the distributor, provides significant confidence in the guilty verdict by the trial jury.

Moreover, the materiality of the taped interview with Eugene Johnson was

extremely limited because the defendant had information on the terms of the deal

Johnson had made with the State law enforcement authorities.  That information

was available from a number of different sources, including the transcript of

Johnson's testimony before the magistrate prior to the search warrant.  <u>See</u>, <u>Pippin</u>

<u>v. Dretke</u>, 434 F.3d 782, 789-90 (5th Cir. 2005) (No Brady violation for failure to

turn over government ballistics report when defendant had access to evidence and

had testing done by their own expert).  The defendant has not made a sufficient

showing why the information from the taped interview with Johnson varied with

any level of significance from the information the defendant had at trial about the

deal.  The defense counsel cross-examined both Sergeant Wall and Eugene

Johnson on the terms of the deal.  Docket 346-17, Trial Transcript, p. 2-13 to 2-15,

and Docket 346-15, Trial Transcript 1-195 to 1-197.  The additional discussion on

the tape was not material because it did not add useful information.

> C.    <u>The Government did not Suppress the Grand Jury Testimony of SA
> Cohoon under Brady/Giglio Because the Information Contained in
> the Testimony was Inculpatory, not Exculpatory</u>.

The testimony of SA Cohoon to the grand jury, which was for the purpose

of indicting the defendant, was inculpatory, not exculpatory.  Moreover, the

defendant has made an insufficient showing that the testimony or notes of SA

Cohoon have any material impeachment value.  Thus, the grand jury testimony

and agent notes are not <u>Brady</u>/<u>Giglio</u> material.

III.   <u>THE GOVERNMENT'S INADVERTENT FAILURE TO TURN OVER
       JENCKS MATERIAL IS HARMLESS ERROR AND NOT
       APPROPRIATE FOR THE SANCTION OF A NEW TRIAL</u>

Jencks errors do not necessarily lead to a reversal of conviction: "We will

not reverse a conviction for Jencks Act error where the error is more likely than

not harmless."   <u>U.S. v. Span</u>, 970 F.2d 573, 582 (9th Cir. 1992).   Harmless error

is defined as an error that would, more likely than not, have affected the verdict.

<u>U.S. v. Baker</u>, 10 F.3d 1374, 1407 (9th Cir. 1993).   Given the limited usefulness of

the information cited by the defendant, and the strong physical evidence, the

claimed errors would not have affected the verdict in this case.

A.     <u>Only the Grand Jury Testimony is Jencks Material</u>

The Government concedes that it inadvertently failed to provide the

previous grand jury testimony of SA Cohoon.  That material is subject to a Jencks

analysis.  However, material not in the actual possession of the government is not

Jencks material.  <u>U.S. v. Fort</u>, 472 F.3d 1106, 1117-18 (9th Cir. 2007).   The tape

of the initial interview with Eugene Johnson was in the custody of the state

authorities.   Nonetheless, the Government requested state officers to provide the

tape.  The initial search during the criminal trial was unsuccessful.  Docket 346-

14, Trial Transcript, p. 1-254.  When the state officers searched again at the time

of forfeiture trial they were able to recover tape. Docket 346-35.   In any case, the

tape was not Jencks material.

Nor are rough notes considered Jencks material.  U.S. v. Alvarez, 86 F.3d

901,  fn. 2 (9th Cir. 1996).  Thus, although the Government later provided the

notes, there was no initial requirement to provide them under Jencks.  It is also

important to keep in mind that while the defendant generally complains about not

receiving the notes during trial, none of his specific 9 items of new information

come from the notes.  Thus, he must consider them of no material value.

Finally, although the grand jury transcripts are Jencks material, precedent

also requires that the defendant identify requested material with sufficient

particularity.  U.S. v. Wallace, 848 F.2d 1464, 1470-71 (9th Cir. 1988).  While the

Government is not arguing a strict technicality that the defendant must request a

particular document to receive it, the particularity requirement can have significant

value in the process.  The Government is not aware of, and the defendant does not

cite, a defense request for Jencks material that includes grand jury material, either

during or prior to the criminal trial.  Because the Government's failure to recover

the grand jury recording was inadvertent, a more specific reminder would likely

have triggered that recovery.  When the grand jury material was specifically

requested in the forfeiture trial, that request promptly led to the recording being

provided to the defendant.  A specific request for grand jury material would have

mitigated the issue.

      B.     <u>The Failure to Turn Over Jencks Material is Harmless Error</u>

      As discussed extensively in section II. A., the defendant makes a general

claim of value for the grand jury material (along with the Eugene Johnson

recording), and gives 9 specific pieces of information that he believes would have

been useful at trial.  As discussed specifically in section II.A.4,  none of those 9

specific items, individually or together, would have effected the verdict.  None of

those matters, even if true, had evidentiary value toward a substantive aspect of

the case, and the impeachment value was extremely limited and mostly

cumulative.  The 9 listed items would not result in an Acquittal under a Rule 33

new trial analysis, they would not be material under a <u>Brady</u>/<u>Giglio</u> analysis, and

examination under a Jencks analysis leads to a conclusion of harmless error.

IV.    <u>THE ISSUE OF THE SECOND INFORMANT WAS RESOLVED IN PRE-TRIAL LITIGATION</u>

      The defendant claims that he should receive a new trial for uncovering the

identity of a second informant briefly mentioned by Sergeant Wall in his testimony

before the magistrate to secure the search warrant on November 28, 2005.  That

matter was litigated fully in pre-trial motions practice, and nothing has changed to

revive the issue 2 ½ years later.

As stated by the Government at the time, a request for disclosure of an informant's identify on a matter related to probable cause shifts the balance toward the government's protection of the informant because it is a preliminary matter, not the final determination of guilt or innocence. <u>McCray v. State of Illinois</u>, 386 U.S. 300, 311 (1967). The burden is on the defendant to demonstrate the need for disclosure. <u>U.S. v. Fixen</u>, 780 F.2d 1434, 1439 (9th Cir. 1986). The defendant must show more than a "mere suspicion" that the information is necessary for a fair trial. <u>U.S. v. Henderson</u>, 241 F.3d 638, 645 (9th Cir. 2000).

In this case, the Magistrate Judge determined that the defendant had not met his burden for requiring the Government to reveal the informant, in large part because the defendant admitted he <u>already knew the identity of the informant</u>. Thus, the information was certainly not newly discovered. Moreover, the information was not material, nor would it have effected the trial because it only applied to the preliminary matter of the search warrant. The informant did not testify at trial, and in fact was never mentioned at trial.

## V.    CONCLUSION

This is not an "exceptional case" that warrants a new trial. The defendant was convicted at trial, and is simply seeking to avoid that conviction. The

defendant has not sufficiently alleged new evidence in his motion for new trial.

The substance of the 9 listed items cited by the defendant would not result in an

acquittal under a Rule 33 new trial analysis, would not be material under a

Brady/Giglio analysis, and are harmless error under a Jencks analysis.  This is

especially true when considering the strong physical evidence - 23 individually

wrapped ounces of cocaine, $38,000 in cash wrapped in $100 bundles, and

packaging materials - all in the defendant's bedroom.  The defense floated the

theory at trial that somehow Eugene Johnson was hiding his cocaine and money in

the defendant's bedroom.  The jury did not accept this outlandish theory at trial,

and it has not gained credibility in the past 2 years.  The defendant's motion for a

new trial should be denied.

RESPECTFULLY SUBMITTED this  29th  day of August, 2008, at
Fairbanks, Alaska.

NELSON P. COHEN
United States Attorney

s/Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August  29  , 2008,
that a true and correct copy of the foregoing, **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL**,
was served, via Electronic Filing, on:

**David Cohen**


s/Bryan Schroder