1
2
3

DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

4

Attorneys for Defendant **Jason Scott Colette**

5

UNITED STATES DISTRICT COURT

6

DISTRICT OF ALASKA

7

8

UNITED STATES OF AMERICA,          )   Case No. CR-00042-01-RRB
                                   )
9

          Plaintiff,               )
                                   )   **DEFENDANT JASON SCOTT COLETTE'S**
10

v.                                 )   **REPLY TO GOVERNMENT'S**
                                   )   **OPPOSITION TO MOTION FOR NEW**
11

JASON SCOTT COLETTE,               )   **TRIAL**
                                   )
12

          Defendant.               )
                                   )
13
_____  )

14

· I.

15
16

**MR. COLETTE'S MOTION FOR NEW TRIAL MUST BE GRANTED PURSUANT TO THE JENCKS ACT BECAUSE THE JENCKS MATERIAL THAT WAS WITHHELD BY THE GOVERNMENT HAD A CUMULATIVE AFFECT ON THE TRIAL VERDICT IN THIS CASE.**

17
18

As we previously stated in our motion for new trial, the

19

determination of whether a new trial should be granted depends

20

upon "whether the absence of [the Jencks materials] affected the

21

outcome of the case or handicapped [the defendant] or his counsel

22

in their presentation of the defense." *U.S. v. Rivero*, 554 F.2d

23

213, 214 (5th Cir. 1977).   "If the District Court concludes on

24

such hearing that there is such a <u>possibility</u> then a new trial

25

[portions omitted] must be granted.  *Id.* (emphasis added).   We

26

believe our motion for new trial identifies such a possibility.

27
28

1

A.   <u>All Of The Evidence Identified By The Defense As Jencks Materials Is, In Fact, Jencks Material</u>.

The government has conceded that Cohoon's grand jury testimony is subject to Jencks analysis and should have been turned over to the defense.   However, the government, while conceding that Jencks analysis is warranted, attempts to redeem itself by suggesting that the failure to turn over the Jencks material ought be excused, because the defense failed to specifically request it.   We disagree.   The defense, prior to trial, had requested that all Jencks material be turned over to the defense.   In response, the government sent the defense various materials with accompanying letters stating that the contents of that packet included all Jencks/Brady materials. (See motion for new trial, Exhibits 4, 5, and 6)   Further, during trial, the defense, on several other occasions asked for additional Jencks materials. (as described and cited in our motion for new trial, Pg. 4-5)   Each time that the defense made such a request, Mr. Schroder stated, on the record, that there was no additional Jencks material in this case.   (as described and cited in our motion for new trial, Pg. 4-5)

At some point, the defense ought be allowed to trust the statements of the federal prosecutor and proceed as if those statements are true and honest representations.   However, the fact that the defense took the government at its word and was mislead is far less disturbing than the government trying to benefit from misleading the defense by suggesting that we should have implied that Mr. Schroder was lying by continuing *ad nauseam* to request additional Jencks materials.

The government does not deny that the audio-recorded interview of Johnson is Jencks materia as to its materiality and quality. Rather, the government attempts to overcome its Jencks violation by claiming that it did not have possession of the tape. As we state in our motion for new trial, there are only two possible scenarios with regards to the taped interview with Johnson. Either the government was lying when Mr. Schroder stated on the record at the criminal trial that he was assured by Wall on several occasions that there was no tape, which would, no doubt be both a Jencks violation and a disturbing display of prosecutorial misconduct *or* the government was being truthful, which means that the Fairbanks Police Department lied about having a tape and intentionally withheld that tape from the government, defense, and trial court. (See motion for new trial, Pg. 4, line 24 to Pg. 5, line 2).

It should first be noted that it is extremely doubtful that the government had no knowledge of a recording of the interview with Johnson, the government's star witness. The defense believes that the government is in the habit of reviewing the information attained during an investigation for the purposes of prosecuting the case.

Further, it is clear from the recorded interview with Johnson that federal agents were present while the Johnson interview was being recorded. In the transcript of the Johnson interview, Wall states, "The ATF, he's federal, DEA Agent, that bigger guy in there as well as ATF. Now, when you mix the drugs with the gun, they may choose to go forward." (See Exhibit 14 of the opening brief, Pg. 14, lines 6-9). That statement makes it

clear that Johnson could see the federal agents while he was being interviewed, which means that the federal agents saw Johnson as well. In addition to the statements made during the recorded interview, Cohoon, during his testimony at the forfeiture trial, stated, on the record, that he was present at the time of the execution of the search warrant at Johnson's residence and that he interviewed him that day.

It is just too unreasonable to believe that the various federal agents, including Cohoon, who were in Johnson's home while Johnson was interviewed, went forward with this case without ever having reviewed the taped interview that they clearly knew existed. In order to entertain the government's claim that they never possessed or knew about the tape, the Court must believe a series of ridiculous scenarios. First, the Court must believe that the federal agents were so oblivious and disinterested in the fruits of their search that they ignored the entire taped interview of the person being search, which apparently occurred right in from of them. Assuming the federal agents were not completely incompetent, which the defense is inclined to believe, there is no possible motivation for the federal agents withholding the tape from the federal prosecutor. However, even if the Court believes that the agents were completely oblivious during the search and interview, the Court must also believe that the government was so lax that it never sought any recorded statements from Johnson, its only eyewitness.

Further, the defense put the government on notice that such a tape likely existed. As stated and cited to in our motion for new trial, Mr. Butler, on the record, informed the government that he believed that such a recording existed, giving the

4

government full knowledge that the tape was out there. (See motion for new trial, Pg. 4, line 11 to Pg. 5, line 2). Further, the trial court, apparently also doubtful of the government's representation that such a tape did not exist, ordered that any tape of the interview be produced. (See motion for new trial, Pg. 4, lines 24-27) According to *U.S. v. Wallace*, knowledge of Jencks material by the government is enough to satisfy the possession requirement. *U.S. v. Wallace*, 848 F.2d 1464, 1470 (9th Cir. 1988). In *Wallace*, the government claimed that it never actually possessed notes from an interview of a trial witness. *Id.* However, the government had become aware at some point that there were, in fact, notes of the interview. *Id.* Thus, despite never actually possessing those notes, the court, in *Wallace*, deemed the government to be in possession. *Id.*

Similarly, in this case, the government was put on notice that such a tape existed and needed to be turned over. The fact that the government elected to turn a deaf ear and a blind eye to the existence of the tape should not be a basis for avoiding their obligation to produce Jencks material. If it were a basis, the government, in any criminal case, could simply get all the information it wanted directly from investigators and intentionally avoid ever receiving written or recorded statements of that information in order to keep the defense from benefitting from that material.

The defense also notes that Mr. Schroder stated he would look into the matter and subsequently never produced any tape. For the purposes of indicating that it was by choice and not by lack of ability to produce the tape, the defense would like to point out that when Mr. Cohen requested the same material during

5

the forfeiture trial, Mr. Barkeley was able to produce that material to the defense within two days of Mr. Cohen's request. There has never been any explanation as to why Mr. Schroder did not do the same when he was ordered by the Court long before, while the evidence was newer and fresher in the minds of the investigating officers.

While the defense cannot reasonably believe the government was ignorant of the existence of the only audio-recorded pre-trial interview of its star witness, Mr. Colette remains entitled to a new trial even if the government was mysteriously unaware that such a tape existed, because that would implicate Wall, a key member of the police investigation of this case, of egregious prosecutorial misconduct. If Mr. Schroder is being honest that Wall told him that no tape of the Johnson interview existed, it is clear that Wall intentionally withheld this evidence. We know the evidence was readily available from Wall, because Mr. Barkeley was able to have the evidence turned over to the defense on very short notice. If, in fact, Wall withheld this evidence from Mr. Schroder, we believe that was egregious prosecutorial misconduct, which would serve to create a basis for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure and under *Brady* as well.

Next, the government incorrectly states that Agent Cohoon's notes, which were taken while interviewing Eugene Johnson, are not Jencks material. In reaching this conclusion, the government cited *U.S. v. Alvarez*, 86 F.3d 901, fn. 2 (9th Cir. 1996). "Although an officer's 'rough notes' need not be disclosed pursuant to the Jencks Act as witness statements, *United States v. Anderson,* 813 F.2d 1450, 1459 (9th Cir. 1987), they must be

6

disclosed pursuant to *Brady* if they contain material and exculpatory information." *Id.* While it is true that fn. 2 in *Alavarez* states that rough notes are not subject to the Jencks requirement, the government apparently disregarded the case cited in fn. 2, *U.S. v. Anderson*, which elaborates on the proper definition of rough notes. "In *United States v. Harris,* 543 F.2d 1247, 1253 (9th Cir. 1976), this court held that under the Jencks Act, <u>an agent's original interview notes with the suspect or potential witness must be preserved or produced</u>. However, an agent's *rough notes* taken during the course of surveillance need not be preserved or produced." *U.S. v. Anderson*, 813 F.2d 1450, 1459 (9th Cir. 1987)(emphasis added). We have never claimed a Jencks violation related to rough notes that resulted from surveillance. According to *Anderson*, notes from an interview of a potential witness are not rough notes and are clearly subject to the Jencks requirement. *Id.*

B.   The Defense Recently Discovered That An Additional Jencks Violation Occurred In This Case With Respect To The Grand Jury Testimony Of Agent Foran.

In our motion for new trial, we indicated that the government, during Mr. Colette's forfeiture trial, had turned over grand jury testimony from both Special Agents Cohoon and Foran. However, upon reviewing Foran's grand jury testimony, it became clear to the defense that Foran's grand jury testimony was unrelated to this case and involved an entirely different criminal case and defendant.

Upon learning that we had received the wrong grand jury testimony, we notified the government that the Foran testimony was from a different case. Mr. Barkeley informed the defense that there was no grand jury testimony by Agent Foran and that

the government had been mistaken in any previous representations that such testimony existed. (See the attached Declaration by defense counsel, David J. Cohen). However, in Schroder's declaration, which is attached to the government's opposition as Exhibit A, Schroder plainly states that Foran did, in fact, testify before the grand jury, and that Mr. Shroder had elected, for reasons unspecified, to not have that testimony transcribed.

The defense first requested all Jencks/Brady material in 2006. We were assured that the government had given us all Jencks material in July of 2006. (See Exhibit 6 from out motion for new trial). It is now 2008, and we are still seeking evidence. This situation is indicative of what Mr. Colette has endured during the entirety of these proceedings. The defense seeks information. Despite repeated requests, we do not receive that information. In explaining why the defense has not received the requested information, the government contradicts itself or the investigating officers, and the defense is left in a position of confusion and ignorance.

In the case of the Foran grand jury testimony, if we believe Mr. Barkeley, there was no grand jury testimony by Agent Foran. If we believe Schroder, than there was testimony that was never transcribed. Frankly, we are not in a position to take either Mr. Schroder or Mr. Barkeley at their word. We have to assume, given everything that has occurred thus far, that Foran did testify, that there is a recording of that testimony, and that we need to have access to that recording as soon as possible.

C. The Failure To Turn Over Jencks Material In This Case,
Considered Individually, And Certainly Cumulatively,
Likely Affected The Trial Verdict, And Is Thus, Not
Harmless Error.

As previously indicated, "Once it is determined that a Jencks violation has occurred, the Court must then determine 'whether the absence of [the Jencks materials] affected the outcome of the case or handicapped [the defendant] or his counsel in their preparation of the defense.'" *U.S. v. Rivero*, 554 F.2d 213, 214 (5th Cir. 1977). The Ninth Circuit has long held that any Jencks violation that likely affected the trial verdict must result in a new trial. *U.S. v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991); *see also U.S. v. Pisello*, 877 F.2d 762, 768 (9th Cir. 1989), *U.S. v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986), *U.S. v. Wallace*, 848 F.2d 1464, 1471 (9th Cir. 1988).

The government, in an attempt to undermine the significance of the cumulative affect of the withheld Jencks evidence in this case, claims that any unlawful withholding in this case ought be considered harmless error. The government makes several false statements and ignores key arguments from the motion for new trial to reach this conclusion.

First, the government states that the additional information discovered in this case is insignificant, because it only relates to two witnesses, Agent Cohoon and Eugene Johnson. However, Johnson was not merely a witness, but rather a key witness to the prosecution's case, the only person who testified that he had observed Mr. Colette engaged in the sale of narcotics. Any information that served to taint Johnson's credibility and provide an alternative theory of guilt, which implicated Johnson rather than Mr. Colette, was absolutely critical. Such

information would not only have created a stronger basis for the jury to doubt Johnson's representations about the activities of Mr. Colette, but such evidence also would have provided the jury with a basis to find that Johnson, rather than Mr. Colette, was the party guilty for the charged offenses in this case.

Further, Cohoon was the first party to interview Johnson and uncover the information that would have served to assist the defense in discrediting Johnson. The fact that Cohoon apparently intentionally withheld his notes and that the police department and/or government withheld any grand jury testimony by Cohoon related to that information serves to seriously undermine the integrity of the investigation in this case, thus creating another source of reasonable doubt for the jury to consider.

And while it is true that the information was heavily related to both Cohoon and Johnson, the defense indicated in its motion for new trial that the new information was related to every other witness that testified in Mr. Colette's trial as well. The only parties who testified in Mr. Colette's trial were Johnson and the various law enforcement agents that took part in the investigation and arrest of Mr. Colette. It is was made clear through our motion for new trial that, for reasons unknown, the investigating officers in this case lied to Schroder when they stated that they had no audio-recorded interviews of Johnson or notes from that interview. (See our motion for new trial Pgs. 4-5). Based on the multiple representations by the Anchorage Police Department that this evidence did not exist, the defense was prejudiced by both the absence of the Jencks material and the ability to demonstrate that the Jencks material was intentionally

being withheld. The jury should have been able to consider that during the trial.

Further, the defense would also point out that we have absolutely no idea what information might be contained in the grand jury testimony of Agent Foran. Clearly, any information contained in the recording that would have benefitted the defense would also strengthen our claim to a new trial under Jencks, though we cannot say to what extent until we actually receive the recorded testimony.

When considered as a whole, all of this information would have put the investigation and trial in this case in an entirely different context. The jury would have been made aware that there was an alternative guilty party, that the investigative officers intentionally withheld evidence regarding that alternative guilty party, and that the guilty party had both a motive and the means to cause Mr. Colette to be implicated instead. That kind of information, when considered cumulatively is not impeachment evidence. It has direct bearing on the innocence or guilt of the accused. Further, it accounts for the presence of the physical evidence in Mr. Colette's home, which is what the government, in its opposition, claims that the verdict was truly based upon.

II.

## MR. COLETTE'S MOTION FOR NEW TRIAL MUST BE GRANTED PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE BECAUSE THE NEWLY DISCOVERED EVIDENCE IN THIS CASE WOULD HAVE AFFECTED THE VERDICT.

A.   The Defense Has Consistently Exercised Due Diligence Throughout These Proceedings.

The defense would first like to address what we believe to be a completely unfounded and unreasonable claim that we have not exercised due diligence in bringing this matter before the Court. Rule 33, itself, states that the defense is entitled to three years to file a motion for new trial, which, incidentally, means that our motion was filed early, as Mr. Colette's criminal trial and sentencing were not completed until August of 2006, and Mr. Colette's criminal forfeiture trial did not end until September of 2007.  Our motion for new trial was filed on July 24, 2008, only 10 months after the verdict in Mr. Colette's criminal forfeiture trial, not one year later, as the government's opposition incorrectly states.

The government misleads the Court by suggesting that *U.S. v. Frankfeld*, an out-of-circuit Maryland district court case that is well over 50 years-old, provides for some additional diligence requirement that the defense has failed to meet.  However, *U.S. v. Frankfeld* is a very old and vague case that merely states that the defense should be diligent in attempting to receive evidence and filing its motion for new trial.  *U.S. v. Frankfeld*, 111 F. Supp. 919, 923 (D.Md. 1953).

The timeliness and diligence requirements are now codified within Rule 33 of the Federal Rules of Criminal procedure.  Rule 33 specifically states that the motion must be brought within three years of the verdict, and the evidence must be newly

discovered, that is, it could not have been discovered before the verdict with reasonable diligence. Because we have complied with the current diligence and timeliness requirements set forth in Rule 33 of the Federal Rules of Criminal Procedure, this motion is timely. Because the evidence was not available before the first trial, and was not available with the exercise of reasonable diligence, the evidence is newly discovered, as we extensively detail in our opening brief.

B.    The Defense Has Demonstrated Significant and Undeniable Prosecutorial Misconduct.

The defense notes that the government, in its opposition, fails to address any of the arguments set forth in our motion for new trial regarding prosecutorial or government misconduct in this case, not to mention the additional misconduct we referenced with regards to the grand jury testimony of Foran. We take the government's silence on the issue as a concession that prosecutorial misconduct by the government and/or the Fairbanks Police Department did occur.

However, the government does not simply acquiesce to our allegation of misconduct through silence. Rather, the government, by its own statements, makes a demonstration of blatant prosecutorial misconduct. Mr. Schroder, on the record at trial, stated that Wall told him repeatedly that there was no recording of the Johnson interview, which we now know to be a lie. According to Mr. Schroder, Wall, on more than one occasion, blatantly lied about not having the recording, thus withholding evidence from the government, defense, and the Court.

If we take Mr. Schroder at his word, there is a clear Rule 33 violation based on prosecutorial misconduct, which would

13

excuse the defense from having to meet any of the elements of the five-part test.   Further, that dishonesty and withholding of evidence would constitute a clear *Brady* violation, as discussed later.   Alternatively, if we do not take Schroder at his word, than Schroder knew that the tape existed all along and failed to provide the tape to the defense, even after the Court ordered that any tape of the Johnson interview be turned over.   Either the federal prosecutor or the Fairbanks Police Department's lead investigator on this case blatantly lied and withheld evidence, thereby violating *Jencks, Brady*, and creating a basis for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

The fact that Wall lied and withheld evidence should have been an issue at trial during Wall's testimony, as it directly related to Wall's credibility.   Wall was one of the key investigators in this case.   He testified at length about the execution of the search warrant, the evidence that was discovered, the information ascertained from Johnson, and made statements that implicated Mr. Colette to the jury.   The defense was denied the opportunity to expose Wall's dishonesty to the jury, because the tape was not produced until after the criminal trial concluded.   Thus, Wall's testimony, which was extensive, was never properly challenged, because the defense had no proof that Wall was lying until the new evidence was produced during Mr. Colette's forfeiture trial.

C.   The Defense Has Established The Elements Of The Five-
Part Test For A New Trial Under Rule 33, And, In
Addition, Has Also Demonstrated Prosecutorial
Misconduct.

In order to receive a new trial pursuant to Rule 33 of the
Federal Rules of Criminal Procedure, Mr. Colette need not prove
that his case is exceptional, as the government suggests in its
opposition.  Rule 33 explicitly states that the Court is well
within its rights to grant a new trial, provided the "interest of
justice so requires."  Rule 33(b)(1).  In order to demonstrate
that the interest of justice requires that a new trial be
granted, the defense must demonstrate either prosecutorial (or
any other form of government) misconduct or that the defendant is
able to satisfy the requirements of a five-part test related to
the nature and weight of the newly discovered evidence. *U.S. v.
Walgren*, 885 F.2d 1417 (9th Cir. 1989).

The government lists several pieces of new evidence that the
defense raised in its motion for new trial.  The government,
however, left out of their list the identity of informant, Sharon
Powers.  Though the government addresses the pre-trial motions
that were filed with regards to informant Sharon Powers in
section IV of their opposition, they do not respond to the
numerous and specific arguments regarding the improprieties
surrounding Ms. Powers's involvement in the investigation.

Further, the government incorrectly stated that Mr. Colette
knew that Powers was the other informant in his case.  Mr.
Colette suspected the additional informant might be Ms. Powers,
which is why he filed pre-trial motions in an attempt to
ascertain the identity of the second informant.  Mr. Colette,
however, did not know that Ms. Powers was, in fact, that second

informant until our investigator located her and confirmed her participation in September of 2007. Thus, the fact that information was provided by Ms. Powers is newly discovered evidence, as are many of the improprieties surrounding Ms. Powers's participation.

Further, the defense needed proof that Ms. Powers was involved in the investigation to expose Cohoon's dishonesty on the witness stand at trial. As stated and cited to in our opening brief, Wall told the magistrate who issued the warrant that the other informant in this case was a man. Wall also failed to mention that Sharon Powers was Mr. Colette's angry former girlfriend and that Mr. Colette had recently had a restraining order issued against her.

The fact that Wall lied to and withheld evidence from the magistrate would have hurt Wall's credibility at the trial, thereby casting further doubt on the truthfulness of his statements. The defense, without having had proof that Ms. Powers was the second informant, was unable to properly cross-examine Wall and demonstrate his poor credibility to the jury. Coupled with Wall's dishonesty about the existence of the Johnson tape, this additional blow to Wall's credibility would have given the jury a very strong basis to doubt his trial testimony and the integrity of the investigation into Mr. Colette.

The government, describes several points by the defense as being unsupported or incorrect. The defense would first point out that we cite to four pieces of newly discovered evidence. All four pieces of evidence were included as exhibits to our motion or are supported by exhibits to our motion. The first piece of evidence was the grand jury testimony of Cohoon, which

16

was included in our motion for new trial as Exhibit 12. The second piece of evidence was the recording of Cohoon's interview of Johnson, which was included in our motion for new trial as Exhibit 14. The third piece of evidence were Jonhson's handwritten notes from the interview of Johnson, which was included as Exhibit 13. The fourth piece of evidence was Sharon Powers's statement to our investigator that she was, in fact, the other informant, which was included as exhibit 15. We also included in our Exhibits a restraining order between Powers and Mr. Colette to support our theory that information she gave was unreliable. (See Exhibit 17).

Clearly, the new evidence we named in our motion exists and is available for review. The government's allegations regarding the evidence being unsupported or incorrect refers to inconsistencies and issues we identified in our motion after reviewing the newly discovered evidence. The government is, of course, entitled to its argument that the evidence is either unreliable or insignificant, but the point that the defense is making is that the jury should have had the opportunity to make that determination. Had we received the four pieces of evidence described above, the defense could have used that evidence to raise the issues at trial or support issues that were raised at trial.

We have already described the cumulative effect that the evidence may have had on the jury in both our motion for new trial and in Section I of this reply to the government's opposition. There is no doubt that the above-mentioned evidence is newly discovered and would have been used by the defense to try Mr. Colette's case. Based on the arguments laid out in both

17

our motion for new trial and in Section I of this reply, we believe that the new evidence would have likely resulted in an acquittal.

Further, even assuming that the Court found that we do not meet the requirements of the five-part test laid out for granting a new trial pursuant to Rule 33, the defense has still demonstrated that the police and government engaged in misconduct that prejudiced Mr. Colette throughout his trial and may very well have affected the verdict. Those arguments were not refuted by the government. Further, the prosecution did not address our arguments regarding the cumulative effect of the withholding of the evidence by the government/law enforcement coupled with the inconsistencies identified in our motion for new trial.

### III.

**MR. COLETTE MUST BE GRANTED A NEW TRIAL BASED ON THE BRADY VIOLATIONS COMMITTED BY THE GOVERNMENT THROUGHOUT MR. COLETTE'S CRIMINAL CASE.**

As the prosecution conceded in their opposition to our motion for new trial, withholding impeachment evidence constitutes a violation of *Brady v. Maryland*. The materiality of the withheld evidence must be considered in determining whether the defendant is entitled to a new trial. *U.S. v. Davis*, 960 F.2d 820 (9th Cir. 1991). Though the government concedes that *Davis* demonstrates the ability to be granted a new trial based on impeachment evidence, the government argues that *Davis* is distinguishable from our case, because the situation in *Davis* was more egregious.

Specifically, the government argues that a new trial may only be granted based on impeachment evidence where a witness's testimony is uncorroborated and the impeachment evidence was so

18

powerful that it would make the testimony of the witness "totally incredible." Though that is not the *Brady/Giglio* standard, we believe such circumstances exist in this case. Johnson, the only person who testified at trial that he had observed Mr. Colette engage in the sale of narcotics, provided uncorroborated testimony. No other individual testified to that effect at Mr. Colette's criminal trial.

The withheld evidence in this case, which resulted from the interview of Johnson, contained information which proved that Johnson was aware that his home was going to be raided by the Fairbanks Police Department. The withheld evidence also indicated that Johnson cleaned out his home of cocaine and weapons as a result of finding out that his home was going to be searched. Then, shortly thereafter, cocaine was discovered at Mr. Colette's home, to which Johnson had recent access.

The information creates a clear possible link between Johnson and the cocaine that was discovered at Mr. Colette's residence. And given Johnson's obvious motivation to avoid been prosecuted, it would not have been difficult or unreasonable for any juror to believe that Johnson was capable of planting drugs on another to protect himself. Yet, the jury never considered that Johnson had made statements which either supported or confirmed the defense's theory, because that evidence was never presented before the jury.

That fact alone, but especially when coupled with the various other inconsistencies identified in our motion for new trial, creates a basis to question the validity of the jury's verdict in this case. Had the jury been given the opportunity to

19

consider the withheld evidence, they very easily could have reached a different verdict in this case.

The prosecution further alleges that some of the statements or evidence that are newly discovered are inculpatory rather than exculpatory, and thus, not *Brady* material. However, we disagree. Any evidence that serves to contradict the investigating officers, diminish their credibility, and, thus, weaken the force of any testimonial or physical evidence recovered by the investigating officers, is exculpatory. Each contradiction or false statement by a prosecution witness gives the jury an additional basis to have a reasonable doubt of Mr. Colette's guilt.

Additionally, as earlier stated, the defense has still not received Foran's grand jury testimony, which likely contains additional information that the defense, at a minimum, could have used to prepare for the trial and cross-examination of Agent Foran. Until we are able to review that testimony, we are unsure as to what extent that evidence is either material or exculpatory.

## IV.

## CONCLUSION

The defense has demonstrated a lengthy record which indicates that evidence has consistently been provided late or not at all to the defense, even after the express orders of the Court on several occasions. The defense has never received a clear or consistent explanation for the repeated failure of the government to provide us with the necessary evidence.

After reviewing the newly discovered evidence, two things have become clear. The first is that much of the newly

.20

discovered evidence contains inconsistent or false statements by key government witnesses, not to mention statements that support an alternative party being guilty. The second is that throughout these proceedings, there are many indications that both the government and the Fairbanks Police Department have not acted in good faith toward both the defense and the Court.

Accordingly, we respectfully submit that Mr. Colette is entitled to receive a new trial pursuant to the Jencks Act, *People v. Brady*, and Rule 33 of the Federal Rules of Criminal Procedure.

Dated: September 15, 2008          Respectfully submitted,

/s/ David J. Cohen
300 Montgomery Street
Suite 660
San Francisco, CA 94104
(415) 398-3900
(415) 398-7500